CASE NO. 21-2051

———————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

JUSTIN ADKINS; JUSTIN BLAKE; EDWIN GLOWACKI; ERIC
JORDAN; KEVIN PALMER; DENNIS SARGENT; TRAVIS
THORNSBERRY; MICHAEL WILLIAMS; JOHN BAKER; JAMES
BLAIN; DEVERY BROWN; JAMES DEAL; JONATHAN JEFFERS;
ROBERT MOSTELLER; MICHAEL L. POTTER; MICHAEL D. POTTER;
JESSEE WALLACE; TIMOTHY WITT; JOHN BILLS; MICHAEL
CLARK; RANDALL CRAYCRAFT; JOHN FRASURE; SAMMY MADDIX;
JAMES STINNETT; TODD THAYER; MICHAEL CAMPBELL; TONY
ABDON; THE ESTATE OF CHAD LITTLE; BRANDON ADKINS;
JACQUELINE MARSHALL; HOMER MAYNARD; SCOTT MORRISON;
JEREMY NAPIER; SHAWN PATTERSON; MATTHEW WOODS; JOHN
CARPENTER; QUINCY CHRISTIAN; GREGORY HAMM;
ETHAN MULLINS; MICHAEL OWENS; JONATHAN ROWE; DANNY
STEWART; LLOYD WILLIAMS; DAVID MANIS; JOSHUA FERGUSON;
ERIC SPEAKS; DONALD STEPHENS; JASON BARKER; CHAD DOWDY;
JERRY FLOCKER; GROVER KELLEY; CHRISTOPHER CLAY
STILTNER; DENNIS HUTCHINSON; JOSHUA HALL; ZACH POTTER;
DEANNA LANHAM; SAMUEL PRESTON; BOBBY AKERS; GERALD
BARBER,

**Plaintiffs – Appellants**

**v.**

CSX TRANSPORTATION, INCORPORATED; CRAIG S. HELIGMAN,
M.D.; GUS THOELE; CURT SHOGREN; MILTON STORM; DELANDO
JONES; TOM DEANGELO; SHAWN LUSK; ELIZABETH CREEDON;
KENNETH RAY EMERSON

**Defendants – Appellees**

———————————

**Appeal from the United States District Court
for the Southern District of West Virginia**

———————————

**JOINT APPENDIX
VOLUME 1 OF 6**

———————————

Jeff R. Dingwall
EIGHT & SAND
750 West Fir Street, Suite 602
San Diego, CA 92101
Tel: (619) 796-3464
Fax: (619) 717-8762
jeff@eightandsandlaw.com

Gregory G. Paul
PAUL LAW OFFICES
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
Tel: (412) 417-5862
Fax: (888) 822-9421
gregpaul@morgan-paul.com

**ATTORNEYS FOR APPELLANTS**

Brian D. Schmalzbach
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
P: 804−775−7873
E:bschmalzbach@mcguirewoods.com

Samuel Lewis Tarry , Jr.
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
P: 804−775−7873
E:starry@mcguirewoods.com

Davis M. Walsh
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
P: 804−775−7873
E: dwalsh@mcguirewoods.com

Kathryn M. Barber
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
P: 804−775−7873
E:kbarber@mcguirewoods.com

Melissa Foster Bird

NELSON MULLINS RILEY &
SCARBOROUGH
P. O. Box 1856
Huntington, WV 25719
P: 304-526-3500
E:melissa.fosterbird@nelsonmullins.com

**ATTORNEYS FOR APPELLEES**

# TABLE OF CONTENTS
## APPENDIX VOLUME 1 OF 6

| <u>ECF #</u> | <u>Description</u> | <u>Page #</u> |
|---|---|---|
| | Docket Sheet | 1 |
| 93 | Third Amended Complaint | 106 |
| 94 | Answer to Third Amended Complaint | 473 |
| 163 | Exhibits in Support of Defendants' Renewed Motion to Dismiss | 521 |
| 166 | Order on Defendants' Renewed Motion to Dismiss | 523 |

APPEAL,LC–A

# United States District Court
# Southern District of West Virginia (Huntington)
# CIVIL DOCKET FOR CASE #: 3:18–cv–00321

Baker et al v. CSX Transportation, Inc. et al
Assigned to: Judge Robert C. Chambers
Cause: 28:1331(a) Fed. Question: Real Property

Date Filed: 02/15/2018
Date Terminated: 08/23/2021
Jury Demand: Plaintiff
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**

**Justin Adkins**
*TERMINATED: 07/11/2022*

represented by   **Charles Kiel Garella**
GARELLA LAW
409 East Boulevard
Charlotte, NC 28303
980/321–7934
Fax: 704/990–6734
Email: kiel@gljustice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
MORGAN & PAUL
100 First Avenue
Suite 1010
Pittsburgh, PA 15222
844/374–7200
Fax: 888–822–9421
Email: gregpaul@paullaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
EIGHT & SAND
110 West C Street
Suite 1903
San Diego, CA 92101
619/796–3464
Fax: 619/717–8762
Email: jeff@eightandsandlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
UNDERWOOD & PROCTOR LAW
OFFICES
923 Third Avenue

Huntington, WV 25701
304/522–0508
Fax: 9722927828
Email: pstephens@underwoodlawoffices.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
241 Elm Street
Ludlow, KY 41016
859/331–4443
Fax: 859/291–2226
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
UNDERWOOD & PROCTOR LAW
OFFICES
923 Third Avenue
Huntington, WV 25701
304/522–0508
Fax: 9722927828
Email: munderwood@underwoodlawoffices.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Justin Blake**
*TERMINATED: 07/11/2022*

     represented by    **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Edwin Glowacki**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eric Jordan**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kevin Palmer**                    represented by  **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                            (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Samuel Preston**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dennis Sargent**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Travis Thornsberry**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Williams**                    represented by  **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gregory G. Paul**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeffrey R. Dingwall**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **John Patrick L. Stephens**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kenneth R. Reed**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Mark F. Underwood**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Baker**                          represented by  **Charles Kiel Garella**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gregory G. Paul**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeffrey R. Dingwall**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **John Patrick L. Stephens**
                                                        (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Blain**                    represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                            (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Gregory G. Paul**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jeffrey R. Dingwall**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **John Patrick L. Stephens**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Kenneth R. Reed**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Mark F. Underwood**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Devery Brown**                   represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                            (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Deal**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jonathan Jeffers**                    represented by   **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Gregory G. Paul**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jeffrey R. Dingwall**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **John Patrick L. Stephens**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Kenneth R. Reed**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Mark F. Underwood**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Mosteller**                    represented by   **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Gregory G. Paul**
                                                         (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Potter**
*TERMINATED: 08/16/2018*

represented by   **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael L. Potter**
*TERMINATED: 07/11/2022*

represented by   **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Michael D. Potter**<br>*TERMINATED: 07/11/2022* | represented by | **Charles Kiel Garella**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jessee Wallace**                    represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gregory G. Paul**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeffrey R. Dingwall**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **John Patrick L. Stephens**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kenneth R. Reed**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Mark F. Underwood**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Timothy Witt**                      represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gregory G. Paul**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bobby Akers**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Mark F. Underwood
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gerald Barber**                represented by **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                           (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Gregory G. Paul**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Jeffrey R. Dingwall**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **John Patrick L. Stephens**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Kenneth R. Reed**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Mark F. Underwood**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Bills**                   represented by **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                           (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Gregory G. Paul**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Clark**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Randall Craycraft**                    represented by    **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Frasure**                    represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joshua Hall**
*TERMINATED: 03/24/2021*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sammy Maddix**                      represented by  **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Zack Potter**                      represented by  **Charles Kiel Garella**
*TERMINATED: 12/02/2020*                  (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Stinnett**                                  represented by  **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Todd Thayer**                                  represented by  **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                          (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Deanna Lanham**                              represented by  **Charles Kiel Garella**
*TERMINATED: 03/08/2021*                     (See above for address)
                                             *LEAD ATTORNEY*
                                             *PRO HAC VICE*
                                             *ATTORNEY TO BE NOTICED*

                                             **Gregory G. Paul**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **Jeffrey R. Dingwall**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *PRO HAC VICE*
                                             *ATTORNEY TO BE NOTICED*

                                             **John Patrick L. Stephens**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **Kenneth R. Reed**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Michael Campbell**                    represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Gregory G. Paul**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jeffrey R. Dingwall**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **John Patrick L. Stephens**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Kenneth R. Reed**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Mark F. Underwood**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Tony Abdon**                          represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Gregory G. Paul**
                                                         (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**The Estate of Chad Little**          represented by   **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                               (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Mark F. Underwood
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chad Little**                                                      represented by    **Charles Kiel Garella**
*TERMINATED: 01/13/2020*                                                              (See above for address)
                                                                                      *LEAD ATTORNEY*
                                                                                      *PRO HAC VICE*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Gregory G. Paul**
                                                                                      (See above for address)
                                                                                      *LEAD ATTORNEY*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Jeffrey R. Dingwall**
                                                                                      (See above for address)
                                                                                      *LEAD ATTORNEY*
                                                                                      *PRO HAC VICE*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **John Patrick L. Stephens**
                                                                                      (See above for address)
                                                                                      *LEAD ATTORNEY*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Kenneth R. Reed**
                                                                                      (See above for address)
                                                                                      *LEAD ATTORNEY*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Mark F. Underwood**
                                                                                      (See above for address)
                                                                                      *LEAD ATTORNEY*
                                                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brandon Adkins**                                                  represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                                                              (See above for address)
                                                                                      *LEAD ATTORNEY*
                                                                                      *PRO HAC VICE*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Gregory G. Paul**
                                                                                      (See above for address)
                                                                                      *LEAD ATTORNEY*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Jeffrey R. Dingwall**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jacqueline Marshall**                  represented by   **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                               (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gregory G. Paul**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeffrey R. Dingwall**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **John Patrick L. Stephens**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kenneth R. Reed**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Mark F. Underwood**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Homer Maynard**                    represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                               (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Gregory G. Paul**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Jeffrey R. Dingwall**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **John Patrick L. Stephens**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Kenneth R. Reed**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Mark F. Underwood**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Scott Morrison**                   represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                               (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Gregory G. Paul**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Jeffrey R. Dingwall**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Jeremy Napier                    represented by  **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                          (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Shawn Patterson                  represented by  **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                          (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Matthew Woods**                    represented by   **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                              (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Gregory G. Paul**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jeffrey R. Dingwall**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **John Patrick L. Stephens**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Kenneth R. Reed**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Mark F. Underwood**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Carpenter**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Quincy Christian**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gregory Hamm**                     represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                               (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Gregory G. Paul**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Jeffrey R. Dingwall**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **John Patrick L. Stephens**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Kenneth R. Reed**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Mark F. Underwood**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ethan Mullins**                    represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                               (See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Owens**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jonathan Rowe**                    represented by    **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                              (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Gregory G. Paul**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jeffrey R. Dingwall**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **John Patrick L. Stephens**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Kenneth R. Reed**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Mark F. Underwood**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Danny Stewart**                    represented by    **Charles Kiel Garella**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lloyd Williams**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Manis**
*TERMINATED: 07/11/2022*

represented by   **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joshua Ferguson**
*TERMINATED: 07/11/2022*

represented by   **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eric Speaks**                    represented by   **Charles Kiel Garella**
*TERMINATED: 07/11/2022*                           (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donald Stephens**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jason Barker**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chad Dowdy**                    represented by  **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jerry Flocker**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Grover Kelley**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Clay Stiltner**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Clay Stiltner**
*TERMINATED: 01/13/2020*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dennis Hutchinson**
*TERMINATED: 07/11/2022*

represented by **Charles Kiel Garella**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory G. Paul**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Dingwall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Patrick L. Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Reed**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Underwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CSX Transportation, Inc.**                    represented by   **Davis Michael Walsh**
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
804–775–7791
Fax: 804–698–4673
Email: dwalsh@mcguirewoods.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan Basham Davis**
NELSON MULLINS RILEY &
SCARBOROUGH
Suite 200
949 Third Avenue
Huntington, WV 25701
304/526–3500
Fax: 304/526–3599
Email: megan.davis@nelsonmullins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
NELSON MULLINS RILEY &
SCARBOROUGH
P. O. Box 1856
Huntington, WV 25719–1856
304/526–3500
Fax: 304/526–3599
Email: melissa.fosterbird@nelsonmullins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan R. Hamons**
NELSON MULLINS RILEY &
SCARBOROUGH
Suite 200
949 Third Avenue

Huntington, WV 25701
304–526–3529
Email: nathan.hamons@nelsonmullins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Lewis Tarry , Jr.**
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
804–775–7873
Email: starry@mcguirewoods.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
NELSON MULLINS RILEY &
SCARBOROUGH
One Wells Fargo Center, 23rd Floor
301 South College Street
Charlotte, NC 28202
704–417–3110
Fax: 704–377–4814
Email: anna.majestro@nelsonmullins.com
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**
NELSON MULLINS RILEY &
SCARBOROUGH
P. O. Box 1856
Huntington, WV 25719–1856
304–526–3517
Fax: 304–526–3599
Email: dru.frazier@frazierandoxley.com
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
BOWLES RICE
P. O. Box 1386
Charleston, WV 25325–1386
304–526–3515
Fax: 304–526–3599
Email: tom.hancock@nelsonmullins.com
*TERMINATED: 09/11/2019*

**Defendant**

**CSX Corporation**
*TERMINATED: 06/11/2020*

represented by **Megan Basham Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
(See above for address)
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**
(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
(See above for address)
*TERMINATED: 09/11/2019*

**Defendant**

**Craig S. Heligman**
*M.D.*

represented by    **Megan Basham Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
(See above for address)
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**
(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
(See above for address)
*TERMINATED: 09/11/2019*

**Defendant**

**Gus Thoele**

represented by    **Megan Basham Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
(See above for address)
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**
(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
(See above for address)
*TERMINATED: 09/11/2019*

**Defendant**

Curt Shogren                                    represented by     **Megan Basham Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
(See above for address)
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**
(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
(See above for address)
*TERMINATED: 09/11/2019*

**Defendant**

Milton Storm                                    represented by     **Megan Basham Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
(See above for address)
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**

(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
(See above for address)
*TERMINATED: 09/11/2019*

**Defendant**

**Dillon Doug Jones**                     represented by    **Melissa Foster Bird**
*TERMINATED: 09/21/2018*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Delando Jones**                         represented by    **Megan Basham Davis**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Melissa Foster Bird**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Anna Christina Majestro**
                                                           (See above for address)
                                                           *TERMINATED: 09/11/2019*

                                                           **Michael Drury Frazier**
                                                           (See above for address)
                                                           *TERMINATED: 09/11/2019*

                                                           **Thomas M. Hancock**
                                                           (See above for address)
                                                           *TERMINATED: 09/11/2019*

**Defendant**

**Tom DeAngelo**                          represented by    **Megan Basham Davis**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Melissa Foster Bird**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Anna Christina Majestro**
                                                           (See above for address)
                                                           *TERMINATED: 09/11/2019*

**Michael Drury Frazier**
(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
(See above for address)
*TERMINATED: 09/11/2019*

**Defendant**

Shawn Lusk                    represented by   **Megan Basham Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
(See above for address)
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**
(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
(See above for address)
*TERMINATED: 09/11/2019*

**Defendant**

**Elizabeth Creedon**          represented by   **Megan Basham Davis**
*and*                                           (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
(See above for address)
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**
(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**

(See above for address)
*TERMINATED: 09/11/2019*

**Defendant**

**Kenneth Ray Emerson**                   represented by   **Megan Basham Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Foster Bird**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Christina Majestro**
(See above for address)
*TERMINATED: 09/11/2019*

**Michael Drury Frazier**
(See above for address)
*TERMINATED: 09/11/2019*

**Thomas M. Hancock**
(See above for address)
*TERMINATED: 09/11/2019*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/15/2018 | 1 | | COMPLAINT. Filing Fee $400.00. Receipt # 0425−6252343. (Attachment: # 1 Civil Cover Sheet) (jsa) (Entered: 02/16/2018) |
| 02/15/2018 | | | CASE assigned to Judge Robert C. Chambers. (klc) (Entered: 02/16/2018) |
| 02/16/2018 | 2 | | STANDING ORDER IN RE: ASSIGNMENT AND REFERRAL OF CIVIL ACTIONS AND MATTERS TO MAGISTRATE JUDGES ENTERED JANUARY 4, 2016. Discovery referred to Magistrate Judge Eifert. (cc: attys; any unrepresented party) (jsa) |
| 02/22/2018 | 3 | | STATEMENT OF VISITING ATTORNEY from C. Kiel Garella on behalf of Plaintiffs. Local counsel: Mark F. Underwood. Fee $50.00. Receipt # 0425−6260989. (Underwood, Mark) |
| 02/22/2018 | 4 | | STATEMENT OF VISITING ATTORNEY from Jeff R. Dingwall on behalf of Plaintiffs. Local counsel: Mark F. Underwood. Fee $50.00. Receipt # 0425−6261093. (Underwood, Mark) |
| 04/15/2018 | | | **IMPORTANT NOTICE:** The United States District Court for the Southern District of West Virginia (WVSD) will be upgrading its current CM/ECF system to the Next Generation of CM/ECF (NextGen CM/ECF) on ***Monday, June 11, 2018***. Complete information regarding the WVSD NextGen CM/ECF implementation can be found at h ttp://www.wvsd.uscourts.gov/nextgen−information. Currently, many attorneys within a firm may share a single PACER account. This will no longer be |

| | | allowed with the new WVSD NextGen CM/ECF system because each attorney must have an individual upgraded PACER account that will be linked to their e–filing account. Shared PACER accounts cannot be used by WVSD e–filing attorneys once the WVSD NextGen CM/ECF system is implemented. Preparing for NextGen CM/ECF is a two–step process. Step one is to upgrade your PACER account, and step two is to link your upgraded PACER account to the WVSD e–filing account in the upgraded NextGen CM/ECF system. This notice only addresses the first step because the second step can't be completed until on or after June 11, 2018. The first step is to check and see if your PACER account is an "Upgraded" PACER account. Many PACER accounts have already been upgraded. If any of the following is true, you have an upgraded PACER account and no action is required until after the WVSD NextGen CM/ECF upgrade on June 11, 2018: 1) You have an upgraded PACER account for another NextGen court; or, 2) Your PACER account was created after August 10, 2014. If none of these are true, you must upgrade your legacy PACER account before you will be able to link your PACER account to your current WVSD CM/ECF account for your new NextGen CM/ECF account. Additional notices will be sent at a later date on how to handle the second step in this process. If you still have questions please contact the PACER Service Center at 800–676–6856 or the WVSD Clerk's Office CM/ECF Help Desk at (304)–347–3111. (mwk) (ADI) |
|---|---|---|
| 05/14/2018 | 5 | SUMMONS SUBMITTED by Michael Williams, Chad Little, Bobby Akers, Sammy Maddix, Edwin Glowacki, Samuel Preston, Justin Adkins, Danny Stewart, Gerald Barber, Michael Clark, Travis Thornsberry, Quincy Christian, Donald Stephens, Michael Potter, Chad Dowdy, Grover Kelley, James Stinnett, John Frasure, Joshua Ferguson, Eric Speaks, Jason Barker, Gregory Hamm, Clay Stiltner, John Carpenter, Michael Campbell, David Manis, Zack Potter, Dennis Sargent, James Blain, Randall Craycraft, Dennis Hutchinson, John Bills, Ethan Mullins, Jerry Flocker, Joshua Hall, Kevin Palmer, Jonathan Jeffers, Matthew Woods, Robert Mosteller, John Baker, Jeremy Napier, Todd Thayer, Jessee Wallace for CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele, re: 1 Complaint. (Attachments: # 1 Summons CSX Transportation, # 2 Summons CSX Corp., # 3 Summons Heligman, # 4 Summons Thoele, # 5 Summons Shogren, # 6 Summons Storm, # 7 Summons Jones, # 8 Summons Deangelo, # 9 Summons Lusk, # 10 Summons Creedon, # 11 Summons Emerson)(Paul, Gregory) |
| 05/16/2018 | 6 | INCORRECT ENTRY; IMAGE REMOVED. (Modified on 5/17/2018 to remove amended complaint incorrectly filed as notice) (ts). |
| 05/16/2018 | 7 | NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS (Form 1A) by Michael Williams, Chad Little, Bobby Akers, Sammy Maddix, Edwin Glowacki, Samuel Preston, Justin Adkins, Danny Stewart, Gerald Barber, Michael Clark, Travis Thornsberry, Quincy Christian, Donald Stephens, Michael Potter, Chad Dowdy, Grover Kelley, James Stinnett, John Frasure, Joshua Ferguson, Eric Speaks, Jason Barker, Gregory Hamm, Clay Stiltner, John Carpenter, Michael Campbell, David Manis, Zack Potter, Dennis Sargent, James Blain, Randall Craycraft, Dennis Hutchinson, John Bills, Ethan Mullins, Jerry Flocker, Joshua Hall, Kevin Palmer, Jonathan Jeffers, Matthew Woods, Robert Mosteller, John Baker, Jeremy Napier, Todd |

| | | |
|---|---|---|
| | | Thayer, Jessee Wallace for All Defendants, with proposed Waiver of Service of Summons Form (Form 1B). (Paul, Gregory) |
| 05/16/2018 | 8 | AMENDED COMPLAINT by Michael Williams, Chad Little, Bobby Akers, Sammy Maddix, Edwin Glowacki, Samuel Preston, Justin Adkins, Danny Stewart, Gerald Barber, Michael Clark, Travis Thornsberry, Quincy Christian, Donald Stephens, Michael Potter, Chad Dowdy, Grover Kelley, James Stinnett, John Frasure, Joshua Ferguson, Eric Speaks, Jason Barker, Gregory Hamm, Clay Stiltner, John Carpenter, Michael Campbell, David Manis, Zack Potter, Dennis Sargent, James Blain, Randall Craycraft, Dennis Hutchinson, John Bills, Ethan Mullins, Jerry Flocker, Joshua Hall, Kevin Palmer, Jonathan Jeffers, Matthew Woods, Robert Mosteller, John Baker, Jeremy Napier, Todd Thayer, Jessee Wallace against CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele. (ts) (Entered: 05/17/2018) |
| 05/17/2018 | | NOTICE OF DOCKET CORRECTION re: #6 Notice of Amended Complaint. ERROR: Amended Complaint filed as notice. CORRECTION: Amended Complaint refiled using Amended Complaint event. (ts) |
| 05/17/2018 | | **IMPORTANT NOTICE:** The United States District Court for the Southern District of West Virginia (WVSD) will be upgrading its current CM/ECF system to the Next Generation of CM/ECF (NextGen CM/ECF) on *Monday, June 11, 2018*. Complete information regarding the WVSD NextGen CM/ECF implementation can be found at h ttp://www.wvsd.uscourts.gov/nextgen−information. Preparing for NextGen CM/ECF is a two−step process. Step one was to upgrade your PACER account. Each attorney should have their own individual upgraded PACER account at this time. Step two will be to link your upgraded PACER account to your WVSD e−filing account in the new NextGen CM/ECF system on or after June 11, 2018. Please log in to the WVSD CM/ECF system at http://ecf.wv sd.uscourts.gov before June 7, 2018 to make sure you know your current WVSD e−filing login and password. Do not rely on your username and password being saved in your web browser, because that method will not work with the NextGen upgrade. If you do not know your login or password or have any additional questions please call the WVSD Clerk's Office CM/ECF Help Desk at (304)−347−3111. (Kinder2, Mike) (ADI) |
| 06/07/2018 | | **IMPORTANT NOTICE:** The United States District Court for the Southern District of West Virginia (WVSD) will be upgrading its current CM/ECF system to the Next Generation of CM/ECF (NextGen CM/ECF) on *Monday, June 11, 2018. The WVSD CM/ECF system will be unavailable from 12:00pm (noon) on Friday, June 8, 2018 until 6:00am on Monday, June 11, 2018*. Preparing for NextGen CM/ECF is a two−step process. Step one was to upgrade your PACER account. Each attorney should have their own individual upgraded PACER account at this time. Step two will be to link your upgraded PACER account to your WVSD e−filing account in the new NextGen CM/ECF system on or after June 11, 2018. Instructions for linking your account can be found at http://www.wvsd. uscourts.gov/pdfs/NextGen/WVSD_Link_PACER_to_CM−ECF.pdf. If you have any additional questions please call the WVSD Clerk's Office CM/ECF Help Desk at (304)−347−3111. (mwk) (ADI) |

| 06/28/2018 | 9 | | PRAECIPE FOR SUMMONS by Michael Williams, Chad Little, Bobby Akers, Sammy Maddix, Edwin Glowacki, Samuel Preston, Justin Adkins, Danny Stewart, Gerald Barber, Michael Clark, Travis Thornsberry, Quincy Christian, Donald Stephens, Michael Potter, Chad Dowdy, Grover Kelley, James Stinnett, John Frasure, Joshua Ferguson, Eric Speaks, Jason Barker, Gregory Hamm, Clay Stiltner, John Carpenter, Michael Campbell, David Manis, Zack Potter, Dennis Sargent, James Blain, Randall Craycraft, Dennis Hutchinson, John Bills, Ethan Mullins, Jerry Flocker, Joshua Hall, Kevin Palmer, Jonathan Jeffers, Matthew Woods, Robert Mosteller, John Baker, Jeremy Napier, Todd Thayer, Jessee Wallace for All Defendants, re: 8 Amended Complaint. (Attachments: # 1 Summons CSX Transportation, # 2 Summons Corporation, # 3 Summons Heligman, # 4 Summons Those, # 5 Summons Shogren, # 6 Summons Storm, # 7 Summons Jones, # 8 Summons Deangelo, # 9 Summons Lusk, # 10 Summons Creedon, # 11 Summons Emerson)(Paul, Gregory) (Modified on 6/29/2018 to remove link to #1 complaint) (mkw). |
| 06/29/2018 | 10 | | ELECTRONIC SUMMONS ISSUED as to CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele, re: 8 Amended Complaint. Summons returnable 21 days. Instructions to Counsel: This is your electronic summons. Please print as many copies of the Summons and Complaint as are necessary to effectuate service under Fed. R. Civ. P. 4. See Proof of Service page of this Summons form for filing a return of service if required by Fed. R. Civ. P. 4(l). (Attachments: # 1 Summons for CSX Corporation, # 2 Summons for Elizabeth Creedon, # 3 Summons for Tom Deangelo, # 4 Summons for Kenneth Emerson, # 5 Summons for Craig Heligman, MD, # 6 Summons for Dillon Jones, # 7 Summons for Shawn Lusk, # 8 Summons for Curt Shogren, # 9 Summons for Milton Storm, # 10 Summons for Gus Thoele) (hkl) |
| 07/05/2018 | 11 | | MOTION by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to Dismiss 1 Complaint, 8 Amended Complaint for Failure to Timely Serve (Bird, Melissa) |
| 07/12/2018 | 12 | | MOTION by Plaintiffs for Leave to File Amended Complaint (Attachments: # 1 Exhibit A – Second Amended Complaint, # 2 Proposed Order)(Dingwall, Jeffrey) |
| 07/17/2018 | 13 | | SUMMONS RETURNED EXECUTED by Personal Service for CSX Corporation. CSX Corporation served on 7/5/2018, answer due 7/26/2018. Summons served on Donna Moch, Senior Corporate Operations Manager, CT Corporation System. (Paul, Gregory) |
| 07/17/2018 | 14 | | SUMMONS RETURNED EXECUTED by Personal Service for CSX Transportation, Inc.. CSX Transportation, Inc. served on 7/5/2018, answer due 7/26/2018. Summons served on Donna Moch, Senior Corporate Operations Manager, CT Corporation System. (Paul, Gregory) |
| 07/18/2018 | 15 | | RESPONSE by Plaintiffs in opposition to 11 MOTION by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to Dismiss 1 Complaint, 8 Amended Complaint |

| | | | (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2)(Paul, Gregory) |
|---|---|---|---|
| 07/20/2018 | <u>16</u> | | REPLY by Plaintiffs to <u>15</u> Response In Opposition. (Bird, Melissa) (Modified on 7/20/2018 to remove link to #11 motion) (ts). |
| 08/16/2018 | <u>17</u> | | MEMORANDUM OPINION AND ORDER granting Plaintiffs' <u>12</u> Motion for Leave to File; denying Defendants' <u>11</u> Motion to Dismiss for Failure to Timely Serve; directing Plaintiffs to effect service upon any defendants who have not yet been served and to file proof of such service no later than 9/14/2018. Signed by Judge Robert C. Chambers on 8/16/2018. (cc: counsel of record; any unrepresented parties) (jsa) (Modified on 8/16/2018 to add link to #11 motion) (mkw). |
| 08/16/2018 | <u>18</u> | | SECOND AMENDED COMPLAINT by Michael Williams, Chad Little, Sammy Maddix, Edwin Glowacki, Danny Stewart, Gerald Barber, Travis Thornsberry, Donald Stephens, John Frasure, Gregory Hamm, Clay Stiltner, Tony Abdon, John Carpenter, David Manis, Zack Potter, Jonathan Rowe, Randall Craycraft, John Bills, Ethan Mullins, Deanna Lanham, Shawn Patterson, Jerry Flocker, Joshua Hall, Kevin Palmer, Matthew Woods, Robert Mosteller, Jacqueline Marshall, Jessee Wallace, Lloyd Williams, Bobby Akers, Samuel Preston, James Deal, Justin Adkins, Timothy Witt, Justin Blake, Michael Clark, Quincy Christian, Devery Brown, Chad Dowdy, Eric Jordan, Grover Kelley, Homer Maynard, James Stinnett, Joshua Ferguson, Eric Speaks, Jason Barker, Michael Campbell, James Blain, Dennis Sargent, Dennis Hutchinson, Michael Owens, Jonathan Jeffers, John Baker, Brandon Adkins, Jeremy Napier, Todd Thayer, Michael L. Potter, Michael D. Potter against CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Shawn Lusk, Craig S. Heligman, Dillon Doug Jones, Curt Shogren, Milton Storm, Gus Thoele. (jsa) (Modified on 9/28/2018 to remove party filer) (mkw). |
| 08/30/2018 | <u>19</u> | | MOTION by CSX Corporation to Dismiss With Prejudice re: <u>18</u> Second Amended Complaint. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Civil Cover Sheet)(Bird, Melissa) |
| 08/30/2018 | <u>20</u> | | MEMORANDUM by CSX Corporation in support of <u>19</u> MOTION by CSX Corporation to Dismiss With Prejudice re: <u>18</u> Second Amended Complaint (Bird, Melissa) |
| 08/30/2018 | <u>21</u> | | DISCLOSURE STATEMENT PURSUANT TO RULE 7.1, Federal Rules of Civil Procedure, by Defendant CSX Corporation (Bird, Melissa) |
| 08/30/2018 | <u>22</u> | | ANSWER TO <u>18</u> Second Amended Complaint by CSX Transportation, Inc. (Attachment: # <u>1</u> Civil Cover Sheet)(Bird, Melissa) |
| 08/30/2018 | <u>23</u> | | DISCLOSURE STATEMENT PURSUANT TO RULE 7.1, Federal Rules of Civil Procedure, by Defendant CSX Transportation, Inc. (Bird, Melissa) |
| 09/13/2018 | <u>24</u> | | NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS (Form 1A) by Michael Williams, Chad Little, Sammy Maddix, Edwin Glowacki, Danny Stewart, Gerald Barber, Travis Thornsberry, Donald Stephens, Michael Potter, Michael L. Potter, John Frasure, Gregory Hamm, Clay Stiltner, Tony Abdon, John Carpenter, David Manis, Zack Potter, Jonathan Rowe, Randall Craycraft, John Bills, Ethan Mullins, Deanna Lanham, Shawn Patterson, Jerry Flocker, Joshua Hall, Kevin Palmer, Matthew |

| | | |
|---|---|---|
| | | Woods, Robert Mosteller, Michael D. Potter, Jacqueline Marshall, Jessee Wallace, Lloyd Williams, Bobby Akers, Scott Morrison, Samuel Preston, James Deal, Justin Adkins, Timothy Witt, Justin Blake, Michael Clark, Quincy Christian, Devery Brown, Chad Dowdy, Eric Jordan, Grover Kelley, Homer Maynard, James Stinnett, Joshua Ferguson, Eric Speaks, Jason Barker, Michael Campbell, James Blain, Dennis Sargent, Dennis Hutchinson, Michael Owens, Jonathan Jeffers, John Baker, Brandon Adkins, Jeremy Napier, Todd Thayer for Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele, with proposed WAIVER OF SERVICE OF SUMMONS FORM (Form 1B). (Paul, Gregory) |
| 09/13/2018 | 25 | RESPONSE by Plaintiffs in opposition to 19 MOTION by CSX Corporation to Dismiss With Prejudice re: 18 Second Amended Complaint (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Paul, Gregory) |
| 09/20/2018 | 26 | UNOPPOSED MOTION by Plaintiffs to Amend the Caption (Attachment: # # 2 Proposed Order)(Paul, Gregory) (Modified on 9/21/2018 to remove attachment #1, memorandum of law, and refile as entry #29)(ts). |
| 09/20/2018 | 27 | REPLY MEMORANDUM by CSX Corporation to 19 MOTION by CSX Corporation to Dismiss With Prejudice re: 18 Second Amended Complaint. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Bird, Melissa) |
| 09/20/2018 | 29 | MEMORANDUM OF LAW in support of 26 UNOPPOSED MOTION by Plaintiffs to Amend the Caption. (ts) (Entered: 09/21/2018) |
| 09/21/2018 | 28 | ORDER granting Plaintiffs' 26 MOTION to Amend the Caption; directing that Delando Jones shall be named as a proper Defendant in this action. Signed by Judge Robert C. Chambers on 9/21/2018. (cc: counsel of record; any unrepresented parties) (jsa) |
| 09/21/2018 | | NOTICE OF DOCKET CORRECTION re: 26 Unopposed Motion by Plaintiffs to Amend the Caption. ERROR: Memorandum of Law attached to motion. CORRECTION: Memorandum of Law removed and refiled separately. (ts) |
| 09/28/2018 | 30 | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Elizabeth Creedon waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) |
| 09/28/2018 | 31 | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Tom DeAngelo waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) |
| 09/28/2018 | 32 | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Kenneth Ray Emerson waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) |
| 09/28/2018 | 33 | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Craig S. Heligman waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) |
| 09/28/2018 | 34 | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Delando Jones waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) |

| 09/28/2018 | 35 | | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Curt Shogren waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) |
|---|---|---|---|
| 09/28/2018 | 36 | | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Milton Storm waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) |
| 09/28/2018 | 37 | | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Gus Thoele waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) |
| 09/28/2018 | 38 | | WAIVER OF SERVICE EXECUTED. Waiver signed by Melissa Foster Bird on 9/28/18. Shawn Lusk waiver mailed on 8/30/2018, answer due 10/29/2018. (Bird, Melissa) (Modified on 9/28/2018 to add answer deadline) (mkw). |
| 10/29/2018 | 39 | | ANSWER TO 18 Second Amended Complaint by Craig S. Heligman. (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 10/29/2018 | 40 | | ANSWER TO 18 Second Amended Complaint by Curt Shogren (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 10/29/2018 | 41 | | ANSWER TO 18 Second Amended Complaint by Gus Thoele. (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 10/29/2018 | 42 | | ANSWER TO 18 Second Amended Complaint by Milton Storm. (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 10/29/2018 | 43 | | ANSWER TO 18 Second Amended Complaint by Delando Jones. (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 10/29/2018 | 44 | | ANSWER TO 18 Second Amended Complaint by Tom DeAngelo. (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 10/29/2018 | 45 | | ANSWER TO 18 Second Amended Complaint by Shawn Lusk. (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 10/29/2018 | 46 | | ANSWER TO 18 Second Amended Complaint by Elizabeth Creedon. (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 10/29/2018 | 47 | | ANSWER TO 18 Second Amended Complaint by Kenneth Ray Emerson. (Attachment: # 1 Civil Cover Sheet)(Bird, Melissa) |
| 07/30/2019 | 48 | | MEMORANDUM OPINION AND ORDER denying Defendant CSX Corporation's 19 MOTION to Dismiss. Signed by Judge Robert C. Chambers on 7/30/2019. (cc: counsel of record; any unrepresented parties) (hkl) |
| 08/05/2019 | 49 | | ORDER AND NOTICE: Rule 26(f) Meeting 8/26/2019. Last day to file report of Rule 26(f) Meeting 9/3/2019. Scheduling/status Conference at 11:30 AM on 9/9/2019 in Huntington. Entry of Scheduling Order 9/16/2019. Last Day to make Rule 26(a)(1) disclosures 9/23/2019. Signed by Judge Robert C. Chambers on 8/5/2019. (cc: counsel of record; any unrepresented parties) (jsa) |
| 08/13/2019 | 50 | | ANSWER TO 18 Second Amended Complaint by CSX Corporation.(Bird, Melissa) |
| 09/03/2019 | 51 | | |

| | | RULE 26(f) REPORT OF PLANNING MEETING by Plaintiffs and Defendants. (Bird, Melissa) (Modified on 9/4/2019 to add party filers) (ts). |
|---|---|---|
| 09/06/2019 | 52 | ORDER canceling the 9/9/2019 Scheduling Conference. Signed by Judge Robert C. Chambers on 9/6/2019. (cc: counsel of record; any unrepresented parties) (hkl) |
| 09/10/2019 | 53 | SCHEDULING ORDER: Joinder of Parties, amended pleadings due by 12/6/2019. Discovery requests to be completed by 10/9/2020 and all depositions by 11/23/2020. Plaintiffs' merits discovery as to CSX Corporation for a 120–day period ending on 1/8/2020. After 1/8/2020, Plaintiffs may begin merits discovery as to CSX Corporation. Expert Witness List by parties bearing the burden of proof due by 9/24/2020, by party not bearing burden of proof due by 10/23/2020, and to solely contradict or rebut evidence due by 11/9/2020. Dispositive Motions except those filed under Rule 12(b) due by 12/14/2020, any response shall be filed within 14 days of the filing of the motion, with replies due within 7 days of the filing of the response. Settlement Meeting and Rule 26(a)(3) disclosures by 3/1/2021. Plaintiffs' portion of proposed Pretrial Order to defendants due by 3/8/2021, Proposed Integrated Pretrial Order due by 3/15/2021. Pretrial Conference set for 3/22/2021 at 10:00 AM in Huntington before Judge Robert C. Chambers. Proposed Jury Charges due by 3/30/2021. Final Settlement Conference at 9:30 AM on 4/5/2021 in Huntington. Trial set for 4/6/2021 at 8:30 AM in Huntington before Judge Robert C. Chambers. Status Conference at 11:00 AM on 3/9/2020 in Huntington; all lead counsel must attend in person. Signed by Judge Robert C. Chambers on 9/10/2019. (cc: counsel of record; any unrepresented parties) (hkl) |
| 09/11/2019 | 54 | NOTICE OF WITHDRAWAL *of Thomas Hancock, Michael Frazier and Anna Majestro* as Counsel by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele (Bird, Melissa) |
| 09/23/2019 | 55 | CERTIFICATE OF SERVICE by Delando Jones for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 56 | CERTIFICATE OF SERVICE by Milton Storm for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 57 | CERTIFICATE OF SERVICE by Tom DeAngelo for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 58 | CERTIFICATE OF SERVICE by Kenneth Ray Emerson for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 59 | CERTIFICATE OF SERVICE by Elizabeth Creedon for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 60 | CERTIFICATE OF SERVICE by Shawn Lusk for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 61 | CERTIFICATE OF SERVICE by Curt Shogren for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 62 | |

| | | | |
|---|---|---|---|
| | | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 63 | | CERTIFICATE OF SERVICE by Craig S. Heligman for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 64 | | CERTIFICATE OF SERVICE by Gus Thoele for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/23/2019 | 65 | | CERTIFICATE OF SERVICE by CSX Corporation for Rule 26(a)(1) Initial Disclosures. (Bird, Melissa) |
| 09/30/2019 | 66 | | CERTIFICATE OF SERVICE by Plaintiffs for Rule 26(a)(1) Initial Disclosures. (Dingwall, Jeffrey) |
| 11/27/2019 | 67 | | CERTIFICATE/NOTICE OF SERVICE by Plaintiffs for Interrogatories and Requests for Production of Documents. (Paul, Gregory) |
| 11/27/2019 | 68 | | CERTIFICATE/NOTICE OF SERVICE by Plaintiffs for Requests for Admissions. (Paul, Gregory) |
| 11/27/2019 | 69 | | CERTIFICATE/NOTICE OF SERVICE by Plaintiffs for Notice of 30(b)(6) Deposition and Request for Production of Documents. (Paul, Gregory) |
| 12/06/2019 | 70 | | MOTION by Plaintiffs for Leave to File Third Amended Complaint with proposed document attached (Attachments: # 1 Exhibit 1: Third Amended Complaint, # 2 Proposed Order)(Paul, Gregory) |
| 12/08/2019 | 71 | | MOTION by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Protective Order (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Bird, Melissa) |
| 12/08/2019 | | | MOTION REFERRED to Magistrate Judge Cheryl A. Eifert: 71 MOTION by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Protective Order. (ts) (Entered: 12/09/2019) |
| 12/10/2019 | 72 | | ORDER directing that Plaintiffs shall file their response to Defendants' 71 MOTION for Protective Order by 12/13/2019; Defendants' reply due by 12/17/2019; Telephonic Motion Hearing set for 12/19/2019 at 3:00 PM in Huntington before Magistrate Judge Cheryl A. Eifert. Signed by Magistrate Judge Cheryl A. Eifert on 12/10/2019. (cc: counsel of record; any unrepresented parties) (jsa) |
| 12/13/2019 | 73 | | RESPONSE by Plaintiffs in opposition to 71 MOTION by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Protective Order (Attachments: # 1 Declaration of Jeff R. Dingwall, # 2 Exhibit A–Notice of Deposition, # 3 Exhibit B–CSX Corporation Initial Disclosures)(Dingwall, Jeffrey) (Modified on 12/15/2019 to remove terminated party filers) (ts). |
| 12/17/2019 | 74 | | REPLY by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, |

| | | |
|---|---|---|
| | | Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to <u>73</u> Response in Opposition. (Bird, Melissa) (Modified on 12/17/2019 to correct link to #73 response in opposition) (ts). |
| 12/19/2019 | <u>75</u> | TELEPHONIC MOTION HEARING held by Magistrate Judge Cheryl A. Eifert on 12/19/2019 re: <u>71</u> MOTION by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Protective Order. Court Reporter: CourtSmart. (mkw) |
| 12/20/2019 | <u>76</u> | RESPONSE by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in opposition to <u>70</u> MOTION by Plaintiffs for Leave to File Third Amended Complaint (Bird, Melissa) |
| 12/23/2019 | <u>77</u> | ORDER granting in part and denying in part Defendants' <u>71</u> MOTION for Protective Order; directing Defendant to provide Plaintiff with documents, either requested in discovery or identified in disclosures, which are relevant to the areas of inquiry set forth in the Notice of Rule 30(b)(6) Deposition no later than Monday, 12/23/2019, as more fully set forth herein. Signed by Magistrate Judge Cheryl A. Eifert on 12/23/2019. (cc: counsel of record) (jsa) |
| 12/27/2019 | <u>78</u> | CERTIFICATE OF SERVICE by Elizabeth Creedon for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | <u>79</u> | CERTIFICATE OF SERVICE by Tom DeAngelo for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | <u>80</u> | CERTIFICATE OF SERVICE by Craig S. Heligman for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | <u>81</u> | CERTIFICATE OF SERVICE by Tom DeAngelo for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | <u>82</u> | CERTIFICATE OF SERVICE by Gus Thoele for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | <u>83</u> | CERTIFICATE OF SERVICE by Curt Shogren for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | <u>84</u> | CERTIFICATE OF SERVICE by Milton Storm for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | <u>85</u> | CERTIFICATE OF SERVICE by Shawn Lusk for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |

| 12/27/2019 | 86 | | CERTIFICATE OF SERVICE by Delando Jones for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
|---|---|---|---|
| 12/27/2019 | 87 | | CERTIFICATE OF SERVICE by Kenneth Ray Emerson for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | 88 | | CERTIFICATE OF SERVICE by CSX Corporation for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 12/27/2019 | 89 | | CERTIFICATE OF SERVICE by CSX Corporation for Responses to Plaintiffs' Requests for Admissions. (Bird, Melissa) |
| 12/27/2019 | 90 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 01/07/2020 | 91 | | TELEPHONE CONFERENCE held by Magistrate Judge Cheryl A. Eifert on 1/7/2020; Court Reporter: CourtSmart. (hkl) |
| 01/13/2020 | 92 | | MEMORANDUM OPINION AND ORDER granting Plaintiffs' 70 MOTION for Leave to File Third Amended Complaint, per the conditions set forth in this Order. Signed by Judge Robert C. Chambers on 1/13/2020. (cc: counsel of record; any unrepresented parties) (jsa) |
| 01/13/2020 | 93 | | THIRD AMENDED COMPLAINT by Michael Williams, Sammy Maddix, Edwin Glowacki, Danny Stewart, Gerald Barber, Travis Thornsberry, Donald Stephens, Michael L. Potter, John Frasure, Gregory Hamm, Tony Abdon, John Carpenter, David Manis, Zack Potter, Jonathan Rowe, Randall Craycraft, John Bills, Ethan Mullins, Deanna Lanham, Shawn Patterson, Jerry Flocker, Joshua Hall, Kevin Palmer, Matthew Woods, Robert Mosteller, Michael D. Potter, Jacqueline Marshall, Jessee Wallace, Lloyd Williams, Bobby Akers, Scott Morrison, Samuel Preston, James Deal, Justin Adkins, Timothy Witt, Justin Blake, Michael Clark, Quincy Christian, Devery Brown, Chad Dowdy, Eric Jordan, Grover Kelley, Homer Maynard, James Stinnett, Joshua Ferguson, Eric Speaks, Jason Barker, Michael Campbell, James Blain, Dennis Sargent, Dennis Hutchinson, Michael Owens, Jonathan Jeffers, John Baker, Brandon Adkins, Jeremy Napier, Todd Thayer, The Estate of Chad Little, Christopher Clay Stiltner against CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele. (jsa) |
| 01/27/2020 | 94 | | CONSOLIDATED ANSWER TO 93 Third Amended Complaint by CSX Corporation, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele.(Bird, Melissa) |
| 03/09/2020 | 95 | | ORDER directing a second Status Conference to be held on 5/5/2020 at 1:30 PM in Huntington before Judge Robert C. Chambers. Signed by Judge Robert C. Chambers on 3/9/2020. (cc: counsel of record; any unrepresented parties) (hkl) |
| 03/09/2020 | 96 | | |

| | | |
|---|---|---|
| | | STATUS CONFERENCE held by Judge Robert C. Chambers on 3/9/2020; Court Reporter: Kathy Swinhart. (trj) |
| 03/24/2020 | 97 | ORDER pursuant to the COVID–19 pandemic, the Status Conference currently set in this matter for 5/5/2020 at 1:30 p.m., will be conducted telephonically; the Court will contact the parties at a later date with conference call instructions. Signed by Judge Robert C. Chambers on 3/24/2020. (cc: attys; any unrepresented parties) (mkw) |
| 04/01/2020 | 98 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 04/01/2020 | 99 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Adkins B – CSXT's First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 04/01/2020 | 100 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Adkins J – CSXT's First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 04/01/2020 | 101 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Akers B – CSXT's First Set of Interrogatories and Requests for Production of Documents. (Bird, Melissa) |
| 04/01/2020 | 102 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for CSXT's First Set of Interrogatories and Requests for Production of Documents to Plaintiff John Baker. (Bird, Melissa) |
| 04/01/2020 | 103 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Gerald Barber. (Bird, Melissa) |
| 04/01/2020 | 104 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Jason Barker. (Bird, Melissa) |
| 04/01/2020 | 105 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff John Bills. (Bird, Melissa) |
| 04/01/2020 | 106 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff James Blain. (Bird, Melissa) |
| 04/01/2020 | 107 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Justin Blake. (Bird, Melissa) |
| 04/01/2020 | 108 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Devery Brown. (Bird, Melissa) |
| 04/01/2020 | 109 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Michael Campbell. (Bird, Melissa) |
| 04/01/2020 | 110 | |

| | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff John Carpenter. (Bird, Melissa) |
|---|---|---|
| 04/01/2020 | 111 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Quincy Christian. (Bird, Melissa) |
| 04/01/2020 | 112 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Michael Clark. (Bird, Melissa) |
| 04/01/2020 | 113 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Randall Craycraft. (Bird, Melissa) |
| 04/01/2020 | 114 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff James Deal. (Bird, Melissa) |
| 04/01/2020 | 115 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Chad Dowdy. (Bird, Melissa) |
| 04/01/2020 | 116 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Joshua Ferguson. (Bird, Melissa) |
| 04/01/2020 | 117 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Jerry Flocker. (Bird, Melissa) |
| 04/01/2020 | 118 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff John Frasure. (Bird, Melissa) |
| 04/01/2020 | 119 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Edwin Glowacki. (Bird, Melissa) |
| 04/01/2020 | 120 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Joshua Hall. (Bird, Melissa) |
| 04/01/2020 | 121 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Gregory Hamm. (Bird, Melissa) |
| 04/01/2020 | 122 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Dennis Hutchinson. (Bird, Melissa) |
| 04/01/2020 | 123 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Jonathan Jeffers. (Bird, Melissa) |
| 04/01/2020 | 124 | |

| | | | |
|---|---|---|---|
| | | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Eric Jordan. (Bird, Melissa) |
| 04/01/2020 | 125 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Grover Kelley. (Bird, Melissa) |
| 04/01/2020 | 126 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Deanna Lanham. (Bird, Melissa) |
| 04/01/2020 | 127 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Estate of Chad Little. (Bird, Melissa) |
| 04/01/2020 | 128 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Sammy Maddix. (Bird, Melissa) |
| 04/01/2020 | 129 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff David Manis. (Bird, Melissa) |
| 04/01/2020 | 130 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Jacqueline Marshall. (Bird, Melissa) |
| 04/01/2020 | 131 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Homer Maynard. (Bird, Melissa) |
| 04/01/2020 | 132 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Scott Morrison. (Bird, Melissa) |
| 04/01/2020 | 133 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Robert Mosteller. (Bird, Melissa) |
| 04/01/2020 | 134 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Ethan Mullins. (Bird, Melissa) |
| 04/01/2020 | 135 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Jeremy Napier. (Bird, Melissa) |
| 04/01/2020 | 136 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Michael Owens. (Bird, Melissa) |
| 04/01/2020 | 137 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Kevin Palmer. (Bird, Melissa) |
| 04/01/2020 | 138 | | |

| | | | |
|---|---|---|---|
| | | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Shawn Patterson. (Bird, Melissa) |
| 04/01/2020 | 139 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Michael D. Potter. (Bird, Melissa) |
| 04/01/2020 | 140 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Michael L. Potter. (Bird, Melissa) |
| 04/01/2020 | 141 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Zack Potter. (Bird, Melissa) |
| 04/01/2020 | 142 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Samuel Preston. (Bird, Melissa) |
| 04/01/2020 | 143 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Jonathan Rowe. (Bird, Melissa) |
| 04/01/2020 | 144 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Dennis Sargent. (Bird, Melissa) |
| 04/01/2020 | 145 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Eric Speaks. (Bird, Melissa) |
| 04/01/2020 | 146 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Donald Stephens. (Bird, Melissa) |
| 04/01/2020 | 147 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Danny Stewart. (Bird, Melissa) |
| 04/01/2020 | 148 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Christopher Clay Stiltner. (Bird, Melissa) |
| 04/01/2020 | 149 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff James Stinnett. (Bird, Melissa) |
| 04/01/2020 | 150 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Todd Thayer. (Bird, Melissa) |
| 04/01/2020 | 151 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Travis Thornsberry. (Bird, Melissa) |
| 04/01/2020 | 152 | | |

| | | | |
|---|---|---|---|
| | | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Jesse Wallace. (Bird, Melissa) |
| 04/01/2020 | 153 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Lloyd Williams. (Bird, Melissa) |
| 04/01/2020 | 154 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Michael D. Williams. (Bird, Melissa) |
| 04/01/2020 | 155 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Timothy Witt. (Bird, Melissa) |
| 04/01/2020 | 156 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for First Set of Interrogatories and Requests for Production of Documents to Plaintiff Matthew Woods. (Bird, Melissa) |
| 04/29/2020 | 157 | | ORDER directing the parties to submit an agenda for the 5/5/2020 telephonic status conference no later than 12:00 p.m. on 5/4/2020, by emailing the same to terry_justice@wvsd.uscourts.gov. Signed by Judge Robert C. Chambers on 4/29/2020. (cc: counsel of record; any unrepresented parties) (jsa) |
| 05/04/2020 | 158 | | RENEWED MOTION by CSX Corporation to Dismiss Without Prejudice re: 19 MOTION to Dismiss With Prejudice re: 18 Second Amended Complaint (Attachments: # 1 Exhibit A Part 1 – Austin Sup. Declaration, # 2 Exhibit A Part 2 – Austin Sup. Declaration, # 3 Exhibit A Part 3 – Austin Sup. Declaration, # 4 Exhibit A Part 4 – Austin Sup. Declaration, # 5 Exhibit A Part 5 – Austin Sup. Declaration, # 6 Exhibit B – A. Williams Deposition Transcript Excerpts and Errata Sheet, # 7 Exhibit C – A. Williams Declaration, # 8 Exhibit D – Stephanie Noel Declaration)(Bird, Melissa) (Modified on 5/5/2020 to remove link to #20 memorandum) (ts). |
| 05/04/2020 | 159 | | MEMORANDUM OF LAW by CSX Corporation in support of 158 RENEWED MOTION by CSX Corporation to Dismiss Without Prejudice re: 19 MOTION to Dismiss With Prejudice re: 18 Second Amended Complaint. (Bird, Melissa) |
| 05/04/2020 | 160 | | UNOPPOSED MOTION by CSX Corporation to file Under Seal and Incorporated Memorandum of Law (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit 5)(Bird, Melissa) (Modified on 5/5/2020 to convert to a motion to file under seal) (ts). |
| 05/05/2020 | 161 | | TELEPHONIC STATUS CONFERENCE held by Judge Robert C. Chambers on 5/5/2020; Court Reporter: Kathy Swinhart. (trj) |
| 05/05/2020 | 162 | | ORDER granting the 160 UNOPPOSED MOTION by CSX Corporation to file Under Seal and directing that the designated exhibits be filed under seal; scheduling a Status Conference for 6/17/2020 at 9:30 AM in Huntington before Judge Robert C. Chambers; the parties will submit a joint letter addressing the conference agenda at least seven days prior to the conference. Signed by Judge Robert C. Chambers on 5/5/2020. (cc: counsel of record; any unrepresented parties) (jsa) |

| 05/05/2020 | 163 | SEALED EXHIBITS filed by CSX Corporation in support of their 158 RENEWED MOTION to Dismiss 18 Second Amended Complaint; filed under seal pursuant to the 162 Order. (Attachments: # 1 Exhibit C, # 2 Exhibit D, # 3 Exhibit 5) (jsa) |
| 05/18/2020 | 164 | SEALED MATERIALS filed by Plaintiffs pursuant to Court Order: Opposition to Renewed Motion to Dismiss (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Paul, Gregory) |
| 05/26/2020 | 165 | SEALED MATERIALS filed by CSX Corporation pursuant to Court Order: Reply in Support of CSXC's Renewed Motion to Dismiss (Bird, Melissa) |
| 06/11/2020 | 166 | MEMORANDUM OPINION AND ORDER granting CSX Corporation's 158 RENEWED MOTION to Dismiss for Lack of Personal Jurisdiction; dismissing CSX Corporation as a party to this suit. Signed by Judge Robert C. Chambers on 6/11/2020. (cc: counsel of record; any unrepresented parties) (hkl) |
| 06/17/2020 | 167 | ORDER directing the plaintiffs to answer the defendants' written discovery requests with any responsive materials they currently have by 6/19/2020; the plaintiffs will then submit the rest of their responses to the defendants' written discovery requests by 6/26/2020; the defendants will send any supplemental discovery responses to the plaintiffs by 6/30/2020; scheduling another status conference for 9/14/2020 at 9:30 AM in Huntington before Judge Robert C. Chambers; whether this conference will be in–person or telephonic will be decided at a later date based on the parties' proposed agenda. Signed by Judge Robert C. Chambers on 6/17/2020. (cc: counsel of record; any unrepresented parties) (jsa) |
| 06/17/2020 | 168 | TELEPHONIC STATUS CONFERENCE held by Judge Robert C. Chambers on 6/17/2020; Court Reporter: not reported. (trj) |
| 06/23/2020 | 169 | MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Entry of Protective Order. (Attachments: # 1 Exhibit 1 – 26f Report of Parties' Meeting, # 2 Exhibit 2 – Protective Order)(Bird, Melissa) |
| 06/23/2020 | | MOTION REFERRED to Magistrate Judge Cheryl A. Eifert: 169 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Entry of Protective Order. (mkw) (Entered: 06/24/2020) |
| 06/30/2020 | 170 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Privilege and Redaction Log and Supplemental Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents (Bird, Melissa) |
| 07/07/2020 | 171 | PROTECTIVE ORDER setting forth the terms for the handling of confidential documents. Signed by Magistrate Judge Cheryl A. Eifert on 7/7/2020. (cc: counsel of record; any unrepresented party) (jsa) |
| 07/17/2020 | 172 | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Brandon Adkins on July 31, 2020 at 9:00 a.m. (Bird, Melissa) |

| 07/17/2020 | 173 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Justin Adkins on July 27, 2020 at 9:00 a.m. (Bird, Melissa) |
|---|---|---|---|
| 07/17/2020 | 174 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jason Barker on July 31, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 175 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Justin Blake on July 27, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/17/2020 | 176 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of John Carpenter on July 27, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 177 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Quincy Christian on July 27, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 178 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Chad Dowdy on July 31, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 179 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Edwin Glowacki on July 28, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/17/2020 | 180 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Gregory Hamm on July 28, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/17/2020 | 181 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Eric Jordan on July 28, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 182 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Ethan Mullins on July 28, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 183 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael Owens on July 29, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/17/2020 | 184 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Kevin Palmer on July 29, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/17/2020 | 185 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Samuel Preston on July 29, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 186 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jonathan Rowe on July 29, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 187 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Dennis Sargent on July 30, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/17/2020 | 188 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Danny Stewart on July 30, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/17/2020 | 189 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Travis Thornsberry on July 30, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 190 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Lloyd Williams on July 30, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/17/2020 | 191 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael Williams on July 31, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 192 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Tony Abdon on |

| | | | |
|---|---|---|---|
| | | | August 3, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 193 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Bobby Akers on August 5, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 194 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Gerald Barber on August 5, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 195 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of John Bills on August 6, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 196 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael Clark on August 6, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 197 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Randall Craycraft on August 6, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 198 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of John Frasure on August 6, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 199 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Joshua Hall on August 7, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 200 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Dennis Hutchinson on August 7, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 201 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Grover Kelley on August 3, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 202 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Sammy Maddix on August 7, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 203 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of David Manis on August 7, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 204 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jacqueline Marshall on August 3, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 205 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Homer Maynard on August 4, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 206 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jeremy Napier on August 4, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 207 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Shawn Patterson on August 4, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 208 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Zack Potter on August 3, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 209 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Eric Speaks on August 4, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/21/2020 | 210 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Donald Stephens on August 5, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/21/2020 | 211 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Clay Stiltner on August 5, 2020 at 9:00 a.m. (Bird, Melissa) |

| 07/25/2020 | 212 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Joshua Ferguson on August 3, 2020 at 9:00 a.m. (Bird, Melissa) |
|---|---|---|---|
| 07/25/2020 | 213 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jason Barker on July 27, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/25/2020 | 214 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of John Carpenter on July 31, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/25/2020 | 215 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Quincy Christian on July 31 at 2:00 p.m. (Bird, Melissa) |
| 07/25/2020 | 216 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Chad Dowdy on July 29, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/25/2020 | 217 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael Owens on July 29, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/25/2020 | 218 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Kevin Palmer on July 29, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/25/2020 | 219 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jonathan Rowe on July 27, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/25/2020 | 220 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Eric Speaks on August 5, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/25/2020 | 221 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Danny Stewart on July 30, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/25/2020 | 222 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Clay Stiltner on August 4, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/25/2020 | 223 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Travis Thornsberry on July 31, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 224 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of John Baker on August 10, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 225 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Gerald Barber on July 30, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 226 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of James Blain on August 10, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 227 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Devery Brown on August 10, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 228 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael Campbell on August 13, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 229 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of James Deal on August 10, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 230 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jerry Flocker on August 7, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 231 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. |

| | | | of Joshua Hall on July 29, 2020 at 9:00 a.m. (Bird, Melissa) |
|---|---|---|---|
| 07/27/2020 | 232 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jonathan Jeffers on August 11, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 233 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Brandi Little, Administrator of the Estate of Chad Little on August 14, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 234 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Scott Morrison on August 11, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 235 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Robert Mosteller on August 11, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 236 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael D. Potter on August 12, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 237 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael L. Potter on August 12, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 238 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of James Stinnett on August 11, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 239 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Todd Thayer on August 12, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 240 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jesse Wallace on August 12, 2020 at 2:00 p.m. (Bird, Melissa) |
| 07/27/2020 | 241 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Timothy Witt on August 13, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/27/2020 | 242 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Matthew Woods on August 14, 2020 at 9:00 a.m. (Bird, Melissa) |
| 07/31/2020 | 243 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Samuel Preston on August 3, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/03/2020 | 244 | | SECOND AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Chad Dowdy on August 6, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/03/2020 | 245 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jerry Flocker on August 14, 2020 at 9:00 a.m. (Bird, Melissa) |
| 08/03/2020 | 246 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Ethan Mullins on August 7, 2020 at 9:00 a.m. (Bird, Melissa) |
| 08/07/2020 | 247 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of John Bills on August 12, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/07/2020 | 248 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of James Blain on August 10, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/07/2020 | 249 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of James Deal on August 10, 2020 at 9:00 a.m. (Bird, Melissa) |
| 08/07/2020 | 250 | | AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jerry |

| | | | Flocker on August 7, 2020 at 9:00 a.m. (Bird, Melissa) |
|---|---|---|---|
| 08/07/2020 | 251 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of John Frasure on August 13, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/07/2020 | 252 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Sammy Maddix on August 13, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/07/2020 | 253 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael L. Potter on August 11, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/07/2020 | 254 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jesse Wallace on August 13, 2020 at 9:00 a.m. (Bird, Melissa) |
| 08/07/2020 | 255 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Michael Williams on August 12, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/07/2020 | 256 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Timothy Witt on August 14, 2020 at 9:00 a.m. (Bird, Melissa) |
| 08/07/2020 | 257 | | SECOND AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jerry Flocker on August 14, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/14/2020 | 258 | | SECOND AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Joshua Hall on August 20, 2020 at 9:00 a.m. (Bird, Melissa) |
| 08/14/2020 | 259 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Grover Kelley on August 20, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/14/2020 | 260 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Estate of Chad Little on August 20,2020 at 9:00 a.m. (Bird, Melissa) |
| 08/14/2020 | 261 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Zack Potter on August 20, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/14/2020 | 262 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of James Stinnett on August 21, 2020 at 9:00 a.m. (Bird, Melissa) |
| 08/14/2020 | 263 | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Lloyd Williams on August 21, 2020 at 9:00 a.m. (Bird, Melissa) |
| 08/20/2020 | 264 | | AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Grover Kelley on August 25, 2020 at 2:00 p.m. (Bird, Melissa) |
| 08/20/2020 | 265 | | MOTION by CSX Transportation, Inc. for Leave to File Under Seal Documents Containing Confidential Trade Information. (Attachments: # 1 Exhibit 1 – Election Form, # 2 Exhibit 2 – Settlement Agreement)(Bird, Melissa) |
| 08/20/2020 | 266 | | MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment of Plaintiff Deanna Lanham (Bird, Melissa) (Modified on 8/20/2020 to remove terminated party filer) (ts). |
| 08/20/2020 | 267 | | MEMORANDUM OF LAW by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, , Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in support of 266 |

| | | |
|---|---|---|
| | | MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment of Plaintiff Deanna Lanham (Bird, Melissa) (Modified on 8/20/2020 to remove terminated party filer) (ts). |
| 08/24/2020 | 268 | ORDER granting Defendants' 265 MOTION by CSX Transportation, Inc. for Leave to File Under Seal; directing that Exhibits 1 and 2 to Defendants' 266 MOTION for Summary Judgment be filed under seal. Signed by Judge Robert C. Chambers on 8/24/2020. (cc: counsel of record; any unrepresented parties) (jsa) |
| 08/24/2020 | 269 | EXHIBITS 1 AND 2 in support of Defendants' 266 MOTION for Summary Judgment of Plaintiff Deanna Lanham; filed under seal pursuant to the 268 Order. (Attachment: # 1 Exhibit 2) (jsa) |
| 09/01/2020 | 270 | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Lloyd Williams on September 10, 2020 at 2:00 p.m. (Bird, Melissa) |
| 09/02/2020 | 271 | STIPULATION EXTENDING TIME for Plaintiff to file an opposition to 266 MOTION by Defendants for Summary Judgment to 09–17–2020 by All Parties (Dingwall, Jeffrey) |
| 09/02/2020 | 272 | ORDER granting the parties' 271 Stipulated Motion to Extend Deadline for Plaintiff Deanna Lanham to Respond to Defendant's 266 MOTION for Summary Judgment; Plaintiff Lanham's response is now due by 9/17/2020. Signed by Judge Robert C. Chambers on 9/2/2020. (cc: counsel of record; any unrepresented parties) (jsa) |
| 09/08/2020 | 273 | CERTIFICATE OF SERVICE by Plaintiffs for Discovery Requests to Defendants. (Dingwall, Jeffrey) |
| 09/14/2020 | 274 | TELEPHONIC STATUS CONFERENCE held by Judge Robert C. Chambers on 9/14/2020; Court Reporter: not reported. (trj) |
| 09/17/2020 | 275 | OPPOSITION by Deanna Lanham to 266 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Dingwall, Jeffrey) |
| 09/24/2020 | 276 | SECOND AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Brandi Little on October 2, 2020 at 2:00 p.m. (Bird, Melissa) |
| 09/24/2020 | 277 | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Matthew Woods on October 2, 2020 at 2:00 p.m. (Bird, Melissa) |
| 09/24/2020 | 278 | REPLY by CSX Transportation, Inc. to 275 Brief In Opposition. (Attachment: # 1 Exhibit 1)(Bird, Melissa) (Modified on 9/25/2020 to remove links to ##266, 267, 268, 269) (ts). |
| 09/24/2020 | 279 | MOTION by CSX Transportation, Inc. for Sanctions as to Plaintiff Zack Potter (Attachments: # 1 Exhibit A – NOD, # 2 Exhibit B – Amended NOD, # 3 Exhibit C – Emails)(Bird, Melissa) |
| 09/24/2020 | 280 | |

| | | |
|---|---|---|
| | | MEMORANDUM OF LAW by CSX Transportation, Inc. in support of 279 MOTION by CSX Transportation, Inc. for Sanctions as to Plaintiff Zack Potter (Bird, Melissa) |
| 09/24/2020 | | MOTION REFERRED to Magistrate Judge Cheryl A. Eifert: 279 MOTION by CSX Transportation, Inc. for Sanctions as to Plaintiff Zack Potter (ts) (Entered: 09/25/2020) |
| 09/29/2020 | 281 | AMENDED SCHEDULING ORDER directing as follows: Discovery requests to be completed by 3/8/2021 and all depositions by 4/22/2021. Expert Witness List by parties bearing the burden of proof due by 2/22/2021, by party not bearing burden of proof due by 3/22/2021, and to solely contradict or rebut evidence due by 4/8/2021. Dispositive Motions except those filed under Rule 12(b) due by 5/13/2021; any response shall be filed by 5/27/2021, with replies due by 6/3/2021. Case Management Conference set for 6/14/2021 at 1:30 p.m. Settlement Meeting and Rule 26(a)(3) disclosures by 7/29/2021. Plaintiffs' portion of proposed Pretrial Order to defendants due by 8/5/2021; Proposed Integrated Pretrial Order due by 8/12/2021. Pretrial Conference set for 8/30/2021 at 1:30 PM in Huntington before Judge Robert C. Chambers. Proposed Jury Charges due by 8/27/2021. Final Settlement Conference at 9:30 AM on 9/20/2021 in Huntington. Trial set for 9/21/2021 at 8:30 AM in Huntington before Judge Robert C. Chambers. Signed by Judge Robert C. Chambers on 9/29/2020. (cc: counsel of record; any unrepresented parties) (jsa) |
| 10/08/2020 | 282 | STIPULATED MOTION TO EXTEND DEADLINE FOR PLAINTIFF ZACK POTTER TO RESPOND TO DEFENDANT'S MOTION FOR SANCTIONS, re: Defendants' 279 MOTION for Sanctions as to Plaintiff Zack Potter to 10/15/2020 by all plaintiffs and all defendants; the parties stipulate to a 7–day extension for Plaintiff Zack Potter to file his opposition and request to 10/15/2020. (Dingwall, Jeffrey) (Modified on 10/8/2020 to add party filers and convert event to a stipulated motion) (mkw). |
| 10/08/2020 | | MOTION REFERRED to Magistrate Judge Cheryl A. Eifert: 282 STIPULATED MOTION by the parties to Extend Deadline for Plaintiff Zack Potter to Respond to Defendant's Motion for Sanctions. (mkw) |
| 10/08/2020 | 283 | ORDER granting the parties' 282 STIPULATED MOTION to Extend Deadline for Plaintiff Zack Potter to Respond to Defendant's 279 Motion for Sanctions; Plaintiff Zack Potter shall have through and including 10/15/2020 in which to file a Response to Defendant CSX Transportation, Inc.'s Motion for Sanctions. Signed by Magistrate Judge Cheryl A. Eifert on 10/8/2020. (cc: counsel of record) (hkl) |
| 10/12/2020 | 284 | STIPULATED MOTION by all plaintiffs and all defendants to Dismiss the 93 THIRD AMENDED COMPLAINT With Prejudice of Plaintiff Zack Potter and further request that Defendants' 279 MOTION for Sanctions as to Plaintiff Zack Potter be denied as moot. (Dingwall, Jeffrey) (Modified on 10/13/2020 to add party filers and to add link to #93 third amended complaint and #279 motion) (mkw). |
| 10/16/2020 | 285 | ORDER denying as moot 279 MOTION by CSX Transportation, Inc. for Sanctions as to Plaintiff Zack Potter. Signed by Magistrate Judge Cheryl A. Eifert on 10/16/2020. (cc: counsel of record) (mkw) |

| 11/04/2020 | 286 | THIRD AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Brandi Little as Administrator of the Estate of Chad Little on November 17, 2020 at 2:00 p.m. via remote video teleconferencing. (Bird, Melissa) |
|---|---|---|
| 11/12/2020 | 287 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for CSXT's Omnibus Answers to Plaintiffs' Second Set of Interrogatories. (Bird, Melissa) |
| 11/12/2020 | 288 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for CSXT's Omnibus Responses to Plaintiffs' Second Set of Requests for Production of Documents. (Bird, Melissa) |
| 11/30/2020 | 289 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for CSX Transportation, Inc.'s Answers to Plaintiffs' Second Set of Interrogatories. (Attachment: # 1 Exhibit A – List of Plaintiffs served)(Bird, Melissa) |
| 11/30/2020 | 290 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for CSX Transportation, Inc.'s Responses to Plaintiffs' Second Set Requests for Admissions. (Attachment: # 1 Exhibit A – List of Plaintiffs served)(Bird, Melissa) |
| 11/30/2020 | 291 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for CSX Transportation, Inc.'s Responses to Plaintiffs' Second Set Requests for Production of Documents. (Attachment: # 1 Exhibit A – List of Plaintiffs served)(Bird, Melissa) |
| 12/02/2020 | 292 | ORDER granting the parties' 284 STIPULATED MOTION to Dismiss the 93 THIRD AMENDED COMPLAINT With Prejudice of Plaintiff Zack Potter; dismissing with prejudice the 93 Third Amended Complaint of Plaintiff Zack Potter, pursuant to Rule 41 of the Federal Rule of Civil Procedure; further denying as moot Defendant's 279 MOTION for Sanctions. Signed by Judge Robert C. Chambers on 12/2/2020. (cc: counsel of record; any unrepresented parties) (jsa) |
| 12/02/2020 | 293 | TRANSMITTED CERTIFIED COPY of 292 Order to counsel of record. (jsa) |
| 12/02/2020 | 294 | CERTIFICATE OF SERVICE by Craig S. Heligman for Heligman's Answers to Plaintiffs' First Set of Interrogatories. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
| 12/02/2020 | 295 | CERTIFICATE OF SERVICE by Craig S. Heligman for Heligman's Responses to Plaintiffs' First Set of Requests for Admissions. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
| 12/02/2020 | 296 | CERTIFICATE OF SERVICE by Craig S. Heligman for Heligman's Responses to Plaintiffs' First Set of Requests for Production of Documents. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
| 12/02/2020 | 297 | CERTIFICATE OF SERVICE by Curt Shogren for Curt Shogren's Answers to Plaintiffs' First Set of Interrogatories. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
| 12/02/2020 | 298 | CERTIFICATE OF SERVICE by Curt Shogren for Curt Shogren's Responses to Plaintiffs' First Set of Requests for Admission. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
| 12/02/2020 | 299 | |

| | | | CERTIFICATE OF SERVICE by Curt Shogren for Curt Shogren's Responses to Plaintiffs' First Set of Requests for Production. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
|---|---|---|---|
| 12/02/2020 | 300 | | CERTIFICATE OF SERVICE by Elizabeth Creedon for Creedon's Responses to Plaintiff Matthew Wood's First Set of Requests for Admissions. (Bird, Melissa) |
| 12/02/2020 | 301 | | CERTIFICATE OF SERVICE by Tom DeAngelo for Tom DeAngelo's Responses to Plaintiffs Matthew Woods' and Tony Abdon's First Set of Requests for Admissions. (Bird, Melissa) |
| 12/02/2020 | 302 | | CORRECTED CERTIFICATE OF SERVICE by Tom DeAngelo for Tom DeAngelo's Responses to Plaintiff's Estate of Chad Little and Tony Abdon's First Set of Requests for Admissions. (Bird, Melissa) |
| 12/02/2020 | 303 | | CERTIFICATE OF SERVICE by Kenneth Ray Emerson for Kenneth Ray Emerson's Responses to Plaintiff Matthew Wood's First Set of Requests for Admission. (Bird, Melissa) |
| 12/02/2020 | 304 | | CERTIFICATE OF SERVICE by Delando Jones for Delando Jones' Responses to Plaintiff Michael Campbell's First Set of Requests for Admission. (Bird, Melissa) |
| 12/02/2020 | 305 | | CERTIFICATE OF SERVICE by Shawn Lusk for Shawn Lusk's Responses to Plaintiffs Estate of Chad Little and Tony Abdon's First Set of Requests for Admissions. (Bird, Melissa) |
| 12/02/2020 | 306 | | CERTIFICATE OF SERVICE by Milton Storm for Milton Storm's Responses to Plaintiff Michael Campbell's First Set of Requests for Admissions. (Bird, Melissa) |
| 12/02/2020 | 307 | | CERTIFICATE OF SERVICE by Craig S. Heligman for Craig S. Heligman's Omnibus Supplemental Response to Plaintiffs' First Set of Requests for Production of Documents. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
| 12/02/2020 | 308 | | CERTIFICATE OF SERVICE by Curt Shogren for Curt Shogren's Omnibus Supplemental Response to Plaintiffs' First Set of Requests for Production of Documents. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
| 12/02/2020 | 309 | | CERTIFICATE OF SERVICE by Gus Thoele for Gus Thoele's Responses to Plaintiffs' First Set of Requests for Admissions. (Attachment: # 1 Exhibit A – List of Plaintiffs)(Bird, Melissa) |
| 12/04/2020 | 310 | | CERTIFICATE OF SERVICE by Delando Jones for Answers to Plaintiff Michael Campbell's First Set of Interrogatories. (Bird, Melissa) |
| 12/04/2020 | 311 | | CERTIFICATE OF SERVICE by Delando Jones for Responses to Plaintiff Michael Campbell's First Set of Requests for Production of Documents. (Bird, Melissa) |
| 12/04/2020 | 312 | | CERTIFICATE OF SERVICE by Milton Storm for Answers to Plaintiff Michael Campbell's First Set of Interrogatories. (Bird, Melissa) |
| 12/04/2020 | 313 | | CERTIFICATE OF SERVICE by Milton Storm for Responses to Plaintiff Michael Campbell's First Set of Requests for Production of Documents. (Bird, |

| | | | |
|---|---|---|---|
| | | | Melissa) |
| 01/08/2021 | 314 | | AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION AND REQUEST FOR PRODUCTION OF DOCUMENTS by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of 30(b)(6) designee(s) on January 27, 2021 at 10:00 a.m. (Paul, Gregory) |
| 01/08/2021 | 315 | | NOTICE OF DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Craig Heligman on February 8, 2021 at 10:00 a.m. (Paul, Gregory) |
| 01/08/2021 | 316 | | NOTICE OF DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Curt Shogren on March 8, 2021 at 2:00 p.m. (Paul, Gregory) |
| 01/08/2021 | 317 | | NOTICE OF DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James |

| | | Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Gus Thoele on March 8, 2021 at 10:00 a.m. (Paul, Gregory) |
|---|---|---|
| 02/01/2021 | 318 | MOTION by CSX Transportation, Inc. to Depose Incarcerated Person, James Stinnett. (Bird, Melissa) |
| 02/01/2021 | | MOTION REFERRED to Magistrate Judge Cheryl A. Eifert: 318 MOTION by CSX Transportation, Inc. to Depose Incarcerated Person, James Stinnett. (mkw) (Entered: 02/02/2021) |
| 02/03/2021 | 319 | ORDER granting Defendant CSX Transportation, Inc.'s 318 MOTION to Depose Incarcerated Person, Plaintiff James Stinnett; Defendant shall be responsible for making the arrangements with the Carter County Detention Center. Signed by Magistrate Judge Cheryl A. Eifert on 2/3/2021. (cc: counsel of record; any unrepresented party; CCDC Warden) (jsa) |
| 02/08/2021 | 320 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Privilege Log and Responses to Plaintiffs' Amended Notice of 30(b)(6) Requests for Production of Documents. (Bird, Melissa) |
| 02/10/2021 | 321 | SECOND AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of James Stinnett on March 2, 2021 at 12:00 p.m. (Bird, Melissa) |
| 03/01/2021 | 322 | MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Sanctions as to Plaintiff Joshua Hall. (Attachments: # 1 Exhibit Ex. A NOD Joshua Hall, # 2 Exhibit Ex. B First Amended NOD, # 3 Exhibit Ex. C Second Amended NOD, # 4 Exhibit Ex. D Emails to Opposing Counsel, # 5 Exhibit Ex. E LtF Greg Paul re voluntary dismissal)(Bird, Melissa) |
| 03/01/2021 | 323 | MEMORANDUM OF LAW n support of 322 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Sanctions as to Plaintiff Joshua Hall. (Bird, Melissa) |
| 03/08/2021 | 324 | ORDER granting Defendants' 266 MOTION for Summary Judgment as to the claims of Plaintiff Deanna Lanham; dismissing Plaintiff Deanna Lanham from this case. Signed by Judge Robert C. Chambers on 3/8/2021. (cc: counsel of record; any unrepresented parties) (hkl) |
| 03/08/2021 | 325 | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, |

| | | |
|---|---|---|
| | | James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Third Set of Interrogatories, Requests for Productions of Documents and Requests for Admissions. (Paul, Gregory) |
| 03/09/2021 | 326 | ORDER rescheduling the Pretrial Conference for 9/7/2021 at 1:30 PM in Huntington before Judge Robert C. Chambers. Signed by Judge Robert C. Chambers on 3/9/2021. (cc: counsel of record; any unrepresented parties) (hkl) |
| 03/22/2021 | 327 | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Rule 26(a)(2) Expert Testimony Disclosures. (Paul, Gregory) |
| 03/23/2021 | 328 | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Amended Notice of 30(b)(6) Deposition and Request for Production of Documents. (Paul, Gregory) |
| 03/23/2021 | 329 | |

| | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Amended Notice of Deposition of Craig S. Heligman. (Paul, Gregory) |
|---|---|---|
| 03/23/2021 | 330 | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Amended Notice of Deposition of Curt Shogren. (Paul, Gregory) |
| 03/23/2021 | 331 | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Amended Notice of Deposition of Gus Thoele. (Paul, Gregory) |
| 03/23/2021 | 332 | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad |

| | | | Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Milton Storm. (Paul, Gregory) |
|---|---|---|---|
| 03/23/2021 | 333 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Dillon Doug Jones. (Paul, Gregory) |
| 03/23/2021 | 334 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Tom DeAngelo. (Paul, Gregory) |
| 03/23/2021 | 335 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, |

| | | | |
|---|---|---|---|
| | | | Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Shawn Lusk. (Paul, Gregory) |
| 03/23/2021 | 336 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Elizabeth Creedon. (Paul, Gregory) |
| 03/23/2021 | 337 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Billy Bullock. (Paul, Gregory) |
| 03/23/2021 | 338 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods |

| | | | |
|---|---|---|---|
| | | | for Plaintiffs' Notice of Deposition of Jolanda Johnson. (Paul, Gregory) |
| 03/23/2021 | 339 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Penny Dreher. (Paul, Gregory) |
| 03/23/2021 | 340 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Kendall Quentin. (Paul, Gregory) |
| 03/23/2021 | 341 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Kelly Caudell. (Paul, Gregory) |
| 03/23/2021 | 342 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, |

| | | | |
|---|---|---|---|
| | | | Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Bryan Rhode. (Paul, Gregory) |
| 03/23/2021 | 343 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Ann Reinke. (Paul, Gregory) |
| 03/23/2021 | 344 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of Cheryl Shumway. (Paul, Gregory) |
| 03/24/2021 | 345 | | ORDER granting Defendants' 322 MOTION for Sanctions as to Plaintiff Joshua Hall; Plaintiff Hall's claims are DISMISSED WITH PREJUDICE. Signed by Judge Robert C. Chambers on 3/24/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 04/06/2021 | 346 | | CERTIFICATE OF SERVICE by Gus Thoele for Answers to Plaintiffs' First Set of Interrogatories. (Attachment: # 1 Exhibit List of 52 Plaintiffs Served)(Bird, Melissa) |

| 04/06/2021 | 347 | | CERTIFICATE OF SERVICE by Gus Thoele for Responses to Plaintiffs' First Set of Requests for Production of Documents. (Attachment: # 1 Exhibit A – List of 52 Plaintiffs)(Bird, Melissa) |
| --- | --- | --- | --- |
| 04/07/2021 | 348 | | STIPULATION OF EXTENSION OF TIME TO RESPOND TO DISCOVERY by Plaintiffs and Defendants; the parties stipulate and agree that the deadline for Defendant, CSX Transportation, Inc. to respond to Plaintiffs' Third Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions is to April 9, 2021. (Bird, Melissa) (Modified on 4/7/2021 to add party filers) (mkw). |
| 04/07/2021 | 349 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Supplemental Responses to CSX Transportation, Inc.'s First Set of Interrogatories and Requests for Production of Documents. (Dingwall, Jeffrey) |
| 04/09/2021 | 350 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Responses to Plaintiffs' Third Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions. (Bird, Melissa) |
| 04/21/2021 | 351 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Rule 26(a)(2) Expert Testimony Disclosures. (Bird, Melissa) |
| 04/27/2021 | 352 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Amended Privilege Log and First Supplemental Responses to Plaintiffs' Amended Notice of 30(b)(6) Requests for Production of Documents. (Bird, Melissa) |
| 05/05/2021 | 353 | | NOTICE OF DEPOSITION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Dillon Doug Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele of Daniel J. Carey, D.C. on May 19, 2021 at 9:00 a.m. (Bird, Melissa) |
| 05/05/2021 | 354 | | RETURN OF SERVICE ON SUBPOENA for Daniel J. Carey, D.C. (Bird, Melissa) |
| 05/10/2021 | 355 | | ORDER scheduling a telephone conference to discuss the status of discovery, the upcoming dispositive motion deadline, and other outstanding matters for 5/17/2021 at 10:30 AM in Huntington before Judge Robert C. Chambers. Signed by Judge Robert C. Chambers on 5/10/2021. (cc: attys; any unrepresented parties) (mkw) |

| 05/11/2021 | 356 | MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to File Under Seal Documents Identified As Confidential Pursuant to Parties' 171 Protective Order. (Attachments: # 1 Exhibit MSJ 2 Part 1 – Certificates of Ongoing Illness or Injury, # 2 Exhibit MSJ 2 Part 2 – Certificates of Ongoing Illness or Injury, # 3 Exhibit MSJ 8 – 07.14.2017 letter, # 4 Exhibit MSJ 9 – 07.21. 2017 letter, # 5 Exhibit MSJ 10 – 07.28.2017 letter, # 6 Exhibit MSJ 11 – Abdon deposition, # 7 Exhibit MSJ 12 – Adkins, B deposition, # 8 Exhibit MSJ 13 – Adkins, J deposition, # 9 Exhibit MSJ 14 – Akers deposition, # 10 Exhibit MSJ 15 – Baker deposition, # 11 Exhibit MSJ 16 – Barber deposition, # 12 Exhibit MSJ 17 – Barker deposition, # 13 Exhibit MSJ 18 – Bills deposition, # 14 Exhibit MSJ 19 – Blain deposition, # 15 Exhibit MSJ 20 – Blake deposition, # 16 Exhibit MSJ 21 – Brown deposition, # 17 Exhibit MSJ 22 – Campbell deposition, # 18 Exhibit MSJ 23 – Carpenter deposition, # 19 Exhibit MSJ 24 – Christian deposition, # 20 Exhibit MSJ 25 – Clark deposition, # 21 Exhibit MSJ 26 – Craycraft deposition, # 22 Exhibit MSJ 27 – Deal deposition, # 23 Exhibit MSJ 28 – Dowdy deposition, # 24 Exhibit MSJ 29 – Ferguson deposition, # 25 Exhibit MSJ 30 – Flocker deposition, # 26 Exhibit MSJ 31 – Frasure deposition, # 27 Exhibit MSJ 32 – Glowacki deposition, # 28 Exhibit MSJ 33 – Hamm deposition, # 29 Exhibit MSJ 34 – Hutchinson deposition, # 30 Exhibit MSJ 35 – Jeffers deposition, # 31 Exhibit MSJ 36 – Jordan deposition, # 32 Exhibit MSJ 37 – Kelley deposition, # 33 Exhibit MSJ 38 – Little deposition, # 34 Exhibit MSJ 39 – Maddix deposition, # 35 Exhibit MSJ 40 – Manis deposition, # 36 Exhibit MSJ 41 – Marshall deposition, # 37 Exhibit MSJ 42 – Maynard deposition, # 38 Exhibit MSJ 43 – Morrison deposition, # 39 Exhibit MSJ 44 – Mosteller deposition, # 40 Exhibit MSJ 45 – Mullins deposition, # 41 Exhibit MSJ 46 – Napier deposition, # 42 Exhibit MSJ 47 – Owens deposition, # 43 Exhibit MSJ 48 – Palmer deposition, # 44 Exhibit MSJ 49 – Patterson deposition, # 45 Exhibit MSJ 50 – Potter, MD deposition, # 46 Exhibit MSJ 51 – Potter, ML deposition, # 47 Exhibit MSJ 52 – Preston deposition, # 48 Exhibit MSJ 53 – Rowe deposition, # 49 Exhibit MSJ 54 – Sargent deposition, # 50 Exhibit MSJ 55 – Speaks deposition, # 51 Exhibit MSJ 56 – Stephens deposition, # 52 Exhibit MSJ 57 – Stewart deposition, # 53 Exhibit MSJ 58 – Stiltner deposition, # 54 Exhibit MSJ 59 – Stinnett deposition, # 55 Exhibit MSJ 60 – Thayer deposition, # 56 Exhibit MSJ 61 – Thornsberry deposition, # 57 Exhibit MSJ 62 – Wallace deposition, # 58 Exhibit MSJ 63 – Williams, L deposition, # 59 Exhibit MSJ 64 – Williams, M deposition, # 60 Exhibit MSJ 65 – Witt deposition, # 61 Exhibit MSJ 66 – Woods deposition, # 62 Exhibit MSJ 67 – Abdon hearing, # 63 Exhibit MSJ 68 – Adkins, B hearing, # 64 Exhibit MSJ 69 – Adkins, J hearing, # 65 Exhibit MSJ 70 – Akers hearing, # 66 Exhibit MSJ 71 – Baker hearing, # 67 Exhibit MSJ 72 – Barber hearing, # 68 Exhibit MSJ 73 – Barker hearing, # 69 Exhibit MSJ 74 – Bills hearing, # 70 Exhibit MSJ 75 – Blain hearing, # 71 Exhibit MSJ 76 – Blake hearing, # 72 Exhibit MSJ 77 – Brown hearing, # 73 Exhibit MSJ 78 – Campbell hearing, # 74 Exhibit MSJ 79 – Carpenter hearing, # 75 Exhibit MSJ 80 – Christian hearing, # 76 Exhibit MSJ 81 – Clark hearing, # 77 Exhibit MSJ 82 – Craycraft hearing, # 78 Exhibit MSJ 83 – Deal hearing, # 79 Exhibit MSJ 84 – Dowdy hearing, # 80 Exhibit MSJ 85 – Ferguson hearing, # 81 Exhibit MSJ 86 – Flocker hearing, # 82 Exhibit MSJ 87 – Frasure hearing, # 83 Exhibit MSJ 88 – Glowacki hearing, # 84 Exhibit MSJ 89 – Hamm hearing, # 85 Exhibit MSJ 90 – Hutchinson hearing, # 86 |

| | | | |
|---|---|---|---|
| | | | Exhibit MSJ 91 – Jeffers hearing, # 87 Exhibit MSJ 92 – Jordan hearing, # 88 Exhibit MSJ 93 – Kelley hearing, # 89 Exhibit MSJ 94 – Little hearing, # 90 Exhibit MSJ 95 – Maddix hearing, # 91 Exhibit MSJ 96 – Manis hearing, # 92 Exhibit MSJ 97 – Marshall hearing, # 93 Exhibit MSJ 98 – Maynard hearing, # 94 Exhibit MSJ 99 – Morrison hearing, # 95 Exhibit MSJ 100 – Mosteller hearing, # 96 Exhibit MSJ 101 – Mullins hearing, # 97 Exhibit MSJ 102 – Napier hearing, # 98 Exhibit MSJ 103 – Owens hearing, # 99 Exhibit MSJ 104 – Palmer hearing, # 100 Exhibit MSJ 105 – Patterson hearing, # 101 Exhibit MSJ 106 – Potter, MD hearing, # 102 Exhibit MSJ 107 – Potter, ML hearing, # 103 Exhibit MSJ 108 – Preston hearing, # 104 Exhibit MSJ 109 – Rowe hearing, # 105 Exhibit MSJ 110 – Sargent hearing, # 106 Exhibit MSJ 111 – Speaks hearing, # 107 Exhibit MSJ 112 – Stephens hearing, # 108 Exhibit MSJ 113 – Stewart hearing, # 109 Exhibit MSJ 114 – Stiltner hearing, # 110 Exhibit MSJ 115 – Stinnett hearing, # 111 Exhibit MSJ 116 – Thayer hearing, # 112 Exhibit MSJ 117 – Thornsberry hearing, # 113 Exhibit MSJ 118 – Wallace hearing, # 114 Exhibit MSJ 119 – Williams, LK hearing, # 115 Exhibit MSJ 120 – Williams, MD hearing, # 116 Exhibit MSJ 121 – Witt hearing, # 117 Exhibit MSJ 122 – Woods hearing, # 118 Exhibit MSJ 124 – Representative Set of Exhibits to Investigative Hearing Transcript, # 119 Exhibit MSJ 172 – Chiropractors' Letters to Union Representatives(Bird, Melissa) (Modified on 5/11/2021 to add link to #171 protective order) (mkw) |
| 05/12/2021 | 357 | | ORDER granting Defendants' 356 MOTION to File Under Seal Documents Identified As Confidential Pursuant to Parties' 171 Protective Order; directing the Clerk's Office to file the documents attached to the Motion under seal. Signed by Judge Robert C. Chambers on 5/12/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 05/12/2021 | 358 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Supplemental Responses to Plaintiffs' Amended Notice of 30(b)(6) Requests for Production of Documents. (Bird, Melissa) |
| 05/13/2021 | 359 | | MOTION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods to Seal Confidential Exhibits Filed in support of their 368 MOTION for Partial Summary Judgment. (Attachments: # 1 Proposed Order)(Paul, Gregory) (Modified on 5/14/2021 to add link to #368 motion) (mkw) |
| 05/13/2021 | 360 | | MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment. (Attachments: # |

1 Exhibit MSJ 1 – Charge Letters, # 2 Exhibit MSJ 3 – Heligman Letters to Plaintiffs, # 3 Exhibit MSJ 4 – OSHA Objections, # 4 Exhibit MSJ 5 Part 1 – OSHA Findings, # 5 Exhibit MSJ 5 Part 2 – OSHA Findings, # 6 Exhibit MSJ 6 – PLB Decisions, # 7 Exhibit MSJ 7 – Termination Letters, # 8 Exhibit MSJ 123 – Confidentiality Letters, # 9 Exhibit MSJ 125 – Abdon OSHA Complaint, # 10 Exhibit MSJ 126 – Adkins, B OSHA Complaint, # 11 Exhibit MSJ 127 – Adkins, J OSHA Complaint, # 12 Exhibit MSJ 128 – Akers OSHA Complaint, # 13 Exhibit MSJ 129 – Baker OSHA Complaint, # 14 Exhibit MSJ 130 – Barber OSHA Complaint, # 15 Exhibit MSJ 131 – Baker OSHA Complaint, # 16 Exhibit MSJ 132 – Bills OSHA Complaint, # 17 Exhibit MSJ 133 – Blain OSHA Complaint, # 18 Exhibit MSJ 134 – Blake OSHA Complaint, # 19 Exhibit MSJ 135 – Brown OSHA Complaint, # 20 Exhibit MSJ 136 – Carpenter OSHA Complaint, # 21 Exhibit MSJ 137 – Clark OSHA Complaint, # 22 Exhibit MSJ 138 – Craycraft OSHA Complaint, # 23 Exhibit MSJ 139 – Deal OSHA Complaint, # 24 Exhibit MSJ 140 – Dowdy OSHA Complaint, # 25 Exhibit MSJ 141 – Ferguson OSHA Complaint, # 26 Exhibit MSJ 142 – Flocker OSHA Complaint, # 27 Exhibit MSJ 143 – Frasure OSHA Complaint, # 28 Exhibit MSJ 144 – Hutchinson OSHA Complaint, # 29 Exhibit MSJ 145 – Jeffers OSHA Complaint, # 30 Exhibit MSJ 146 – Jordan OSHA Complaint, # 31 Exhibit MSJ 147 – Kelley OSHA Complaint, # 32 Exhibit MSJ 148 – Little OSHA Complaint, # 33 Exhibit MSJ 149 – Maddix OSHA Complaint, # 34 Exhibit MSJ 150 – Manis OSHA Complaint, # 35 Exhibit MSJ 151 – Marshall OSHA Complaint, # 36 Exhibit MSJ 152 – Maynard OSHA Complaint, # 37 Exhibit MSJ 153 – Morrison OSHA Complaint, # 38 Exhibit MSJ 154 – Mosteller OSHA Complaint, # 39 Exhibit MSJ 155 – Mullins OSHA Complaint, # 40 Exhibit MSJ 156 – Napier OSHA Complaint, # 41 Exhibit MSJ 157 – Owens OSHA Complaint, # 42 Exhibit MSJ 158 – Palmer OSHA Complaint, # 43 Exhibit MSJ 159 – Patterson OSHA Complaint, # 44 Exhibit MSJ 160 – Preston OSHA Complaint, # 45 Exhibit MSJ 161 – Rowe OSHA Complaint, # 46 Exhibit MSJ 162 – Sargent OSHA Complaint, # 47 Exhibit MSJ 163 – Speaks OSHA Complaint, # 48 Exhibit MSJ 164 – Stephens OSHA Complaint, # 49 Exhibit MSJ 165 – Stewart OSHA Complaint, # 50 Exhibit MSJ 166 – Stiltner OSHA Complaint, # 51 Exhibit MSJ 167 – Stinnett OSHA Complaint, # 52 Exhibit MSJ 168 – Thayer OSHA Complaint, # 53 Exhibit MSJ 169 – Thornsberry OSHA Complaint, # 54 Exhibit MSJ 170 – Wallace OSHA Complaint, # 55 Exhibit MSJ 171 – Witt OSHA Complaint, # 56 Exhibit MSJ 173 – Collective Bargaining Agreements – Clerical Part 1, # 57 Exhibit MSJ 174 – Collective Bargaining Agreements – Clerical Part 2, # 58 Exhibit MSJ 175 – Collective Bargaining Agreements – Engineering, # 59 Exhibit MSJ 176 – Collective Bargaining Agreements – Mechanical CBA BRC, # 60 Exhibit MSJ 177 – Collective Bargaining Agreements – Mechanical CBA IBB, # 61 Exhibit MSJ 178 – Demonstrative Exhibit 1 – Defamation (identifying the alleged defamatory statement), # 62 Exhibit MSJ 179 – Demonstrative Exhibit 2 – Defamation (identifying the alleged injury), # 63 Exhibit MSJ 180 – Demonstrative Exhibit 3 – Invasion of Privacy, # 64 Exhibit MSJ 181 – Demonstrative Exhibit 4 – Tortious Interference, # 65 Exhibit MSJ 182 – Demonstrative Exhibit 5 – In. Inf. of Emotional Distress, # 66 Exhibit MSJ 183 – Demonstrative Exhibit 6 – Int. Inf. of Emotional Distress, # 67 Exhibit MSJ 184 – Demonstrative Exhibit 7 – FRSA)(Bird, Melissa)

| 05/13/2021 | 361 | | |

| | | MEMORANDUM OF LAW by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in support of 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment as to Plaintiffs' Defamaton Claim. (Bird, Melissa) |
|---|---|---|
| 05/13/2021 | 362 | MEMORANDUM OF LAW by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in support of 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment on Plaintiffs' Claim for Wrongful Discharge and Plaintiffs' Claims Under ERISA, The Rehabilitation Act and The West Virginia Human Rights Act. (Bird, Melissa) |
| 05/13/2021 | 363 | MEMORANDUM OF LAW by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in support of 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment (Bird, Melissa) |
| 05/13/2021 | 364 | MEMORANDUM OF LAW by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in support of 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment as to Plaintiffs' Claim Under the FRSA. (Bird, Melissa) |
| 05/13/2021 | 365 | MEMORANDUM OF LAW by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in support of 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment as to Plaintiffs' Intentional Infliction of Emotional Distress Claim. (Bird, Melissa) |
| 05/13/2021 | 366 | MEMORANDUM OF LAW by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in support of 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment Regarding Invasion of Privacy. (Bird, Melissa) |
| 05/13/2021 | 367 | MEMORANDUM OF LAW by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in support of 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment as to Plaintiffs' |

| | | | Tortious Interference Claim. (Bird, Melissa) |
|---|---|---|---|
| 05/13/2021 | 368 | | MOTION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Partial Summary Judgment. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Paul, Gregory) |
| 05/13/2021 | 369 | | BRIEF by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in support of Plaintiffs' 368 MOTION for Partial Summary Judgment. (Paul, Gregory) (mkw). |
| 05/13/2021 | 370 | | EXHIBITS in Support of Defendants' 360 MOTION for Summary Judgment; filed under seal pursuant to the 357 Order. (Attachments: # 1 Exhibit 2 part 2, # 2 Exhibit 8, # 3 Exhibit 9, # 4 Exhibit 10, # 5 Exhibit 11, # 6 Exhibit 12, # 7 Exhibit 13, # 8 Exhibit 14, # 9 Exhibit 15, # 10 Exhibit 16, # 11 Exhibit 17, # 12 Exhibit 18, # 13 Exhibit 19, # 14 Exhibit 20, # 15 Exhibit 21, # 16 Exhibit 22, # 17 Exhibit 23, # 18 Exhibit 24, # 19 Exhibit 25, # 20 Exhibit 26, # 21 Exhibit 27, # 22 Exhibit 28, # 23 Exhibit 29, # 24 Exhibit 30, # 25 Exhibit 31, # 26 Exhibit 32, # 27 Exhibit 33, # 28 Exhibit 34, # 29 Exhibit 35, # 30 Exhibit 36, # 31 Exhibit 37, # 32 Exhibit 38, # 33 Exhibit 39, # 34 Exhibit 40, # 35 Exhibit 41, # 36 Exhibit 42, # 37 Exhibit 43, # 38 Exhibit 44, # 39 Exhibit 45, # 40 Exhibit 46, # 41 Exhibit 47, # 42 Exhibit 48, # 43 Exhibit 49, # 44 Exhibit 50, # 45 Exhibit 51, # 46 Exhibit 52, # 47 Exhibit 53, # 48 Exhibit 54, # 49 Exhibit 55, # 50 Exhibit 56, # 51 Exhibit 57, # 52 Exhibit 58, # 53 Exhibit 59, # 54 Exhibit 60, # 55 Exhibit 61, # 56 Exhibit 62, # 57 Exhibit 63, # 58 Exhibit 64, # 59 Exhibit 65, # 60 Exhibit 66, # 61 Exhibit 67, # 62 Exhibit 68, # 63 Exhibit 69, # 64 Exhibit 70, # 65 Exhibit 71, # 66 Exhibit 72, # 67 Exhibit 73, # 68 Exhibit 74, # 69 Exhibit 75, # 70 Exhibit 76, # 71 Exhibit 77, # 72 Exhibit 78, # 73 Exhibit 79, # 74 Exhibit 80, # 75 |

| | | | |
|---|---|---|---|
| | | | Exhibit 81, # <u>76</u> Exhibit 82, # <u>77</u> Exhibit 83, # <u>78</u> Exhibit 84, # <u>79</u> Exhibit 85, # <u>80</u> Exhibit 86, # <u>81</u> Exhibit 87, # <u>82</u> Exhibit 88, # <u>83</u> Exhibit 89, # <u>84</u> Exhibit 90, # <u>85</u> Exhibit 91, # <u>86</u> Exhibit 92, # <u>87</u> Exhibit 93, # <u>88</u> Exhibit 94, # <u>89</u> Exhibit 95, # <u>90</u> Exhibit 96, # <u>91</u> Exhibit 97, # <u>92</u> Exhibit 98, # <u>93</u> Exhibit 99, # <u>94</u> Exhibit 100, # <u>95</u> Exhibit 101, # <u>96</u> Exhibit 102, # <u>97</u> Exhibit 103, # <u>98</u> Exhibit 104, # <u>99</u> Exhibit 105, # <u>100</u> Exhibit 106, # <u>101</u> Exhibit 107, # <u>102</u> Exhibit 108, # <u>103</u> Exhibit 109, # <u>104</u> Exhibit 110, # <u>105</u> Exhibit 111, # <u>106</u> Exhibit 112, # <u>107</u> Exhibit 113, # <u>108</u> Exhibit 114, # <u>109</u> Exhibit 115, # <u>110</u> Exhibit 116, # <u>111</u> Exhibit 117, # <u>112</u> Exhibit 118, # <u>113</u> Exhibit 119, # <u>114</u> Exhibit 120, # <u>115</u> Exhibit 121, # <u>116</u> Exhibit 122, # <u>117</u> Exhibit 124, # <u>118</u> Exhibit 172) (jsa) (Entered: 05/14/2021) |
| 05/17/2021 | <u>371</u> | | TELEPHONIC CONFERENCE held by Judge Robert C. Chambers on 5/17/2021; Court Reporter: Kathy Swinhart. (trj) |
| 05/17/2021 | <u>372</u> | | ORDER granting Plaintiffs' <u>359</u> MOTION for Leave to File Documents Under Seal. Signed by Judge Robert C. Chambers on 5/17/2021. (cc: counsel of record; any unrepresented parties) (hkl) |
| 05/17/2021 | <u>373</u> | | ORDER extending Plaintiffs' deadline to respond to Defendants' <u>360</u> MOTION for Summary Judgment by 14 days; Response due by 6/10/2021; Granting Plaintiffs' request for leave to supplement their <u>368</u> MOTION for Partial Summary Judgment by the end of the week; extending Defendants' deadline to respond to Plaintiffs' motion for partial summary judgment 14 days from the time Plaintiffs file their supplement; the Court expects the parties to meet and confer about any outstanding discovery issues and report to the Court by this Friday, May 21, 2021. Signed by Judge Robert C. Chambers on 5/17/2021. (cc: attys; any unrepresented parties) (mkw) |
| 05/19/2021 | <u>374</u> | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Shannon M. Johnson, D.C. on May 21, 2021 at 9:00 a.m. (Bird, Melissa) |
| 05/20/2021 | <u>375</u> | | FIRST AMENDED NOTICE OF DEPOSITION by CSX Transportation, Inc. of Daniel J. Carey, D.C. on May 27, 2021 at 9:00 a.m. (Bird, Melissa) |
| 05/20/2021 | <u>376</u> | | RETURN OF SERVICE ON SUBPOENA for Shannon M. Johnson, D.C. (Bird, Melissa) |
| 05/21/2021 | <u>377</u> | | SUPPLEMENTAL DEPOSITION TESTIMONY OF JOLANDA JOHNSON by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in support of Plaintiffs' <u>368</u> MOTION for Partial Summary Judgment. (Paul, Gregory) (Modified on |

| | | | |
|---|---|---|---|
| | | | 5/24/2021 to remove link to #369 memorandum and #373 order and add link to #368 motion) (mkw). |
| 05/26/2021 | 378 | | SEALED MATERIALS filed by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods pursuant to Court Order. Exhibits to Plaintiffs' 368 Motion for Partial Summary Judgment. (Paul, Gregory) (Modified on 5/26/2021 to add link to #368 motion) (mkw). |
| 06/01/2021 | 379 | | MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Extension of Time to File Reply Briefs in Support of their Motion for Summary Judgment to 6/24/2021. (Bird, Melissa) |
| 06/01/2021 | 380 | | PROPOSED ORDER Motion for Extension of Time for Defendants' to File Reply Briefs by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele. (Bird, Melissa) |
| 06/02/2021 | 381 | | ORDER granting Defendants' 379 MOTION for Extension of Time to File Reply Briefs for their 360 MOTION for Summary Judgment; Defendants' Reply Briefs shall be filed no later than 6/24/2021. Signed by Judge Robert C. Chambers on 6/2/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 06/04/2021 | 382 | | RESPONSE by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in opposition to 368 MOTION by Plaintiffs for Partial Summary Judgment. (Attachments: # 1 Exhibit A – Part 1 Heligman deposition, # 2 Exhibit A – Part 2 Heligman deposition, # 3 Exhibit B – Jolanda Johnson 30b6 deposition, # 4 Exhibit C – Jolanda Johnson individual deposition)(Bird, Melissa) |
| 06/08/2021 | 383 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, |

| | | | |
|---|---|---|---|
| | | | Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Plaintiffs; Amended Notice of Deposition of Elizabeth Creedon. (Garella, Charles) (Modified on 6/9/2021 to convert event to certificate of service) (mkw). |
| 06/08/2021 | 384 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Amended Notice of Deposition of Tom Deangelo. (Garella, Charles) (Modified on 6/9/2021 to convert event to a certificate of service) (mkw). |
| 06/08/2021 | 385 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Amended Notice of Deposition of Gus Thoele. (Garella, Charles) (Modified on 6/9/2021 to convert event to certificate of service) (mkw). |
| 06/08/2021 | 386 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert |

| | | | |
|---|---|---|---|
| | | | Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Plaintiffs' Notice of Deposition of TJ Toler. (Garella, Charles) (Modified on 6/9/2021 to convert event to certificate of service) |
| 06/09/2021 | 387 | | AMENDED NOTICE OF VIDEOTAPED DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Elizabeth Creedon on June 16, 2021 at 1:00 P.M. (Garella, Charles) |
| 06/09/2021 | 388 | | AMENDED NOTICE OF VIDEOTAPED DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Tom DeAngelo on June 15, 2021 at 9:00 A.M. (Garella, Charles) |
| 06/09/2021 | 389 | | AMENDED NOTICE OF VIDEOTAPED DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. |

| | | | |
|---|---|---|---|
| | | | Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Gus Thoele on June 17, 2021 at 10:00 A.M. (Garella, Charles) |
| 06/09/2021 | 390 | | NOTICE OF VIDEOTAPED DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of TJ Toler on June 16, 2021 at 9:00 A.M. (Garella, Charles) |
| 06/09/2021 | 391 | | MOTION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Extension of Time to File a Reply to Defendants' 382 Response to Plaintiffs' Motion for Partial Summary Judgment to June 18, 2021. (Attachment: # 1 Proposed Order)(Paul, Gregory) |
| 06/09/2021 | 392 | | AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION AND REQUEST FOR PRODUCTION OF DOCUMENTS by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack |

| | | | |
|---|---|---|---|
| | | | Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Witts, Michael Williams, Timothy Witt, Matthew Woods of 30(b)(6) Representative on June 25, 2021 at 10:00 a.m. (Attachments: # 1 Certificate of Service)(Paul, Gregory) |
| 06/10/2021 | 393 | | ORDER granting Plaintiffs' 391 MOTION for Extension of Time to File a Reply to Defendants' 382 Response to Plaintiffs' 368 MOTION for Partial Summary Judgment; Plaintiffs' Reply shall be filed no later than 6/18/2021. Signed by Judge Robert C. Chambers on 6/10/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 06/10/2021 | 394 | | ORDER directing that the case management conference currently set in this matter for 6/14/2021 at 1:30 p.m. will now be held telephonically; counsel has been provided the conference call instructions by email. Signed by Judge Robert C. Chambers on 6/10/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 06/10/2021 | 395 | | OPPOSITION by Justin Adkins in opposition to 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment as to Plaintiffs' Tortious Interference Claim. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(Stephens, John) (Modified on 6/10/2021 to remove link to #367 memorandum) (mkw). |
| 06/10/2021 | 396 | | OPPOSITION by Justin Adkins to 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment as to Plaintiffs' Claim Under the FRSA. 364 Memorandum In Support, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M)(Stephens, John) (Modified on 6/11/2021 to remove link to #364 memorandum) (mkw). |
| 06/10/2021 | 397 | | RESPONSE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in opposition to Defendants' 360 MOTION for Summary Judgment on Plaintiffs' Claim for |

| | | | |
|---|---|---|---|
| | | | Wrongful Discharge and Plaintiffs' Claims Under ERISA, the Rehabilitation Act and The West Virginia Human Rights Act. (Attachments: # 1 Exhibit 1: Dr. Heligman Transcript of Depositions)(Paul, Gregory) (Modified on 6/11/2021 to remove link to #362 memorandum and add link to #360 motion) (mkw). |
| 06/10/2021 | 398 | | RESPONSE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in opposition to Defendants' 360 MOTION for Summary Judgment as to Plaintiffs' Claim Under the FMLA. (Paul, Gregory) (Modified on 6/11/2021 to remove link to #363 memorandum and add link to #360 motion) (mkw). |
| 06/10/2021 | 399 | | MEMORANDUM by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in opposition to 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment as to Plaintiffs' Defamation Claim. (Garella, Charles) |
| 06/10/2021 | 400 | | MEMORANDUM by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, |

| | | |
|---|---|---|
| | | Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in opposition to 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment, MEMORANDUM by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in opposition to 360 MOTION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Summary Judgment as to Plaintiffs' Invasion of Privacy Claim. (Attachment: # 1 Exhibit Deposition of Shawn Lusk)(Garella, Charles) |
| 06/11/2021 | 401 | AMENDED NOTICE OF VIDEOTAPED DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Tom DeAngelo on June 15, 2021 at 10:00 A.M. (Garella, Charles) |
| 06/14/2021 | 402 | MOTION by CSX Transportation, Inc. to Strike certain Plaintiffs' wage–loss claims as a result of their persistent failure to produce complete post–termination wage loss evidence in discovery and striking Plaintiffs' expert, Jeffrey B. Opp, for his failure to produce a timely and complete report. (Attachments: # 1 Exhibit 1 – Representative Responses to Discovery, # 2 Exhibit 2 – Demonstrative Chart, # 3 Exhibit 3 – Jeffrey Opp Report, # 4 Exhibit 4 – Correspondence with opposing counsel)(Bird, Melissa) |
| 06/14/2021 | 403 | |

| | | | |
|---|---|---|---|
| | | | STATEMENT OF VISITING ATTORNEY by Davis M. Walsh on behalf of CSX Transportation, Inc. Local counsel: Melissa Foster Bird. Fee $50.00. Receipt # AWVSDC–7967003. (Bird, Melissa) (Modified on 6/15/2021 to add name of visiting attorney in the docket text) (mkw). |
| 06/14/2021 | 404 | | STATEMENT OF VISITING ATTORNEY by Samuel Lewis Tarry, Jr. on behalf of CSX Transportation, Inc. Local counsel: Melissa Foster Bird. Fee $50.00. Receipt # AWVSDC–7967007. (Bird, Melissa) |
| 06/14/2021 | 405 | | AMENDED NOTICE OF VIDEOTAPED DEPOSITION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods of Elizabeth Creedon on June 16, 2021 at 12:00 p.m. (Garella, Charles) |
| 06/14/2021 | 406 | | MOTION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods to Compel Discovery Responses. (Attachment: # 1 Proposed Order)(Paul, Gregory) |
| 06/14/2021 | 407 | | MEMORANDUM OF LAW by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald |

| | | | |
|---|---|---|---|
| | | | Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in support of 406 MOTION to Compel Discovery Responses. (Attachments: # 1 Exhibit 1: Def. Privilege Log, # 2 Exhibit 2: Testimony re: emails and preservation, # 3 Exhibit 3: Dr. Heligman testimont, # 4 Exhibit 4: Amended Notice of 30(b)(6))(Paul, Gregory) |
| 06/14/2021 | 408 | | TELEPHONIC CASE MANAGEMENT CONFERENCE held by Judge Robert C. Chambers on 6/14/2021; Court Reporter: Kathy Swinhart. (trj) |
| 06/14/2021 | 409 | | ORDER directing the parties to meet and confer on or before 6/21/2021, to discuss Defendant's claim of inadequate post–termination wage information; Plaintiff will then have until 6/28/2021, to file a formal response to Defendants' 402 Motion to Strike. Signed by Judge Robert C. Chambers on 6/14/2021. (cc: counsel of record; any unrepresented parties) (hkl) |
| 06/14/2021 | | | MOTION REFERRED to Magistrate Judge Cheryl A. Eifert: 406 MOTION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods to Compel Discovery Responses. (mkw) (Entered: 06/15/2021) |
| 06/21/2021 | 410 | | REPLY MEMORANDUM by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods to 382 Response In Opposition. (Attachments: # 1 Exhibit 1: Termination Letters Redacted, # 2 Exhibit 2: Emerson Deposition, # 3 Exhibit 3: Lusk Deposition)(Paul, Gregory) |
| 06/24/2021 | 411 | | REPLY by CSX Transportation, Inc., Milton Storm, Elizabeth Creedon, Tom |

| | | |
|---|---|---|
| | | DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Gus Thoele to Plaintiffs' 400 Memorandum In Opposition. (Attachment: # 1 Exhibit 1 – Gus Thoele deposition excerpt)(Bird, Melissa) (Modified on 6/24/2021 to add party filer) (mkw). |
| 06/24/2021 | 412 | REPLY by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to Plaintiff Justin Adkins' 395 Opposition. (Attachments: # 1 Exhibit 1 – Shannon Johnson deposition excerpt, # 2 Exhibit 3 – Daniel Carey deposition excerpt)(Bird, Melissa) |
| 06/24/2021 | 413 | REPLY MEMORANDUM by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to 398 Response In Opposition. (Attachments: # 1 Exhibit 1 – Shannon Johnson deposition excerpts, # 2 Exhibit 2 – Heligman deposition excerpts, # 3 Exhibit 3 – Dreher deposition excperts, # 4 Exhibit 4 – Macon Jones deposition excerpts, # 5 Exhibit 5 – Demonstrative Chart)(Bird, Melissa) |
| 06/24/2021 | 414 | REPLY by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to their 365 Memorandum In Support. (Bird, Melissa) |
| 06/24/2021 | 415 | REPLY MEMORANDUM by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to 397 Response In Opposition. (Attachment: # 1 Exhibit 1 – Heligman letter re medical documentation, # 2 Exhibit 2 – Heligman deposition excerpts, # 3 Exhibit 3 – Dreher deposition excerpts, # 4 Exhibit 4 – Macon Jones deposition excerpts)(Bird, Melissa) |
| 06/24/2021 | 416 | REPLY by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to 399 Memorandum In Opposition. (Attachments: # 1 Exhibit 1 – Shannon Johnson deposition excerpts, # 2 Exhibit 2 – Heligman deposition excerpts)(Bird, Melissa) |
| 06/24/2021 | 417 | REPLY by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to Plaintiffs' 396 Opposition. (Attachments: # 1 Exhibit 1 – Demonstrative Chart Testimony re safety reporting, # 2 Exhibit 2 – Demonstrative Chart OSHA Allegations, # 3 Exhibit 3 – Kelly Crouch deposition excerpts, # 4 Exhibit 4 – CSXT Labor Agreement 16–017–16)(Bird, Melissa) |
| 06/25/2021 | 418 | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for COS for CSXT's Supplemental Responses to Plaintiffs' Amended Notice of 30(b)(6) Requests for Production of Documents and Supplemental Privilege Log. (Bird, Melissa) |
| 06/28/2021 | 419 | RESPONSE by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele in opposition to 406 MOTION by all Plaintiffs to Compel Discovery Responses. (Attachment: # 1 Exhibit 1 |

| | | | Heligman deposition excerpt)(Bird, Melissa) |
|---|---|---|---|
| 06/28/2021 | 420 | | RESPONSE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods in opposition to 402 MOTION by CSX Transportation, Inc. to Strike certain Plaintiffs' wage−loss claims as a result of their persistent failure to produce complete post−termination wage loss evidence in discovery and striking Plaintiffs' expert, Jeffrey B. Opp. (Attachments: # 1 Exhibit 1: Def. Request for Tax Records (exemplar), # 2 Exhibit 2: 6−10−21 Letter, # 3 Exhibit 3: 6−23−21 Letter, # 4 Exhibit 4: Excerpt Kelley Depo, # 5 Exhibit 5: Excerpt Potter Dep, # 6 Exhibit 6: 2−12−21 Email, # 7 Exhibit 7: 6−18−21 Email)(Paul, Gregory) |
| 07/06/2021 | 421 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Supplemental Rule 26(a)(1)(A)(iv) Initial Disclosures. (Bird, Melissa) |
| 07/06/2021 | 422 | | REPLY by CSX Transportation, Inc. to Plaintiffs' 420 Response In Opposition. (Bird, Melissa) (Modified on 7/6/2021 to remove link to #402 motion and add link to #420 response) (mkw). |
| 07/06/2021 | 423 | | REPLY by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods to 419 Response In Opposition. (Attachments: # 1 Exhibit A − 1st Privilege Log, # 2 Exhibit B − 2d Privilege Log, # 3 Exhibit C − 3d Privilege Log, # 4 Exhibit D − Creedon Depo, # 5 Exhibit E − Pages from 6/25 Production, # 6 Exhibit F − Email re: Rule 30(b)(6) witnesses, # 7 Exhibit G − CSX Supplemental Disclosures)(Garella, Charles) |
| 07/09/2021 | 424 | | ORDER scheduling a hearing on the parties' pending 360 and 368 MOTIONS for Summary Judgment on 8/5/2021 at 1:30 PM in Huntington before Judge |

| | | | |
|---|---|---|---|
| | | | Robert C. Chambers. Signed by Judge Robert C. Chambers on 7/9/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 07/12/2021 | 425 | | ORDER directing that a Telephonic Motion Hearing on Plaintiffs' 406 MOTION to Compel Discovery Responses shall take place on 7/19/2021 at 11:00 AM before Magistrate Judge Cheryl A. Eifert. Signed by Magistrate Judge Cheryl A. Eifert on 7/12/2021. (cc: counsel; any unrepresented parties) (hkl) |
| 07/15/2021 | 426 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Defendant CSXT's First Amended Supplemental Privilege Log. (Bird, Melissa) |
| 07/15/2021 | 427 | | ORDER granting in part and denying in part Defendants' 402 MOTION to Strike; the Motion is granted to the extent it seeks to strike the wage loss claims of Plaintiffs Grover Kelley and Michael L. Potter; if Plaintiffs Jeremy Napier and Dennis Sargent have not yet produced their missing W−2 forms, their wage loss claims for those years are stricken; the Motion is denied to the extent it seeks to strike the wage loss claims of the remaining Plaintiffs; the Motion is denied to the extent it seeks to strike Plaintiffs' expert Mr. Opp; directing the Parties to communicate with each other and promptly schedule the deposition of Mr. Opp, should Defendants desire to take it; further extending the discovery/deposition deadline to accommodate the completion of his deposition; if the Parties have difficulty agreeing upon a timely deposition, they shall contact the Court immediately. Signed by Judge Robert C. Chambers on 7/15/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 07/19/2021 | 428 | | TELEPHONIC MOTION HEARING held by Magistrate Judge Cheryl A. Eifert on 7/19/2021, re: Plaintiffs' 406 MOTION to Compel Discovery Responses; Court Reporter: CourtSmart. (hkl) |
| 07/19/2021 | 429 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Second Amended Supplemental Privilege Log. (Bird, Melissa) |
| 07/20/2021 | 430 | | ORDER granting in part and denying in part Plaintiffs' 406 MOTION to Compel Discovery Responses; denying Plaintiffs' request to compel the deposition of T.J. Toeler; granting Plaintiffs' request to take a Rule 30(b)(6) deposition of Craig Heligman, M.D., concerning the topics provided in the deposition notice except for the topic concerning Defendants' document retention and destruction policies; directing the parties to file on or before 7/29/2021, briefs in which they argue their respective positions concerning the Rule 30(b)(6) topic concerning Defendants' document retention and destruction policies; directing Plaintiffs to identify no more than 30 documents from Defendant's recent privilege log for in camera review; Plaintiffs were ordered to notify Defendant CSX Transportation, Inc., on 7/19/2021, which 30 documents they identified, and Defendant shall provide the selected documents tothe undersigned for in camera review on or before 7/22/2021 as more fully set forth herein. Signed by Magistrate Judge Cheryl A. Eifert on 7/20/2021. (cc: counsel; any unrepresented parties) (hkl) |
| 07/20/2021 | 431 | | NOTICE OF DEPOSITION DUCES TECUM by CSX Transportation, Inc. of Michael Freeman on August 4, 2021 at 10:00 a.m. EST (Bird, Melissa) |
| 07/28/2021 | 432 | | NOTICE OF DEPOSITION by CSX Transportation, Inc. of Jeffrey B. Opp on August 20, 2021 and August 21, 2021 at 9:00 a.m. MT (11:00 a.m. ET) (Bird, |

| | | | Melissa) |
|---|---|---|---|
| 07/29/2021 | 433 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Third Amended Supplemental Privilege Log. (Bird, Melissa) |
| 07/29/2021 | 434 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele for Rule 26(a)(3) Pretrial Disclosures. (Bird, Melissa) |
| 07/29/2021 | 435 | | INCORRECT ENTRY; SEE ENTRY #438. (Dingwall, Jeffrey) (Modified on 7/30/2021 to detach image and file as entry #438) (mkw). |
| 07/29/2021 | 436 | | BRIEF by CSX Transportation, Inc. in opposition to Plaintiffs' Request for a Corporate Representative Deposition on the Topic of Defendants' Document Retention and Destruction Policies in response to the court's 430 Order. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bird, Melissa) (Modified on 7/30/2021 to remove link to #314 notice to take or amend deposition and to add link to #430 order) (mkw). |
| 07/29/2021 | 437 | | CERTIFICATE OF SERVICE by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Rule 26(a)(3) Pretrial Disclosures. (Dingwall, Jeffrey) |
| 07/29/2021 | 438 | | BRIEF by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, Elizabeth Creedon, Tom DeAngelo, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Shawn Lusk, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods Regarding Fed. R. Civ. P. 30(b)(6) Topics Concerning Defendants' Document Retention and Destruction Policies in response to the Court's 430 Order. (Attachments: # 1 Exhibit A – Supp. Initial Disclosures, # 2 Exhibit B – Initial Disclosures, # 3 Exhibit C – Heligman Initial Disclosures, # 4 Exhibit D – Email from Opp. Counsel, # 5 Exhibit E – Storm Depo |

| | | | |
|---|---|---|---|
| | | | Excerpt, # 6 Exhibit F – Heligman Depo Excerpt) (mkw) (Entered: 07/30/2021) |
| 07/30/2021 | | | NOTICE OF DOCKET CORRECTION re: 435 Supplemental Motion. Error: Incorrect event selected. Correction: Detached image and filed using the event response to court order. (mkw) |
| 07/30/2021 | 439 | | ORDER denying in part Plaintiffs' 368 MOTION for Partial Summary Judgment; granting in part Defendants' 360 MOTION for Summary Judgment; Plaintiffs' defamation claim is DISMISSED. Signed by Judge Robert C. Chambers on 7/30/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 07/30/2021 | 440 | | MEMORANDUM OPINION AND ORDER granting in part Defendants' 360 MOTION for Summary Judgment; Plaintiffs' wrongful discharge claim is DISMISSED. Signed by Judge Robert C. Chambers on 7/30/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 08/02/2021 | 441 | | MEMORANDUM OPINION AND ORDER granting in part Defendants' 360 MOTION for Summary Judgment; Plaintiffs' invasion of privacy claim is DISMISSED. Signed by Judge Robert C. Chambers on 8/2/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 08/02/2021 | 442 | | MEMORANDUM OPINION AND ORDER granting in part Defendants' 360 MOTION for Summary Judgment; Plaintiffs' intentional infliction of emotional distress claim is DISMISSED. Signed by Judge Robert C. Chambers on 8/2/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 08/02/2021 | 443 | | MEMORANDUM OPINION AND ORDER granting in part Defendants' 360 MOTION for Summary Judgment; Plaintiffs' tortious interference claim is DISMISSED. Signed by Judge Robert C. Chambers on 8/2/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 08/05/2021 | 444 | | MOTION HEARING held by Judge Robert C. Chambers on 8/5/2021; Court Reporter: Kathy Swinhart. (trj) |
| 08/10/2021 | 445 | | MEMORANDUM OPINION AND ORDER granting in part Defendants' 360 MOTION for Summary Judgment; Plaintiffs' Federal Railroad Safety Act claim is DISMISSED. Signed by Judge Robert C. Chambers on 8/10/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 08/10/2021 | 446 | | MOTION by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods for Leave to File |

| | | | |
|---|---|---|---|
| | | | Supplemental Briefing on Summary Judgment Motions. (Attachments: # 1 Affidavit of Kiel Garella, # 2 Exhibit A – Thoele Depo, # 3 Exhibit B – Creedon Depo, # 4 Exhibit C – Deangelo Depo)(Dingwall, Jeffrey) |
| 08/10/2021 | 447 | | ORDER directing Defendants to file their response(s) to Plaintiffs' 446 MOTION for Leave to File Supplemental Briefing on Summary Judgment Motions on or before 8/17/2021; Plaintiffs shall then have two days to file a reply. Signed by Judge Robert C. Chambers on 8/10/2021. (cc: counsel of record; any unrepresented parties) (jsa) |
| 08/11/2021 | 448 | | OPPOSITION by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele to 446 MOTION by All Plaintiffs for Leave to File Supplemental Briefing on Summary Judgment Motions. (Attachments: # 1 Exhibit 1 – Email Aug 6, 2021, # 2 Exhibit 2 – Email Aug 8, 2021, # 3 Exhibit 3 – Deposition transcripts of Dr. Heligman, # 4 Exhibit 4 – Email April 28, 2021, # 5 Exhibit 5 – Email July 13, 2021, # 6 Exhibit 6 – Aug 6, 2021 correspondence chain, # 7 Exhibit 7 – deposition transcript of Penny Dreher, # 8 Exhibit 8 – deposition transcript of Brian Barr, # 9 Exhibit 9 – deposition transcript of Kelly Crouch, # 10 Exhibit 10 – deposition transcript of Jolanda Johnson)(Bird, Melissa) |
| 08/12/2021 | 449 | | ORDER setting a Telephonic Hearing for 8/19/2021 at 9:30 AM before Magistrate Judge Cheryl A. Eifert. Signed by Magistrate Judge Cheryl A. Eifert on 8/12/2021. (cc: counsel of record; any unrepresented parties) (hkl) |
| 08/13/2021 | 450 | | REPLY BRIEF by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods to 448 Opposition. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Paul, Gregory) |
| 08/17/2021 | 451 | | CERTIFICATE OF SERVICE by CSX Transportation, Inc. for Fourth Amended Supplemental Privilege Log. (Bird, Melissa) |
| 08/18/2021 | 452 | | MEMORANDUM OPINION AND ORDER denying Plaintiffs' 446 MOTION for Leave to File Supplemental Briefing on Summary Judgment Motions. Signed by Judge Robert C. Chambers on 8/18/2021. (cc: counsel of record and any unrepresented parties) (mkw) |
| 08/19/2021 | 453 | | TELEPHONIC DISCOVERY STATUS CONFERENCE held by Magistrate Judge Cheryl A. Eifert on 8/19/2021; Court Reporter: CourtSmart. (hkl) |
| 08/19/2021 | 454 | | |

| | | | |
|---|---|---|---|
| | | | ORDER directing Defendants to produce DOC 00001802, DOC 00001935, DOC 00002707, and DOC 00002766 within three (3) business days if those documents have not yet been produced; directing Defendants, as to the Rule 30(b)(6) deposition, to produce a corporate designee to answer questions related to the document retention and destruction policies already produced. Signed by Magistrate Judge Cheryl A. Eifert on 8/19/2021. (cc: counsel of record) (hkl) |
| 08/23/2021 | 455 | | MEMORANDUM OPINION AND ORDER granting in part Defendants' 360 MOTION for Summary Judgment; denying in part Plaintiffs' 368 MOTION for Partial Summary Judgment; dismissing Plaintiffs' FMLA, ERISA, West Virginia Human Rights Act, and Rehabilitation Act claims. Signed by Judge Robert C. Chambers on 8/23/2021. (cc: counsel of record; any unrepresented parties) (hkl) |
| 08/23/2021 | 456 | | JUDGMENT ORDER with entry of the accompanying 455 Memorandum Opinion and Order, awarding summary judgment in favor of Defendants on the remaining claims; as all claims now have been resolved in favor of Defendants, directing that judgment be issued in their favor and that this case be dismissed and stricken from the docket of this Court. Signed by Judge Robert C. Chambers on 8/23/2021. (cc: counsel of record; any unrepresented parties) (hkl) |
| 08/23/2021 | 457 | | TRANSMITTED CERTIFIED COPY of 456 Judgment Order to counsel of record and any unrepresented parties. (hkl) |
| 09/10/2021 | 458 | | TRANSCRIPT OF PROCEEDINGS of Motion Hearing held on August 5, 2021, before Judge Robert C. Chambers. Court Reporter Kathy Swinhart, Telephone number 304–528–7583. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due 9/20/2021. Redaction Request due 10/1/2021. Redacted Transcript Deadline set for 10/12/2021. Release of Transcript Restriction set for 12/9/2021. (kls) |
| 09/13/2021 | 459 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT for pro se and non–electronic filers re: 458 TRANSCRIPT of Motion Hearing held on August 5, 2021, before Judge Robert C. Chambers. Court Reporter Kathy Swinhart, Telephone number 304–528–7583. (klc) |
| 09/21/2021 | 460 | | PROPOSED BILL OF COSTS by CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Gus Thoele (Attachments: # 1 Exhibit Ex. 1 Transcripts Cost Chart, # 2 Exhibit Ex. 2 Deposition Transcript Invoices)(Bird, Melissa) |
| 09/21/2021 | 461 | | NOTICE OF APPEAL WITH FEE PAID by Tony Abdon, Brandon Adkins, Justin Adkins, Bobby Akers, John Baker, Gerald Barber, Jason Barker, John Bills, James Blain, Justin Blake, Devery Brown, Michael Campbell, John Carpenter, Quincy Christian, Michael Clark, Randall Craycraft, James Deal, Chad Dowdy, Joshua Ferguson, Jerry Flocker, John Frasure, Edwin Glowacki, Joshua Hall, Gregory Hamm, Dennis Hutchinson, Jonathan Jeffers, Eric Jordan, Grover Kelley, Deanna Lanham, Chad Little, Sammy Maddix, David Manis, Jacqueline Marshall, Homer Maynard, Scott Morrison, Robert |

| | | |
|---|---|---|
| | | Mosteller, Ethan Mullins, Jeremy Napier, Michael Owens, Kevin Palmer, Shawn Patterson, Michael Potter, Michael L. Potter, Michael D. Potter, Zack Potter, Samuel Preston, Jonathan Rowe, Dennis Sargent, Eric Speaks, Donald Stephens, Danny Stewart, Christopher Clay Stiltner, Clay Stiltner, James Stinnett, Todd Thayer, The Estate of Chad Little, Travis Thornsberry, Jessee Wallace, Lloyd Williams, Michael Williams, Timothy Witt, Matthew Woods; re: 166 , 427 , 430 , 439 , 440 , 441 , 442 , 443 , 445 , 452 , 454 , 455 , 456 and [457 Orders. Filing Fee $505. Receipt # AWVSDC−8037879. (Garella, Charles) (Modified on 9/22/2021 to add link to various orders under appeal) (mkw). |
| 09/22/2021 | 462 | TRANSMITTAL OF NOTICE OF APPEAL TO 4CCA via APPEAL TRANSMITTAL SHEET re: 461 Notice of Appeal to the 4CCA of 166 , 427 , 430 , 439 , 440 , 441 , 442 , 443 , 445 , 452 , 454 , 455 , 456 and 457 Orders. (jsa) |
| 09/27/2021 | 463 | NOTICE OF APPELLATE CASE OPENING BY 4CCA re: 461 Notice of Appeal to the 4CCA in 4CCA Case No. 21−2051. Case Manager: T. Fischer. (mkw) |
| 10/05/2021 | 464 | TRANSCRIPT PURCHASE ORDER by Michael Williams, Chad Little, Sammy Maddix, Edwin Glowacki, Danny Stewart, Gerald Barber, Travis Thornsberry, Donald Stephens, Michael Potter, Michael L. Potter, John Frasure, Gregory Hamm, Clay Stiltner, Tony Abdon, John Carpenter, David Manis, Zack Potter, The Estate of Chad Little, Jonathan Rowe, Randall Craycraft, John Bills, Ethan Mullins, Deanna Lanham, Shawn Patterson, Jerry Flocker, Joshua Hall, Kevin Palmer, Matthew Woods, Robert Mosteller, Michael D. Potter, Jacqueline Marshall, Jessee Wallace, Lloyd Williams, Bobby Akers, Scott Morrison, Christopher Clay Stiltner, Samuel Preston, James Deal, Justin Adkins, Timothy Witt, Justin Blake, Michael Clark, Quincy Christian, Devery Brown, Chad Dowdy, Eric Jordan, Grover Kelley, Homer Maynard, James Stinnett, Joshua Ferguson, Eric Speaks, Jason Barker, Michael Campbell, James Blain, Dennis Sargent, Dennis Hutchinson, Michael Owens, Jonathan Jeffers, John Baker, Brandon Adkins, Jeremy Napier, Todd Thayer for proceedings held on 6/14/21, 7/19/21, 8/5/21, 8/19/21 before Judge Robert C. Chambers. (Dingwall, Jeffrey) |
| 10/08/2021 | 465 | TRANSCRIPT ORDER ACKNOWLEDGMENT with Forms Attached 4CCA Case Number: 21−2051. Court Reporter: Kathy Swinhart. Transcript due on 12/14/2021. Dates of Proceedings: 8/5/2021, 8/19/2021, 7/19/2021, 6/14/2021. (jsa) |
| 10/19/2021 | 466 | APPEAL TRANSCRIPT FILED of Telephonic Case Management Conference for dates of June 14, 2021, before Judge Robert C. Chambers, re 461 Notice of Appeal to the 4CCA, Court Reporter Kathy Swinhart, Telephone number 304−528−7583. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? − No. Notice of Intent to Redact due 10/29/2021. Redaction Request due 11/9/2021. Redacted Transcript Deadline set for 11/19/2021. Release of Transcript Restriction set for 1/18/2022. (kls) |
| 10/21/2021 | 467 | |

| | | |
|---|---|---|
| | | APPEAL TRANSCRIPT FILED of Telephonic Motion Hearing for dates of July 19, 2021, before Magistrate Judge Cheryl A. Eifert, re 461 Notice of Appeal to the 4CCA, Court Reporter Kathy Swinhart, Telephone number 304–528–7583. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? – No. Notice of Intent to Redact due 11/1/2021. Redaction Request due 11/12/2021. Redacted Transcript Deadline set for 11/22/2021. Release of Transcript Restriction set for 1/19/2022. (kls) |
| 10/21/2021 | 468 | APPEAL TRANSCRIPT FILED of Telephonic Discovery Status Conference for dates of August 19, 2021, before Magistrate Judge Cheryl A. Eifert, re 461 Notice of Appeal to the 4CCA, Court Reporter Kathy Swinhart, Telephone number 304–528–7583. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? – Yes. Notice of Intent to Redact due 11/1/2021. Redaction Request due 11/12/2021. Redacted Transcript Deadline set for 11/22/2021. Release of Transcript Restriction set for 1/19/2022. (kls) |
| 10/21/2021 | 469 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT for pro se and non–electronic filers re 466 Appeal Transcript of Telephonic Case Management Conference held on June 14, 2021, before Judge Robert C. Chambers, 467 Appeal Transcript of Telephonic Motion Hearing held on July 19, 2021, before Magistrate Judge Cheryl A. Eifert, and 468 Appeal Transcript of Telephonic Discovery Status Conference held on August 19, 2021, before Magistrate Judge Cheryl A. Eifert. Court Reporter: Kathy Swinhart, Telephone number 304–528–7583. (klc) |
| 07/07/2022 | 470 | PROPOSED ORDER Agreed Order of Dismissal by Plaintiffs listed as more fully set forth herein, CSX Transportation, Inc., Elizabeth Creedon, Tom DeAngelo, Kenneth Ray Emerson, Craig S. Heligman, Delando Jones, Shawn Lusk, Curt Shogren, Milton Storm, Gus Thoele. (Bird, Melissa) (Modified on 7/7/2022 to add party filers) (mkw). |
| 07/11/2022 | 471 | AGREED ORDER OF DISMISSAL directing that claims of the Plaintiffs listed herein against the Defendants are DISMISSED WITH PREJUDICE; the herein–listed Plaintiffs and the Defendants shall bear their own costs. Signed by Judge Robert C. Chambers on 7/11/2022. (cc: counsel of record) (jsa) |
| 07/11/2022 | 472 | TRANSMITTED CERTIFIED COPY of 471 Agreed Order of Dismissal to counsel of record. (jsa) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

JUSTIN ADKINS; JUSTIN BLAKE; EDWIN
GLOWACKI; ERIC JORDAN; KEVIN PALMER;
SAMUEL PRESTON; DENNIS SARGENT;
TRAVIS THORNSBERRY; MICHAEL
WILLIAMS; JOHN BAKER; JAMES BLAIN;
DEVERY BROWN; JAMES DEAL; JONATHAN
JEFFERS; ROBERT MOSTELLER; MICHAEL L.
POTTER; MICHAEL D. POTTER; JESSE
WALLACE; TIMOTHY WITT; BOBBY AKERS;
GERALD BARBER; JOHN BILLS; MICHAEL
CLARK; RANDALL CRAYCRAFT; JOHN
FRASURE; JOSHUA HALL; SAMMY MADDIX;
ZACK POTTER; JAMES STINNETT; TODD        Civil Action Number: 3:18-cv-00321
THAYER; DEANNA LANHAM; MICHAEL
CAMPBELL; TONY ABDON; THE ESTATE OF
CHAD LITTLE; BRANDON ADKINS;
JACQUELINE MARSHALL; HOMER MAYNARD;
SCOTT MORRISON; JEREMY NAPIER; SHAWN
PATTERSON; MATTHEW WOODS; JOHN
CARPENTER; QUINCY CHRISTIAN; GREGORY
HAMM; ETHAN MULLINS; MICHAEL OWENS;
JONATHAN ROWE; DANNY STEWART; LLOYD
WILLIAMS; DAVID MANIS; JOSHUA
FERGUSON; ERIC SPEAKS; DONALD
STEPHENS; JASON BARKER; CHAD DOWDY;
JERRY FLOCKER; GROVER KELLEY;
CHRISTOPHER CLAY STILTNER; DENNIS
HUTCHINSON;

       Plaintiffs,

    vs.

CSX TRANSPORTATION, INC.; CSX
CORPORATION; CRAIG S. HELIGMAN, M.D.;
GUS THOELE; CURT SHOGREN; MILTON
STORM; DELANDO JONES; TOM DEANGELO;
SHAWN LUSK; ELIZABETH CREEDON; and
KENNETH RAY EMERSON.

       Defendants.

1

## THIRD AMENDED COMPLAINT

AND NOW, come the Plaintiffs, by and through their undersigned counsel and file the within Third Amended Complaint, to obtain declaratory relief and all available remedies under Section 510 of the Employee Retirement Income Security Act (ERISA), Section 504 of the Rehabilitation Act of 1973 (Rehab Act), the West Virginia Human Relations Act (WVHRA), the Family and Medical Leave Act (FMLA), the Federal Railroad Safety Act (FRSA) and state law causes of action including defamation, invasion of privacy, tortious interference, intentional infliction of emotional distress and wrongful discharge.

## JURISDICTION AND VENUE

1.      Jurisdiction over plaintiffs' claims is conferred on this Court pursuant to 29 U.S.C. § 1132, 28 U.S.C § 1331 and 28 U.S.C. § 1343(a)(4), and the plaintiffs request the Court to exercise supplemental jurisdiction over the plaintiff's pendent state claims pursuant to 28 U.S.C. section 1367. This is an action brought pursuant to section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. 1001, et seq., under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 et seq., the West Virginia Human Relations Act, Title 5-11-1 et seq., under the Family and Medical Leave Act of 1993, 29 U.S.C. Sections 2601 et seq., under the Federal Railroad Safety Act, 49 U.S.C. § 20109, and state law causes of action. The Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties of the federal causes of action and supplemental jurisdiction over the state law causes of action.

2.      Venue is properly laid in this district pursuant to section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), in that the subject employee benefit plan is administered in this district, the breaches of duty herein alleged occurred in this district, and most plaintiffs reside in this district, and pursuant to 28 U.S.C. §1391(b), in that the causes of action arose in this district.

## PARTIES

3.       Each of the above Plaintiffs were employees of defendants who were terminated for, among other reasons, use of their health insurance, were accused of fraud to the federal government and private insurers, denied medical leave of absence and had their rights violated by exposing their medical records. Many of the Plaintiffs were employed at CSX's Huntington Locomotive Shop and/or had their disciplinary hearing resulting in termination at 935 7th Avenue in Huntington, West Virginia.

4.       CSX Transportation, Inc. (CSXT) is a rail carrier engaged in interstate commerce. CSXT is incorporated under the laws of Virginia, does business in 23 states, including West Virginia at 935 7th Avenue, Huntington, West Virginia, and maintains its corporate headquarters at 500 Water Street, Jacksonville, Florida 32202. Upon information and belief, CSXT is a wholly owned subsidiary of CSX and shares common ownership and control.

5.       CSX Corporation (CSX) is a rail carrier engaged in interstate commerce. It is incorporated under the laws of Virginia and maintains its principal place of business at 500 Water Street, Jacksonville, Florida 32202. CSX owns, manages, operates, and/or controls numerous subsidiaries, including CSXT.

6.       Dr. Craig Heligman is the Chief Medical Officer of CSX and/or CSXT. Among other duties, he administers the Occupational Health Department for CSX and/or CSXT and maintains his office at 500 Water Street, Jacksonville, Florida 32202.

7.       Gus Thoele is the Assistant Plant Superintendent for CSX and/or CSXT in Waycross, Georgia. Among other duties, he serves as an Investigating Hearing Officer for disciplinary proceedings at CSX and/or CSXT.

8.      Curt Shogren is the Plant Superintendent of the Huntington Locomotive Shop for CSX and/or CSXT in Huntington, West Virginia. Among other duties, he serves at the Charging Manager for disciplinary proceedings at CSX and/or CSXT.

9.      Additional individual supervisors over the plaintiffs include Milton Storm, Delando Jones, Tom DeAngelo, Shawn Lusk, Elizabeth Creedon and Kenneth Ray Emerson.

10.     The Defendants, CSX Transportation, Inc., and CSX Corporation, hereinafter referred to as ("CSX"), is an international transportation company offering a variety of rail, container-shipping, intermodal, trucking and contract logistics services and located at 500 Water Street, Jacksonville, Florida 32202.

11.     Individual defendants, Craig S. Heligman, M.D., Gus Thoele, Curt Shogren, Milton Storm, Delando Jones, Tom DeAngelo, Shawn Lusk, Elizabeth Creedon and Kenneth Ray Emerson are managerial agents and sued in their individual capacities under ERISA, the Rehabilitation Act, West Virginia Human Relations Act, FMLA, FRSA, and state law causes of action.

## SUMMARY OF ACTION

### Justin Adkins – Electrician

12.     On or about June 21, 2017, Adkins sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

13.     Dr. Johnson evaluated Adkins, including his complaints of pain in his neck rating at an 8 out of 10. Dr. Johnson ordered x-rays and ordered Adkins off work.

14.     On or about June 21, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Adkins. Among other things, the

form described Adkins' injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Adkins needed to be off work until August 21, 2017.

15.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

16.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

17.    On or about July 31, 2017, Adkins sought treatment from an orthopedist, Dr. Luis E. Bolano, for the same injuries for which he was treating with Dr. Johnson. Dr. Bolano advised Adkins to continue with his current therapy (treating with Dr. Johnson) and to proceed with nonoperative treatment to include wearing a brace and activity modification. Dr. Bolano administered an injection into Adkins right shoulder, applied a brace to his elbow, and recommended a follow up in two months.

18.    On or about August 17, 2017, Dr. Johnson again faxed a COII form to the CSX Medical Department for Adkins. This COII provided an update on Adkins' injuries and treatment and estimated he would need to remain off work until October 17, 2017.

19.    On or about July 26, 2017, CSX and/or CSXT issued a notice to Adkins to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

20.     The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202". An amended charge letter was issued on or about July 28, 2017.

21.     A formal disciplinary investigation was held on August 24, 2017 at 935 7th Avenue in Huntington, West Virginia. Adkins was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

22.     The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

23.     On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Office of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

24.     Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General]

to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

25.     Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

26.     The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Justin Adkins.

27.     On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

28.     On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Justin Adkins was again included on this list.

29.     The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

30.     Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Justin Adkins was not among those who were scheduled to be abolished or furloughed.

31.     During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the

employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did

not doubt the injuries claimed by the employees or the validity of the documents provided by the

doctors, but without evidence, that he doubted the motivation behind the submitted medical

documentation.

32.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey

to advise them that "CSX will no longer accept any medical documentation completed by your

office on behalf of any CSX employee."

33.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees,

including Justin Adkins, to advise them that:

> the CSX Medical Department is no longer accepting any medical
> documentation completed by Shannon Johnson, DC, or Daniel
> Carey II, DC. If you continue to have a need to be off of work for a
> medical reason or wish to return to work from a medical leave,
> please provide updated medical documentation from your primary
> care or treating physician, other than the two referenced above.

34.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the

COII of Adkins from Dr. Johnson. Dr. Heligman admitted that he had no other information

regarding the injury to Adkins or his treatment other than what was contained on the COII.

35.    Through his testimony during the disciplinary investigation, Dr. Heligman

confirmed that he had no proof that Adkins or any of the employees went to Drs. Johnson or Carey

for any improper purpose.

36.    Through his testimony during the disciplinary investigation, Dr. Heligman testified

that the decision for an employee to be held out of service for an illness or an injury is one to be

made between the employee-patient and the treating physician.

37.    Dr. Heligman did not personally examine or treat Adkins or any of the other

CSX/CSXT employees.

38.     Through his testimony at the disciplinary investigation, Shogren confirmed that Adkins was not part of the furlough/abolishment notice.

39.     During the disciplinary investigation, CSX/CSXT presented Adkins' personal and private  medical records to all in attendance, including the other charged employees.

40.     During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

41.     Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Adkins.

42.     Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

43.     During the disciplinary investigation, Dr. Heligman and Shogren testified that Adkins, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

44.     Dr. Heligman and Shogren also testified that Adkins, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

45.     As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

46.     According the CSX/CSXT, the purpose of the formal disciplinary investigation of Adkins and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Adkins investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

47.     By letter dated September 21, 2017, CSX/CSXT notified Adkins that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

48.     Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

49.     During the course of Adkins' employment with CSX/CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

50.     Due to the repetitive and physical nature of Adkins' employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

51.     The cumulative injuries sustained by Adkins during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

52.     In the event Adkins was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Justin Blake – Electrician**

53.     On or about July 5, 2017, Blake sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

54.     Dr. Carey evaluated Blake, including his complaints of pain in his neck, his upper/mid back, and in his right shoulder and arm. Dr. Carey ordered x-rays and ordered Blake off work.

55.     On or about July 5, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Blake. Among other things, the form described Blake injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Blake needed to be off work until September 3, 2017.

56.     CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

57.     As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

58.     On or about July 28, 2017, CSX and/or CSXT issued a notice to Blake to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 20, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

59.     The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

60.     A formal disciplinary investigation was held on August 24, 2017 in Huntington, West Virginia. Blake was joined in the investigation by other CSX/CSXT employees who were

being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

61.     The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

62.     On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

63.     Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

64.     Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

65.     The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General did not include Justin Blake.

66.     On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees. Justin Blake was not included on this list.

67.     On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Justin Blake was included on this list.

68.     The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

69.     Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Justin Blake was among those who were scheduled to be furloughed.

70.     During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

71.     On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

72.     On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Justin Blake, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

73.     During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Blake from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Blake or his treatment other than what was contained on the COII.

74.     Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Blake or any of the employees went to Drs. Johnson or Carey for any improper purpose.

75.     Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

76.     Dr. Heligman did not personally examine or treat Blake or any of the other CSX/CSXT employees.

77.     During the disciplinary investigation, CSX/CSXT presented Blake' personal and private medical records to all in attendance, including the other charged employees.

14

78.     During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

79.     Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Blake.

80.     Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

81.     During the disciplinary investigation, Dr. Heligman and Shogren testified that Blake, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

82.     Dr. Heligman and Shogren also testified that Blake, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

83.     As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

84.     According the CSX/CSXT, the purpose of the formal disciplinary investigation of Blake and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Blake investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

85.     By letter dated September 21, 2017, CSX/CSXT notified Blake that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

86.     Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

87.     During the course of Blake's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

88.     Due to the repetitive and physical nature of Blake's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

89.     The cumulative injuries sustained by Blake during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

90.     In the event Blake was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Edwin Glowacki – Electrician**

91.     On or about June 19, 2017, Glowacki sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries sustained.

92.     Dr. Johnson evaluated Glowacki, including his complaints of pain in his lower back and hip areas. Dr. Johnson ordered x-rays and ordered Glowacki off work.

16

93.     On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Glowacki. Among other things, the form described Glowacki injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Glowacki needed to be off work until August 19, 2017.

94.     CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

95.     As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

96.     On or about July 27, 2017, Glowacki sought treatment from the Veteran's Hospital for injuries for which he was treating with Dr. Johnson. The VA issued work restrictions for 4 weeks with an anticipated release date of August 27, 2017.

97.     On or about August 20, 2017, Dr. Johnson issued a written letter that Glowacki's recovery had worsened and continued to restrict him from returning to work.

98.     On or about July 26, 2017, CSX and/or CSXT issued a notice to Glowacki to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

99.     The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

100.    A formal disciplinary investigation was held on August 24, 2017 in Huntington, West Virginia. Glowacki was joined in the investigation by other CSX/CSXT employees who were

17

being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

101.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

102.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees off work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

103.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

104.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

105.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Edwin Glowacki.

106.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

107.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Edwin Glowacki was again included on this list.

108.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

109.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Edwin Glowacki was among those who were scheduled to be abolished or furloughed.

110.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

111.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

112.    30.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Edwin Glowacki, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

113.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Glowacki from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Glowacki or his treatment other than what was contained on the COII.

114.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Glowacki or any of the employees went to Drs. Johnson or Carey for any improper purpose.

115.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

116.    Dr. Heligman did not personally examine or treat Glowacki or any of the other CSX/CSXT employees.

117.    During the disciplinary investigation, CSX/CSXT presented Glowacki's personal and private medical records to all in attendance, including the other charged employees.

118.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

119.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Glowacki.

120.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

121.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Glowacki, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

122.    Dr. Heligman and Shogren also testified that Glowacki, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

123.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

124.    According to CSX/CSXT, the purpose of the formal disciplinary investigation of Glowacki and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Glowacki investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

125. By letter dated September 21, 2017, CSX/CSXT notified Glowacki that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

126. Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

127. During the course of Glowacki's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

128. Due to the repetitive and physical nature of Glowacki's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

129. The cumulative injuries sustained by Glowacki during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

130. In the event Glowacki was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Eric Jordan – Electrician**

131. On or about July 20, 2017, Jordan sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

132. Dr. Carey evaluated Jordan, prescribed a course of treatment, and ordered Jordan off work until September 25, 2017.

133.    On or about July 20, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Jordan. Among other things, the form described Jordan injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Jordan needed to be off work until September 25, 2017.

134.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

135.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

136.    On or about July 26, 2017, CSX and/or CSXT issued a notice to Jordan to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

137.    The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202". An amended notice was issued on or about July 28, 2017.

138.    A formal disciplinary investigation was held on August 24, 2017 in Huntington, West Virginia. Jordan was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

139.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey

23

or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

140.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

141.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

142.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

143.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Eric Jordan.

144.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

145.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Eric Jordan was again included on this list.

146.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

147.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Eric Jordan was not among those to be furloughed.

148.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

149.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

150.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Eric Jordan, to advise them that:

>    the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel

> Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

151. During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Jordan from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Jordan or his treatment other than what was contained on the COII.

152. Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Jordan or any of the employees went to Drs. Johnson or Carey for any improper purpose.

153. Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

154. Dr. Heligman did not personally examine or treat Jordan or any of the other CSX/CSXT employees.

155. Through his testimony at the disciplinary investigation, Shogren confirmed that Jordan was not part of the furlough/abolishment notice.

156. During the disciplinary investigation, CSX/CSXT presented Jordan's personal and private medical records to all in attendance, including the other charged employees.

157. During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

158. Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Jordan.

159.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

160.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Jordan, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

161.    Dr. Heligman and Shogren also testified that Jordan, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

162.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

163.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Jordan and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Jordan investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

164.    By letter dated September 21, 2017, CSX/CSXT notified Jordan that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

165.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

166.    During the course of Jordan's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

167.    Due to the repetitive and physical nature of Jordan's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

168.    The cumulative injuries sustained by Jordan during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

169.    In the event Jordan was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Kevin Palmer – Electrician**

170.    On or about July 6, 2017, Palmer sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

171.    Dr. Johnson evaluated Palmer, including his complaints of pain in his neck diagnosing a cervical sprain, cervicocranal syndrome and muscle spasms. Dr. Johnson ordered x-rays and ordered Palmer off work.

172.    On or about July 6, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Palmer. Among other things, the form described Palmer injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Palmer needed to be off work until September 6, 2017.

28

173.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

174.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

175.    On or about July 31, 2017, Palmer sought treatment from an orthopedist, Dr. Luis E. Bolano, for injuries to his right shoulder and wrist. Dr. Bolano advised Palmer to continue with his current therapy (treating with Dr. Johnson) and to proceed with nonoperative treatment to include wearing a brace and activity modification.

176.    Palmer continued under the care of Dr. Johnson consistent with the treatment plan.

177.    On or about July 26, 2017, CSX and/or CSXT issued a notice to Palmer to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

178.    The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

179.    A formal disciplinary investigation was held on August 24, 2017 in Huntington, West Virginia. Palmer was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

180.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson

29

or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

181.     On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

182.     Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

183.     Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

184.     The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Kevin Palmer.

185.     On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

186.     On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Kevin Palmer was again included on this list.

187.     The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

188.     Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Kevin Palmer was not among those who were scheduled to be abolished or furloughed.

189.     During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

190.     On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

191.     On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Kevin Palmer, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

192.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Palmer from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Palmer or his treatment other than what was contained on the COII.

193.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Palmer or any of the employees went to Drs. Johnson or Carey for any improper purpose.

194.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

195.    Dr. Heligman did not personally examine or treat Palmer or any of the other CSX/CSXT employees.

196.    Through his testimony at the disciplinary investigation, Shogren confirmed that Palmer was not part of the furlough/abolishment notice.

197.    During the disciplinary investigation, CSX/CSXT presented Palmer's personal and private medical records to all in attendance, including the other charged employees.

198.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

199.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Palmer.

200.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

201.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Palmer, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

202.    Dr. Heligman and Shogren also testified that Palmer, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

203.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

204.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Palmer and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Palmer investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

205.    By letter dated September 22, 2017, CSX/CSXT notified Palmer that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics

Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

206.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

207.    During the course of Palmer's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

208.    Due to the repetitive and physical nature of Palmer's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

209.    The cumulative injuries sustained by Palmer during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

210.    In the event Palmer was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Samuel Preston – Electrician**

211.    On or about June 13, 2017, Preston sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

212.    Dr. Johnson evaluated Preston, including his complaints of pain in his neck and shoulder pain. Dr. Johnson ordered x-rays and ordered Preston off work.

213.    On or about June 13, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Preston. Among other things, the

34

form described Preston's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that

Preston needed to be off work until August 13, 2017.

214.    CSX and/or CSXT requires that COII forms be submitted by treating physicians

on behalf of employees who need to be off work due to injuries or illnesses.

215.    As a general rule, CSX and/or CSXT does not allow employees to work "light

duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option

is to remain completely off work.

216.    On or about August 8, 2017, Dr. Johnson again faxed a COII form to the CSX

Medical Department for Preston. This COII provided an update on Preston' injuries and treatment

and estimated he would need to remain off work until October 9, 2017.

217.    On or about July 26, 2017, CSX and/or CSXT issued a notice to Preston to attend

a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place
> your responsibility, if any, in connection with information received
> on July 14, 2017 from the CSXT Chief Medical Officer that you
> were dishonest and attempted to defraud the Company and/or
> benefits providers when you, as well as more than 50 other craft
> employees, submitted potentially fraudulent documentation, and all
> circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water

Street, Jacksonville, Florida 32202".

218.    A formal disciplinary investigation was held on August 24, 2017 in Huntington,

West Virginia. Preston was joined in the investigation by other CSX/CSXT employees who were

being similarly charged. Thoele served as the hearing officer and Shogren served as the charging

manager. Dr. Heligman was present as a witness for the Company.

219.    The formal disciplinary investigation revealed that Dr. Heligman had decided,

without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson

or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

220.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General.  In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries ... is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

221.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

222.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

223.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Samuel Preston.

224.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

225.     On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Samuel Preston was again included on this list.

226.     The disciplinary investigation further revealed that the Respondents believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

227.     Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Samuel Preston was among those who were scheduled to be abolished or furloughed.

228.     During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

229.     On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

230.     On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Samuel Preston, to advise them that:

the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

231.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Preston from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Preston or his treatment other than what was contained on the COII.

232.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Preston or any of the employees went to Drs. Johnson or Carey for any improper purpose.

233.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

234.    Dr. Heligman did not personally examine or treat Preston or any of the other CSX/CSXT employees.

235.    Through his testimony at the disciplinary investigation, Shogren confirmed that Preston was not part of the furlough/abolishment notice.

236.    During the disciplinary investigation, CSX/CSXT presented Preston's personal and private medical records to all in attendance, including the other charged employees.

237.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

238.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Preston.

239.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of lnspector General on or about July 14, 2017.

240.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Preston, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

241.    Dr. Heligman and Shogren also testified that Preston, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

242.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

243.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Preston and the others was to "develop the facts and place ... responsibility, if any" yet more than a month before the Preston investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

244.    By letter dated September 21, 2017, CSX/CSXT notified Preston that he was dismissed from employment for violation of "CSX Operating Rule I 04.2.a, and Code of Ethics

Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

245.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

246.    During the course of Preston's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

247.    Due to the repetitive and physical nature of Preston's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

248.    The cumulative injuries sustained by Preston during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

249.    In the event Preston was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Dennis Sargent – Electrician**

250.    On or about June 19, 2017, Sargent sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

251.    Dr. Johnson evaluated Sargent, including his complaints of lower back and hip pain as a result of stepping in a hole in his yard and falling. Dr. Johnson ordered x-rays from Our Lady of Bellefonte hospital and ordered Sargent off work.

252.    On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Sargent. Among other things, the form described Sargent injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Sargent needed to be off work until August 19, 2017.

253.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

254.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

255.    On or about August 3, 2017, Dr. Johnson again faxed a COII form to the CSX Medical Department for Sargent. This COII provided an update on Sargent' injuries and treatment and estimated he would need to remain off work until October 3, 2017.

256.    On or about July 26, 2017, CSX and/or CSXT issued a notice to Sargent to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

257.    The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

258.    A formal disciplinary investigation was held on August 24, 2017 in Huntington, West Virginia. Sargent was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

41

259.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

260.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

261.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

262.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

263.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Dennis Sargent.

264.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

265.     On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Dennis Sargent was again included on this list.

266.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

267.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Dennis Sargent last worked on June 14, 2017, was scheduled for his regular rest days on June 15 and 16th and then furloughed. Except for his dismissal, he would have since been recalled to work.

268.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

269.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

270.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Dennis Sargent, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

271.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Sargent from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Sargent or his treatment other than what was contained on the COII.

272.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Sargent or any of the employees went to Drs. Johnson or Carey for any improper purpose.

273.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

274.    Dr. Heligman did not personally examine or treat Sargent or any of the other CSX/CSXT employees.

275.    During the disciplinary investigation, CSX/CSXT presented Sargent's personal and private medical records to all in attendance, including the other charged employees.

276.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

277.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Sargent.

278.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

279.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Sargent, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

280.    Dr. Heligman and Shogren also testified that Sargent, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

281.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

282.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Sargent and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Sargent investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

283.     By letter dated September 21, 2017, CSX/CSXT notified Sargent that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

284.     Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

285.     During the course of Sargent's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

286.     Due to the repetitive and physical nature of Sargent's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

287.     The cumulative injuries sustained by Sargent during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

288.     In the event Sargent was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Travis Thornsberry – Electrician**

289.     On or about March 1, 2017, Thornsberry sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

290.     Dr. Johnson evaluated Thornsberry, including his complaints of pain in his back and hip. Dr. Johnson ordered x-rays and ordered Thornsberry off work.

291.    On or about July 27, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Thornsberry. Among other things, the form described Thornsberry's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Thornsberry needed to be off work until September 24, 2017.

292.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

293.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

294.    Thornsberry treated with Dr. Johnson since March 1, 2017.

295.    On or about July 26, 2017, CSX and/or CSXT issued a notice to Thornsberry to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

296.    The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

297.    A formal disciplinary investigation was held on August 24, 2017 in Huntington, West Virginia. Thornsberry was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

298.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson

or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

299.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

300.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

301.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

302.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Travis Thornsberry.

303.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

304.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Travis Thornsberry was again included on this list.

305.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

306.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Thornsberry was not among those to be furloughed.

307.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

308.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

309.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Travis Thornsberry, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel

> Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

310.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Thornsberry from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Thornsberry or his treatment other than what was contained on the COII.

311.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Thornsberry or any of the employees went to Drs. Johnson or Carey for any improper purpose.

312.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

313.    Dr. Heligman did not personally examine or treat Thornsberry or any of the other CSX/CSXT employees.

314.    Through his testimony at the disciplinary investigation, Shogren confirmed that Thornsberry was not part of the furlough/abolishment notice.

315.    During the disciplinary investigation, CSX/CSXT presented Thornsberry's personal and private medical records to all in attendance, including the other charged employees.

316.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

317.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Thornsberry.

318.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

319.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Thornsberry, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

320.    Dr. Heligman and Shogren also testified that Thornsberry, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

321.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

322.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Thornsberry and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Thornsberry investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

323.    By letter dated September 21, 2017, CSX/CSXT notified Thornsberry that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

324.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

325.    During the course of Thornsberry's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

326.    Due to the repetitive and physical nature of Thornsberry's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

327.    The cumulative injuries sustained by Thornsberry during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

328.    In the event Thornsberry was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Michael Williams – Electrician**

329.    On or about June 16, 2017, Williams sought and received medical treatment from Daniel J. Carey, II, D.C. at Carey Chiropractic and Rehabilitation, ("Dr. Carey") in Proctorville, OH for injuries.

330.    Dr. Carey evaluated Williams, including his complaints of pain in his chest and ribs and prescribed a course of treatment.

331.    On or about June 16, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Williams. Among other things, the form described Williams's injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Williams needed to be off work on short-term disability.

332.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

333.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

334.    On or about July 26, 2017, CSX and/or CSXT issued a notice to Williams to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

335.    The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

336.    A formal disciplinary investigation was held on October 5, 2017 in Huntington, West Virginia resulting in termination. Williams was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

337.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

338.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from

work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

339.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

340.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

341.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Michael Williams.

342.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

343.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Michael Williams was again included on this list.

344.    The disciplinary investigation further revealed that the Respondents believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order

to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

345.     Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Michael Williams was among those who were scheduled to be abolished or furloughed but would have been called back but for his termination.

346.     During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

347.     On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

348.     On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Michael Williams, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Carey, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

349.     During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Williams from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Williams or his treatment other than what was contained on the COII.

350.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Williams or any of the employees went to Drs. Johnson or Carey for any improper purpose.

351.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

352.    Dr. Heligman did not personally examine or treat Williams or any of the other CSX/CSXT employees.

353.    During the disciplinary investigation, CSX/CSXT presented Williams' personal and private medical records to all in attendance, including the other charged employees.

354.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

355.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Williams.

356.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

357.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Williams, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

358.    Dr. Heligman and Shogren also testified that Williams, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

359.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

360.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Williams and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Williams investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

361.    By letter dated November 2, 2017, CSX/CSXT notified Williams that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

362.    Upon information and belief, Drs. Carey and Carey were exonerated of any wrongdoing by their licensing authorities.

363.    During the course of Williams' employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

364.    Due to the repetitive and physical nature of Williams' employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

365. The cumulative injuries sustained by Williams during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

366. In the event Williams was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**John Baker - Boilermaker**

367. On or about June 19, 2017, and on dates subsequent thereto, Baker sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries to his neck and back.

368. Dr. Johnson evaluated Baker, prescribed a course of treatment, and ordered Baker off work until August 19, 2017.

369. On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Baker and estimated that Baker needed to be off work until August 19, 2017.

370. CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

371. As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

372. On or about July 25, 2017, CSX and/or CSXT issued a notice to Baker to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or

benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

373.    The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202.

374.    A formal disciplinary investigation was conducted on August 9, 2017 in Huntington, West Virginia. Baker was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

375.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

376.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

377.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

378.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

379.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included John Baker.

380.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

381.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. John Baker was again included on this list.

382.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

383.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. John Baker was among those who were scheduled to be furloughed.

384.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Baker, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

385.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

386.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including John Baker, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

387.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Baker from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Baker or his treatment other than what was contained on the notification of treatment. Baker presented a report from Dr. Johnson which included Dr. Johnson's diagnosis and treatment plan for Baker.

388.    During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Baker attempted to commit fraud or not.

389.    Through his testimony, Dr. Heligman confirmed that he had no proof that Baker or any of the employees went to Drs. Johnson or Carey for any improper purpose.

390.    Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

391.    Dr. Heligman did not personally examine or treat Baker or any of the other CSX/CSXT employees.

392.    During the disciplinary investigation, CSX/CSXT presented Baker's personal and private medical records to all in attendance, including the other charged employees.

393.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

394.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Baker.

395.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

396.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Baker, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

397.    Dr. Heligman and Shogren also testified that Baker, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

398.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

399.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Baker and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Baker investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

400.    By letter dated September 5, 2017, CSX/CSXT notified Baker that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

401.    During the course of Baker's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

402.    Due to the repetitive and physical nature of Baker's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

403.    The cumulative injuries sustained by Baker during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

404.    In the event Baker was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**James Blain - Boilermaker**

405.    On or about June 19, 2017, and on dates subsequent thereto, Blain sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

406.    Dr. Johnson evaluated Blain, prescribed a course of treatment, and ordered Blain off work until August 19, 2017.

407.    On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Blain and estimated that Blain needed to be off work until August 19, 2017.

408.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

409.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

410.    On or about July 25, 2017, CSX and/or CSXT issued a notice to Blain to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202.

411. A formal disciplinary investigation was conducted on August 9, 2017 in Huntington, West Virginia. Blain was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

412. The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

413. On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

414. Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General]

to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

415.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

416.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included James Blain.

417.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

418.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. James Blain was again included on this list.

419.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

420.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. James Blain was among those who were scheduled to be furloughed.

421.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did

not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Blain, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

422.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

423.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including James Blain, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

424.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Blain from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Blain or his treatment other than what was contained on the notification of treatment. Blain presented a report from Dr. Johnson which included Dr. Johnson's diagnosis and treatment plan for Blain.

425.    During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Blain attempted to commit fraud or not.

426.    Through his testimony, Dr. Heligman confirmed that he had no proof that Blain or any of the employees went to Drs. Johnson or Carey for any improper purpose.

427.     Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

428.     Dr. Heligman did not personally examine or treat Blain or any of the other CSX/CSXT employees.

429.     During the disciplinary investigation, CSX/CSXT presented Blain's personal and private medical records to all in attendance, including the other charged employees.

430.     During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

431.     Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Blain.

432.     Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

433.     During the disciplinary investigation, Dr. Heligman and Shogren testified that Blain, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

434.     Dr. Heligman and Shogren also testified that Blain, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

435. As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

436. According the CSX/CSXT, the purpose of the formal disciplinary investigation of Blain and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Blain investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

437. By letter dated September 5, 2017, CSX/CSXT notified Blain that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

438. Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

439. During the course of Blain's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

440. Due to the repetitive and physical nature of Blain's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

441. The cumulative injuries sustained by Blain during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

442.    In the event Blain was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Devery Brown - Boilermaker**

443.    On or about June 22, 2017, Brown sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

444.    Dr. Johnson evaluated Brown, prescribed a course of treatment, and ordered Brown off work until August 22, 2017.

445.    On or about June 22, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Brown. Among other things, the form described Brown injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Brown needed to be off work until August 22, 2017.

446.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

447.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

448.    On or about July 25, 2017, CSX and/or CSXT issued a notice to Brown to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft

employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202". An amended notice was issued on or about July 27, 2017.

449.    A formal disciplinary investigation was held on August 23, 2017 in Huntington, West Virginia. Brown was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

450.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

451.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

452.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General]

to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

453.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

454.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Devery Brown.

455.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

456.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Devery Brown was again included on this list.

457.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

458.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Devery Brown was not among those to be furloughed.

459.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did

not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

460.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

461.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Devery Brown, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

462.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Brown from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Brown or his treatment other than what was contained on the COII.

463.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Brown or any of the employees went to Drs. Johnson or Carey for any improper purpose.

464.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

465.   Dr. Heligman did not personally examine or treat Brown or any of the other CSX/CSXT employees.

466.    During the disciplinary investigation, CSX/CSXT presented Brown's personal and private  medical records to all in attendance, including the other charged employees.

467.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

468.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Brown.

469.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

470.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Brown, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

471.    Dr. Heligman and Shogren also testified that Brown, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

472.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

473.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Brown and the others was to "develop the facts and place … responsibility, if any" yet more than

a month before the Brown investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

474.    By letter dated September 21, 2017, CSX/CSXT notified Brown that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

475.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

476.    During the course of Brown's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

477.    Due to the repetitive and physical nature of Brown's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

478.    The cumulative injuries sustained by Brown during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

479.    In the event Brown was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**James Deal - Boilermaker**

480.    On or about July 7, 2017, and on dates subsequent thereto, Deal sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

481.    Dr. Carey evaluated Deal, prescribed a course of treatment, and ordered Deal off work until September 3, 2017.

482.    On or about July 7, 2017, Dr. Carey faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Deal and estimated that Deal needed to be off work until September 4, 2017.

483.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

484.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

485.    On or about July 25, 2017, CSX and/or CSXT issued a notice to Deal to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202.

486.    A formal disciplinary investigation was conducted on August 9, 2017 in Huntington, West Virginia. Deal was joined in the investigation by six other CSX/CSXT

employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

487.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

488.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

489.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

490.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

491.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included James Deal.

492.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

493.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. James Deal was again included on this list.

494.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

495.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. James Deal <u>was not</u> among those who were scheduled to be furloughed.

496.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including

Deal, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

497.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

498.    On or about September 1, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including James Deal, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

499.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Deal from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Deal or his treatment other than what was contained on the notification of treatment.

500.    During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Deal attempted to commit fraud or not.

501.    Through his testimony, Dr. Heligman confirmed that he had no proof that Deal or any of the employees went to Drs. Johnson or Carey for any improper purpose.

502.    Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

503.    Dr. Heligman did not personally examine or treat Deal or any of the other CSX/CSXT employees.

504.     During the disciplinary investigation, CSX/CSXT presented Deal's personal and private medical records to all in attendance, including the other charged employees.

505.     During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

506.     Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Deal.

507.     Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

508.     During the disciplinary investigation, Dr. Heligman and Shogren testified that Deal, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

509.     Dr. Heligman and Shogren also testified that Deal, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

510.     As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

511.     According the CSX/CSXT, the purpose of the formal disciplinary investigation of Deal and the others was to "develop the facts and place … responsibility, if any" yet more than a

month before the Deal investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

512.    By letter dated September 5, 2017, CSX/CSXT notified Deal that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

513.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

514.    During the course of Deal's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

515.    Due to the repetitive and physical nature of Deal's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

516.    The cumulative injuries sustained by Deal during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

517.    In the event Deal was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Jonathan Jeffers - Boilermaker**

518.    On or about June 19, 2017, and on dates subsequent thereto, Jeffers sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

519. Dr. Johnson evaluated Jeffers, prescribed a course of treatment, and ordered Jeffers off work until August 19, 2017.

520. On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Jeffers and estimated that Jeffers needed to be off work until August 19, 2017.

521. CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

522. As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

523. On or about July 25, 2017, CSX and/or CSXT issued a notice to Jeffers to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202."

524. A formal disciplinary investigation was conducted on August 9, 2017 in Huntington, West Virginia. Jeffers was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

525. The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson

or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

526.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

527.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

528.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

529.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Jonathan Jeffers.

530.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

531.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Jonathan Jeffers was again included on this list.

532.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

533.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Jonathan Jeffers was among those who were scheduled to be furloughed.

534.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Jeffers, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

535.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

536.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Jonathan Jeffers, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

537.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Jeffers from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Jeffers or his treatment other than what was contained on the notification of treatment.

538.    During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Jeffers attempted to commit fraud or not.

539.    Through his testimony, Dr. Heligman confirmed that he had no proof that Jeffers or any of the employees went to Drs. Johnson or Carey for any improper purpose.

540.    Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

541.    Dr. Heligman did not personally examine or treat Jeffers or any of the other CSX/CSXT employees.

542.    During the disciplinary investigation, CSX/CSXT presented Jeffers' personal and private medical records to all in attendance, including the other charged employees.

543.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

544.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Jeffers.

545.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

546.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Jeffers, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

547.    Dr. Heligman and Shogren also testified that Jeffers, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

548.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

549.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Jeffers and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Jeffers investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

550.    By letter dated September 5, 2017, CSX/CSXT notified Jeffers that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics

Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

551.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

552.    During the course of Jeffers' employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

553.    Due to the repetitive and physical nature of Jeffers' employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

554.    The cumulative injuries sustained by Jeffers during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

555.    In the event Jeffers was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**<u>Robert Mosteller – Boilermaker</u>**

556.    On or about June 19, 2016, Mosteller sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

557.    Dr. Johnson evaluated Mosteller and made the decision to take him off work and ordered cervical x-rays to further investigate the extent of his injuries.

558. Mosteller was ultimately diagnosed with sprain of the cervical ligaments, cervicocranial syndrome, headache, and muscle spasms of the back and was provided treatment accordingly.

559. On or about June 20, 2017 Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Mosteller. Among other things, the form described Mosteller's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Mosteller needed to be off work until August 19, 2017.

560. CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

561. As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

562. On or about July 25, 2017, CSX and/or CSXT issued a notice to Mosteller to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

563. A formal disciplinary investigation was held on August 9, 2017 in Huntington, West Virginia. Mosteller was joined in the investigation by other CSX/CSXT employees who were

being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

564.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

565.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

566.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

567.    The list of employees named in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Mosteller.

568.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

569.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

570.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Mosteller was again included on this list.

571.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

572.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Mosteller was among those to be furloughed.

573.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

574.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

575.   Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

576.   During the disciplinary investigation, the COII prepared for Claimant by Dr. Johnson was introduced as an exhibit.  Dr. Heligman admitted that he had no other information regarding the injury to Mosteller or his treatment other than what was contained on the COII.

577.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Mosteller or any of the employees went to Drs. Johnson or Carey for any improper purpose.

578.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

579.   Dr. Heligman did not personally examine or treat Mosteller or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

580.   During the disciplinary investigation, CSX/CSXT presented Mosteller's personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

581.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

91

582.    Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Mosteller.

583.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

584.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Mosteller, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

585.    Dr. Heligman and Shogren also testified that Mosteller, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

586.    According to CSX/CSXT, the purpose of the formal disciplinary investigation of Mosteller and the others was to "develop the facts and place … responsibility, if any" yet more than a month before Plaintiff investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

587.    By letter dated September 15, 2017, CSX/CSXT notified Mosteller that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

588.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

589.    During the course of Mosteller's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

590.    Due to the repetitive and physical nature of Mosteller's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

591.    The cumulative injuries sustained by Mosteller during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

592.    In the event Mosteller was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Michael L. Potter - Boilermaker**

593.    On or about March 20, 2017, M.L. Potter sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

594.    Dr. Johnson evaluated M.L. Potter, including his complaints of pain in his neck. Dr. Johnson ordered x-rays revealing a cervical strain and ordered M.L. Potter off work.

595.    On or about July 6, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for M.L. Potter. Among other things, the form described M.L. Potter injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that M.L. Potter needed to be off work until September 6, 2017.

596.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

597.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

598.    On or about July 26, 2017, CSX and/or CSXT issued a notice to M.L. Potter to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

599.    A formal disciplinary investigation was held on August 23, 2017 in Huntington, West Virginia. M.L. Potter was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

600.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

601.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from

work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

602.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

603.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

604.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included M.L. Potter.

605.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

606.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. M.L. Potter was again included on this list.

607.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order

to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

608.     Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017.

609.     During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

610.     On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

611.     On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including M.L. Potter, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

612.     During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of M.L. Potter from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to M.L. Potter or his treatment other than what was contained on the COII.

613.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that M.L. Potter or any of the employees went to Drs. Johnson or Carey for any improper purpose.

614.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

615.    Dr. Heligman did not personally examine or treat M.L. Potter or any of the other CSX/CSXT employees.

616.    During the disciplinary investigation, CSX/CSXT presented M.L. Potter's personal and private  medical records to all in attendance, including the other charged employees.

617.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

618.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including M.L. Potter.

619.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

620.    During the disciplinary investigation, Dr. Heligman and Shogren testified that M.L. Potter, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

621.    Dr. Heligman and Shogren also testified that M.L. Potter, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

622.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

623.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of M.L. Potter and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the M.L. Potter investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

624.    By letter dated September 21, 2017, CSX/CSXT notified M.L. Potter that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

625.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

626.    During the course of M.L. Potter's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

627.    Due to the repetitive and physical nature of M.L. Potter's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

628.    The cumulative injuries sustained by M.L. Potter during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

629.    In the event M.L. Potter was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Michael D. Potter – Boilermaker**

630.    On or about March 3, 2017, and on dates subsequent thereto, M.D. Potter sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky.

631.    Dr. Johnson evaluated M.D. Potter, prescribed a course of treatment, and ordered M.D. Potter off work until July 6, 2017.

632.    On or about July 6, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII")  that he was treating M.D. Potter and estimated that M.D. Potter needed to be off work until September 6, 2017.

633.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

634.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

635.    On or about July 25, 2017, CSX and/or CSXT issued a notice to M.D. Potter to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202.

636.    A formal disciplinary investigation was conducted on August 9, 2017 in Huntington, West Virginia. M.D. Potter was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

637.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

638.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield,

United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

639.     Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

640.     Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

641.     The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included M.D. Potter.

642.     On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

643.     On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. M.D. Potter was again included on this list.

644.     The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

645.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. M.D. Potter was among those who were scheduled to be furloughed.

646.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Wallace, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

647.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

648.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including M.D. Potter, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

649.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of M.D. Potter from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to M.D. Potter or his treatment other than what was contained on the

notification of treatment. M.D. Potter presented a report from Dr. Johnson which included Dr. Johnson's diagnosis and treatment plan for Wallace.

650.    During the disciplinary investigation, Dr. Heligman stated that he had no idea whether M.D. Potter attempted to commit fraud or not.

651.    Through his testimony, Dr. Heligman confirmed that he had no proof that M.D. Potter or any of the employees went to Drs. Johnson or Carey for any improper purpose.

652.    Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

653.    Dr. Heligman did not personally examine or treat M.D. Potter or any of the other CSX/CSXT employees.

654.    During the disciplinary investigation, CSX/CSXT presented M.D. Potter's personal and private medical records to all in attendance, including the other charged employees.

655.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

656.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including M.D. Potter.

657.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

658.    During the disciplinary investigation, Dr. Heligman and Shogren testified that M.D. Potter, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a),

which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

659.    Dr. Heligman and Shogren also testified that M.D. Potter, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

660.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

661.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of M.D. Potter and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the M.D. Potter investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

662.    By letter dated September 5, 2017, CSX/CSXT notified M.D. Potter that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

663.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

664.    During the course of M.D. Potter's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

665.    Due to the repetitive and physical nature of M.D. Potter's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

666.    The cumulative injuries sustained by M.D. Potter during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

667.    In the event M.D. Potter was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Jesse Wallace – Boilermaker**

668.    On or about June 19, 2017, and on dates subsequent thereto, Wallace sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

669.    Dr. Johnson evaluated Wallace, prescribed a course of treatment, and ordered Wallace off work until August 19, 2017.

670.    On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII")  that he was treating Wallace and estimated that Wallace needed to be off work until August 19, 2017.

671.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

672.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

673.    On or about July 25, 2017, CSX and/or CSXT issued a notice to Wallace to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202.

674.    A formal disciplinary investigation was conducted on August 9, 2017 in Huntington, West Virginia. Wallace was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

675.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

676.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The

letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

677.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

678.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

679.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Jesse Wallace.

680.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

681.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Jesse Wallace was again included on this list.

682.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

683.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Jesse Wallace was among those who were scheduled to be furloughed.

684.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Wallace, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

685.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

686.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Jesse Wallace, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

687.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Wallace from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Wallace or his treatment other than what was contained on the notification

of treatment. Wallace presented a report from Dr. Johnson which included Dr. Johnson's diagnosis and treatment plan for Wallace.

688.    During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Wallace attempted to commit fraud or not.

689.    Through his testimony, Dr. Heligman confirmed that he had no proof that Wallace or any of the employees went to Drs. Johnson or Carey for any improper purpose.

690.    Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

691.    Dr. Heligman did not personally examine or treat Wallace or any of the other CSX/CSXT employees.

692.    During the disciplinary investigation, CSX/CSXT presented Wallace's personal and private medical records to all in attendance, including the other charged employees.

693.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

694.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Wallace.

695.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

696.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Wallace, and the other charged employees, violated CSX/CSXT Employee Operating Rule

104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

697.    Dr. Heligman and Shogren also testified that Wallace, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

698.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

699.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Wallace and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Wallace investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

700.    By letter dated September 5, 2017, CSX/CSXT notified Wallace that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

701.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

702.    During the course of Wallace's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

703.    Due to the repetitive and physical nature of Wallace's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

704.    The cumulative injuries sustained by Wallace during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

705.    In the event Wallace was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Timothy Witt - Boilermaker**

706.    On or about June 21, 2017, and dates prior and subsequent thereto,  Witt sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

707.    Dr. Carey evaluated Witt, prescribed a course of treatment, and ordered Witt off work until August 21, 2017.

708.    On or about June 21, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Witt. Among other things, the form described Witt injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Witt needed to be off work until August 21, 2017.

709.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

710. As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

711. On or about July 25, 2017, CSX and/or CSXT issued a notice to Witt to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202". An amended notice was issued on or about July 28, 2017 and again on or about August 9, 2017.

712. A formal disciplinary investigation was held on August 23, 2017 in Huntington, West Virginia. Witt was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

713. The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

714. On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General.

In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

715.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

716.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

717.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Timothy Witt.

718.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

719.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Timothy Witt was again included on this list.

720.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

721.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Timothy Witt was not among those to be furloughed.

722.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

723.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

724.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Timothy Witt, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

725.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Witt from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Witt or his treatment other than what was contained on the COII.

726.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Witt or any of the employees went to Drs. Johnson or Carey for any improper purpose.

727.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

728.    Dr. Heligman did not personally examine or treat Witt or any of the other CSX/CSXT employees.

729.    During the disciplinary investigation, CSX/CSXT presented Witt's personal and private  medical records to all in attendance, including the other charged employees.

730.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

731.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Witt.

732.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

733.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Witt, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which

115

states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

734.    Dr. Heligman and Shogren also testified that Witt, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

735.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

736.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Witt and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Witt investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

737.    By letter dated September 21, 2017, CSX/CSXT notified Witt that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

738.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

739.    During the course of Witt's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

740.    Due to the repetitive and physical nature of Witt's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

741.    The cumulative injuries sustained by Witt during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

742.    In the event Witt was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Bobby Akers – Carman**

743.    On or about September 12, 2016, and on dates subsequent thereto, Akers sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

744.    Dr. Johnson evaluated Akers, including his complaints of back injuries. Dr. Johnson prescribed a course of treatment, ordered x-rays, and ordered Akers off work until July 6, 2017.

745.    On or about July 6, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Akers. Among other things, the form described Akers injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Akers needed to be off work until September 6, 2017.

746.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

747.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

748.     On or about July 28, 2017, CSX and/or CSXT issued a notice to Akers to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about August 8, 2017.

749.     A formal disciplinary investigation was held on August 10, 2017 in Huntington, West Virginia. Akers was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

750.     The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

751.     On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The

letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

752.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

753.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

754.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Bobby Akers.

755.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

756.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Bobby Akers was again included on this list.

757.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

758.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Bobby Akers <u>was not</u> among those who were scheduled to be furloughed.

759.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

760.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

761.    On or about September 8, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Bobby Akers, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

762.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Akers from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Akers or his treatment other than what was contained on the COII.

763.    During the disciplinary investigation, Akers produced a report from Dr. Johnson which detailed his diagnoses and treatment plan of Akers and which confirmed that Akers was still not able to return to work.

764.    Through his testimony, Dr. Heligman confirmed that he had no proof that Akers or any of the employees went to Drs. Johnson or Carey for any improper purpose.

765.    Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

766.    Dr. Heligman did not personally examine or treat Akers or any of the other CSX/CSXT employees.

767.    During the disciplinary investigation, CSX/CSXT presented Akers' personal and private medical records to all in attendance, including the other charged employees.

768.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

769.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Akers.

770.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

771.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Akers, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a),

121

which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

772.    Dr. Heligman and Shogren also testified that Akers, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

773.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

774.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Akers and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Akers investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

775.    By letter dated September 5, 2017, CSX/CSXT notified Akers that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

776.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

777.    During the course of Akers' employment with CSX and/or CSXT, her job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

778. Due to the repetitive and physical nature of Akers' employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

779. The cumulative injuries sustained by Akers during the course and scope of her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

780. In the event Akers was suffering from some form of pre-exisiting injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Gerald Barber – Carman**

781. On or about March 10, 2016, and on dates subsequent thereto, Barber sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

782. Dr. Johnson evaluated Barber, including his complaints of back and hip pain. Dr. Johnson prescribed a course of treatment, ordered x-rays, and ordered Barber off work until July 5, 2017.

783. On or about July 5, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Barber. Among other things, the form described Barber injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Barber needed to be off work until September 5, 2017.

784. CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

785.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

786.    On or about July 25, 2017, CSX and/or CSXT issued a notice to Barber to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 28, 2017 and a postponement notice on August 8, 2017.

787.    A formal disciplinary investigation was held on August 9, 2017 in Russell, Kentucky. Barber was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

788.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

789.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General.

USCA4 Appeal: 21-2051    Doc: 32-1    Filed: 07/30/2022    Pg: 234 of 536

In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

790.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

791.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

792.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Gerald Barber.

793.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

794.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Gerald Barber was again included on this list.

USCA4    230

795.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

796.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Gerald Barber <u>was not</u> among those who were scheduled to be furloughed.

797.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Barber, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

798.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

799.    On or about September 7, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Gerald Barber, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave,

please provide updated medical documentation from your primary
care or treating physician, other than the two referenced above.

800. During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Barber from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Barber or his treatment other than what was contained on the COII.

801. During the disciplinary investigation, Barber produced a report from Dr. Johnson which detailed his diagnoses and treatment plan of Barber and which confirmed that Barber was still not able to return to work.

802. Through his testimony, Dr. Heligman confirmed that he had no proof that Barber or any of the employees went to Drs. Johnson or Carey for any improper purpose.

803. Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

804. Dr. Heligman did not personally examine or treat Barber or any of the other CSX/CSXT employees.

805. During the disciplinary investigation, CSX/CSXT presented Barber's personal and private medical records to all in attendance, including the other charged employees.

806. During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

807. Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Barber.

808.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

809.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Barber, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

810.    Dr. Heligman and Shogren also testified that Barber, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

811.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

812.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Barber and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Barber investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

813.    By letter dated September 15, 2017, CSX/CSXT notified Barber that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

814.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

815. During the course of Barber's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

816. Due to the repetitive and physical nature of Barber's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

817. The cumulative injuries sustained by Barber during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

818. In the event Barber was suffering from some form of pre-exisiting injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**John Bills – Carman**

819. On or about June 19, 2017, and on dates subsequent thereto, Bills sought and received medical treatment from Daniel J. Carey, II, D.C. ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

820. Dr. Carey evaluated Bills, including his complaints of back pain. Dr. Carey prescribed a course of treatment, ordered x-rays, and ordered Bills off work until August 27, 2017.

821. On or about June 26, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Bills. Among other things, the form described Bills injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Bills needed to be off work until August 27, 2017.

822. CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

823.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

824.    On or about July 25, 2017, CSX and/or CSXT issued a notice to Bills to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 26, 2017 and again on July 28, 2017.

825.    A formal disciplinary investigation was held on August 7, 2017 in Russell, Kentucky. Bills was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

826.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson, D.C. ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

827.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General.

In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

828.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

829.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

830.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included John Bills.

831.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

832.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. John Bills was again included on this list.

833.     The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

834.     Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. John Bills <u>was not</u> among those who were scheduled to be furloughed.

835.     During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Bills, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

836.     On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

837.     On or about September 7, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including John Bills, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave,

please provide updated medical documentation from your primary
care or treating physician, other than the two referenced above.

838.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the
COII of Bills from Dr. Carey. Dr. Heligman admitted that he had no other information regarding
the injury to Bills or his treatment other than what was contained on the COII.

839.    During the disciplinary investigation, Bills produced a report from Dr. Carey which
detailed his diagnoses and treatment plan of Bills and which confirmed that Bills was still not able
to return to work.

840.    Through his testimony, Dr. Heligman confirmed that he had no proof that Bills or
any of the employees went to Drs. Johnson or Carey for any improper purpose.

841.    Through his testimony, Dr. Heligman testified that the decision for an employee to
be held out of service for an illness or an injury is one to be made between the employee-patient
and the treating physician.

842.    Dr. Heligman did not personally examine or treat Bills or any of the other
CSX/CSXT employees.

843.    During the disciplinary investigation, CSX/CSXT presented Bills' personal and
private medical records to all in attendance, including the other charged employees.

844.    During the disciplinary investigation, CSX/CSXT presented the personal and
private medical records of dozens of other employees, including those not charged in the
investigation, to all in attendance.

845.    Through his testimony in the disciplinary investigation, Shogren admitted to having
been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT
employees, including Bills.

846.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

847.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Bills, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

848.    Dr. Heligman and Shogren also testified that Bills, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

849.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

850.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Bills and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Bills investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

851.    By letter dated September 6, 2017, CSX/CSXT notified Bills that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

852.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

853.    During the course of Bills' employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

854.    Due to the repetitive and physical nature of Bills' employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

855.    The cumulative injuries sustained by Bills during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

856.    In the event Bills was suffering from some form of pre-exisiting injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Michael Clark – Carman**

857.    On or about June 22, 2017, and on dates subsequent thereto, Clark sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

858.    Dr. Johnson evaluated Clark, including his complaints of back and hip pain. Dr. Johnson prescribed a course of treatment, ordered x-rays, and ordered Clark off work until August 22, 2017.

859.    On or about June 22, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Clark. Among other things, the form described Clark injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Clark needed to be off work until August 22, 2017.

860.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

861.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

862.    On or about July 25, 2017, CSX and/or CSXT issued a notice to Clark to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 28, 2017 and a postponement notice on August 8, 2017.

863.    A formal disciplinary investigation was held on August 21, 2017 in Russell, Kentucky. Clark was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

864.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

865.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General.

In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

866.     Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

867.     Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

868.     The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Michael Clark.

869.     On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

870.     On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Michael Clark was again included on this list.

871.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

872.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Michael Clark <u>was not</u> among those who were scheduled to be furloughed.

873.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Clark, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

874.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

875.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Michael Clark, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave,

please provide updated medical documentation from your primary
care or treating physician, other than the two referenced above.

876.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Clark from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Clark or his treatment other than what was contained on the COII.

877.    During the disciplinary investigation, Clark produced a report from Dr. Johnson which detailed his diagnoses and treatment plan of Clark and which confirmed that Clark was still not able to return to work.

878.    Through his testimony, Dr. Heligman confirmed that he had no proof that Clark or any of the employees went to Drs. Johnson or Carey for any improper purpose.

879.    Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

880.    Dr. Heligman did not personally examine or treat Clark or any of the other CSX/CSXT employees.

881.    During the disciplinary investigation, CSX/CSXT presented Clark's personal and private medical records to all in attendance, including the other charged employees.

882.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

883.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Clark.

884.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

885.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Clark, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

886.    Dr. Heligman and Shogren also testified that Clark, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

887.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

888.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Clark and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Clark investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

889.    By letter dated September 15, 2017, CSX/CSXT notified Clark that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

890.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

891.    During the course of Calerk's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

892.    Due to the repetitive and physical nature of Clark's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

893.    The cumulative injuries sustained by Clark during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

894.    In the event Clark was suffering from some form of pre-exisiting injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Randall Craycraft – Carman**

895.    On or about June 7, 2017, and on dates subsequent thereto, Craycraft sought and received medical treatment from Daniel J. Carey, II, D.C. ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

896.    Dr. Carey evaluated Craycraft, including his complaints of back pain. Dr. Carey prescribed a course of treatment, ordered x-rays, and ordered Craycraft off work until August 20, 2017.

897.    On or about June 20, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Craycraft. Among other things, the form described Craycraft injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Craycraft needed to be off work until August 20, 2017.

898.     CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

899.     As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

900.     On or about July 25, 2017, CSX and/or CSXT issued a notice to Craycraft to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 27, 2017 and again on July 28, 2017.

901.     A formal disciplinary investigation was held on August 7, 2017 in Russell, Kentucky. Craycraft was joined in the investigation by three other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

902.     The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson, D.C. ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

903.     On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

904.     Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

905.     Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

906.     The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Randall Craycraft.

907.     On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

908.     On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter

included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Randall Craycraft was again included on this list.

909.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

910.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Randall Craycraft was not among those who were scheduled to be furloughed.

911.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Craycraft, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

912.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

913.    On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Randall Craycraft, to advise them that:

> the CSX Medical Department is no longer accepting any medical
> documentation completed by Shannon Johnson, DC, or Daniel
> Carey II, DC. If you continue to have a need to be off of work for a
> medical reason or wish to return to work from a medical leave,
> please provide updated medical documentation from your primary
> care or treating physician, other than the two referenced above.

914.     During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Craycraft from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Craycraft or his treatment other than what was contained on the COII.

915.     During the disciplinary investigation, Craycraft produced a report from Dr. Carey which detailed his diagnoses and treatment plan of Craycraft and which confirmed that Craycraft was still not able to return to work.

916.     Through his testimony, Dr. Heligman confirmed that he had no proof that Craycraft or any of the employees went to Drs. Johnson or Carey for any improper purpose.

917.     Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

918.     Dr. Heligman did not personally examine or treat Craycraft or any of the other CSX/CSXT employees.

919.     During the disciplinary investigation, CSX/CSXT presented Craycraft's personal and private medical records to all in attendance, including the other charged employees.

920.     During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

921.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Craycraft.

922.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

923.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Craycraft, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

924.    Dr. Heligman and Shogren also testified that Craycraft, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

925.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

926.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Craycraft and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Craycraft investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

927.    By letter dated September 6, 2017, CSX/CSXT notified Craycraft that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics

Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

928.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

929.    During the course of Craycraft's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

930.    Due to the repetitive and physical nature of Craycraft's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

931.    The cumulative injuries sustained by Craycraft during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

932.    In the event Craycraft was suffering from some form of pre-exisiting injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**John Frasure – Carman**

933.    On or about May 25, 2017, Frasure sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

934.    Dr. Johnson evaluated Frasure, including his complaints of back pain rating an 8 out of 10.  Dr. Johnson ordered that he have x-rays taken of his back and ordered him off work.

935.    On or about May 30, 2017 Frasure had back x-rays taken at Our Lady of Bellefonte Hospital which revealed the presence of "multilevel mild degenerative changes."

936.    Frasure also followed up with his primary care physician who made the decision not to prescribe steroid or pain medication due to the possibility that such medications could adversely affect Frasure's Crohn's disease.

937.    Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Frasure. Among other things, the form described Frasure's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Frasure needed to be off work from May 25, 2017 until July 25, 2017.

938.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

939.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

940.    On or about July 28, 2017, CSX and/or CSXT issued a notice to Frasure to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 20, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

941.    A formal disciplinary investigation was held on August 7, 2017 in Russell, Kentucky. Frasure was joined in the investigation by other CSX/CSXT employees who were being

similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

942.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

943.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

944.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

945.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

946.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

947.    The list of employees included in Dr. Heligman's July 21, 2017 letter to the RRB Inspector General included Frasure.

948.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Frasure was again included on this list.

949.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

950.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. However, Frasure was neither employed at the Huntington mechanical shop nor was he subject to the furloughs.

951.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

952.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

953.    Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

954.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Frasure from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Frasure or his treatment other than what was contained on the COII.

955.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Frasure or any of the employees went to Drs. Johnson or Carey for any improper purpose.

956.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

957.    Dr. Heligman did not personally examine or treat Frasure or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

958.    During the disciplinary investigation, CSX/CSXT presented Frasure's personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

959.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

960.    Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Frasure.

961.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

962.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Frasure, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

963.    Dr. Heligman and Shogren also testified that Frasure, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

964.    According to CSX/CSXT, the purpose of the formal disciplinary investigation of Frasure and the others was to "develop the facts and place … responsibility, if any" yet nearly a month before Frasure's investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

965.    By letter dated September 6, 2017, CSX/CSXT notified Frasure that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

966.    Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

967.    During the course of Frasure's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

968.    Due to the repetitive and physical nature of Frasure's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

969.    The cumulative injuries sustained by Frasure during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

970.    In the event Frasure was suffering from some form of pre-exisiting injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Joshua Hall – Carman**

971.    On or about July 6, 2017, Hall sought and received medical treatment from Daniel J. Carey II, D.C., ("Dr. Carey") at Carey Chiropractic in Russell, Kentucky for injuries.

972.    Dr. Carey evaluated Hall, including his complaints of pain in his knee and diagnosed him with a sprain/strain.  Hall was treated with therapy and exercise and ordered off work.

973.    On or about June 6, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Hall. Among other things, the form described Hall's injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Hall needed to be off work until September 3, 2017.

974.    CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

975.    As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

976.    On or about July 25, 2017, CSX and/or CSXT issued a notice to Hall to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

977.    A formal disciplinary investigation was held on August 7, 2017 in Russell, Kentucky. Hall was joined in the investigation by three other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

978.    The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

979.    On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

980.    Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

981.    Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

982.    The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Hall.

983.    On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

984.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter

included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Hall was again included on this list.

985.    The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

986.    Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. However, Hall was neither employed at the Huntington mechanical shop nor was he subject to the furloughs.

987.    During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

988.    On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

989.    Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave,

> please provide updated medical documentation from your primary
> care or treating physician, other than the two referenced above.

990.    During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Hall from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Hall or his treatment other than what was contained on the COII.

991.    Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Hall or any of the employees went to Drs. Johnson or Carey for any improper purpose.

992.    Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

993.    Dr. Heligman did not personally examine or treat Hall or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

994.    During the disciplinary investigation, CSX/CSXT presented Hall's personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

995.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

996.    Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Hall.

997.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

998.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Hall, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

999.    Dr. Heligman and Shogren also testified that Hall, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1000.   According to CSX/CSXT, the purpose of the formal disciplinary investigation of Hall and the others was to "develop the facts and place … responsibility, if any" yet nearly a month before Hall's investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1001.   By letter dated September 6, 2017, CSX/CSXT notified Hall that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1002.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1003.   During the course of Hall's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1004.   Due to the repetitive and physical nature of Hall's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1005.   The cumulative injuries sustained by Hall during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1006.   In the event Hall was suffering from some form of pre-exisiting injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Sammy Maddix – Carman**

1007.   On or about June 19, 2017, Maddix sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1008.   Dr. Johnson evaluated Maddix, including his complaints of back pain.  Dr. Johnson ordered that Maddix have x-rays taken of his back and ordered him off work.  After reviewing the x-ray reports, Dr. Johnson diagnosed Maddix with Lumbosacral sprain and Myospasms.

1009.   On or about June 20, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Maddix. Among other things, the form described Maddix's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Maddix needed to be off work until August 19, 2017.

1010.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1011.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1012.   On or about July 25, 2017, CSX and/or CSXT issued a notice to Maddix to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1013.   A formal disciplinary investigation was held on August 10, 2017 in Huntington, West Virginia. Maddix was joined in the investigation by four other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1014.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

1015.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield,

United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1016.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1017.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Maddix.

1018.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1019.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1020.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Maddix was again included on this list.

1021.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1022.  Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close

of business on June 23, 2017. However, Maddix <u>was not</u> among those scheduled to be abolished or furloughed.

1023.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1024.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1025.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Maddix, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1026.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Maddix from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Maddix or his treatment other than what was contained on the COII.

1027.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Maddix or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1028.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1029.   Dr. Heligman did not personally examine or treat Maddix or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

1030.   During the disciplinary investigation, CSX/CSXT presented Maddix's personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

1031.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

1032.   Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Maddix.

1033.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1034.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Maddix, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1035.  Dr. Heligman and Shogren also testified that Maddix, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1036.  According to CSX/CSXT, the purpose of the formal disciplinary investigation of Maddix and the others was to "develop the facts and place … responsibility, if any" yet nearly a month before Maddix's investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1037.  By letter dated September 5, 2017, CSX/CSXT notified Maddix that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1038.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1039.  During the course of Maddix's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1040.  Due to the repetitive and physical nature of Maddix's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1041.  The cumulative injuries sustained by Maddix during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1042.  In the event Maddix was suffering from some form of pre-exisiting injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part,

by one or more of the work related duties required of him during his employment with Defendants.

**Zack Potter – Carman**

1043. On or about July 11, 2017, Zack Potter sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1044. Dr. Johnson evaluated Potter, including his complaints of pain in his pelvis and back spasms. Dr. Johnson ordered x-rays and ordered Potter off work.

1045. On or about July 11, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Potter. Among other things, the form described Potter injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Potter needed to be off work until September 11, 2017.

1046. CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1047. As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1048. On or about July 25, 2017, CSX and/or CSXT issued a notice to Potter to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1049.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1050.   A formal disciplinary investigation was held on August 19, 2017. Potter was joined in the investigation by four other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1051.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1052.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1053.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General]

to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1054.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1055.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Zach Potter.

1056.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1057.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Justin Potter was again included on this list.

1058.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1059.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017.

1060.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did

not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1061.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1062.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Potter, to advise them that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1063.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Potter from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Potter or his treatment other than what was contained on the COII.

1064.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Potter or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1065.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1066.   Dr. Heligman did not personally examine or treat Potter or any of the other CSX/CSXT employees.

1067.   Through his testimony at the disciplinary investigation, Shogren confirmed that Potter was not part of the furlough/abolishment notice.

1068.   During the disciplinary investigation, CSX/CSXT presented Potter's personal and private medical records to all in attendance, including the other charged employees.

1069.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1070.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Potter.

1071.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1072.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Potter, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1073.   Dr. Heligman and Shogren also testified that Potter, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1074.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1075.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Potter and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Potter investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1076.   By letter dated September 15, 2017, CSX/CSXT notified Potter that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1077.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1078.   During the course of Potter's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1079.   Due to the repetitive and physical nature of Potter's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1080.   The cumulative injuries sustained by Potter during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1081.   In the event Potter was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**James Stinnett – Carman**

1082.   On or about June 22, 2017, Stinnett sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1083.   Dr. Johnson evaluated Stinnett, including his complaints of pain in his neck, cervicocranial syndrome, headaches and muscle spasms. Dr. Johnson ordered x-rays and ordered Stinnett off work.

1084.   On or about June 22, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Stinnett. Among other things, the form described Stinnett injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Stinnett needed to be off work until August 22, 2017.

1085.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1086.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1087.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Stinnett to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1088.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1089.   A formal disciplinary investigation was held on August 10, 2017 in Huntington, West Virginia. Stinnett was joined in the investigation by four other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1090.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1091.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1092.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1093.  Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1094.  The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Stinnett.

1095.  On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1096.  On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Stinnett was again included on this list.

1097.  The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1098.  Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017.

1099.  During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the

doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1100.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1101.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Stinnett, to advise them that:

> the CSX Medical Department is no longer accepting any medical
> documentation completed by Shannon Johnson, DC, or Daniel
> Carey II, DC. If you continue to have a need to be off of work for a
> medical reason or wish to return to work from a medical leave,
> please provide updated medical documentation from your primary
> care or treating physician, other than the two referenced above.

1102.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Stinnett from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Stinnett or his treatment other than what was contained on the COII.

1103.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Stinnett or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1104.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1105.   Dr. Heligman did not personally examine or treat Stinnett or any of the other CSX/CSXT employees.

1106.   Through his testimony at the disciplinary investigation, Shogren confirmed that Stinnett was not part of the furlough/abolishment notice.

1107.    During the disciplinary investigation, CSX/CSXT presented Stinnett's personal and private medical records to all in attendance, including the other charged employees.

1108.    During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1109.    Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Stinnett.

1110.    Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1111.    During the disciplinary investigation, Dr. Heligman and Shogren testified that Stinnett, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1112.    Dr. Heligman and Shogren also testified that Stinnett, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1113.    As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1114.    According the CSX/CSXT, the purpose of the formal disciplinary investigation of Stinnett and the others was to "develop the facts and place … responsibility, if any" yet more than

a month before the Stinnett investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1115. By letter dated September 5, 2017, CSX/CSXT notified Stinnett that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1116. Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1117. During the course of Stinnett's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1118. Due to the repetitive and physical nature of Stinnett's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1119. The cumulative injuries sustained by Stinnett during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1120. In the event Stinnett was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Todd Thayer – Carman**

1121. On or about June 20, 2017, Thayer sought and received medical treatment from Daniel Carey, ("Dr. Carey") at Carey Chiropractic and Rehabilitation for injuries.

1122.   Dr. Carey evaluated Thayer, including his complaints of back pain. Dr. Carey ordered x-rays and ordered Thayer off work.

1123.   On or about June 20, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Thayer. Among other things, the form described Thayer injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Thayer needed to be off work until August 21, 2017.

1124.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1125.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1126.   On or about July 25, 2017, CSX and/or CSXT issued a notice to Thayer to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1127.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1128.   A formal disciplinary investigation was held on August 24, 2017 in Huntington, West Virginia. Thayer was joined in the investigation by four other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

USCA4 Appeal: 21-2051    Doc: 32-1    Filed: 07/30/2022    Pg: 287 of 536

1129.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1130.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1131.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1132.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1133.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Justin Thayer.

1134.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1135.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Justin Thayer was again included on this list.

1136.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1137.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017.

1138.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1139.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1140.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Justin Thayer, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Carey, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1141.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Thayer from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Thayer or his treatment other than what was contained on the COII.

1142.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Thayer or any of the employees went to Drs. Carey or Johnson for any improper purpose.

1143.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1144.   Dr. Heligman did not personally examine or treat Thayer or any of the other CSX/CSXT employees.

1145.   Through his testimony at the disciplinary investigation, Shogren confirmed that Thayer was not part of the furlough/abolishment notice.

1146.   During the disciplinary investigation, CSX/CSXT presented Thayer's personal and private  medical records to all in attendance, including the other charged employees.

1147.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1148.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Thayer.

1149.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1150.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Thayer, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1151.   Dr. Heligman and Shogren also testified that Thayer, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1152.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1153.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Thayer and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Thayer investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1154.   By letter dated September 21, 2017, CSX/CSXT notified Thayer that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics

Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1155.   Upon information and belief, Drs. Carey and Johnson were exonerated of any wrongdoing by their licensing authorities.

1156.   During the course of Thayer's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1157.   Due to the repetitive and physical nature of Thayer's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1158.   The cumulative injuries sustained by Thayer during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1159.   In the event Thayer was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Deanna Lanham - Clerk**

1160.   On or about July 7, 2017, and on dates subsequent thereto, Lanham sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries to her back.

1161.   Dr. Carey evaluated Lanham, prescribed a course of treatment, and ordered Lanham off work until September 3, 2017.

1162.   On or about July 7, 2017, Dr. Carey faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Lanham and estimated that Lanham needed to be off work until September 3, 2017.

1163.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1164.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1165.   On or about July 25, 2017, CSX and/or CSXT issued a notice to Lanham to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1166.   The letter was signed by "B.P. Gessell, Supply Chain Manager" and issued from "22nd St. and 6th Ave., Huntington, WV 25702." An amended notice was sent on or about July 31, 2017.

1167.   A formal disciplinary investigation was conducted on August 8, 2017 in Huntington, West Virginia. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1168.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a

concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1169.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1170.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1171.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1172.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Deanna Lanham.

1173.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1174.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Deanna Lanham was again included on this list.

1175.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1176.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Deanna Lanham was not among those who were scheduled to be furloughed.

1177.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Lanham, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1178.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1179.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Deanna Lanham, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1180.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Lanham from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Lanham or his treatment other than what was contained on the notification of treatment.

1181.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Lanham attempted to commit fraud or not.

1182.   Through his testimony, Dr. Heligman confirmed that he had no proof that Lanham or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1183.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1184.   Dr. Heligman did not personally examine or treat Lanham or any of the other CSX/CSXT employees.

1185.   During the disciplinary investigation, CSX/CSXT presented Lanham's personal and private medical records to all in attendance, including the other charged employees.

1186.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

186

1187.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Lanham.

1188.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1189.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Lanham, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1190.   Dr. Heligman and Shogren also testified that Lanham, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1191.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1192.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Lanham and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Lanham investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1193.   By letter dated August 25, 2017, CSX/CSXT notified Lanham that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics

Policy." The letter was signed and issued by "K. James, Jr., Dir Supply Chain Mgmt, P & SC Division, 500 Water Street, Jacksonville, Florida 32202."

1194.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1195.   In the event Lanham was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of her during her employment with Defendants.

**Michael Campbell – Communications Maintainer**

1196.   On or about May 31, 2017, and on dates subsequent thereto, Campbell sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries to his shoulder and back.

1197.   Dr. Johnson evaluated Campbell, prescribed a course of treatment, and ordered Campbell off work until July 26, 2017.

1198.   On or about July 26, 2017, Dr. Johnson faxed to the CSX Medical Department a Certification of Ongoing Illness or Injury ("COII") that he was treating Campbell and estimated that Campbell needed to be off work until September 26, 2017.

1199.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1200.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1201.   On or about July 31, 2017, CSX and/or CSXT issued a notice to Campbell to attend a formal disciplinary investigation. The notice stated:

> The purpose of this formal investigation is to determine the facts and place your responsibility, if any, in connection with an incident that occurred … with information received from the CSXT Chief Medical Officer on July 14, 2017, that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1202.   The letter was signed by "D. Jones, Manager C&S Louisville."

1203.   A formal disciplinary investigation was held on August 15, 2017 in Russell, Kentucky. Milton Storm served as the hearing officer and Delando Jones served as the charging manager. Dr. Heligman was present by phone as a witness for the Company.

1204.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers. It further revealed that the charging officer, Mr. Jones, did not believe that Campbell was being dishonest when he applied for time off.

1205.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1206.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1207.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1208.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1209.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Michael Campbell was included on this list.

1210.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1211.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Michael Campbell was <u>not</u> among those who were scheduled to be furloughed.

1212.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the

employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Campbell, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1213.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1214.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Michael Campbell, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1215.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Campbell from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Campbell or his treatment other than what was contained on the COII. Campbell also produced additional documentation from Dr. Johnson and other medical providers to substantiate his treatment.

1216.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Campbell attempted to commit fraud or not.

1217.   Through his testimony, Dr. Heligman confirmed that he had no proof that Campbell or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1218.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1219.   Dr. Heligman did not personally examine or treat Campbell or any of the other CSX/CSXT employees.

1220.   During the disciplinary investigation, CSX/CSXT presented Campbell's personal and private medical records to all in attendance, including the other charged employees.

1221.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1222.   Through his testimony in the disciplinary investigation, Jones admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Campbell.

1223.   Jones further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1224.   During the disciplinary investigation, Dr. Heligman and Jones testified that Campbell, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1225.   Dr. Heligman and Jones also testified that Campbell, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1226.  As the charging manager, it is Jones's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Jones testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1227.  According the CSX/CSXT, the purpose of the formal disciplinary investigation of Campbell and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Campbell investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1228.  By letter dated September 13, 2017, CSX/CSXT notified Campbell that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy."

1229.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1230.  During the course of Campbell's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1231.  Due to the repetitive and physical nature of Campbell's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1232.  The cumulative injuries sustained by Campbell during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1233.  In the event Campbell was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or

in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Tony Abdon – Conductor**

1234.  On or about May 1, 2017, and on dates subsequent thereto, Abdon sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1235.  Dr. Johnson evaluated Abdon, prescribed a course of treatment, and ordered Abdon off work until July 1, 2017.

1236.  On or about May 1, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Abdon and estimated that Abdon needed to be off work until July 1, 2017.

1237.  CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1238.  As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1239.  On or about July 21, 2017, CSX and/or CSXT issued a notice to Abdon to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "Andrew D. Daly" and issued on the letterhead of "R.F. Campbell, Chief Dispatcher, Florence Division, 3019 Warrington Street, Jacksonville, FL 32254."

1240.   A formal disciplinary investigation was conducted on August 4, 2017 in Russell, Kentucky. DeAngelo served as the hearing officer and Lusk served as the charging manager. Dr. Heligman was present via telephone as a witness for the Company.

1241.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1242.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries ... is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1243.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1244.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1245.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Tony Abdon.

1246.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1247.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Tony Abdon was again included on this list.

1248.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1249.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Tony Abdon <u>was not</u> among those who were scheduled to be furloughed.

1250.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the

doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Abdon, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1251.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1252.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Tony Abdon, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1253.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Abdon from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Abdon or his treatment other than what was contained on the notification of treatment. Abdon presented a report from Dr. Johnson which included Dr. Johnson's diagnosis and treatment plan for Abdon.

1254.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Abdon attempted to commit fraud or not.

1255.   Through his testimony, Dr. Heligman confirmed that he had no proof that Abdon or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1256.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1257.   Dr. Heligman did not personally examine or treat Abdon or any of the other CSX/CSXT employees.

1258.   During the disciplinary investigation, CSX/CSXT presented Abdon's personal and private medical records to all in attendance, including the other charged employees.

1259.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1260.   Through his testimony in the disciplinary investigation, Lusk admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Abdon.

1261.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1262.   During the disciplinary investigation, Dr. Heligman testified that Abdon, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1263.   Dr. Heligman also testified that Abdon, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1264.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Abdon and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Abdon investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1265.   By letter dated August 31, 2017, CSX/CSXT notified Abdon that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "S. Kuhner, 112 South Ramsey Street, Charlotte, NC 28208."

1266.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1267.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1268.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1269.   The cumulative injuries sustained by Plaintiff during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1270.   The cumulative injuries sustained by Abdon during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1271.   In the event Abdon was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Estate of Chad Little – Engineer**

1272.   On or about November 9, 2016, Plaintiff first sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1273.   Dr. Johnson evaluated Plaintiff and made the decision to take him off work and ordered x-rays to be taken to further investigate his injuries.

1274.   Plaintiff was ultimately diagnosed with sprain of the lumbar ligaments and muscle spasms and was provided treatment accordingly returning to Dr. Johnson approximately twice a week.

1275.   While under the care of Dr. Johnson for his back and unable to work, on or about December 25, 2016 Plaintiff suffered a heart attack requiring hospitalization and surgery.

1276.   As Plaintiff recovered from the heart attack, his experienced worsening pain in his back, likely as a result of the inactivity surrounding his heart condition.

1277.   Due to both his heart and back conditions, Plaintiff continued to remain off work while he sought regular treatment for both.

1278.   On or about July 6, 2017 Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Plaintiff. Among other things, the form described Plaintiff's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Plaintiff needed additional time off work until September 5, 2017.

1279.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.  Where the underlying medical condition exists for a significant period of time, CSX requires medical providers to continuously submit updated COII forms.

1280.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1281.   On or about July 21, 2017, while still receiving regular medical treatment CSX and/or CSXT issued a notice to Plaintiff to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "A.D. Daly, Supt Train Operations" and issued from "1700 167th Street Chicago Command Center, Calumet City, IL 60409." An amended notice was sent on or about July 24, 2017.

1282.   A formal disciplinary investigation was held on August 4, 2017 in Russell, Kentucky.  DeAngelo served as the hearing officer and Lusk served as the charging manager. Dr. Heligman was present via telephone as a witness for the Company.

1283.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

1284.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically

201

appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1285.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1286.   The list of employees named in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Plaintiff.

1287.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1288.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

1289.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Plaintiff was again included on this list.

1290.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order

to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1291. Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. However, Plaintiff <u>was not</u> among those who were scheduled to be abolished or furloughed. and had not actively worked since 2010 due to medical issues.

1292. During the disciplinary investigation, Dr. Heligman stated that he was not aware of Plaintiff's heart attack nor did he review the medical records submitted on Plaintiff's behalf to CSX/CSXT for this issue.

1293. During the investigation, Dr. Heligman, with little elaboration, merely expressed his belief that, although he had not reviewed Plaintiff's medical records or examined him personally, that his condition did not justify the amount of time he had been ordered off work.

1294. On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1295. Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1296. During the disciplinary investigation, the COII prepared for Claimant by Dr. Johnson was introduced as an exhibit. Dr. Heligman admitted that he had no other information regarding the injury to Plaintiff or his treatment other than what was contained on the COII.

1297. Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Plaintiff or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1298. Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1299. Dr. Heligman did not personally examine or treat Plaintiff or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

1300. During the disciplinary investigation, CSX/CSXT presented Plaintiff's personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

1301. During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

1302. Through his testimony in the disciplinary investigation, Lusk admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Plaintiff.

1303. During the disciplinary investigation, Dr. Heligman testified that Plaintiff, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1304.   Dr. Heligman also testified that Plaintiff, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1305.   According to CSX/CSXT, the purpose of the formal disciplinary investigation of Plaintiff and the others was to "develop the facts and place … responsibility, if any" yet nearly a month before Plaintiff investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1306.   By letter dated September 1, 2017, CSX/CSXT notified Plaintiff that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "N.M. Male, General Superintendent, 1200 Don Hutson Blvd., Louisville, KY 40219."

1307.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1308.   Mr. Little committed suicide on December 13, 2017.

1309.   Brandi Little, widow and former spouse of Chad Little, has been appointed the adminstrator of the Estate of Chad Little.

1310.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1311.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1312.   The cumulative injuries sustained by Plaintiff during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1313.   The cumulative injuries sustained by Little during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1314.   In the event Little was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Brandon Adkins – Fireman/Oiler**

1315.   On or about April 21, 2017, and dates subsequent thereto, Adkins sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

1316.   Dr. Carey evaluated Adkins, prescribed a course of treatment, ordered x-rays and ordered Adkins off work.

1317.   On or about June 21, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Adkins. Among other things, the form described Adkins injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Adkins needed to be off work from April 21, 2017 to August 20, 2017.

1318.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1319.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1320.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Adkins to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place
> your responsibility, if any, in connection with information received

> on July 14, 2017 from the CSXT Chief Medical Officer that you
> were dishonest and attempted to defraud the Company and/or
> benefits providers when you, as well as more than 50 other craft
> employees, submitted potentially fraudulent documentation, and all
> circumstances related thereto.

An amended notice was issued on or about July 24, 2017.

1321.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1322.   A formal disciplinary investigation was held on August 8, 2017 in Huntington, West Virginia. Adkins was joined in the investigation by two other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1323.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1324.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1325.  Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1326.  Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1327.  The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Brandon Adkins.

1328.  On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1329.  On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Brandon Adkins was again included on this list.

1330.  The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1331.  Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Brandon Adkins was not among those who were scheduled to be furloughed.

1332.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1333.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1334.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Brandon Adkins, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1335.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Adkins from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Adkins or his treatment other than what was contained on the COII.

1336.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Adkins or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1337.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1338.   Dr. Heligman did not personally examine or treat Adkins or any of the other CSX/CSXT employees.

1339.   During the disciplinary investigation, CSX/CSXT presented Adkins' personal and private medical records to all in attendance, including the other charged employees.

1340.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1341.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Adkins.

1342.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1343.   During the disciplinary investigation, Dr. Heligman testified that Adkins, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1344.   Dr. Heligman also testified that Adkins, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1345.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1346.  According the CSX/CSXT, the purpose of the formal disciplinary investigation of Adkins and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Adkins investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1347.  By letter dated September 6, 2017, CSX/CSXT notified Adkins that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1348.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1349.  During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1350.  Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1351.  The cumulative injuries sustained by Plaintiff during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1352.  The cumulative injuries sustained by Adkins during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1353.  In the event Adkins was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part,

by one or more of the work related duties required of him during his employment with Defendants.

**Jacqueline Marshall – Fireman/Oiler**

1354.   On or about June 21, 2017, and on dates subsequent thereto, Marshall sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1355.   Dr. Johnson evaluated Marshall, prescribed a course of treatment, and estimated that she would be able to return to work unrestricted on August 21, 2017.

1356.   On or about June 21, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII")  that he was treating Marshall and estimated that Marshall would be able to return to work unrestricted on August 21, 2017.

1357.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1358.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1359.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Marshall to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, FL 32202." An amended notice was issued on or about July 24, 2017.

1360.   A formal disciplinary investigation was conducted on August 8, 2017 in Russell, Kentucky. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1361.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1362.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1363.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1364.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1365.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Jacqueline Marshall.

1366.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1367.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Jacqueline Marshall was again included on this list.

1368.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1369.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Jacqueline Marshall <u>was not</u> among those who were scheduled to be furloughed.

1370.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the

doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Marshall, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1371.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1372.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Jacqueline Marshall, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1373.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Marshall from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Marshall or her treatment other than what was contained on the notification of treatment.

1374.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Marshall attempted to commit fraud or not.

1375.   Through his testimony, Dr. Heligman confirmed that he had no proof that Marshall or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1376.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1377. Dr. Heligman did not personally examine or treat Marshall or any of the other CSX/CSXT employees.

1378. During the disciplinary investigation, CSX/CSXT presented Marshall's personal and private medical records to all in attendance, including the other charged employees.

1379. During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1380. Through his testimony in the disciplinary investigation, Lusk admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Marshall.

1381. Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1382. During the disciplinary investigation, Dr. Heligman testified that Marshall, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1383. Dr. Heligman also testified that Marshall, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1384. According the CSX/CSXT, the purpose of the formal disciplinary investigation of Marshall and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Marshall investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1385.   By letter dated September 6, 2017, CSX/CSXT notified Marshall that she was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "Brian Barr, VP Mechanical" and issued from "500 Water Street, Jacksonville, FL 32202."

1386.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1387.   During the course of Plaintiff's employment with CSX and/or CSXT, her job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1388.   Due to the repetitive and physical nature of Plaintiff's employment, she sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1389.   The cumulative injuries sustained by Plaintiff during the course and scope of her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1390.   The cumulative injuries sustained by Marshall during the course and scope of her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1391.   In the event Marshall was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Homer Maynard – Fireman/Oiler**

1392.   On or about July 5, 2017, and on dates subsequent and prior thereto, Maynard sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1393.   Dr. Johnson evaluated Maynard, prescribed a course of treatment, and stated that he should remain off work through July 5, 2017.

1394.   On or about July 5, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII")  that he was treating Maynard and estimated that Maynard should remain off work through July 5, 2017.

1395.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1396.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1397.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Maynard to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, FL 32202."

1398.   A formal disciplinary investigation was conducted on August 8, 2017 in Russell, Kentucky. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1399.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson

or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1400.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1401.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1402.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1403.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Homer Maynard.

1404.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1405.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Homer Maynard was again included on this list.

1406.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1407.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Homer Maynard was not among those who were scheduled to be furloughed.

1408.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Maynard, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1409.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1410.   On or about August 30, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Homer Maynard, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1411.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Maynard from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Maynard or his treatment other than what was contained on the notification of treatment.

1412.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Maynard attempted to commit fraud or not.

1413.   Through his testimony, Dr. Heligman confirmed that he had no proof that Maynard or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1414.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1415.   Dr. Heligman did not personally examine or treat Maynard or any of the other CSX/CSXT employees.

1416.   During the disciplinary investigation, CSX/CSXT presented Maynard's personal and private medical records to all in attendance, including the other charged employees.

1417.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1418.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Maynard.

1419.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1420.   During the disciplinary investigation, Dr. Heligman testified that Maynard, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1421.   Dr. Heligman also testified that Maynard, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1422.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Maynard and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Maynard investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1423.   By letter dated September 6, 2017, CSX/CSXT notified Maynard that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "Brian Barr, VP Mechanical" and issued from "500 Water Street, Jacksonville, FL 32202."

1424.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1425.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1426.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1427.   The cumulative injuries sustained by Plaintiff during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1428.   The cumulative injuries sustained by Maynard during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1429.   In the event Maynard was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Scott Morrison - Boilermaker**

1430.   On or about July 19, 2017, and dates prior and subsequent thereto, Morrison sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries sustained while off-duty.

1431.   Dr. Johnson evaluated Morrison, prescribed a course of treatment, and ordered Morrison off work until September 19, 2017.

1432.   On or about July 19, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Morrison. Among other things, the form described Morrison injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Morrison needed to be off work until September 19, 2017.

1433.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1434.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1435.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Morrison to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1436.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202". An amended notice was issued on or about July 28, 2017.

1437.   A formal disciplinary investigation was held on August 23, 2017 in Huntington, West Virginia. Morrison was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1438.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1439.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1440.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1441.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1442.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Scott Morrison.

1443.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

1444.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter

included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Morrison was again included on this list.

1445.  The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1446.  Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Morrison was not among those who were scheduled to be furloughed.

1447.  During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Napier, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1448.  On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1449.  On or about August 23, 2017, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Scott Morrison, to advise them that:

> the CSX Medical Department is no longer accepting any medical
> documentation completed by Shannon Johnson, DC, or Daniel

> Carey II, DC. If you continue to have a need to be off of work for a
> medical reason or wish to return to work from a medical leave,
> please provide updated medical documentation from your primary
> care or treating physician, other than the two referenced above.

1450.  During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Morrison from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Morrison or his treatment other than what was contained on the COII.

1451.  During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Morrison attempted to commit fraud or not.

1452.  Through his testimony, Dr. Heligman confirmed that he had no proof that Morrison or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1453.  Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1454.  Dr. Heligman did not personally examine or treat Morrison or any of the other CSX/CSXT employees.

1455.  During the disciplinary investigation, CSX/CSXT presented Morrison's personal and private medical records to all in attendance, including the other charged employees.

1456.  During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1457.  Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Morrison.

1458.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1459.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Morrison, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1460.   Dr. Heligman and Shogren also testified that Morrison, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1461.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1462.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Morrison and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Morrison investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1463.   By letter dated September 21, 2017, CSX/CSXT notified Morrison that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1464.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1465.   During the course of Morrison's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1466.   Due to the repetitive and physical nature of Morrison's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1467.   The cumulative injuries sustained by Morrison during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1468.   In the event Morisson was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Jeremy Napier – Fireman/Oiler**

1469.   On or about June 21, 2017, and on dates subsequent thereto, Napier sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1470.   Dr. Johnson evaluated Napier, prescribed a course of treatment, and ordered Napier off work until August 21, 2017.

1471.   On or about June 21, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") form that he was treating Napier and estimated that Napier needed to be off work until August 21, 2017.

1472.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1473.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1474.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Napier to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1475.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 24, 2017.

1476.   A formal disciplinary investigation was opened on August 7, 2017 and then reconvened on August 8, 2017 in Huntington, West Virginia. Napier was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1477.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1478.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General.

In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1479.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1480.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1481.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Jeremy Napier.

1482.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

1483.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Jeremy Napier was again included on this list.

1484.  The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1485.  Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Jeremy Napier was <u>not</u> among those who were scheduled to be furloughed.

1486.  During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Napier, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1487.  On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1488.  On or about August 23, 2017, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Jeremy Napier, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave,

please provide updated medical documentation from your primary
care or treating physician, other than the two referenced above.

1489.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the
COII of Napier from Dr. Johnson. Dr. Heligman admitted that he had no other information
regarding the injury to Napier or his treatment other than what was contained on the COII.

1490.   During the disciplinary investigation, Dr. Heligman stated that he had no idea
whether Napier attempted to commit fraud or not.

1491.   Through his testimony, Dr. Heligman confirmed that he had no proof that Napier
or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1492.   Through his testimony, Dr. Heligman testified that the decision for an employee to
be held out of service for an illness or an injury is one to be made between the employee-patient
and the treating physician.

1493.   Dr. Heligman did not personally examine or treat Napier or any of the other
CSX/CSXT employees.

1494.   During the disciplinary investigation, CSX/CSXT presented Napier's personal and
private medical records to all in attendance, including the other charged employees.

1495.   During the disciplinary investigation, CSX/CSXT presented the personal and
private medical records of dozens of other employees, including those not charged in the
investigation, to all in attendance.

1496.   Through his testimony in the disciplinary investigation, Shogren admitted to having
been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT
employees, including Napier.

1497.   Shogren further testified that he received the July 14, 2017 letter from Heligman to
the RRB Office of Inspector General on or about July 14, 2017.

1498.  During the disciplinary investigation, Dr. Heligman and Shogren testified that Napier, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1499.  Dr. Heligman and Shogren also testified that Napier, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1500.  As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1501.  According the CSX/CSXT, the purpose of the formal disciplinary investigation of Napier and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Napier investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1502.  By letter dated September 5, 2017, CSX/CSXT notified Napier that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1503.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1504.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1505.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1506.   The cumulative injuries sustained by Napier during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1507.   In the event Napier was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Shawn Patterson - Fireman/Oiler**

1508.   On or about July 11, 2017, and on dates subsequent thereto, Patterson sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1509.   Dr. Johnson evaluated Patterson, prescribed a course of treatment, and ordered Patterson off work until September 11, 2017.

1510.   On or about July 11, 2017, Dr. Johnson faxed to the CSX Medical Department a notice that he was treating Patterson and estimated that Patterson needed to be off work until September 11, 2017.

1511.   CSX and/or CSXT requires that such forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1512.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1513.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Patterson to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1514.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 24, 2017.

1515.   A formal disciplinary investigation was held on August 8, 2017 in Huntington, West Virginia. Patterson was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1516.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1517.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from

work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1518.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1519.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1520.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Shawn Patterson.

1521.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1522.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Shawn Patterson was again included on this list.

1523.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order

to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1524.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Shawn Patterson <u>was not</u> among those who were scheduled to be furloughed.

1525.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Patterson, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1526.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1527.   On or about August 30, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Shawn Patterson, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1528.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the notification of treatment of Patterson from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Patterson or his treatment other than what was contained on the notification of treatment.

1529.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Patterson attempted to commit fraud or not.

1530.   Through his testimony, Dr. Heligman confirmed that he had no proof that Patterson or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1531.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1532.   Dr. Heligman did not personally examine or treat Patterson or any of the other CSX/CSXT employees.

1533.   During the disciplinary investigation, CSX/CSXT presented Patterson' personal and private medical records to all in attendance, including the other charged employees.

1534.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1535.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Patterson.

1536.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1537.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Patterson, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1538.   Dr. Heligman and Shogren also testified that Patterson, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1539.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1540.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Patterson and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Patterson investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1541.   By letter dated September 5, 2017, CSX/CSXT notified Patterson that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1542.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1543.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1544.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1545.   The cumulative injuries sustained by Patterson during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1546.   In the event Patterson was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Matthew Woods – Machine Operator**

1547.   On or about June 20, 2017, Woods sustained a work-related injury when his work vehicle was struck by a CSX/CSXT train within a CSX/CSXT yard in Greenup, Kentucky.

1548.   Woods, in good faith, notified CSX/CSXT of his work-related injury on or about June 20, 2017 and completed and submitted to CSX/CSXT an "Employee's Injury and/or Illness Report" ("Injury Report").

1549.   Woods sought and received medical treatment for his work-related injury and notified CSX/CSXT of the same in his June 20th Injury Report.

1550.   On June 20, 2017, and dates subsequent thereto, Woods followed the treatment plan of his treating physicians.

1551.   On or about June 20, 2017, Woods, in good faith, notified CSX and/or CSXT of a hazardous safety or security condition that caused by and/or contributed to his on-duty injury.

1552.   By letter dated June 29, 2017, CSX and/or CSXT issued a notice to Woods to attend a formal disciplinary investigation. The notice stated:

> The purpose of this formal investigation is to determine the facts and place your responsibility, if any, in connection with an incident that occurred at approximately 1330 hours, on June 20, 2017 at or near milepost CA 526, in the vicinity of Russell Yard. While driving CSX vehicle #91257, you fouled the crossing on the lead track as the Y10320 was traveling west over the crossing, resulting in the CSX vehicle you were operating being struck by the Y10320, and all circumstances related thereto.

1553.   By letter dated July 5, 2017, CSX and/or CSXT issued an amended notice to attend a formal disciplinary investigation.  The notice was further amended by letter dated July 7, 2017.

1554.   On or about June 27 and 28, 2017, Woods sought and received treatment for his work-related injuries from chiropractor Dr. Fischer. Dr. Fischer placed Woods on restrictions and referred him to Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky.

1555.   On or about July 6, 2017, and dates subsequent thereto Woods sought and received medical treatment from Dr. Johnson.

1556.   Dr. Johnson evaluated Woods, prescribed a course of treatment, and ordered Woods off work until September 6, 2017.

1557.   On or about July 6, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") form that he was treating Woods and estimated that Woods needed to be off work until September 6, 2017.

1558.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1559.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1560.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Woods to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1561.   A formal disciplinary investigation for the June 20, 2017 incident was opened on July 26, 2017 and then reconvened on August 24, 2017 ("Injury Investigation"). Elizabeth Creedon served as the hearing officer and Kenneth Ray Emerson served as the charging manager.

1562.   A formal disciplinary investigation for the dishonesty and fraud allegations per the July 21, 2017 charge letter was opened on August 10, 2017 and then reconvened on August 14, 2017 ("Medical Treatment Investigation"). Creedon served as the hearing officer, Emerson served as the charging manager, Dr. Heligman testified via phone.

1563.   The Medical Treatment Investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1564.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from

work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1565.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1566.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1567.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Matthew Woods.

1568.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1569.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Matthew Woods was again included on this list.

1570.   The Medical Treatment Investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in

244

order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1571.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Matthew Woods was <u>not</u> among those who were scheduled to be furloughed.

1572.   During the Medical Treatment Investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Woods, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1573.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1574.   On or about August 23, 2017, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Matthew Woods, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1575.   During the Medical Treatment Investigation, Dr. Heligman introduced as exhibits, the COII of Woods from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Woods or his treatment other than what was contained on the COII.

1576.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Woods attempted to commit fraud or not.

1577.   Through his testimony, Dr. Heligman confirmed that he had no proof that Woods or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1578.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1579.   Dr. Heligman did not personally examine or treat Woods or any of the other CSX/CSXT employees.

1580.   During the Medical Treatment Investigation, CSX/CSXT presented Woods' personal and private medical records to all in attendance, including the other charged employees.

1581.   During the Medical Treatment Investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1582.   Through his testimony in the Medical Treatment Investigation, Emerson admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Woods.

1583.   Emerson further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General.

1584.   During the disciplinary investigation, Dr. Heligman and Emerson testified that Woods, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1585.   Dr. Heligman and Emerson also testified that Woods, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1586.   As the charging manager, it is Emerson's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Emerson testified that he did no investigation whatsoever into the alleged wrongdoing by Woods and the other charged employees.

1587.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Woods and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Woods investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1588.   By letter dated September 1, 2017, CSX/CSXT notified Woods that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy" as a result of the Medical Treatment Investigation.

1589.   By letter dated September 13, 2017, CSX/CSXT notified Woods that he was dismissed from employment for violation of "CSX Transportation Operating Rules 100.1, 700.1, 700.3, and 706.1" as a result of the Injury Investigation.

1590.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1591.   During the course of Woods' employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1592.   Due to the repetitive and physical nature of Woods' employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1593.   The cumulative injuries sustained by Woods during the course and scope of his employment with CSX and/or CSXT likely contributed, at least in part, to the injury described above.

1594.   In the event Woods was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**John Carpenter – Machinist**

1595.   On or about June 19, 2017, Plaintiff sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1596.   Dr. Johnson evaluated Plaintiff, including his complaints of back pain.  Dr. Johnson ordered that Plaintiff have x-rays taken and ordered him off work.  Dr. Johnson diagnosed Plaintiff with sprain of the lumbar/pelvis, sprain of the right knee, and back spasms, and provided treatment accordingly.

1597.   Following his initial appointment with Dr. Johnson, Plaintiff sought the care of a an orthopedic surgeon who opined that he could have a torn meniscus and provided a prescription for anti-inflammatory medication.

1598.   On or about June 20, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Plaintiff. Among other things, the form described Plaintiff's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Plaintiff needed to be off work until August 19, 2017.

1599.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1600.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1601.   Through his course of treatment, Dr. Johnson sent a subsequent COII for Plaintiff on or about August 16, 2017 reflecting that Plaintiff's condition required additional time off work and provided an estimated return to work date of September 18, 2017.

1602.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Plaintiff to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".  An amended notice was sent on or about July 28, 2017.

1603.   A formal disciplinary investigation was held on August 22, 2017 in Huntington, West Virginia. Plaintiff was joined in the investigation by six other CSX/CSXT employees who

were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1604.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

1605.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1606.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1607.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Plaintiff.

1608.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1609.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1610.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Plaintiff was again included on this list.

1611.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1612.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. However, notwithstanding Plaintiff's termination, he would have only been subject to furlough until January 1, 2018.

1613.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1614.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1615.   On or about September 22, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Plaintiff, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1616.   During the disciplinary investigation, the COII prepared for Claimant by Dr. Johnson was introduced as an exhibit.  Dr. Heligman admitted that he had no other information regarding the injury to Plaintiff or his treatment other than what was contained on the COII.

1617.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Plaintiff or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1618.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1619.   Dr. Heligman did not personally examine or treat Plaintiff or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

1620.   During the disciplinary investigation, CSX/CSXT presented Plaintiff's personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

1621.  During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

1622.  Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Plaintiff.

1623.  Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1624.  During the disciplinary investigation, Dr. Heligman and Shogren testified that Plaintiff, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1625.  Dr. Heligman and Shogren also testified that Plaintiff, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1626.  According to CSX/CSXT, the purpose of the formal disciplinary investigation of Plaintiff and the others was to "develop the facts and place … responsibility, if any" yet nearly a month before Plaintiff investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1627.  By letter dated September 21, 2017, CSX/CSXT notified Plaintiff that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1628.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1629.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1630.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1631.   The cumulative injuries sustained by Carpenter during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1632.   In the event Carpenter was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Quincy Christian – Machinist**

1633.   On or about June 21, 2017, and on dates subsequent thereto, Christian sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

1634.   Dr. Carey evaluated Christian, including his complaints of back and shoulder injuries. Dr. Carey prescribed a course of treatment, ordered x-rays, and ordered Christian off work.

1635.   On or about June 26, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Christian. Among other things, the

form described Christian injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Christian needed to be off work until August 21, 2017.

1636. CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1637. As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1638. On or about July 26, 2017, CSX and/or CSXT issued a notice to Christian to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1639. The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 28, 2017.

1640. A formal disciplinary investigation was held on August 22, 2017 in Huntington, West Virginia. Christian was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1641. The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a

concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1642.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1643.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1644.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1645.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Quincy Christian (though his last name was misspelled as "Chastain," he was identified by his first name, middle initial, and employee number).

1646.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

1647.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Quincy Christian was again included on this list (though his last name was misspelled as "Chastain," he was identified by his first name, middle initial, and employee number).

1648.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1649.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Quincy Christian was among those who were scheduled to be furloughed.

1650.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Christian, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1651.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1652.   On or about August 25, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Quincy Christian, to advise them that:

> he CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1653.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Christian from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Christian or his treatment other than what was contained on the COII.

1654.   During the disciplinary investigation, Christian produced a report from Dr. Carey which detailed his diagnoses and treatment plan of Christian and which confirmed that Christian was still not able to return to work.

1655.   Through his testimony, Dr. Heligman confirmed that he had no proof that Christian or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1656.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1657.   Dr. Heligman did not personally examine or treat Christian or any of the other CSX/CSXT employees.

1658.   During the disciplinary investigation, CSX/CSXT presented Christian's personal and private medical records to all in attendance, including the other charged employees.

1659.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1660.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Christian.

1661.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1662.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Christian, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1663.   Dr. Heligman and Shogren also testified that Christian, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1664.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1665.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Christian and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Christian investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1666.   By letter dated September 21, 2017, CSX/CSXT notified Christian that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1667.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1668.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1669.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1670.   The cumulative injuries sustained by Christian during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1671.   In the event Christian was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Gregory Hamm – Machinist**

1672.   On or about June 19, 2017, and on dates subsequent thereto, Hamm sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1673.   Dr. Johnson evaluated Hamm, including his complaints of back and knee injuries. Dr. Johnson prescribed a course of treatment and ordered Hamm off work.

1674.   On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Hamm. Among other things, the form described Hamm's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Hamm needed to be off work until August 19, 2017.

1675.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1676.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1677.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Hamm to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1678.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 28, 2017.

1679.   A formal disciplinary investigation was held on August 22, 2017 in Huntington, West Virginia. Hamm was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1680.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey, II, D.C. ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1681.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1682.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1683.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1684.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Gregory Hamm.

1685.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

1686.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Gregory Hamm was again included on this list.

1687.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1688.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Gregory Hamm was among those who were scheduled to be furloughed.

1689.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Hamm, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1690.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1691.   On or about August 25, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Gregory Hamm, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1692.   During the disciplinary investigation, Dr. Heligman introduced as exhibits the COIIs of Hamm from Dr. Johnson dated July 16, 2016 and August 16, 2017. In the August 16, 2017 COII, Dr. Johnson estimated that Hamm needed to be off work until October 16, 2017. Dr. Heligman admitted that he had no other information regarding the injury to Hamm or his treatment other than what was contained on the COIIs.

1693.   During the disciplinary investigation, Hamm produced records of x-rays taken at Our Lady of Bellefonte Hospital as ordered by Dr. Johnson.

1694.   Through his testimony, Dr. Heligman confirmed that he had no proof that Hamm or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1695.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1696.   Dr. Heligman did not personally examine or treat Hamm or any of the other CSX/CSXT employees.

264

1697.   During the disciplinary investigation, CSX/CSXT presented Hamm's personal and private medical records to all in attendance, including the other charged employees.

1698.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1699.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Hamm.

1700.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1701.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Hamm, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1702.   Dr. Heligman and Shogren also testified that Hamm, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1703.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1704.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Hamm and the others was to "develop the facts and place … responsibility, if any" yet more than

a month before the Hamm investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1705.  By letter dated September 21, 2017, CSX/CSXT notified Hamm that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1706.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1707.  During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1708.  Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1709.  The cumulative injuries sustained by Hamm during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1710.  In the event Hamm was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Ethan Mullins – Machinist**

1711.  On or about June 21, 2017, Plaintiff sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1712.   Dr. Johnson evaluated Plaintiff, including his complaints of back pain.  Dr. Johnson ordered that Plaintiff have x-rays taken of his back and ordered him off work.  Dr. Johnson diagnosed Plaintiff with sprain of the lumbar/pelvis and muscle spasms.  Dr. Johnson provided treatment accordingly including visits approximately twice a week.

1713.   On or about June 22, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Plaintiff. Among other things, the form described Plaintiff's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Plaintiff needed to be off work until August 21, 2017.

1714.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1715.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1716.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Plaintiff to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".  An amended notice was sent on or about July 28, 2017.

1717.   A formal disciplinary investigation was held on August 22, 2017 in Huntington, West Virginia. Plaintiff was joined in the investigation by six other CSX/CSXT employees who

were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1718.  The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

1719.  On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1720.  Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1721.  The list of employees named in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Plaintiff.

1722.  Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1723.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1724.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Plaintiff was again included on this list.

1725.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1726.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. However, notwithstanding Plaintiff's termination, he would have only been subject to furlough until January 1, 2018 at which time he was scheduled to begin a five year period of guaranteed work.

1727.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1728.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1729.   Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1730.   During the disciplinary investigation, the COII prepared for Claimant by Dr. Johnson was introduced as an exhibit.  Dr. Heligman admitted that he had no other information regarding the injury to Plaintiff or his treatment other than what was contained on the COII.

1731.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Plaintiff or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1732.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1733.   Dr. Heligman did not personally examine or treat Plaintiff or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

1734.   During the disciplinary investigation, CSX/CSXT presented Plaintiff's personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

1735.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

1736.   Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Plaintiff.

1737.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1738.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Plaintiff, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1739.   Dr. Heligman and Shogren also testified that Plaintiff, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1740.   According to CSX/CSXT, the purpose of the formal disciplinary investigation of Plaintiff and the others was to "develop the facts and place … responsibility, if any" yet more than a month before Plaintiff investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1741.   By letter dated September 21, 2017, CSX/CSXT notified Plaintiff that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1742.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1743.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1744.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1745.   The cumulative injuries sustained by Mullins during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1746.   In the event Mullins was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Michael Owens – Machinist**

1747.   On or about June 26, 2017, and on dates subsequent thereto, Owens sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

1748.   Dr. Carey evaluated Owens, prescribed a course of treatment, and ordered Owens off work until October 28, 2017.

1749.   On or about June 26, 2017, Dr. Carey faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Owens. Among other things, the form described Owens injuries, Dr. Carey's diagnosis and treatment plan, and estimated that Owens needed to be off work until October 28, 2017.

1750.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1751.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1752.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Owens to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1753.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 28, 2017.

1754.   A formal disciplinary investigation was held on August 22, 2017 in Huntington, West Virginia. Owens was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1755.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1756.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1757.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1758.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1759.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Michael Owens.

1760.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1761.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter

included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Michael Owens was again included on this list.

1762.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1763.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Michael Owens <u>was not</u> among those who were scheduled to be furloughed.

1764.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Owens, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1765.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1766.   On or about August 25, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Michael Owens, to advise them that:

he CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1767.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Owens from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Owens or his treatment other than what was contained on the COII.

1768.   During the disciplinary investigation, Owens produced a report from Dr. Carey which detailed his diagnoses and treatment plan of Owens and which confirmed that Owens was still not able to return to work.

1769.   Through his testimony, Dr. Heligman confirmed that he had no proof that Owens or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1770.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1771.   Dr. Heligman did not personally examine or treat Owens or any of the other CSX/CSXT employees.

1772.   During the disciplinary investigation, CSX/CSXT presented Owens's personal and private medical records to all in attendance, including the other charged employees.

1773.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1774.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Owens.

1775.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1776.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Owens, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1777.   Dr. Heligman and Shogren also testified that Owens, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1778.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1779.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Owens and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Owens investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1780.   By letter dated September 21, 2017, CSX/CSXT notified Owens that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics

Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1781.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1782.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1783.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1784.   The cumulative injuries sustained by Owens during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1785.   In the event Owens was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Jonathan Rowe - Machinist**

1786.   On or about July 14, 2017, and on dates subsequent thereto, Rowe sought and received medical treatment from Daniel J. Carey, II, D.C., ("Dr. Carey") at Carey Chiropractic in Proctorville, Ohio for injuries.

1787.   Dr. Carey evaluated Rowe, prescribed a course of treatment, and ordered Rowe off work until September 18, 2017.

1788.   On or about July 14, 2017, Dr. Carey faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Rowe and estimated that Rowe needed to be off work until September 18, 2017.

1789.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1790.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1791.   On or about September 25, 2017, CSX and/or CSXT issued a notice to Rowe to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on September 20, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, FL 32202."

1792.   A formal disciplinary investigation was conducted on October 5, 2017 in Huntington, West Virginia. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1793.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Carey or another chiropractor in the area, Dr. Shannon M. Johnson ("Dr. Johnson"), had engaged "in a

concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1794.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1795.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1796.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1797.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1798.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter

included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters.

1799.   On or about September 20, 2017, Dr. Heligman sent yet another letter to the RRB Inspector General in which he requested that the Inspector General add Jonathan Rowe "to the list of of your cases to be investigated" based on Rowe having treated with Dr. Carey.

1800.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1801.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Jonathan Rowe <u>was not</u> among those who were scheduled to be furloughed.

1802.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Rowe, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1803.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1804.   On or about September 26, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Jonathan Rowe, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1805.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Rowe from Dr. Carey. Dr. Heligman admitted that he had no other information regarding the injury to Rowe or his treatment other than what was contained on the notification of treatment.

1806.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Rowe attempted to commit fraud or not.

1807.   Through his testimony, Dr. Heligman confirmed that he had no proof that Rowe or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1808.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1809.   Dr. Heligman did not personally examine or treat Rowe or any of the other CSX/CSXT employees.

1810.   During the disciplinary investigation, CSX/CSXT presented Rowe's personal and private medical records to all in attendance, including the other charged employees.

1811.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1812.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Rowe.

1813.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1814.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Rowe, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1815.   Dr. Heligman and Shogren also testified that Rowe, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1816.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1817.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Rowe and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Rowe investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1818.   By letter dated October 27, 2017, CSX/CSXT notified Rowe that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "Brian Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1819.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1820.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1821.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1822.   The cumulative injuries sustained by Rowe during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1823.   In the event Rowe was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Danny Stewart – Machinist**

1824.   On or about July 10, 2017, Stewart sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1825.   Dr. Johnson evaluated Stewart, including his complaints of lumbar pain and back spasms. Dr. Johnson ordered x-rays and ordered Stewart off work.

1826.   On or about July 10, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Stewart. Among other things, the form described Stewart injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Stewart needed to be off work until September 12, 2017.

1827.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1828.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1829.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Stewart to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1830.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1831.   A formal disciplinary investigation was held on August 22, 2017 in Huntington, West Virginia. Stewart was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1832.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted

285

effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1833.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1834.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1835.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1836.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Stewart.

1837.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1838.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Justin Stewart was again included on this list.

1839.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1840.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017.

1841.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1842.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1843.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Justin Stewart, to advise them that:

> the CSX Medical Department is no longer accepting any medical
> documentation completed by Shannon Johnson, DC, or Daniel

Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1844.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Stewart from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Stewart or his treatment other than what was contained on the COII.

1845.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Stewart or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1846.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1847.   Dr. Heligman did not personally examine or treat Stewart or any of the other CSX/CSXT employees.

1848.   During the disciplinary investigation, CSX/CSXT presented Stewart's personal and private medical records to all in attendance, including the other charged employees.

1849.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1850.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Stewart.

1851.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1852.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Stewart, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1853.   Dr. Heligman and Shogren also testified that Stewart, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1854.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1855.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Stewart and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Stewart investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1856.   By letter dated September 21, 2017, CSX/CSXT notified Stewart that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1857.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1858.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1859.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1860.   The cumulative injuries sustained by Stewart during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1861.   In the event Stewart was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Lloyd Williams – Machinist**

1862.   On or about July 5, 2017, and on dates prior and subsequent thereto, Williams sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1863.   Dr. Johnson evaluated Williams, prescribed a course of treatment, and ordered Williams off work until September 5, 2017.

1864.   On or about July 5, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Williams. Among other things, the form described Williams injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Williams needed to be off work until September 5, 2017.

1865.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1866.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1867.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Williams to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1868.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about August 9, 2017.

1869.   A formal disciplinary investigation was held on August 22, 2017 in Huntington, West Virginia. Williams was joined in the investigation by other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1870.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey, II ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1871.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from

work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1872.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1873.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1874.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Lloyd Williams.

1875.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1876.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Lloyd Williams was again included on this list.

1877.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order

to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1878. Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Lloyd Williams <u>was not</u> among those who were scheduled to be furloughed.

1879. During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Williams, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

1880. On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1881. On or about August 25, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Lloyd Williams, to advise them that:

> he CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1882.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Williams from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Williams or his treatment other than what was contained on the COII.

1883.   Through his testimony, Dr. Heligman confirmed that he had no proof that Williams or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1884.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1885.   Dr. Heligman did not personally examine or treat Williams or any of the other CSX/CSXT employees.

1886.   During the disciplinary investigation, CSX/CSXT presented Williams's personal and private medical records to all in attendance, including the other charged employees.

1887.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

1888.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Williams.

1889.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1890.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Williams, and the other charged employees, violated CSX/CSXT Employee Operating Rule

104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1891.  Dr. Heligman and Shogren also testified that Williams, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1892.  As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

1893.  According the CSX/CSXT, the purpose of the formal disciplinary investigation of Williams and the others was to "develop the facts and place ... responsibility, if any" yet more than a month before the Williams investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1894.  By letter dated September 21, 2017, CSX/CSXT notified Williams that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1895.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1896.  During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1897.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1898.   The cumulative injuries sustained by Williams during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1899.   In the event Williams was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**David Manis – Painter**

1900.   On or about July 11, 2017, David Manis sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries to his back.

1901.   Dr. Johnson evaluated Manis, including his complaints of back pain.  Dr. Johnson ordered that Manis have x-rays taken of his back and ordered him off work.  The x-ray reports revealed "multilevel mild borderline moderate degenerative disc disease and mild to moderate lower lumbar spine facet DJD present."  Dr. Johnson diagnosed Manis with Lumbosacral sprain, thoracic sprain, and Myospasms and provided treatment accordingly.

1902.   On or about July 12, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Manis. Among other things, the form described his injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that he needed to be off work until September 11, 2017.

1903.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

296

1904.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1905.   On or about July 25, 2017, CSX and/or CSXT issued a notice to Manis to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1906.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1907.   A formal disciplinary investigation was held on August 10, 2017 in Huntington, West Virginia. Manis was joined in the investigation by four other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1908.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

1909.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious

and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1910.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1911.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1912.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1913.   The list of employees included in Dr. Heligman's July 21, 2017 letter to the RRB Inspector General included David Manis.

1914.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Manis was again included on this list.

1915.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1916.  Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. However, notwithstanding Manis' medical leave, he was otherwise qualified to work and would not have been furloughed.

1917.  During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1918.  On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1919.  Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1920.  During the disciplinary investigation, the COII prepared for Manis by Dr. Johnson was introduced as an exhibit.  Dr. Heligman admitted that he had no other information regarding the injury to Manis or his treatment other than what was contained on the COII.

1921. Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Manis or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1922. Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1923. Dr. Heligman did not personally examine or treat Manis or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

1924. During the disciplinary investigation, CSX/CSXT presented Manis' personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

1925. During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

1926. Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Manis.

1927. Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1928. During the disciplinary investigation, Dr. Heligman and Shogren testified that Manis, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a),

which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1929. Dr. Heligman and Shogren also testified that Manis, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1930. According to CSX/CSXT, the purpose of the formal disciplinary investigation of Manis and the others was to "develop the facts and place … responsibility, if any" yet nearly a month before Manis' investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1931. By letter dated September 5, 2017, CSX/CSXT notified Manis that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1932. Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1933. During the course of Manis' employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1934. Due to the repetitive and physical nature of Manis' employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1935. The cumulative injuries sustained by Manis during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1936.   In the event Manis was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Joshua Ferguson – Sheet Metal Worker**

1937.   On or about July 12 , 2017, Ferguson sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1938.   Dr. Johnson evaluated Ferguson, including his complaints of pain in his neck and back.  Dr. Johnson diagnosed Ferguson with cervical sprain, cervicobrachial syndrome, sprain of the right shoulder, and muscle spasms.   Ferguson was treated with spinal manipulations, therapeutic exercise, and passive modalities was ordered off work.

1939.   On or about July 13, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Ferguson. Among other things, the form described Ferguson's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Ferguson needed to be off work until September 12, 2017.

1940.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1941.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1942.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Ferguson to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place
> your responsibility, if any, in connection with information received

302

> on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1943.   A formal disciplinary investigation was held on August 9, 2017 in Huntington, West Virginia. Ferguson was joined in the investigation by three other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1944.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

1945.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1946.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1947.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1948.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees including Joshua Ferguson.

1949.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Ferguson was again included on this list.

1950.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1951.  Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Ferguson was not among those who were scheduled to be abolished or furloughed.

1952.  Furthermore, at the time the furloughs were announced, Ferguson was part of a four-year contractual guarantee whereby he was guaranteed active employment and thus not subject to furlough through October 2017.

1953.  During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1954.  On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1955.  Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1956.  During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Ferguson from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Ferguson or his treatment other than what was contained on the COII.

1957.  Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Ferguson or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1958.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1959.   Dr. Heligman did not personally examine or treat Ferguson or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

1960.   During the disciplinary investigation, CSX/CSXT presented Ferguson's personal and private medical information contained on his COII to all in attendance, including the other charged employees.

1961.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in the investigation, to all in attendance.

1962.   Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Ferguson.

1963.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

1964.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Ferguson, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

1965.  Dr. Heligman and Shogren also testified that Ferguson, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

1966.  According to CSX/CSXT, the purpose of the formal disciplinary investigation of Ferguson and the others was to "develop the facts and place … responsibility, if any" yet more than a month before Ferguson's investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

1967.  By letter dated September 6, 2017, CSX/CSXT notified Ferguson that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

1968.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

1969.  During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

1970.  Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

1971.  The cumulative injuries sustained by Ferguson during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

1972.  In the event Ferguson was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or

in part, by one or more of the work related duties required of him during his employment with Defendants.

**Eric Speaks – Sheet Metal Worker**

1973.  On or about July 10, 2017, Speaks sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

1974.  Dr. Johnson evaluated Speaks, including his complaints of pain in his shoulder, spine and pelvis. Dr. Johnson ordered x-rays and ordered Speaks off work.

1975.  On or about July 10, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Speaks. Among other things, the form described Speaks injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Speaks needed to be off work until September 11, 2017.

1976.  CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

1977.  As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

1978.  On or about July 21, 2017, CSX and/or CSXT issued a notice to Speaks to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

1979.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

1980.   A formal disciplinary investigation was held on August 9, 2017 in Huntington, West Virginia. Speaks was joined in the investigation by four other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

1981.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

1982.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

1983.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General]

to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

1984.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

1985.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Justin Speaks.

1986.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

1987.    On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Justin Speaks was again included on this list.

1988.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

1989.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017.

1990.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did

not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

1991.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

1992.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Justin Speaks, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

1993.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Speaks from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Speaks or his treatment other than what was contained on the COII.

1994.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Speaks or any of the employees went to Drs. Johnson or Carey for any improper purpose.

1995.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

1996.   Dr. Heligman did not personally examine or treat Speaks or any of the other CSX/CSXT employees.

1997.   Through his testimony at the disciplinary investigation, Shogren confirmed that Speaks was not part of the furlough/abolishment notice.

1998.   During the disciplinary investigation, CSX/CSXT presented Speaks' personal and private medical records to all in attendance, including the other charged employees.

1999.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

2000.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Speaks.

2001.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

2002.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Speaks, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

2003.   Dr. Heligman and Shogren also testified that Speaks, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

2004.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

2005.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Speaks and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Speaks investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

2006.   By letter dated September 6, 2017, CSX/CSXT notified Speaks that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

2007.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

2008.   During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

2009.   Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

2010.   The cumulative injuries sustained by Speaks during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

2011.   In the event Speaks was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Donald Stephens – Sheet Metal Worker**

2012.   On or about June 19, 2017, Stephens sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

2013.   Dr. Johnson evaluated Stephens, including his complaints of pain. Dr. Johnson ordered x-rays and ordered Stephens off work.

2014.   On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Stephens. Among other things, the form described Stephens injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Stephens needed to be off work until August 19, 2017.

2015.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

2016.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

2017.   On or about July 24, 2017, CSX and/or CSXT issued a notice to Stephens to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

2018.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

2019.   A formal disciplinary investigation was held on August 9, 2017 in Huntington, West Virginia. Stephens was joined in the investigation by six other CSX/CSXT employees who

314

were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

2020.  The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

2021.  On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

2022.  Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRb Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

2023.  Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

2024.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Stephens.

2025.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

2026.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Justin Stephens was again included on this list.

2027.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

2028.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017.

2029.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

2030.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

2031.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Justin Stephens, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

2032.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Stephens from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Stephens or his treatment other than what was contained on the COII.

2033.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Stephens or any of the employees went to Drs. Johnson or Carey for any improper purpose.

2034.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

2035.   Dr. Heligman did not personally examine or treat Stephens or any of the other CSX/CSXT employees.

2036.   Through his testimony at the disciplinary investigation, Shogren confirmed that Stephens was not part of the furlough/abolishment notice.

2037.   During the disciplinary investigation, CSX/CSXT presented Stephens' personal and private  medical records to all in attendance, including the other charged employees.

317

2038.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

2039.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Stephens.

2040.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

2041.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Stephens, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

2042.   Dr. Heligman and Shogren also testified that Stephens, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

2043.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

2044.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Stephens and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Stephens investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

2045.  By letter dated September 6, 2017, CSX/CSXT notified Stephens that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

2046.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

2047.  During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

2048.  Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

2049.  The cumulative injuries sustained by Stephens during the course and scope of his/her employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

2050.  In the event Stephens was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Jason Barker – Utility Worker**

2051.  On or about June 19, 2017, and on dates subsequent thereto, Barker sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

2052.   Dr. Johnson evaluated Barker, prescribed a course of treatment, and ordered Barker off work until August 19, 2017.

2053.   On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a notice that he was treating Barker and estimated that Barker needed to be off work until August 19, 2017.

2054.   CSX and/or CSXT requires that such forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

2055.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

2056.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Barker to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

2057.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 24, 2017.

2058.   A formal disciplinary investigation was held on August 8, 2017 in Huntington, West Virginia. Barker was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

2059. The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

2060. On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

2061. Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

2062. Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

2063. The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Jason Barker.

2064.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

2065.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Jason Barker was again included on this list.

2066.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

2067.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Jason Barker was <u>not</u> among those who were scheduled to be furloughed.

2068.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Barker, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

2069.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

2070.   On or about September 8, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Jason Barker, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

2071.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the notification of treatment of Barker from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Barker or his treatment other than what was contained on the notification of treatment.

2072.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Barker attempted to commit fraud or not.

2073.   Through his testimony, Dr. Heligman confirmed that he had no proof that Barker or any of the employees went to Drs. Johnson or Carey for any improper purpose.

2074.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

2075.   Dr. Heligman did not personally examine or treat Barker or any of the other CSX/CSXT employees.

2076.   During the disciplinary investigation, CSX/CSXT presented Barker' personal and private medical records to all in attendance, including the other charged employees.

2077.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

2078.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Barker.

2079.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

2080.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Barker, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

2081.   Dr. Heligman and Shogren also testified that Barker, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

2082.   As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

2083.   According the CSX/CSXT, the purpose of the formal disciplinary investigation of Barker and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Barker investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

2084.  By letter dated September 5, 2017, CSX/CSXT notified Barker that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

2085.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

2086.  During the course of Plaintiff's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

2087.  Due to the repetitive and physical nature of Plaintiff's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

2088.  The cumulative injuries sustained by Barker during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

2089.  In the event Barker was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work related duties required of him during his employment with Defendants.

**Chad Dowdy – Utility Worker**

2090.  On or about June 19, 2017, and on dates subsequent thereto, Dowdy sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

2091.  Dr. Johnson evaluated Dowdy, prescribed a course of treatment, and ordered Dowdy off work until August 19, 2017.

2092.   On or about June 19, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Dowdy and estimated that Dowdy needed to be off work until August 19, 2017.

2093.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

2094.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

2095.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Dowdy to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

2096.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 24, 2017.

2097.   A formal disciplinary investigation opened on August 7, 2017 and then reconvened on August 8, 2017 in Huntington, West Virginia. Dowdy was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

2098.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson

or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

2099.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

2100.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

2101.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

2102.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Chad Dowdy.

2103.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

2104.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Chad Dowdy was again included on this list.

2105.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

2106.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Chad Dowdy was <u>not</u> among those who were scheduled to be furloughed.

2107.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Dowdy, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

2108.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

2109.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Chad Dowdy, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

2110.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Dowdy from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Dowdy or his treatment other than what was contained on the notification of treatment. Dowdy presented a report from Dr. Johnson which included Dr. Johnson's diagnosis and treatment plan for Dowdy.

2111.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Dowdy attempted to commit fraud or not.

2112.   Through his testimony, Dr. Heligman confirmed that he had no proof that Dowdy or any of the employees went to Drs. Johnson or Carey for any improper purpose.

2113.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

2114.   Dr. Heligman did not personally examine or treat Dowdy or any of the other CSX/CSXT employees.

2115.   During the disciplinary investigation, CSX/CSXT presented Dowdy's personal and private medical records to all in attendance, including the other charged employees.

329

2116. During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

2117. Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Dowdy.

2118. Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

2119. During the disciplinary investigation, Dr. Heligman and Shogren testified that Dowdy, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

2120. Dr. Heligman and Shogren also testified that Dowdy, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

2121. As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

2122. According the CSX/CSXT, the purpose of the formal disciplinary investigation of Dowdy and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Dowdy investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

2123.  By letter dated September 5, 2017, CSX/CSXT notified Dowdy that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

2124.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

2125.  During the course of Dowdy's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

2126.  Due to the repetitive and physical nature of Dowdy's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

2127.  The cumulative injuries sustained by Dowdy during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

2128.  In the event Dowdy was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Jerry Flocker – Utility Worker**

2129.  On or about June 19, 2017, Jerry Flocker sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

2130.   Dr. Johnson evaluated Flocker, including his complaints of pain in his back and knee.  Dr. Johnson diagnosed Flocker with lumbar/pelvis sprain, knee sprain, and muscle spasms. Flocker was treated by Dr. Johnson and ordered off work.

2131.   On or about June 20, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Flocker. Among other things, the form described Flocker's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Flocker needed to be off work until August 19, 2017.

2132.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

2133.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

2134.   On or about July 21, 2017, CSX and/or CSXT issued a notice to Flocker to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

2135.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

2136.   A formal disciplinary investigation was held on August 8, 2017 in Huntington, West Virginia. Flocker was joined in the investigation by six other CSX/CSXT employees who

were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

2137.  The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

2138.  On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

2139.  Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

2140.  Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

2141.  The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Flocker.

2142.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

2143.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Flocker was again included on this list.

2144.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

2145.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Flocker <u>was</u> <u>not</u> among those who were scheduled to be abolished or furloughed.

2146.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

2147.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

2148.   Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

2149.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Flocker from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Flocker or his treatment other than what was contained on the COII.

2150.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Flocker or any of the employees went to Drs. Johnson or Carey for any improper purpose.

2151.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

2152.   Dr. Heligman did not personally examine or treat Flocker or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

2153.   During the disciplinary investigation, CSX/CSXT presented Flocker's personal and private medical information contained on his COII to all in attendance, including the other charged employees.

2154.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in the investigation, to all in attendance.

2155.   Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Flocker.

2156.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

2157.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Flocker, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

2158.   Dr. Heligman and Shogren also testified that Flocker, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

2159.   According to CSX/CSXT, the purpose of the formal disciplinary investigation of Flocker and the others was to "develop the facts and place … responsibility, if any" yet more than a month before Flocker's investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

2160.   By letter dated September 5, 2017, CSX/CSXT notified Flocker that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

2161.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

2162.   During the course of Flocker's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

2163.   Due to the repetitive and physical nature of Flocker's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

2164.   The cumulative injuries sustained by Flocker during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

2165.   In the event Flocker was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Grover Kelley – Utility Worker**

2166.   On or about June 21, 2017, Grover Kelley sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries.

2167.   Dr. Johnson evaluated Kelley, including his complaints of pain in his neck and back.  Dr. Johnson diagnosed Kelley with cervicocranial syndrome, thoracic sprain, and muscle spasms.  Kelley was treated by Dr. Johnson and ordered off work.

2168.   On or about June 22, 2017, Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Kelley. Among other things, the

form described Kelley's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Kelley needed to be off work until August 21, 2017.

2169.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

2170.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

2171.   On or about July 19, 2017, Kelley returned to see Dr. Johnson and, upon being examined, was released to return to return to work with no restrictions effective immediately.

2172.   However, only two days later, on or about July 21, 2017, CSX and/or CSXT issued a notice to Kelley to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

2173.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202".

2174.   A formal disciplinary investigation was held on August 8, 2017 in Huntington, West Virginia. Kelley was joined in the investigation by six other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

2175.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson

or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

2176.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

2177.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

2178.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

2179.   The list of employees included in Dr. Heligman's July 14, 2017 letter to the RRB Inspector General included Kelley.

2180.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud.  This list contained 11 more names of CSX/CSXT employees.

2181.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Kelley was again included on this list.

2182.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

2183.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. While Kelley was among those scheduled to be furloughed, his return to work authorization signed by Dr. Johnson effectively restricted him from receiving any benefit from the furlough whatsoever.

2184.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

2185.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

2186.   Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

2187.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Kelley from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Kelley or his treatment other than what was contained on the COII.

2188.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Kelley or any of the employees went to Drs. Johnson or Carey for any improper purpose.

2189.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

2190.   Dr. Heligman did not personally examine or treat Kelley or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

2191.   During the disciplinary investigation, CSX/CSXT presented Kelley's personal and private medical information contained on his COII to all in attendance, including the other charged employees.

2192.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in the investigation, to all in attendance.

341

2193.   Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Kelley.

2194.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

2195.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Kelley, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

2196.   Dr. Heligman and Shogren also testified that Kelley, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

2197.   According to CSX/CSXT, the purpose of the formal disciplinary investigation of Kelley and the others was to "develop the facts and place … responsibility, if any" yet more than a month before Kelley's investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

2198.   By letter dated September 5, 2017, CSX/CSXT notified Kelley that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

2199.   Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

2200.   During the course of Kelly's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

2201.   Due to the repetitive and physical nature of Kelly's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

2202.   The cumulative injuries sustained by Kelly during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

2203.   In the event Kelley was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Christopher Clay Stiltner – Utility Worker**

2204.   On or about May 24, 2017, and on dates subsequent thereto, Christopher Stiltner sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries to his back.

2205.   Dr. Johnson evaluated Stiltner, prescribed a course of treatment, and ordered Stiltner off work until September 19, 2017.

2206.   On or about May 24, 2017, Dr. Johnson faxed to the CSX Medical Department a Certificate of Ongoing Illness or Injury ("COII") that he was treating Stiltner and estimated that Stiltner needed to be off work until July 19, 2017.

2207.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

2208.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

2209.   On or about July 26, 2017, CSX and/or CSXT issued a notice to Stiltner to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

2210.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202. An Amended Notice was sent on or about July 28, 2017.

2211.   A formal disciplinary investigation was held on August 22, 2017 in Huntington, West Virginia. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

2212.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged "in a concerted effort to defraud" CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers.

2213.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Johnson and Carey of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically

344

appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

2214.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

2215.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

2216.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees, including Christopher Stiltner.

2217.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Christopher Stiltner was again included on this list.

2218.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

2219.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. Christopher Stiltner was <u>not</u> among those who were scheduled to be furloughed.

2220.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. He further testified that the documentation provided by the employees, including Stiltner, was not sufficient to "prove or disprove that an injury was present" yet he still claimed to have sufficient evidence to accuse the workers of committing fraud.

2221.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

2222.   On or about August 23, 2017, Dr. Heligman sent letters to CSX/CSXT employees, including Christopher Stiltner, to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

2223.   During the disciplinary investigation, Dr. Heligman introduced as exhibits, the COII of Stiltner from Dr. Johnson. Dr. Heligman admitted that he had no other information regarding the injury to Stiltner or his treatment other than what was contained on the notification

of treatment. Stiltner presented a report from Dr. Johnson which included Dr. Johnson's diagnosis and treatment plan for Stiltner.

2224.   During the disciplinary investigation, Dr. Heligman stated that he had no idea whether Stiltner attempted to commit fraud or not.

2225.   Through his testimony, Dr. Heligman confirmed that he had no proof that Stiltner or any of the employees went to Drs. Johnson or Carey for any improper purpose.

2226.   Through his testimony, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

2227.   Dr. Heligman did not personally examine or treat Stiltner or any of the other CSX/CSXT employees.

2228.   During the disciplinary investigation, CSX/CSXT presented Stiltner's personal and private medical records to all in attendance, including the other charged employees.

2229.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical records of dozens of other employees, including those not charged in the investigation, to all in attendance.

2230.   Through his testimony in the disciplinary investigation, Shogren admitted to having been provided by Dr. Heligman some 96 pages of private medical documentation of CSX/CSXT employees, including Stiltner.

2231.   Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

2232.   During the disciplinary investigation, Dr. Heligman and Shogren testified that Stiltner, and the other charged employees, violated CSX/CSXT Employee Operating Rule

104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

2233.  Dr. Heligman and Shogren also testified that Stiltner, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

2234.  As the charging manager, it is Shogren's responsibility to bring the charges against the charged employees and provide evidence to support such charges. But Shogren testified that he doesn't know the definition of conspiracy and that he doesn't know if the employees and/or their treating physicians conspired to commit any wrongdoing.

2235.  According the CSX/CSXT, the purpose of the formal disciplinary investigation of Stiltner and the others was to "develop the facts and place … responsibility, if any" yet more than a month before the Stiltner investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

2236.  By letter dated September 21, 2017, CSX/CSXT notified Stiltner that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

2237.  Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

2238.  During the course of Stiltner's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

2239.   Due to the repetitive and physical nature of Stiltner's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

2240.   The cumulative injuries sustained by Stiltner during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

2241.   In the event Stiltner was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**Dennis Hutchinson – Welder**

2242.   On or about February 25, 2016, Dennis Hutchinson sought and received medical treatment from Shannon M. Johnson, D.C., ("Dr. Johnson") at Johnson Chiropractic in Greenup, Kentucky for injuries to his back.

2243.   Dr. Johnson evaluated Plaintiff and made the decision to take him off work and ordered x-rays to be taken to further investigate his injuries.   Due, however, to concerns with radiation exposure, Dr. Johnson subsequently rescinded the x-ray order.

2244.   Plaintiff was ultimately diagnosed with sprain of the lumbar/pelvis and muscle spasms and was provided treatment accordingly during weekly visits.   Dr. Johnson also referred Hutchinson to a different doctor for assistance with pain management in addition to his own course of treatment.

2245.   Due to Hutchinson's age, condition, and vocational requirements, Dr. Johnson further recommended that he apply for occupational disability.

2246.   Dr. Johnson faxed to the CSX Medical Department a "Certification of Ongoing Illness or Injury" ("COII") form for Hutchinson. Among other things, the form described

Plaintiff's injuries, Dr. Johnson's diagnosis and treatment plan, and estimated that Plaintiff needed to be off work until September 13, 2017.

2247.   CSX and/or CSXT requires that COII forms be submitted by treating physicians on behalf of employees who need to be off work due to injuries or illnesses.

2248.   As a general rule, CSX and/or CSXT does not allow employees to work "light duty" or "restricted duty." Therefore, if an employee is physically impaired, his or her only option is to remain completely off work.

2249.   On or about July 25, 2017, CSX and/or CSXT issued a notice to Hutchinson to attend a formal disciplinary investigation. The notice stated:

> The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

2250.   The letter was signed by "J. Yates, CMO Engineering & Strategy" and issued from "500 Water Street, Jacksonville, Florida 32202". Amended notices were sent on or about July 28, 2017 and August 8, 2017.

2251.   A formal disciplinary investigation was held on August 21, 2017 in Russell, Kentucky. Hutchinson was joined in the investigation by three other CSX/CSXT employees who were being similarly charged. Thoele served as the hearing officer and Shogren served as the charging manager. Dr. Heligman was present as a witness for the Company.

2252.   The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by Dr. Johnson

or another chiropractor in the area, Dr. Daniel J. Carey ("Dr. Carey"), had engaged in a "concerted effort to defraud CSX/CSXT, the Railroad Retirement Board, and the insurance providers."

2253.   On or about July 14, 2017, Dr. Heligman sent a letter entitled "Potential Conspiracy to Defraud RRB Benefit Programs" to the Railroad Retirement Board Officer of Inspector General. In the letter, Dr. Heligman accused Drs. Carey and Johnson of "removing our employees from work inappropriately" and keeping such employees of work for "much longer than is medically appropriate." He further stated that "the timing of these alleged injuries … is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." The letter was also sent to employee benefit providers Aetna, Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board and the Kentucky Board of Chiropractic Examiners.

2254.   Attached to the letter, Dr. Heligman included a list of some 52 employees he claimed to have committed fraud and he "strongly urge[d] [the RRB Office of Inspector General] to fully investigate all of these cases for potential conspiracy to defraud RRB sickness and disability benefit programs by our employees and their chiropractors."

2255.   Defrauding the RRB could lead to, among other things, criminal charges against the employees named by Dr. Heligman and/or a denial or forfeiture of their benefits.

2256.   On or about July 21, 2017, Dr. Heligman sent another letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This list contained 11 more names of CSX/CSXT employees.

2257.   The list of employees named in Dr. Heligman's July 21, 2017 letter to the RRB Inspector General included Hutchinson.

2258.   On or about July 28, 2017, Dr. Heligman sent a third letter to the RRB Inspector General with a list of "additional employees" to be investigated for potential fraud. This letter included a list of four new employees as well as a list of all employees previously identified in the July 14th and July 21st letters. Hutchinson was again included on this list.

2259.   The disciplinary investigation further revealed that the Defendants believed that more than 60 CSX/CSXT employees submitted COII forms from Drs. Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished.

2260.   Job abolishment and furlough notices were issued by CSX/CSXT at the Huntington, WV mechanical shop on or about June 16, 2017 and were to take effect at the close of business on June 23, 2017. However, Hutchinson was not among those who were scheduled to be abolished or furloughed and had not actively worked since 2010 due to medical issues.

2261.   During the disciplinary investigation, Dr. Heligman testified that it is up to the employees to choose their treating physicians. He further testified that it is the responsibility of the employees to submit COII forms to the Medical Department. And Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation.

2262.   On or about August 23, 2017, Dr. Heligman sent letters to Drs. Johnson and Carey to advise them that "CSX will no longer accept any medical documentation completed by your office on behalf of any CSX employee."

2263.   Dr. Heligman sent letters to those CSX/CSXT employees who had received, or were receiving treatment from Drs. Johnson or Carey to advise them that:

> the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

2264.   During the disciplinary investigation, the COII prepared for Hutchinson by Dr. Johnson was introduced as an exhibit.  Dr. Heligman admitted that he had no other information regarding the injury to Plaintiff or his treatment other than what was contained on the COII.

2265.   Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that Hutchinson or any of the employees went to Drs. Johnson or Carey for any improper purpose.

2266.   Through his testimony during the disciplinary investigation, Dr. Heligman testified that the decision for an employee to be held out of service for an illness or an injury is one to be made between the employee-patient and the treating physician.

2267.   Dr. Heligman did not personally examine or treat Hutchinson or any of the other CSX/CSXT employees nor did he engage in any meaningful review of the employees' medical histories.

2268.   During the disciplinary investigation, CSX/CSXT presented Hutchinson's personal and private medical information contained on his COII and other documents to all in attendance, including the other charged employees.

2269.   During the disciplinary investigation, CSX/CSXT presented the personal and private medical information of dozens of other employees, including those not charged in this specific investigation, to all in attendance.

2270. Through his testimony in the disciplinary investigation, Shogren admitted that Dr. Heligman had provided him with some 96 pages of private medical documentation of CSX/CSXT employees, including Plaintiff.

2271. Shogren further testified that he received the July 14, 2017 letter from Heligman to the RRB Office of Inspector General on or about July 14, 2017.

2272. During the disciplinary investigation, Dr. Heligman and Shogren testified that Hutchinson, and the other charged employees, violated CSX/CSXT Employee Operating Rule 104.2(a), which states: "Employee behavior must be respectful and courteous. Employees must not be any of the following: Dishonest."

2273. Dr. Heligman and Shogren also testified that Hutchinson, and the other charged employees, violated the CSX/CSXT Code of Ethics, though it is not clear exactly how the Company claims the Code of Ethics was violated.

2274. According to CSX/CSXT, the purpose of the formal disciplinary investigation of Plaintiff and the others was to "develop the facts and place … responsibility, if any" yet more than a month before Hutchinson's investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud.

2275. By letter dated September 15, 2017, CSX/CSXT notified Hutchinson that he was dismissed from employment for violation of "CSX Operating Rule 104.2.a, and Code of Ethics Policy." The letter was signed and issued by "B. Barr, VP Mechanical, 500 Water Street, Jacksonville, Florida 32202."

2276. Upon information and belief, Drs. Johnson and Carey were exonerated of any wrongdoing by their licensing authorities.

2277.   During the course of Hutchinson's employment with CSX and/or CSXT, his job duties frequently required repetitive and heavy lifting, standing for long periods of time, working in cramped or confined areas, and/or completing tasks requiring awkward posture or positioning.

2278.   Due to the repetitive and physical nature of Hutchinson's employment, he sustained cumulative and/or degenerative injuries to various joints, muscles, and ligaments.

2279.   The cumulative injuries sustained by Hutchinson during the course and scope of his employment with CSX and/or CSXT contributed, at least in part, to the injury described above.

2280.   In the event Hutchinson was suffering from some form of pre-existing injury, illness, or physical defect, such condition, if any, was aggravated and/or accelerated, in whole or in part, by one or more of the work-related duties required of him during his employment with Defendants.

**COUNT I:**
**ERISA Section 510 Retaliation (29 U.S.C. Section 1001 et seq.)**

2281.   Paragraphs (1)-(2280) are repeated and realleged the same as though pleaded in full.

2282.   Section 510 states that it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against any participant or beneficiary for exercising any right to which he or she is entitled under the provisions of an employee benefit plan for the purpose interfering with the attainment of any right to which the participant may become entitled under the plan. ERISA authorizes enforcement of Section 510 under Section 502.

2283.   Defendants' termination of Plaintiffs was pretextual and purposefully interfered with the Plaintiffs' right to continued health benefits under defendants' employee benefit plan, sickness and/or disability and retirement under defendant's insurance and retirement plans, thereby

causing Plaintiffs to lose substantial health insurance benefits, life insurance benefits, retirement benefits, wages and other fringe benefits of employment.

## COUNT II:
### Defendants' Violation Of Section 504 Of The Rehabilitation Act, 29 U.S.C. 794 et seq.: Disability Discrimination And Medical Inquiry

2284.   Paragraphs (1)-(2283) are repeated and realleged the same as though pleaded in full.

2285.   At all relevant times, Defendants have received federal financial assistance, thereby rendering Section 504 of the Rehabilitation Act applicable to its employment programs and activities.

2286.   The Rehabilitation Act incorporates Title I of the ADA which prohibits discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). The ban on discrimination expressly includes "fringe benefits available by virtue of employment, whether or not administered" by the employer. 42 U.S.C. § 121 12(b); 29 C.F.R. § 1630.4(f).

2287.   Defendants' conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the Rehabilitation Act and its implementing regulations by terminating employment based upon treatment for statutory disabilities and by disclosing Plaintiffs' overbroad medical history and/or medical records (including information wholly unrelated to the medical issues for which Defendants were purportedly evaluating medical treatment), 42 U.S.C. Section 12112(d)(3) and 29 C.F.R. Section 1630.14(b).

2288.   As a result of this conduct, Defendants have violated the Rehabilitation Act and caused Plaintiffs the loss of wages and other job benefits and emotional and other harm.

**COUNT III:**
**Defendants' Violation of the West Virginia Human Relations Act, Title 5-11-1 et seq.:**
**Disability Discrimination, Medical Inquiry and Aiding and Abetting**

2289.  Paragraphs (1)-(2288) are repeated and realleged the same as though pleaded in full.

2290.  The West Virginia Human Relations Act prohibits an employer including individual liability of supervisors from discriminating against an individual with respect to compensation, hire, tenure, terms, conditions, and privileges of employment. Section 5-11-9.

2291.  Defendants' conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the West Virginia Human Relations Act, Sections 5-11-1 et seq. by terminating employment based upon treatment for statutory disabilities and by disclosing Plaintiffs' overbroad medical history and/or medical records (including information wholly unrelated to the medical issues for which Defendants were purportedly evaluating medical treatment).

2292.  Defendants, and each of them, together violated the West Virginia Human Relations Act by conspiring with others to commit acts and activities the purpose of which was to harass, degrade, embarrass or to cause economic loss or to aid, abet persons to engage in unlawful discriminatory acts in violation of Section 5-11-9.

2293.  As a result of this conduct, Defendants have violated the West Virginia Human Relations Act and caused Plaintiffs the loss of wages and other job benefits and emotional and other harm.

**COUNT IV:**
**Family and Medical Leave Act of 1993, 29 U.S.C. 2601 et seq.:**
**Denial of Benefits and Interference**

2294.  Paragraphs (1)-(2293) are repeated and realleged the same as though pleaded in full.

2295.   Plaintiffs were eligible employees under the FMLA and had a serious medical condition as defined by the FMLA and implementing regulations. A serious health condition is defined as an illness, injury, impairment, or physical or mental condition that involves a period of incapacity requiring absence of more than three calendar days from work, school or other regular daily activities that also involves continuing treatment by a healthcare provide or any period of incapacity due to a chronic health condition.

2296.   Defendants were on notice of Plaintiffs' need for leave under the FMLA for their absences.

2297.   Defendants were aware of Plaintiffs' serious health condition before and after their need for medical leave of absence.

2298.   Defendants violated Plaintiffs' rights under the FMLA and willfully interfered with, restrained and denied their exercise of rights by denying benefits as provided by the FMLA and regulations.

2299.   As a result of this conduct, Defendants have caused Plaintiffs the loss of wages and other job benefits and out-of-pocket expenses.

2300.   Defendants both denied Plaintiffs the benefits of protection under the FMLA and interfered with their rights under the FMLA.

2301.   Defendants violated Plaintiffs' rights under the FMLA and willfully interfered with, restrained and denied their exercise of rights provided by the FMLA and its implementing regulations.

### COUNT V:
### Defamation

2302.   Paragraphs (1)-(2301) are repeated and realleged the same as though pleaded in full.

2303.   Defendants acting in the course and scope of his employment with CSX, published certain defamatory written statements, of and concerning Plaintiffs, to various third-parties.  Such defamatory statements include, but are not limited to, false accusations that:

     a.    Plaintiffs "were reporting injuries while off duty and seeking out [medical] providers for the purpose of inappropriately seeking benefits to offset potential wage loss;"

     b.    Plaintiffs' conduct was "highly suspicious and suggestive of fraudulent practices;" and

     c.    Plaintiffs engaged in a "potential conspiracy to defraud RRB sickness and disability benefit programs."

2304.   The aforementioned statements, in addition to other statements made by Defendants, accuse Plaintiffs of federal crimes, tend to injure Plaintiffs in their personal and professional reputations, and are defamatory per se.

2305.   As stated hereinabove, Defendants' defamatory statements were published by CSX employees who, at all times relevant, were acting within the course and scope of their employment and agency relationships.  As such, the wrongful conduct of such employees and agents is imputed to their principals and/or employer by the doctrines of agency and/or respondeat superior.

2306.   Defendants published these defamatory statements, of and concerning Plaintiffs, in written correspondence to, among others, the Railroad Retirement Board, Aetna Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board, and the Kentucky Board of Chiropractic Examiners.

2307.   By publishing the aforementioned statements, Defendants knew, or reasonably should have known, that the statements would cause harm to Plaintiffs.

2308.   The aforementioned statements are, and at all times material were, false and Defendants knew, or reasonably should have known, of the falsity.

2309.   Defendants made the aforementioned statements with actual malice or reckless disregard for Plaintiffs' rights and reputations and with the willful intent to injure Plaintiffs.

2310.   As a direct and proximate result of Defendants' publication of defamatory statements, Plaintiffs have suffered damages in an amount to be proven at trial.

2311.   Defendants conspired among themselves in publishing the false and defamatory statements and are jointly and severally liable to Plaintiffs for the damages sustained.

2312.   Defendants' defamatory statements were conscious, deliberate, intentional and/or reckless, justifying an award of punitive damages.

**COUNT VI:**
**Invasion of Privacy – Public Disclosure of Private Facts**

2313.   Paragraphs (1)-(2312) are repeated and realleged the same as though pleaded in full.

2314.   By its conduct, Defendants have knowingly and intentionally caused the public disclosure of private facts concerning Plaintiffs.

2315.   Defendants' public disclosure of Plaintiffs' social security numbers, private medical information, and other personal information constitute private, personal, and sensitive information, the disclosure of which was highly offensive and objectionable to reasonable persons of reasonable sensibilities.

2316.   Plaintiffs' private information published by Defendants did not constitute information of legitimate public concern nor was their disclosure protected by any privilege.

2317.   Defendants knew or reasonably should have known that Plaintiffs had a reasonable expectation of privacy and that disclosing personal and private information to other CSX employees, the Railroad Retirement Board, Aetna Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board, and the Kentucky Board of Chiropractic

Examiners, and others, without Plaintiffs' knowledge or consent, constituted a violation of Plaintiffs' right to privacy.

2318.   As stated hereinabove, Plaintiffs' private information was publically disclosed by CSX employees who, at all times relevant, were acting within the course and scope of their employment and agency relationships.  As such, the wrongful conduct of such employees and agents is imputed to their principals and/or employer by the doctrines of agency and/or respondeat superior.

2319.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

2320.   Defendants conspired among themselves in publishing Plaintiffs' private information and are jointly and severally liable to Plaintiffs for the damages sustained

2321.   Defendants' conduct as described herein was conscious, deliberate, intentional and/or reckless, justifying an award of punitive damages.

### COUNT VII:
### Tortious Interference

2322.   Paragraphs (1)-(2321) are repeated and realleged the same as though pleaded in full.

2323.   Plaintiffs had a contractual or business relationship or expectancy with their medical providers.

2324.   Plaintiffs had a contractual or business relationship or expectancy with their benefit providers.

2325.   Defendants intentionally acted to interfere with Plaintiffs' relationship or expectancy with their medical providers and/or benefits providers.

2326.   Defendants' interference caused harm to the Plaintiffs as alleged herein.

2327.  Plaintiffs suffered damages as a result.

2328.  Defendants conspired amongst themselves to commit tortious interference as alleged herein.

2329.  Defendants are jointly and severally liable to Plaintiffs for the damages caused their tortious interference.

## COUNT VIII:
### Intentional Infliction of Emotional Distress

2330.  Paragraphs (1)-(2329) are repeated and realleged the same as though pleaded in full.

2331.  Defendants actions, as alleged herein, are atrocious, utterly intolerable in a civilized community, and are so extreme and outrageous as to exceed all possible bounds of decency.

2332.  Defendants acted with intent to inflict emotional distress on Plaintiffs or acted recklessly when it was certain or substantially certain such distress would result from Defendants conduct.

2333.  The actions of defendants caused the Plaintiffs to suffer emotional distress.

2334.  The emotional distress suffered by the Plaintiffs was so severe that no reasonable person could be expected to endure it.

2335.  Defendants conspired amongst themselves to commit intentional interference of emotional distress as alleged herein.

2336.  Defendants are jointly and severally liable to Plaintiffs for the damages caused their intentional interference of emotional distress.

## COUNT IX:
### Wrongful Discharge

2337.  Paragraphs (1)-(2336) are repeated and realleged the same as though pleaded in full.

2338.   Under West Virginia law an employee has a cause of action for wrongful discharge in violation of public policy.

2339.   Railroad companies, and CSX in particular, conduct substantial business in West Virginia, employing its citizens and entitling them to certain rights under state and federal laws, rules and regulations as set forth in this Complaint.

2340.   Such federal and state laws, rules and regulations set forth clear public policies. Additionally, the following state and federal laws, rules, and regulations set forth clear public policies: 49 U.S.C. §§ 20101, 20109; 29 C.F.R. Part 1982 *et seq.*; 45 U.S.C. § 351 *et seq.*; 45 U.S.C. § 231 *et seq.*; 31 U.S.C. § 3801 *et seq.*; 20 C.F.R. Part 355 *et seq.*; W. Va. C.S.R. § 150-8-8; W. Va. Code § 21-3-1 *et seq.*

2341.   The dismissals of the Plaintiffs here jeopardizes the public policies set forth in the federal and state laws, rules and regulations cited herein.

2342.   The dismissals of the Plaintiffs here was motivated by conduct related to the public policies set forth in the federal and state laws, rules and regulations cited herein.

2343.   Defendants lacked overriding legitimate business justification for the dismissals of the Plaintiffs.

2344.   Defendants conspired amongst themselves to terminate the employment of the Plaintiffs in violation of West Virginia law.

2345.   Defendants are jointly and severally liable to Plaintiffs for the damages caused their wrongful discharge.

**COUNT X:**
**Federal Railroad Safety Act (49 U.S.C. § 20109)**

2346.   Paragraphs (1)-(2345) are repeated and realleged the same as though pleaded in full.

2347.   The whistleblower protection provisions of the Federal Railroad Safety Act (FRSA) at 49 U.S.C. §§ 20109 and its implementing regulations at 29 C.F.R. § 1982 *et seq*., prohibit a railroad from, among other things, disciplining, threatening, coercing, restraining, and intimidating employees who notify, or attempt to notify, the railroad carrier of a work related personal injury or illness.

2348.   The FRSA also prohibits rail carriers from discharging, demoting, suspending, reprimanding, or in any way discriminating against any employee for making a good faith report of a hazardous safety or security condition.

2349.   The FRSA further prohibits a railroad employer from denying, delaying, or interfering with the medical or first aid treatment of an employee injured during the course of employment, as well as from disciplining or threatening discipline to an employee for requesting medical or first aid treatment, or for following orders or a treatment of a treating physician.

2350.   Plaintiffs engaged in multiple protected acts, as alleged in the foregoing paragraphs, which are hereby incorporated by reference as if fully set forth herein, including notifying or attempting to notify CSX and/or CSXT of personal injuries, reporting hazardous safety or security conditions, and requesting medical treatment from his or her chosen medical provider and/or for following the orders of a treating physician.

2351.   With knowledge of these protected acts, Defendants took adverse actions against Plaintiffs as alleged in the foregoing paragraphs above, including but not limited to, the following:

   a.   Accusing Plaintiffs of engaging in fraud and other unfounded wrongdoing in a letter to the Railroad Retirement Board, medical benefit providers, and others;

   b.   Notifying Plaintiffs' medical providers that the Company would no longer accept medical documentation such providers;

c.  Restricting Plaintiffs from seeking treatment, and refusing to accept medical documentation, from duly licensed medical providers;

d.  Issuing Plaintiffs notices to attend formal disciplinary investigations;

e.  Subjecting Plaintiffs to formal disciplinary investigations;

f.  Discriminating against Plaintiffs for seeking medical treatment;

g.  Sharing Plaintiffs' private and confidential medical information with, among others, CSX and CSXT management, other CSX and CSXT employees, and other attendees at the formal investigations;

h.  Terminating Plaintiffs from employment; and

i.  Such other related adverse actions that may be discovered.

2352.  The adverse actions of Defendants were due in whole or in part to Plaintiffs' engaging in statutorily protected acts under the FRSA.  Any and all additional adverse actions taken by Defendants against Plaintiffs were due in whole or in part to Plaintiffs having engaged in statutorily protected activities.

2353.  The actions taken by Defendants against Plaintiffs as described in the paragraphs above were in willful and/or reckless disregard for Plaintiffs' rights under the FRSA.

2354.  Plaintiffs previously filed complaints under 49 U.S.C. § 20109 with the U.S. Department of Labor Occupational Health and Safety Administration (OSHA).  Since the filing of the OSHA complaints, more than 210 days has elapsed with no final decision from the secretary of labor.  Accordingly, Plaintiffs hereby exercise their right to file a *de novo* action in this district court pursuant to 49 U.S.C. § 20109(d)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand: (1) judgment against defendants jointly and severally in an amount to make them whole for all damages suffered by them as a result of defendants' violations of ERISA, the Rehabilitation Act, WVHRA, FMLA, FRSA, and state causes of action including, but not limited to, damages for back pay and benefits, front pay, compensatory damages, punitive damages, out of pocket expenses, liquidated damages, contributions to fringe benefits including pension and retirement, offset for tax consequences of a judgment and all other damages recoverable under the above laws plus prejudgment and other interest; (2) that this Court enjoin defendants from further violating the above laws; (3) that this Court order defendants to reinstate Plaintiffs to the positions they had been awarded when defendant unlawfully terminated  their employment with all seniority and benefits they would have otherwise accrued had defendants not violated the above laws; (4) that this Court award Plaintiffs expert witness fees, attorneys' fees and the cost of bringing this action and, (5) that this Court grant all other relief to Plaintiffs for injunctive and declaratory relief under law and equity.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted this 6th day of December 2019.

/s/ Gregory G. Paul
Gregory G. Paul
WV Bar #8129
Morgan & Paul, PLLC
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
Tel: (844) 374-7200
gregpaul@morganpaul.com

Jeff R. Dingwall
CA Bar #265432
Eight & Sand
550 West B Street
Fourth Floor
San Diego, CA 92101
Tel: (619) 796-3464
jeff@eightandsandlaw.com
Pro Hac Vice

Kenneth R. Reed
Kenneth R. Reed, Attorney PSC
241 Elm Street
Ludlow, KY 41016
Tel: (859) 331-4443
kenreedatty@gmail.com
Applicant for Pro Hac Vice

C. Kiel Garella
Garella Law, P.C.
409 East Boulevard
Charlotte, NC 28303
Tel: (980) 321-7934
kiel@gljustice.com
Pro Hac Vice

Mark F. Underwood
Underwood Law Office, Inc.
923 3rd Ave
Huntington, WV 25701
Tel: (304) 522-0508
munderwood@underwoodlawoffices.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**JUSTIN ADKINS, et al.,**

> **Plaintiffs,**

**v.**                                                    Civil Action No.  3:18-CV-0321

**CSX CORPORATION, et al.,**

> **Defendants.**

_____

### CONSOLIDATED ANSWER TO THIRD AMENDED COMPLAINT

COME NOW, Defendants, CSX Transportation, Inc. ("CSXT"), CSX Corporation ("CSXC"),[1] Craig D. Heligman, M.D., Kenneth Emerson, Elizabeth Creedon, Shawn Lusk, Tom Deangelo, Delando Jones, Curt Shogren, Milton Storm and Gus Thoele (collectively, the "Defendants"), and pursuant to the Court's January 13, 2020 Order (ECF Doc. No. 92),[2] hereby submit their Consolidated Answer to Plaintiffs' Third Amended Complaint and state as follows:

### FIRST DEFENSE

The Third Amended Complaint filed herein fails to state a claim against Defendants upon which relief can be granted.

---

[1]     "[M]any circuits agree that defendants can waive objections to personal jurisdiction by indicating a willingness to defend the suit" and submit to the personal jurisdiction of the court.  *In re: Ethicon, Inc.*, 2:12-CV-05719, 2016 WL 1718826, at *2 (S.D. W. Va. Apr. 27, 2016).  Therefore, out of an abundance of caution, Defendant CSX Corporation expressly states that, by joining in this Consolidated Answer, Defendant CSX Corporation does not waive its defense that the Court lacks personal jurisdiction over this Defendant.

[2]     Therein the Court expressly allowed Defendants to incorporate their previous answers and objections by reference and to jointly respond to the new allegations only, ordering that Defendants "may file a consolidated answer that only addresses the new party and claims, and the Court will deem Defendants' prior answers as responsive to the Third Amended Complaint."  *See id.* at 2.

**SECOND DEFENSE**

**INCORPORATION BY REFERENCE**

Defendants expressly incorporate herein by reference their prior answers, **including the affirmative defenses asserted therein**, pursuant to the Court's January 13, 2020 Order (ECF Doc. No. 92). With respect to the claims asserted by the Estate of Chad Little in substitution for Plaintiff Chad Little, who is deceased, Defendants expressly incorporate herein by reference their prior answers to the claims asserted by Chad Little. Likewise, with respect to the claims newly asserted by Plaintiff Scott Morrison, Defendants expressly incorporate herein by reference their prior answers to the claims asserted by the original Plaintiffs.

Every allegation in Plaintiffs' Third Amended Complaint that is not expressly admitted by Defendants herein is denied.

**THIRD DEFENSE**

**NEWLY-ASSERTED ALLEGATIONS**

1.  Answering Paragraph 49 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Justin Adkins, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff. To the extent that Paragraph 49 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49, and therefore deny those allegations.

2.  Answering Paragraph 50 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Justin Adkins, Defendants deny those allegations.

3.  Answering Paragraph 51 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Justin Adkins, Defendants deny those allegations.

2

4.      Answering Paragraph 52 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Justin Adkins, Defendants deny those allegations.

5.      Answering Paragraph 87 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Justin Blake, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 87 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 87, and therefore deny those allegations.

6.      Answering Paragraph 88 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Justin Blake, Defendants deny those allegations.

7.      Answering Paragraph 89 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Justin Blake, Defendants deny those allegations.

8.      Answering Paragraph 90 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Justin Blake, Defendants deny those allegations.

9.      Answering Paragraph 127 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Edwin Glowacki, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 127 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 127, and therefore deny those allegations.

10.     Answering Paragraph 128 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Edwin Glowacki, Defendants deny those allegations.

11.     Answering Paragraph 129 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Edwin Glowacki, Defendants deny those allegations.

12.     Answering Paragraph 130 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Edwin Glowacki, Defendants deny those allegations.

13.     Answering Paragraph 166 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Eric Jordan, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 166 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 166, and therefore deny those allegations.

14.     Answering Paragraph 167 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Eric Jordan, Defendants deny those allegations.

15.     Answering Paragraph 168 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Eric Jordan, Defendants deny those allegations.

16.     Answering Paragraph 169 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Eric Jordan, Defendants deny those allegations.

17.     Answering Paragraph 207 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Kevin Palmer, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 207 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 207, and therefore deny those allegations.

18.    Answering Paragraph 208 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Kevin Palmer, Defendants deny those allegations.

19.    Answering Paragraph 209 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Kevin Palmer, Defendants deny those allegations.

20.    Answering Paragraph 210 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Kevin Palmer, Defendants deny those allegations.

21.    Answering Paragraph 246 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Samuel Preston, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 246 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 246, and therefore deny those allegations.

22.    Answering Paragraph 247 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Samuel Preston, Defendants deny those allegations.

23.    Answering Paragraph 248 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Samuel Preston, Defendants deny those allegations.

24.    Answering Paragraph 249 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Samuel Preston, Defendants deny those allegations.

25.    Answering Paragraph 285 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Sargent, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 285 contains allegations against the remaining Defendants, the remaining

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 285, and therefore deny those allegations.

26.    Answering Paragraph 286 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Sargent, Defendants deny those allegations.

27.    Answering Paragraph 287 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Sargent, Defendants deny those allegations.

28.    Answering Paragraph 288 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Sargent, Defendants deny those allegations.

29.    Answering Paragraph 325 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Travis Thornsberry, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 325 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 325, and therefore deny those allegations.

30.    Answering Paragraph 326 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Travis Thornsberry, Defendants deny those allegations.

31.    Answering Paragraph 327 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Travis Thornsberry, Defendants deny those allegations.

32.    Answering Paragraph 328 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Travis Thornsberry, Defendants deny those allegations.

33.    Answering Paragraph 363 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Williams, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent

that Paragraph 363 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 363, and therefore deny those allegations.

34. Answering Paragraph 364 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Williams, Defendants deny those allegations.

35. Answering Paragraph 365 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Williams, Defendants deny those allegations.

36. Answering Paragraph 366 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Williams, Defendants deny those allegations.

37. Answering Paragraph 401 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Baker, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 401 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 401, and therefore deny those allegations.

38. Answering Paragraph 402 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Baker, Defendants deny those allegations.

39. Answering Paragraph 403 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Baker, Defendants deny those allegations.

40. Answering Paragraph 404 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Baker, Defendants deny those allegations.

41. Answering Paragraph 439 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Blain, Defendant CSXT denies those allegations.

Defendant CSX Corporation specifically denies that it employed any Plaintiff. To the extent that Paragraph 439 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 439, and therefore deny those allegations.

42.    Answering Paragraph 440 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Blain, Defendants deny those allegations.

43.    Answering Paragraph 441 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Blain, Defendants deny those allegations.

44.    Answering Paragraph 442 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Blain, Defendants deny those allegations.

45.    Answering Paragraph 476 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Devery Brown, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff. To the extent that Paragraph 476 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 476, and therefore deny those allegations.

46.    Answering Paragraph 477 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Devery Brown, Defendants deny those allegations.

47.    Answering Paragraph 478 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Devery Brown, Defendants deny those allegations.

48.    Answering Paragraph 479 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Devery Brown, Defendants deny those allegations.

49.     Answering Paragraph 514 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Deal, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 514 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 514, and therefore deny those allegations.

50.     Answering Paragraph 515 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Deal, Defendants deny those allegations.

51.     Answering Paragraph 516 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Deal, Defendants deny those allegations.

52.     Answering Paragraph 517 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Deal, Defendants deny those allegations.

53.     Answering Paragraph 552 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jonathan Jeffers, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 552 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 552, and therefore deny those allegations.

54.     Answering Paragraph 553 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jonathan Jeffers, Defendants deny those allegations.

55.     Answering Paragraph 554 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jonathan Jeffers, Defendants deny those allegations.

56.     Answering Paragraph 555 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jonathan Jeffers, Defendants deny those allegations.

57.     Answering Paragraph 589 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Robert Mosteller, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 589 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 589, and therefore deny those allegations.

58.     Answering Paragraph 590 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Robert Mosteller, Defendants deny those allegations.

59.     Answering Paragraph 591 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Robert Mosteller, Defendants deny those allegations.

60.     Answering Paragraph 592 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Robert Mosteller, Defendants deny those allegations.

61.     Answering Paragraph 626 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael L. Potter, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 626 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 626, and therefore deny those allegations.

62.     Answering Paragraph 627 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael L. Potter, Defendants deny those allegations.

63.    Answering Paragraph 628 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael L. Potter, Defendants deny those allegations.

64.    Answering Paragraph 629 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael L. Potter, Defendants deny those allegations.

65.    Answering Paragraph 664 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael D. Potter, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 664 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 664, and therefore deny those allegations.

66.    Answering Paragraph 665 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael D. Potter, Defendants deny those allegations.

67.    Answering Paragraph 666 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael D. Potter, Defendants deny those allegations.

68.    Answering Paragraph 667 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael D. Potter, Defendants deny those allegations.

69.    Answering Paragraph 702 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jesse Wallace, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 702 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 702, and therefore deny those allegations.

70.     Answering Paragraph 703 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jesse Wallace, Defendants deny those allegations.

71.     Answering Paragraph 704 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jesse Wallace, Defendants deny those allegations.

72.     Answering Paragraph 705 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jesse Wallace, Defendants deny those allegations.

73.     Answering Paragraph 739 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Timothy Witt, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 739 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 739, and therefore deny those allegations.

74.     Answering Paragraph 740 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Timothy Witt, Defendants deny those allegations.

75.     Answering Paragraph 741 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Timothy Witt, Defendants deny those allegations.

76.     Answering Paragraph 742 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Timothy Witt, Defendants deny those allegations.

77.     Answering Paragraph 777 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Bobby Akers, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 777 contains allegations against the remaining Defendants, the remaining

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 777, and therefore deny those allegations.

78.     Answering Paragraph 778 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Bobby Akers, Defendants deny those allegations.

79.     Answering Paragraph 779 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Bobby Akers, Defendants deny those allegations.

80.     Answering Paragraph 780 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Bobby Akers, Defendants deny those allegations.

81.     Answering Paragraph 815 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Gerald Barber, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 815 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 815, and therefore deny those allegations.

82.     Answering Paragraph 816 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Gerald Barber, Defendants deny those allegations.

83.     Answering Paragraph 817 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Gerald Barber, Defendants deny those allegations.

84.     Answering Paragraph 818 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Gerald Barber, Defendants deny those allegations.

85.     Answering Paragraph 853 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Bills, Defendant CSXT denies those allegations.  Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that

Paragraph 853 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 853, and therefore deny those allegations.

86.     Answering Paragraph 854 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Bills, Defendants deny those allegations.

87.     Answering Paragraph 855 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Bills, Defendants deny those allegations.

88.     Answering Paragraph 856 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Bills, Defendants deny those allegations.

89.     Answering Paragraph 891 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Clark, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 891 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 891, and therefore deny those allegations.

90.     Answering Paragraph 892 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Clark, Defendants deny those allegations.

91.     Answering Paragraph 893 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Clark, Defendants deny those allegations.

92.     Answering Paragraph 894 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Clark, Defendants deny those allegations.

93.     Answering Paragraph 929 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Randall Craycraft, Defendant CSXT denies those allegations.

Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 929 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 929, and therefore deny those allegations.

94.    Answering Paragraph 930 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Randall Craycraft, Defendants deny those allegations.

95.    Answering Paragraph 931 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Randall Craycraft, Defendants deny those allegations.

96.    Answering Paragraph 932 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Randall Craycraft, Defendants deny those allegations.

97.    Answering Paragraph 967 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Frasure, Defendant CSXT denies those allegations.  Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 967 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 967, and therefore deny those allegations.

98.    Answering Paragraph 968 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Frasure, Defendants deny those allegations.

99.    Answering Paragraph 969 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Frasure, Defendants deny those allegations.

100.    Answering Paragraph 970 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Frasure, Defendants deny those allegations.

101.    Answering Paragraph 1003 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Joshua Hall, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1003 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1003, and therefore deny those allegations.

102.    Answering Paragraph 1004 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Joshua Hall, Defendants deny those allegations.

103.    Answering Paragraph 1005 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Joshua Hall, Defendants deny those allegations.

104.    Answering Paragraph 1006 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Joshua Hall, Defendants deny those allegations.

105.    Answering Paragraph 1039 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Sammy Maddix, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1039 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1039, and therefore deny those allegations.

106.    Answering Paragraph 1040 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Sammy Maddix, Defendants deny those allegations.

107.    Answering Paragraph 1041 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Sammy Maddix, Defendants deny those allegations.

108.    Answering Paragraph 1042 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Sammy Maddix, Defendants deny those allegations.

109.    Answering Paragraph 1078 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Zack Potter, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1078 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1078, and therefore deny those allegations.

110.    Answering Paragraph 1079 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Zack Potter, Defendants deny those allegations.

111.    Answering Paragraph 1080 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Zack Potter, Defendants deny those allegations.

112.    Answering Paragraph 1081 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Zack Potter, Defendants deny those allegations.

113.    Answering Paragraph 1117 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Stinnett, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1117 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1117, and therefore deny those allegations.

114.    Answering Paragraph 1118 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Stinnett, Defendants deny those allegations.

115.    Answering Paragraph 1119 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Stinnett, Defendants deny those allegations.

116.    Answering Paragraph 1120 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff James Stinnett, Defendants deny those allegations.

117.    Answering Paragraph 1156 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Todd Thayer, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1156 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1156, and therefore deny those allegations.

118.    Answering Paragraph 1157 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Todd Thayer, Defendants deny those allegations.

119.    Answering Paragraph 1158 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Todd Thayer, Defendants deny those allegations.

120.    Answering Paragraph 1159 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Todd Thayer, Defendants deny those allegations.

121.    Answering Paragraph 1160 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Deanna Lanham, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1160, and therefore deny those allegations.

122.    Answering Paragraph 1195 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Deanna Lanham, Defendants deny those allegations.

123.     Answering Paragraph 1230 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Campbell, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1230 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1230, and therefore denies those allegations.

124.     Answering Paragraph 1231 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Campbell, Defendants deny those allegations.

125.     Answering Paragraph 1232 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Campbell, Defendants deny those allegations.

126.     Answering Paragraph 1233 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Campbell, Defendants deny those allegations.

127.     Answering Paragraph 1267 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Tony Abdon, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1267 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1267, and therefore denies those allegations.

128.     Answering Paragraph 1268 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Tony Abdon, Defendants deny those allegations.

129.     Answering Paragraph 1269 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Tony Abdon, Defendants deny those allegations.

130.    Answering Paragraph 1270 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Tony Abdon, Defendants deny those allegations.

131.    Answering Paragraph 1271 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Tony Abdon, Defendants deny those allegations.

132.    Answering Paragraph 1308 of the Third Amended Complaint, which sets forth new allegations as to Chad Little—for whom the Estate of Chad Little has been substituted as a party—Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1308, and therefore deny those allegations.

133.    Answering Paragraph 1309 of the Third Amended Complaint, which sets forth new allegations as to Chad Little—for whom the Estate of Chad Little has been substituted as a party—Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1309, and therefore deny those allegations.

134.    Answering Paragraph 1310 of the Third Amended Complaint, which sets forth new allegations as to Chad Little—for whom the Estate of Chad Little has been substituted as a party—Defendant CSXT denies those allegations.  Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1310 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1310, and therefore deny those allegations.

135.    Answering Paragraph 1311 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Chad Little—for whom the Estate of Chad Little has been substituted as a party—Defendants deny those allegations.

136.    Answering Paragraph 1312 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Chad Little—for whom the Estate of Chad Little has been substituted as a party—Defendants deny those allegations.

137.    Answering Paragraph 1313 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Chad Little—for whom the Estate of Chad Little has been substituted as a party—Defendants deny those allegations.

138.    Answering Paragraph 1314 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Chad Little—for whom the Estate of Chad Little has been substituted as a party—Defendants deny those allegations.

139.    Answering Paragraph 1349 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Brandon Adkins, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1349 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1349, and therefore deny those allegations.

140.    Answering Paragraph 1350 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Brandon Adkins, Defendants deny those allegations.

141.    Answering Paragraph 1351 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Brandon Adkins, Defendants deny those allegations.

142.    Answering Paragraph 1352 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Brandon Adkins, Defendants deny those allegations.

143.    Answering Paragraph 1353 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Brandon Adkins, Defendants deny those allegations.

144.     Answering Paragraph 1387 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jacqueline Marshall, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1387 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1387, and therefore deny those allegations.

145.     Answering Paragraph 1388 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jacqueline Marshall, Defendants deny those allegations.

146.     Answering Paragraph 1389 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jacqueline Marshall, Defendants deny those allegations.

147.     Answering Paragraph 1390 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jacqueline Marshall, Defendants deny those allegations.

148.     Answering Paragraph 1391 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jacqueline Marshall, Defendants deny those allegations.

149.     Answering Paragraph 1425 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Homer Maynard, Defendant CSXT denies those allegations. Defendant CSX Corporation specifically denies that it employed any Plaintiff.  To the extent that Paragraph 1425 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1425, and therefore deny those allegations.

150.     Answering Paragraph 1426 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Homer Maynard, Defendants deny those allegations.

151.    Answering Paragraph 1427 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Homer Maynard, Defendants deny those allegations.

152.    Answering Paragraph 1428 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Homer Maynard, Defendants deny those allegations.

153.    Answering Paragraph 1429 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Homer Maynard, Defendants deny those allegations.

154.    Answering Paragraph 1430 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1430, and therefore deny those allegations.

155.    Answering Paragraph 1431 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1431, and therefore deny those allegations.

156.    Answering Paragraph 1432 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendant CSXT and Defendant Heligman admit that a certificate of ongoing illness or injury was submitted, but deny the remainder of the allegations in Paragraph 1432.  To the extent that Paragraph 1432 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1432, and therefore deny those allegations.

157.    Answering Paragraph 1433 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX

Corporation, the allegations are specifically denied.  The remaining Defendants admit the allegations contained therein.

158.    Answering Paragraph 1434 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendant CSXT and Defendant Heligman admit the allegations in the first sentence of Paragraph 1434 of the Third Amended Complaint, but deny the allegations in the second sentence of that Paragraph.  To the extent that Paragraph 1434 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1434, and therefore deny those allegations.

159.    Answering Paragraph 1435 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendants CSXT, Heligman, Shogren, and Thoele admit the allegations contained therein.  The remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1435, and therefore deny those allegations.

160.    Answering Paragraph 1436 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele admit the allegations contained therein.  To the extent that Paragraph 1436 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1436, and therefore deny those allegations.  Defendant CSX Corporation specifically denies that it employed any Plaintiff.

161.    Answering Paragraph 1437 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendants CSXT, Heligman, Shogren, and Thoele admit the allegations contained therein.  To the extent that Paragraph 1437 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1437, and therefore deny those allegations.

162.    Answering Paragraph 1438 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

163.    Answering Paragraph 1439 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele admit the allegations contained therein, except denies that Defendant Heligman "accused" Drs. Johnson and Carey.  To the extent that Paragraph 1439 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1439, and therefore deny those allegations.

164.    Answering Paragraph 1440 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele admit that a list of employees was attached to the referenced letter, but deny how the Third Amended Complaint characterizes the list.  To the extent that Paragraph 1440 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1440, and therefore deny those allegations.

165.    Answering Paragraph 1441 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants state that this Paragraph contains legal conclusions and a hypothetical statement to which no response is required.  Otherwise, the allegations of Paragraph 1441 of the Third Amended Complaint are hereby denied.

166.    Answering Paragraph 1442 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele admit those allegations.  To the extent that Paragraph 1442 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1442, and therefore deny those allegations.

167.    Answering Paragraph 1443 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele admit those allegations.  To the extent that Paragraph 1443 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1443, and therefore deny those allegations.

168.    Answering Paragraph 1444 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele admit those allegations.  To the extent that Paragraph 1444 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1444, and therefore deny those allegations.

169.    Answering Paragraph 1445 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendants CSXT, Heligman, Shogren, and Thoele admit those allegations.  To the extent that Paragraph 1445 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1445, and therefore deny those allegations.

170.    Answering Paragraph 1446 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendants CSXT, Heligman, Shogren, and Thoele admit those allegations.  To the extent that Paragraph 1446 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1446, and therefore deny those allegations.

171.    Answering Paragraph 1447 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations and state that the hearing transcript speaks for itself.

172.    Answering Paragraph 1448 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants Heligman and CSXT admit those allegations.  To the extent that Paragraph 1448 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1448, and therefore deny those allegations.

173.    Answering Paragraph 1449 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele admit those allegations.  To the extent that Paragraph 1449 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1449, and therefore deny those allegations.

174.    Answering Paragraph 1450 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendants CSXT, Heligman, Shogren, and Thoele admit the allegations in the first sentence of Paragraph 1450 of the Third Amended Complaint, but deny the allegations in the second sentence.  To the extent that Paragraph 1450 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1450, and therefore deny those allegations.

175.    Answering Paragraph 1451 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele deny Plaintiffs' characterization of the hearing testimony, and state that the hearing transcript speaks for itself.  To the extent that Paragraph 1451 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1451, and therefore deny those allegations.

176.    Answering Paragraph 1452 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

177.    Answering Paragraph 1453 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

178.    Answering Paragraph 1454 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendants Heligman and CSXT admits he did not personally examine this Plaintiff.  To the extent that Paragraph 1454 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1454, and therefore deny those allegations.

179.    Answering Paragraph 1455 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendants CSXT, Heligman, Shogren, and Thoele admit those allegations.  To the extent that Paragraph 1455 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1455, and therefore deny those allegations.

180.    Answering Paragraph 1456 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

181.    Answering Paragraph 1457 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

182.    Answering Paragraph 1458 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants CSXT, Heligman, Shogren, and Thoele admit those allegations.  To the extent that Paragraph 1458 contains allegations against

the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1458, and therefore deny those allegations.

183.    Answering Paragraph 1459 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

184.    Answering Paragraph 1460 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

185.    Answering Paragraph 1461 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

186.    Answering Paragraph 1462 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

187.    Answering Paragraph 1463 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  CSXT admits those allegations.  To the extent that Paragraph 1463 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1463, and therefore deny those allegations.

188.    Answering Paragraph 1464 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

189.    Answering Paragraph 1465 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, to the extent that the allegations include CSX Corporation, the allegations are specifically denied.  Defendant CSXT denies those allegations. To the extent that Paragraph 1465 contains allegations against the remaining Defendants, the

remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1465, and therefore deny those allegations.

190.    Answering Paragraph 1466 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

191.    Answering Paragraph 1467 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

192.    Answering Paragraph 1468 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Scott Morrison, Defendants deny those allegations.

193.    Answering Paragraph 1469 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jeremy Napier, Defendants deny those allegations.

194.    Answering Paragraph 1504 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jeremy Napier, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1504 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1504, and therefore deny those allegations.

195.    Answering Paragraph 1505 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jeremy Napier, Defendants deny those allegations.

196.    Answering Paragraph 1506 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jeremy Napier, Defendants deny those allegations.

197.    Answering Paragraph 1507 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jeremy Napier, Defendants deny those allegations.

198.     Answering Paragraph 1543 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Shawn Patterson, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1543 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1543, and therefore deny those allegations.

199.     Answering Paragraph 1544 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Shawn Patterson, Defendants deny those allegations.

200.     Answering Paragraph 1545 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Shawn Patterson, Defendants deny those allegations.

201.     Answering Paragraph 1546 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Shawn Patterson, Defendants deny those allegations.

202.     Answering Paragraph 1591 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Matthew Woods, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1591 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1591, and therefore deny those allegations.

203.     Answering Paragraph 1592 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Matthew Woods, Defendants deny those allegations.

204.     Answering Paragraph 1593 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Matthew Woods, Defendants deny those allegations.

205.     Answering Paragraph 1594 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Matthew Woods, Defendants deny those allegations.

206.     Answering Paragraph 1629 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Carpenter, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1629 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1629, and therefore deny those allegations.

207.     Answering Paragraph 1630 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Carpenter, Defendants deny those allegations.

208.     Answering Paragraph 1631 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Carpenter, Defendants deny those allegations.

209.     Answering Paragraph 1632 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff John Carpenter, Defendants deny those allegations.

210.     Answering Paragraph 1668 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Quincy Christian, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1668 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1668, and therefore deny those allegations.

211.     Answering Paragraph 1669 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Quincy Christian, Defendants deny those allegations.

212.    Answering Paragraph 1670 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Quincy Christian, Defendants deny those allegations.

213.    Answering Paragraph 1671 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Quincy Christian, Defendants deny those allegations.

214.    Answering Paragraph 1707 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Gregory Hamm, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1707 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1707, and therefore deny those allegations.

215.    Answering Paragraph 1708 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Gregory Hamm, Defendants deny those allegations.

216.    Answering Paragraph 1709 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Gregory Hamm, Defendants deny those allegations.

217.    Answering Paragraph 1710 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Gregory Hamm, Defendants deny those allegations.

218.    Answering Paragraph 1743 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Ethan Mullins, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1743 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1743, and therefore deny those allegations.

219.    Answering Paragraph 1744 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Ethan Mullins, Defendants deny those allegations.

220.    Answering Paragraph 1745 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Ethan Mullins, Defendants deny those allegations.

221.    Answering Paragraph 1746 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Ethan Mullins, Defendants deny those allegations.

222.    Answering Paragraph 1782 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Owens, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1782 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1782, and therefore deny those allegations.

223.    Answering Paragraph 1783 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Owens, Defendants deny those allegations.

224.    Answering Paragraph 1784 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Owens, Defendants deny those allegations.

225.    Answering Paragraph 1785 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Michael Owens, Defendants deny those allegations.

226.    Answering Paragraph 1820 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jonathan Rowe, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1820 contains allegations against the remaining Defendants, the

remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1820, and therefore deny those allegations.

227.    Answering Paragraph 1821 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jonathan Rowe, Defendants deny those allegations.

228.    Answering Paragraph 1822 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jonathan Rowe, Defendants deny those allegations.

229.    Answering Paragraph 1823 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jonathan Rowe, Defendants deny those allegations.

230.    Answering Paragraph 1858 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Danny Stewart, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1858 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1858, and therefore deny those allegations.

231.    Answering Paragraph 1859 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Danny Stewart, Defendants deny those allegations.

232.    Answering Paragraph 1860 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Danny Stewart, Defendants deny those allegations.

233.    Answering Paragraph 1861 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Danny Stewart, Defendants deny those allegations.

234.    Answering Paragraph 1896 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Lloyd Williams, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied.

To the extent that Paragraph 1896 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1896, and therefore deny those allegations.

235.    Answering Paragraph 1897 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Lloyd Williams, Defendants deny those allegations.

236.    Answering Paragraph 1898 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Lloyd Williams, Defendants deny those allegations.

237.    Answering Paragraph 1899 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Lloyd Williams, Defendants deny those allegations.

238.    Answering Paragraph 1933 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff David Manis, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied.  To the extent that Paragraph 1933 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1933, and therefore deny those allegations.

239.    Answering Paragraph 1934 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff David Manis, Defendants deny those allegations.

240.    Answering Paragraph 1935 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff David Manis, Defendants deny those allegations.

241.    Answering Paragraph 1936 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff David Manis, Defendants deny those allegations.

242.    Answering Paragraph 1969 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Joshua Ferguson, Defendant CSXT denies those allegations.  To

the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 1969 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1969, and therefore deny those allegations.

243.    Answering Paragraph 1970 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Joshua Ferguson, Defendants deny those allegations.

244.    Answering Paragraph 1971 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Joshua Ferguson, Defendants deny those allegations.

245.    Answering Paragraph 1972 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Joshua Ferguson, Defendants deny those allegations.

246.    Answering Paragraph 2008 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Eric Speaks, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied.  To the extent that Paragraph 2008 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2008, and therefore deny those allegations.

247.    Answering Paragraph 2009 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Eric Speaks, Defendants deny those allegations.

248.    Answering Paragraph 2010 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Eric Speaks, Defendants deny those allegations.

249.    Answering Paragraph 2011 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Eric Speaks, Defendants deny those allegations.

250.    Answering Paragraph 2047 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Donald Stephens, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 2047 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2047, and therefore deny those allegations.

251.    Answering Paragraph 2048 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Donald Stephens, Defendants deny those allegations.

252.    Answering Paragraph 2049 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Donald Stephens, Defendants deny those allegations.

253.    Answering Paragraph 2050 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Donald Stephens, Defendants deny those allegations.

254.    Answering Paragraph 2086 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jason Barker, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied.  To the extent that Paragraph 2086 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2086, and therefore deny those allegations.

255.    Answering Paragraph 2087 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jason Barker, Defendants deny those allegations.

256.    Answering Paragraph 2088 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jason Barker, Defendants deny those allegations.

257.    Answering Paragraph 2089 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jason Barker, Defendants deny those allegations.

258.    Answering Paragraph 2125 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Chad Dowdy, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied.  To the extent that Paragraph 2125 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2125, and therefore deny those allegations.

259.    Answering Paragraph 2126 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Chad Dowdy, Defendants deny those allegations.

260.    Answering Paragraph 2127 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Chad Dowdy, Defendants deny those allegations.

261.    Answering Paragraph 2128 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Chad Dowdy, Defendants deny those allegations.

262.    Answering Paragraph 2162 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jerry Flocker, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied.  To the extent that Paragraph 2162 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2162, and therefore deny those allegations.

263.    Answering Paragraph 2163 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jerry Flocker, Defendants deny those allegations.

264.    Answering Paragraph 2164 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jerry Flocker, Defendants deny those allegations.

265.    Answering Paragraph 2165 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Jerry Flocker, Defendants deny those allegations.

266.    Answering Paragraph 2200 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Grover Kelley, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied. To the extent that Paragraph 2200 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2200, and therefore deny those allegations.

267.    Answering Paragraph 2201 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Grover Kelley, Defendants deny those allegations.

268.    Answering Paragraph 2202 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Grover Kelley, Defendants deny those allegations.

269.    Answering Paragraph 2203 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Grover Kelley, Defendants deny those allegations.

270.    Answering Paragraph 2238 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Christopher Clay Stiltner, Defendant CSXT denies those allegations.  To the extent that the allegations include CSX Corporation, the allegations are specifically denied.  To the extent that Paragraph 2238 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2238, and therefore deny those allegations.

271.    Answering Paragraph 2239 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Christopher Clay Stiltner, Defendants deny those allegations.

272.    Answering Paragraph 2240 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Christopher Clay Stiltner, Defendants deny those allegations.

273.    Answering Paragraph 2241 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Christopher Clay Stiltner, Defendants deny those allegations.

274.    Answering Paragraph 2242 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Hutchinson, Defendants deny those allegations.

275.    Answering Paragraph 2277 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Hutchinson, Defendant CSXT denies those allegations. To the extent that the allegations include CSX Corporation, the allegations are specifically denied.  To the extent that Paragraph 2277 contains allegations against the remaining Defendants, the remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2277, and therefore deny those allegations.

276.    Answering Paragraph 2278 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Hutchinson, Defendants deny those allegations.

277.    Answering Paragraph 2279 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Hutchinson, Defendants deny those allegations.

278.    Answering Paragraph 2280 of the Third Amended Complaint, which sets forth new allegations as to Plaintiff Dennis Hutchinson, Defendants deny those allegations.

## NEWLY-ASSERTED CLAIM

279.    Paragraph 2346 of the Third Amended Complaint merely incorporates the previous Paragraphs into Plaintiffs' newly-asserted claim under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109 (Count X), and does not require a response.  To the extent a response is required, Defendants expressly deny all liability pursuant to the FRSA.

280.    Answering Paragraph 2347 of the Third Amended Complaint, Defendants deny Plaintiffs' characterization of the statutory language and state that the text of the FRSA speaks for itself.  Defendants deny they engaged in the conduct described in Paragraph 2347 of the Third Amended Complaint and expressly deny all liability pursuant to the FRSA.

281.    Answering Paragraph 2348 of the Third Amended Complaint, Defendants deny Plaintiffs' characterization of the statutory language and state that the text of the FRSA speaks for itself.  Defendants deny they engaged in the conduct described in Paragraph 2348 of the Third Amended Complaint and expressly deny all liability pursuant to the FRSA.

282.    Answering Paragraph 2349 of the Third Amended Complaint, Defendants deny Plaintiffs' characterization of the statutory language and state that the text of the FRSA speaks for itself.  Defendants deny they engaged in the conduct described in Paragraph 2349 of the Third Amended Complaint and expressly deny all liability pursuant to the FRSA.

283.    Answering Paragraph 2350 of the Third Amended Complaint, Defendants deny those allegations.

284.    Answering Paragraph 2351 of the Third Amended Complaint, Defendants deny those allegations, including the allegations set forth in each subpart (a) through (i).

285.    Answering Paragraph 2352 of the Third Amended Complaint, Defendants deny those allegations.

286.    Answering Paragraph 2353 of the Third Amended Complaint, Defendants deny those allegations.

287.    Answering Paragraph 2354 of the Third Amended Complaint, Defendants admit that some of the Plaintiffs previously filed complaints under 49 U.S.C. § 20109 with the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA"), and that more than 210 days have elapsed with no final decision from the Secretary of Labor on some of those claims.  Defendants are without knowledge or information sufficient to form a belief as to whether other of the Plaintiffs have filed complaints under 49 U.S.C. § 20109 with OSHA, and/or whether 210 days have elapsed with no final decision from the Secretary of Labor on some of the Plaintiffs' claims, and therefore deny those allegations.  Plaintiffs' allegation that they are exercising their right to file a *de novo* action in this district court pursuant to 49 U.S.C. § 20109(d)(3) is a legal conclusion to which no response is required. To the extent any response is required, Defendants deny that allegation.

288.    Answering the unnumbered Paragraph of the Third Amended Complaint entitled "Prayer for Relief," Defendants expressly deny any liability and expressly deny that Plaintiffs are entitled to relief in this civil action.

289.    Every allegation in Plaintiffs' Third Amended Complaint that is not expressly admitted by Defendants herein is denied.

## FOURTH DEFENSE

## ADDITIONAL AFFIRMATIVE DEFENSES

1.    Defendants deny that they violated the Federal Rail Safety Act ("FRSA"), or any other law or laws and further deny that they were negligent or breached any duty owing to the Plaintiffs.

2.    Defendants state that the alleged injuries and damages, if any, of which Plaintiffs complain were exacerbated by Plaintiffs' failure to mitigate their damages.  Because Plaintiffs failed to mitigate their damages, should Defendants be found liable under the FRSA, or otherwise, Plaintiffs' recovery of monetary damages, if any, should be diminished or barred.

3.    Defendants deny that any impermissible motive played a role in any employment decisions relating to Plaintiffs.  In addition, Plaintiffs have failed to establish a prima facie case under the FRSA because Defendants acted reasonably at all times and in good faith and on the basis of legitimate, non-discriminatory reasons.  Plaintiffs have not alleged circumstances sufficient to raise the inference that Plaintiffs' alleged protected activity was a contributing factor in any alleged adverse employment actions.

4.    Although Defendants deny taking any action based upon any alleged protected activity by Plaintiffs, should a finder of fact determine otherwise, Defendants can establish their affirmative defense and prove that they would have taken the same action absent Plaintiffs' allegedly protected conduct.

5.    To the extent any Plaintiff failed to timely file a formal complaint with OSHA, his or her FRSA claims must be dismissed for failure to exhaust administrative remedies.

6.    To the extent the causes of action seeking relief under the FRSA raise claims or are premised on allegations beyond those asserted in complaints timely filed with OSHA, they must be dismissed for failure to exhaust administrative remedies.

7.    Any FRSA claims asserted against an individual Defendant that were not asserted against that Defendant in a complaint timely filed with OSHA must be dismissed for failure to exhaust administrative remedies with respect to that Defendant.

8. To the extent any Plaintiff otherwise failed to exhaust administrative remedies, his or her FRSA claims must be dismissed.

9. Some of Plaintiffs' FRSA claims are time-barred due either to the individual Plaintiff's failure to timely file a complaint with OSHA and/or his failure to object and request a hearing within 30 days of receiving notice of OSHA's dismissal of his claim.

10. Plaintiffs' FRSA claims must be dismissed with respect to any Plaintiff who cannot show that he or she met all of the conditions set forth in 49 U.S.C. § 20109(d)(3) for bringing suit in federal court.

11. To the extent the Claims asserted by the Estate of Chad Little do not survive the death of Mr. Chad Little under one or more applicable survival statute(s), the Estate's claims are barred and must be dismissed.

12. Plaintiffs' claims against CSX Corporation are barred because this Court lacks personal jurisdiction. By joining in this Consolidated Answer, CSX Corporation does not waive, and expressly reserves, its right to contest jurisdiction pursuant to the Court's Scheduling Order.

13. Defendants reserve the right to amend this Answer and to add any additional defenses as discovery may warrant.

**WHEREFORE**, Defendants hereby deny any liability for damages and having fully answered the allegations in Plaintiffs' Third Amended Complaint, state that the Plaintiffs are not entitled to the relief prayed for in the Third Amended Complaint, and pray that the Plaintiffs' Third Amended Complaint in this action be dismissed, and that Defendants be awarded reasonable attorneys' fees, costs in defending this action, and such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,


By /s/Melissa Foster Bird
                         Of Counsel

Melissa Foster Bird, Esquire
Megan Basham Davis, Esquire
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
949 Third Avenue, Suite 200
Huntington, West Virginia 25719
Phone: (304) 526-3503
Fax: (304) 526-3599
melissa.fosterbird@nelsonmullins.com
megan.davis@nelsonmullins.com

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 27th day of January, 2020, a copy of the foregoing "*Consolidated Answer to Third Amended Complaint*" was served upon counsel of record by electronically filing the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Gregory G. Paul
Morgan & Paul, PLLC
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
gregpaul@morganpaul.com

Kenneth R. Reed
Kenneth R. Reed, Attorney PSC
241 Elm Street
Ludlow, KY 41016
kenreedatty@gmail.com

Jeff R. Dingwall
Eight & Sand
550 West B St., 4th Floor
San Diego, CA 92101
jeff@eightandsandlaw.com

C. Kiel Garella
Garella Law, P.C.
409 East Boulevard
Charlotte, NC 28303
kiel@gljustice.com

Mark F. Underwood
Underwood Law Office, Inc.
923 3rd Ave.
Huntington, WV 25701
munderwood@underwoodlawoffices.com

/s/Melissa Foster Bird



**Shelby Cardoza <shelby@eightandsandlaw.com>**

---

## Activity in Case 3:18-cv-00321 Adkins et al v. CSX Transportation, Inc. et al Sealed Materials Pursuant to Court Order
1 message

---

**wvsd_cmecf@wvsd.uscourts.gov** <wvsd_cmecf@wvsd.uscourts.gov>
To: Courtmail@wvsd.uscourts.gov

Tue, May 5, 2020 at 12:28 PM

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### Southern District of West Virginia

### Notice of Electronic Filing

The following transaction was entered on 5/5/2020 at 3:28 PM EDT and filed on 5/5/2020
**Case Name:**      Adkins et al v. CSX Transportation, Inc. et al
**Case Number:**    3:18-cv-00321
**Filer:**          CSX Corporation
**Document Number:** 163

**Docket Text:**
**SEALED EXHIBITS filed by CSX Corporation in support of their [158] RENEWED MOTION to Dismiss [18] Second Amended Complaint; filed under seal pursuant to the [162] Order. (Attachments: # (1) Exhibit C, # (2) Exhibit D, # (3) Exhibit 5) (jsa)**

**3:18-cv-00321 Notice has been electronically mailed to:**

Charles Kiel Garella &nbsp &nbsp kiel@gljustice.com, ecf@gljustice.com

Gregory G. Paul &nbsp &nbsp gregpaul@morgan-paul.com, bferris@morgan-paul.com, jen@morgan-paul.com, nina@morgan-paul.com

Jeffrey R. Dingwall &nbsp &nbsp jeff@eightandsandlaw.com, shelby@eightandsandlaw.com

John Patrick L. Stephens &nbsp &nbsp nhall@underwoodlawoffices.com, pstephens@underwoodlawoffices.com

Mark F. Underwood &nbsp &nbsp munderwood@underwoodlawoffices.com, cmorales@underwoodlawoffices.com, cunderwood@underwoodlawoffices.com, nhall@underwoodlawoffices.com

Megan Basham Davis &nbsp &nbsp megan.davis@nelsonmullins.com, kendra.huff@nelsonmullins.com, leeann.lemon@nelsonmullins.com

Melissa Foster Bird &nbsp &nbsp melissa.fosterbird@nelsonmullins.com, fran.smith@nelsonmullins.com, lauri.epstein@nelsonmullins.com, meg.thrasher@nelsonmullins.com, natalie.taylor@nelsonmullins.com, rebecca.mitchell@nelsonmullins.com

**3:18-cv-00321 Notice has been delivered by other means to:**

Kenneth R. Reed

241 Elm Street
Ludlow, KY 41016

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/5/2020] [FileNumber=9781831-0]
[6f4f94cc48b0e8d1eb8aa1adae686042ac6074c01be9ad75a930838135d109bc8b3d
cea9966216bb7c1efb23100a8f6e96d0660488875b00adf5feffb84e626e]]
**Document description:**Exhibit C
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/5/2020] [FileNumber=9781831-1]
[5fee1aa149934985d7f96753a7bc19b386cefe764c3dd64132ccef924c8bf94a9391
ba31fda8b23d88cd3466a77ee98d4b0da023911a1a2a666662ecc0f59233]]
**Document description:**Exhibit D
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/5/2020] [FileNumber=9781831-2]
[a79431f05e118816031b64efe5b69326c590d66ae50d18f1cf06e9fd00574c36dd2b
4438d800092e7cfce86016a68297bd4933a4abc2aa3c9a68d0a3645d6bf0]]
**Document description:**Exhibit 5
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/5/2020] [FileNumber=9781831-3]
[a92f3c477bc8c4be15b1e7028f383854edc4db5eb882e7db92d54c17355cff02f097
a93d7b7d33b1d7d6cc08c9921a989f1e4d0ee1b85d9f7651bca891b53b9b]]

## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JUSTIN ADKINS, et al.,

                Plaintiffs,

v.                                CIVIL ACTION NO.   3:18-0321

CSX TRANSPORTATION, INC., et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is defendant CSX Corporation's ("CSX") Renewed Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 158. CSX argues its status as the parent company of defendant CSX Transportation, Inc. ("CSXT") is insufficient for the Court to exercise jurisdiction over it. The Court agrees and finds no basis for asserting personal jurisdiction over CSX. The Renewed Motion is therefore **GRANTED**.

### I. BACKGROUND

The plaintiffs assert a series of claims arising out of their termination with rail carrier CSXT in Huntington, West Virginia. *See* ECF No. 93. The plaintiffs also name CSXT's parent company, CSX, as a defendant. In August 2018, CSX filed a motion to dismiss for lack of personal jurisdiction on the basis that CSX is separate from CSXT and does not have sufficient contacts with West Virginia. ECF No. 20. The Court denied the motion because the plaintiffs made a *prima facie* case for personal jurisdiction. ECF No. 48, at 5. The Court then entered a scheduling order that permitted CSX to raise its jurisdictional defense again after the completion of jurisdictional

discovery. ECF No. 53, at 1–2. Having completed jurisdictional discovery, CSX now moves again for dismissal for lack of personal jurisdiction. ECF No. 158.

## II. LEGAL STANDARD

A federal court sitting in diversity "has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citation omitted). "Because the West Virginia long-arm statute is coextensive with the full reach of due process," these questions merge into one inquiry. *In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997). "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

In this case, the plaintiffs seek to pierce the corporate veil between CSX and CSXT to impute the subsidiary's West Virginia contacts to its parent. The Court must therefore look to the substantive requirements for piercing the corporate veil under West Virginia law. *See Byard v. Verizon W. Va., Inc.*, No. 1:11CV132, 2012 WL 1085775, at *10 (N.D.W. Va. Mar. 30, 2012) (analyzing West Virginia's alter ego doctrine in the context of determining personal jurisdiction over a parent corporation). The law presumes that two separately incorporated businesses are separate entities. Syl. pt. 3, *S. Elec. Supply Co. v. Raleigh Cty. Nat. Bank*, 320 S.E.2d 515 (W. Va. 1984). However, a plaintiff may overcome this presumption and pierce the corporate veil "when the corporate form is interposed to perpetrate an intentional wrong, fraud or illegality." *Id.* at 521–

22. The Court may then disregard the corporate structure in order to "make a corporation liable for behavior of another corporation *within its total control*." *Id.* at 522 (emphasis added). In addition to evidence concerning the organizational relationship between the parent and subsidiary, courts must consider evidence "that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party." *Id.* at 523. West Virginia courts apply this "complicated" doctrine "gingerly" on a "case-by-case" basis "with particular attention to factual details." *Id.* at 522–23.

The Supreme Court of Appeals of West Virginia has outlined eleven factors for courts to consider "in determining whether to assert personal jurisdiction over the parent company of a subsidiary doing business in West Virginia." *Bowers v. Wurzburg*, 501 S.E.2d 479, 490 (W. Va. 1998). These factors include:

1. Whether the parent corporation owns all or most of the capital stock of the subsidiary;
2. Whether the parent and subsidiary corporations have common directors and officers;
3. Whether the parent corporation finances the subsidiary;
4. Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
5. Whether the subsidiary has grossly inadequate capital;
6. Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;
7. Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
8. Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
9. Whether the parent corporation uses the property of the subsidiary as its own;
10. Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and
11. Whether the formal legal requirements of the subsidiary are not observed.

*Id.* (citation omitted). Now that jurisdictional discovery has occurred and the parties had the opportunity to present relevant evidence and argument, the plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. *See Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 197 (4th Cir. 2018); *James v. Subaru of Am., Inc.*, No. 1:19CV00021, 2020 WL 220093, at *3 (W.D. Va. Jan. 15, 2020).

### III. DISCUSSION

The plaintiffs argue several facts show CSX exercised total control over CSXT. ECF No. 164, at 7–11. They point out that CSXT is a wholly-owned subsidiary of CSX and the two entities share some common officers who are compensated by CSX. *Id.* at 8. The plaintiffs also argue CSX guarantees the debt of its subsidiary and CSXT provides extensive services to CSX under a Specialized Services Agreement. *Id.* at 5, 8–9. In addition, CSX uses some of CSXT's property, assets, and workforce. *Id.* at 9. This includes use of CSXT's private aircraft and the leasing of office space from CSXT for a submarket rate. *Id.* at 9–10. The plaintiffs further argue that a Strategic Management Services Agreement obligates CSXT to comply with business strategies developed by CSX. *Id.* Finally, the plaintiffs argue CSX and CSXT represent themselves as a consolidated entity, including on their websites for the public and investors. *Id.* at 10–11.

These facts fall far short of showing anything more than a typical parent-subsidiary relationship. As considered by the second *Bowers* factor, CSX and CSXT shared some common officers and directors during the relevant period. The two entities' 2018 Secretary of State filings show six individuals served as officers for both CSX and CSXT (assuming these officers did not change in between the two filings). ECF Nos. 25-1, 25-2; *see also* ECF No. 164-4. Even so, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."

*W. Va. Highlands Conservancy, Inc. v. Pub. Serv. Comm'n of W. Va.*, 527 S.E.2d 495, 502 (1998)

(quoting *U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998)). In other words, having common officers and

directors is often necessary for piercing the corporate veil, but it is far from sufficient to invoke

the doctrine. *See C M Corp. v. Oberer Dev. Co.*, 631 F.2d 536, 539 (7th Cir. 1980) ("Stock control

and common officers and directors . . . are not sufficient by themselves . . . for such factors are

common business practice and exist in most parent and subsidiary relationships."); *Haas v. Antero*

*Res. Corp.*, No. 1:17CV108, 2018 WL 6596869, at *9 (N.D.W. Va. Dec. 14, 2018) (holding that

wholly owning a subsidiary, some shared officers and directors, and the allegation of "significant

overlap in corporate control" fall "woefully short" of plausibly supporting alter ego liability).

The plaintiffs also failed to show CSXT's directors and executives "[took] their orders

from the parent corporation" instead of "act[ing] independently in the interest of the subsidiary"

as considered under the tenth *Bowers* factor. 501 S.E.2d at 490. The simple fact that some directors

and officers split their time between the two companies does not support alter ego liability, for it

is a "well established principle of corporate law that directors and officers holding positions with

a parent and its subsidiary can and do 'change hats' to represent the two corporations separately,

despite their common ownership." *Bestfoods*, 524 U.S. at 69 (citations omitted). Thus, courts

"generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats'

when acting for the subsidiary." *Id.* (internal quotation marks and citations omitted). The plaintiffs

produced no evidence to rebut this presumption.

Per the ninth *Bowers* factor, the plaintiffs argue CSX uses some of CSXT's property. ECF

No. 164, at 9. However, the only examples the plaintiffs provide are that CSX leases office space

from CSXT and that CSXT permits CSX to use its aircraft under the companies' Specialized

Services Agreement. *Id.* This use of CSXT's property is negligible, especially considering that

CSXT holds billions of dollars in assets, including real estate, bridges, locomotives, and freight cars. ECF No. 163-1 ¶ 13. Shared office space does not show a subsidiary is an alter ego of the parent. *See, e.g., Tucker v. Thomas*, 853 F. Supp. 2d 576, 591 (N.D.W. Va. 2012) (holding that an overlap in ownership and management and a shared office space and telephone number did not plausibly support alter ego liability); *EEOC v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2012 WL 13040407, at *3 (S.D. Tex. Oct. 23, 2012) (holding that common ownership, a shared corporate headquarters, and shared officers and directors did not establish an alter ego relationship). And, CSX does not freely use CSXT's aircraft as if CSX owned the aircraft. Rather, access is provided for in the companies' Strategic Management Services Agreement to "enable [CSX] to discharge its obligation in providing Strategic Management Services to [CSXT] without incurring greater cost." ECF No. 164-2, at 3. CSX's use of the aircraft is therefore part of an exchange of services typical of a parent and subsidiary, not indicative of a parent unconditionally controlling its subsidiary's assets.

As the plaintiffs argue, CSXT provides many services to CSX. *See* ECF No. 164, at 4–5. The companies' Specialized Services Agreement describes the provision of accounting, environmental, financial, human resources, legal, and other services. ECF No. 164-3. However, the provision of some services by a subsidiary to a parent is not unique and does not necessarily support piercing the corporate veil. Rather, according the seventh *Bowers* factor, the question is whether the subsidiary "has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation." 501 S.E.2d at 490. Here, CSXT has significant business beyond CSX. ECF No. 158-1 ¶ 11. In 2018, CSXT had approximately $12.2 billion in revenue, while CSX paid only $5.57 million under the Specialized Services Agreement. *Id.*; ECF No. 163-1 ¶ 6. CSXT also holds considerable assets independent of CSX, including real

estate, bridges, locomotives, and freight cars. ECF No. 158-1 ¶ 13. Thus, the receipt of some business from the companies' Specialized Services Agreement does not support holding CSX liable here.

The plaintiffs' main argument is that a Strategic Management Services Agreement permits CSX to set CSXT's strategy and prohibits CSXT from deviating from that strategy. ECF No. 164, at 9–10. However, this Agreement does not evidence the kind of "total control" that would justify holding CSX liable. As the United States Supreme Court and the Supreme Court of Appeals of West Virginia have explained, "activities which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures do not indicate that the parent corporation is in fact controlling the subsidiary." *W. Va. Highlands Conservancy, Inc.*, 527 S.E.2d at 502 (quoting *Bestfoods*, 524 U.S. at 72) (internal quotation marks omitted). Thus, parent companies can set the corporate strategy of their subsidiaries without giving rise to alter ego liability when the subsidiary maintains control of day-to-day operations. *E.g., Anwar v. Dow Chem. Co.*, 876 F.3d 841, 850 (6th Cir. 2017) (holding that parent's "macromanagement" of subsidiary is insufficient for alter ego liability); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074–75 (9th Cir. 2015) (rejecting alter ego liability where subsidiary handled its day-to-day operations even though the parent company controlled the subsidiary's budget, approved large purchases, and set general human resource policies); *Byard*, 2012 WL 1085775, at *10–11 (holding that a parent company's "Code of Conduct" outlining general corporate policy for its subsidiary could not justify piercing the corporate veil); *see also Company*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "holding company" as one that generally "confin[es] its role to owning stock and supervising management" without "participat[ing] in making day-to-day business decisions").

-7-

The companies' Strategic Management Services Agreement evidences only the kind of "macromanagement" typical of a parent-subsidiary relationship. The agreement is only fourteen pages long and describes CSX's provision of management services to CSXT in the broadest of terms. *See* ECF No. 164-2. For example, CSX agrees to "create long-term value and growth by identifying [CSXT's] longterm needs; establishing one or more plans to address those needs; and work with [CSXT's] management to execute those plans." *Id.* at 6. In another portion, CSX agrees to the "coordination of human resource policies; overseeing compliance with labor laws; evaluating managerial restructuring; creation of longterm incentive plans; and strategizing collective bargaining." *Id.* Nothing in the agreement indicates CSX goes beyond the development of strategy to control the day-to-day operations of CSXT. To the contrary, this intercompany contract shows CSXT and CSX closely adhered to the formalities of corporate separateness when establishing this provision of management services. *See Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 333 (5th Cir. 2014) ("[F]ormal contractual relationships in the form of service, patent, trademark, licensing, and interest-bearing loan agreements, like the ones [the parent] has here with its subsidiaries, could be more indicative of separateness than unity."); *In re Joseph Walker & Co., Inc.*, 522 B.R. 165, 192 (Bankr. D.S.C. 2014) ("[F]ar from suggesting any domination or control of a corporate subsidiary, intercompany transactions may establish the independence of corporate entities."). Without additional evidence showing CSX exercised control over CSXT's operations, the Strategic Management Services Agreement fails to support holding CSX liable.

Finally, the plaintiffs' argument that CSX and CSXT represent themselves as a consolidated entity also does not support alter ego liability. *See* ECF No. 164, at 10–11. Specifically, the plaintiffs argue CSX's main website and investors website do not distinguish

between the two companies. *Id.* This is false. Both websites link to a "corporate structure" page that explains: "CSX Corporation is the parent company of several direct and indirect wholly-owned subsidiaries, including: [CSXT]. Each subsidiary is a separate and distinct company." *Corporate Structure*, CSX, https://www.csx.com/index.cfm/about-the-site/corporate-structure/ (last visited June 9, 2020). The plaintiffs provided no evidence that earlier versions of the websites did not make this distinction. CSX's investors website also includes copies of CSX's annual Form 10-Ks and CSXT's Class 1 Railroad Annual Reports, each of which distinguish between the companies. *See Annual Reports*, CSX, https://investors.csx.com/financials/annual-reports/ default.aspx (last visited June 9, 2020). The plaintiffs contend that CSX's first quarter financial report for 2020 fails to distinguish between CSX and its subsidiaries. *See* ECF No. 164-5. However, the report is meant to provide a concise summary and clearly instructs readers on the first page to read the report "in conjunction with the Company's most recent Annual Report on Form 10-K" among other public filings. *Id.* at 3. The report also refers readers to CSX's website for "[m]ore information about CSX Corporation *and its subsidiaries*." *Id.* at 4 (emphasis added). Given these statements, it cannot be said that CSX describes CSXT as a division of itself or that CSX refers to CSXT's business responsibility as its own as considered by the eighth *Bowers* factor. *See* 501 S.E.2d at 490.

In sum, the plaintiffs have failed to offer any significant evidence that CSX exercised total control over CSXT and did so to "perpetrate an intentional wrong, fraud or illegality." *S. Elec. Supply Co.*, 320 S.E.2d at 521–22. The companies' corporate and financial structure, shared officers and directors, exchange of services, setting of strategy, and public presentation show nothing more than a typical parent-subsidiary relationship. West Virginia law mandates that the corporate form should "never be disregarded lightly," and this case does not present exceptional

circumstances. *Dallas Nat'l Ins. Co. v. Owner's Sol., Inc.*, No. 2:13-CV-10780, 2014 WL 12744644, at *2 (S.D.W. Va. Mar. 10, 2014). The plaintiffs' attempt to pierce the corporate veil and impute CSXT's West Virginia contacts to CSX is unfounded.

## IV. CONCLUSION

The Court therefore **GRANTS** CSX's Renewed Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 158, and **DISMISSES** CSX as a party to this suit. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        June 11, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE