**CASE NO. 21-2051**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**JUSTIN ADKINS; JUSTIN BLAKE; EDWIN GLOWACKI; ERIC JORDAN; KEVIN PALMER; DENNIS SARGENT; TRAVIS THORNSBERRY; MICHAEL WILLIAMS; JOHN BAKER; JAMES BLAIN; DEVERY BROWN; JAMES DEAL; JONATHAN JEFFERS; ROBERT MOSTELLER; MICHAEL L. POTTER; MICHAEL D. POTTER; JESSEE WALLACE; TIMOTHY WITT; JOHN BILLS; MICHAEL CLARK; RANDALL CRAYCRAFT; JOHN FRASURE; SAMMY MADDIX; JAMES STINNETT; TODD THAYER; MICHAEL CAMPBELL; TONY ABDON; THE ESTATE OF CHAD LITTLE; BRANDON ADKINS; JACQUELINE MARSHALL; HOMER MAYNARD; SCOTT MORRISON; JEREMY NAPIER; SHAWN PATTERSON; MATTHEW WOODS; JOHN CARPENTER; QUINCY CHRISTIAN; GREGORY HAMM; ETHAN MULLINS; MICHAEL OWENS; JONATHAN ROWE; DANNY STEWART; LLOYD WILLIAMS; DAVID MANIS; JOSHUA FERGUSON; ERIC SPEAKS; DONALD STEPHENS; JASON BARKER; CHAD DOWDY; JERRY FLOCKER; GROVER KELLEY; CHRISTOPHER CLAY STILTNER; DENNIS HUTCHINSON; JOSHUA HALL; ZACH POTTER; DEANNA LANHAM; SAMUEL PRESTON; BOBBY AKERS; GERALD BARBER,**

**Plaintiffs – Appellants**

**v.**

**CSX TRANSPORTATION, INCORPORATED; CRAIG S. HELIGMAN, M.D.; GUS THOELE; CURT SHOGREN; MILTON STORM; DELANDO JONES; TOM DEANGELO; SHAWN LUSK; ELIZABETH CREEDON; KENNETH RAY EMERSON**

**Defendants – Appellees**

---

**Appeal from the United States District Court for the Southern District of West Virginia**

---

**JOINT APPENDIX**
**VOLUME 2 OF 6**

---

Jeff R. Dingwall
EIGHT & SAND
750 West Fir Street, Suite 602
San Diego, CA 92101
Tel: (619) 796-3464
Fax: (619) 717-8762
jeff@eightandsandlaw.com

Gregory G. Paul
PAUL LAW OFFICES
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
Tel: (412) 417-5862
Fax: (888) 822-9421
gregpaul@morgan-paul.com

**ATTORNEYS FOR APPELLANTS**

Brian D. Schmalzbach
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
P: 804−775−7873
E:bschmalzbach@mcguirewoods.com

Samuel Lewis Tarry , Jr.
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
P: 804−775−7873
E:starry@mcguirewoods.com

Davis M. Walsh
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
P: 804−775−7873
E: dwalsh@mcguirewoods.com

Kathryn M. Barber
MCGUIRE WOODS
800 East Canal Street
Richmond, VA 23219
P: 804−775−7873
E:kbarber@mcguirewoods.com

Melissa Foster Bird

NELSON MULLINS RILEY &
SCARBOROUGH
P. O. Box 1856
Huntington, WV 25719
P: 304-526-3500
E:melissa.fosterbird@nelsonmullins.com

**ATTORNEYS FOR APPELLEES**

**TABLE OF CONTENTS**
**APPENDIX VOLUME 2 OF 6**

| ECF # | Description | Page # |
|---|---|---|
| 360-1 | Defendants' Disciplinary Charge Letters to Plaintiffs | 106 |
| 360-2 | Defendants' Letters to Plaintiffs re: No Longer Accepting Documentation from Drs. Johnson and Carey | 589 |
| 360-6 | Public Law Board Decisions | 607 |
| 360-7 | Defendants' Termination Letters to Plaintiffs | 867 |
| 360-8 | Defendants' Letters to Plaintiffs re: Disclosures of Private Information | 923 |
| 370 | Exhibits in Support of Defendants' Motion for Summary Judgment | 937 |



DEFS' EX 1

[ CSX ]®
HOW TOMORROW MOVES

R. F. Campbell
Chief Dispatcher
Florence Division
3019 Warrington Street
Jacksonville, FL 32254

#1

July 21, 2017

PRIORITY MAIL EXPRESS EF 182734445 US

T L ABDON
CONDUCTOR ID NO. 623782
57 YELLOWBIRD ST
GREENUP, KY 41144-7794

**RE: File Number 313606**

Arrange to attend a formal investigation to be held in CSX Coal Hump Bldg., Second Floor, Russell, Kentucky, commencing at 1000 hours (CSX Time), on July 28, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

CM Little has been sent a separate letter for same incident date shown above.

You must be fully rested under the FRA Hours of Service Law to attend the scheduled investigation. You may be represented in accordance with the provisions of your working agreement. You may arrange to have present witnesses who have knowledge of the matter under investigation; however, it will be your responsibility to arrange for their participation.

If for some reason you are removed as principal, you are required to attend as a witness at the investigation.

Andrew D. Daly

A. D. Daly

hml

cc: B. S. Lusk, Trainmaster - Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness via telephone
C. M. Little (539659) – Arrange to be present as a witness – EF 182734431 US

**Where Safety is First**



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648082US**

B S ADKINS
FIREMAN/OILER ID NO. 236278
1163 CRAIG RD
WAYNE, WV 25570

**RE: File Number 313635**

Dear B S Adkins:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 8, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
N. Henson, Local Chairman - bigwheel03@aol.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



J. . Yates
CMO Engineering & Strategy
Mech - Louisville Division
500 Water Street
Jacksonville, FL  32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647674US**

J R ADKINS
ELECTRICIAN ID NO. 229559
174 FRYE RIDGE RD
RANGER, WV  25557

**RE: File Number 313710**

Dear J R Adkins:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 16, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

*J. Yates*

/ksm

cc:    J. Giuliano, General Chairman - ibewsc9@att.net



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 4 of 56 PageID #: 17049

J. Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL, 32202

July 28, 2017

**USPS 9410801699320003397196**

B. D. Akers
Carman, ID No. 628955
497 Archey Br
Greenup, KY, 41144-8907

**RE: File No. 313693 (Amendment)**

Dear Carman B. D. Akers,

You are instructed to attend a formal investigation at 1600 hours (CSX Time), on August 8, 2017, in 2nd Floor Conference Room, 935 7th Ave., Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received that on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

James Yates

J. Yates

cc: C. A. Shogren, Plant Supt - Huntington - Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer - Arrange to be present as a witness
Steve Hensley, Local Chairman - **Electronic Mail**
Don Grissom, National Representative - **Electronic Mail**

USCA4 536
CSXT(ADKINS)000021



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 5 of 56 PageID #: 17050

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185648003US**

J R BAKER
BOILERMAKER/BLACKSMITH ID NO. 274769
86 BURGESS ST
GREENUP, KY 41144

**RE: File Number 313660**

Dear J R Baker:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 9, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647878US**

G P BARBER
CARMAN ID NO. 628703
5864 LICK RUN 1 LYRA
WHEELERSBURG, OH 45694

**RE: File Number 313735**

Dear G P Barber:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 15, 2017, in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 7 of 56 PageID #: 17052

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185647745US**

J A BARKER
FIREMAN/OILER ID NO. 234784
1709 TURNER ST
FLATWOODS, KY 41139-1265

**RE: File Number 313629**

Dear J A Barker:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 7, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

*J. Yates*

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
C. Dowdy, Local Chairman – dowdy002@gmail.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 8 of 56 PageID #: 17053

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647881US**

J W BILLS
CARMAN ID NO. 623762
2372 COUNTY ROAD 144
SOUTH POINT, OH 45680-8997

**RE: File Number 313731**

Dear J W Bills:

You are instructed to attend a formal investigation at 1400 hours (CSX Time), on August 10, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

*J. Yates*

/ksm

cc: C. A. Shogren, Plant Supt. – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 9 of 56 PageID #: 17054

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185648428US**

J L BLAIN
BOILERMAKER/BLACKSMITH ID NO. 273819
4830 5 MILE RD
GALLIPOLIS FERRY, WV 25515

**RE: File Number 313661**

Dear J L Blain:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 9, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 28, 2017

**PRIORITY MAIL EXPRESS EF185647277US**

J A BLAKE
ELECTRICIAN ID NO. 273279
PO BOX313
LAVALETTE, WV 25535

**RE: File Number 313823**

Dear J A Blake:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 20, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: J. Giuliano, General Chairman - ibewsc9@att.net

**Where Safety is First**



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647935US**

D E BROWN
BOILERMAKER/BLACKSMITH ID NO. 626080
135 COLLINS LN
GREENUP, KY 41144-6342

**RE: File Number 313704**

Dear D E Brown:

You are instructed to attend a formal investigation at 1330 hours (CSX Time), on August 8, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org

**DEPOSITION EXHIBIT 2**



D. Jones
Manager
C&S Louisville
1200 Don Hutson
Boulevard
Louisville, KY 40219

July 31, 2017

**PRIORITY MAIL EXPRESS EF 181459874 US**

M D CAMPBELL
COMM MAINTAINER ID NO. 539650
12670 HIGHWAY 1
WEBBVILLE, KY 41180

**RE: File Number 313808**

Dear M D Campbell:

This will serve as your notification to attend a formal investigation at 0900 hours (CSX Time), on Tuesday, August 15, 2017, on the second floor, CSX Coal Hump Building, Russell, Kentucky, with you as principal. The purpose of this formal investigation is to determine the facts and place your responsibility, if any, in connection with an incident that occurred in the vicinity of Russell, Kentucky, with information received from the CSXT Chief Medical Officer on July 14, 2017, that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation; however, it will be your responsibility to arrange for their participation.

**This will also serve to confirm that you have been removed from service pending the outcome of the formal investigation.**

*D. Jones*
Manager

asb

cc: D. Jones, Manager – Communications
C. S. Heligman, Chief Medical Officer
J. J. Giuliano, General Chairman IBEW **Electronic Mail**



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647731US**

J D CARPENTER
MACHINIST ID NO. 267785
12045 CO. RD. 14
WATERLOO, OH 45688

**RE: File Number 313720**

Dear J D Carpenter:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: R. Overton, Local Chairman - Richard_Overton@csx.com
J. M Perry, General Chairman - mike.perry@districtlodge19.com



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647759US**

Q E CHRISTIAN
MACHINIST ID NO. 277683
537 LITTLE HARTS CREEK
HARTS, WV 25524

**RE: File Number 313718**

Dear Q E Christian:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

*J. Yates*

/ksm

cc: R. Overton, Local Chairman - Richard_Overton@csx.com
J. M Perry, General Chairman - mike.perry@districtlodge19.com



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 15 of 56 PageID #: 17060

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647895US**

M L CLARK
CARMAN ID NO. 621281
515 POWELL LN. HIGHLANDS APT #6
FLATWOODS, KY 41139-1952

**RE: File Number 313709**

Dear M L Clark:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 15, 2017, in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647904US**

R H CRAYCRAFT
CARMAN ID NO. 623249
172 CRAYCRAFT LN
GREENUP, KY 41144-6691

**RE: File Number 313732**

Dear R H Craycraft:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 15, 2017, in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 17 of 56 PageID #: 17062

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185648405US**

J R DEAL
BOILERMAKER/BLACKSMITH ID NO. 252380
RT. 1 BOX 128
GLENWOOD, WV 25520

**RE: File Number 313659**

Dear J R Deal:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 9, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org



J. . Yates
CMO Engineering & Strategy
Mech - Louisville Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185647728US**

C C DOWDY
FIREMAN/OILER ID NO. 268429
4920 TAYLOR LN
CATLETTSBURG, KY 41129

**RE: File Number 313630**

Dear C C Dowdy:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 7, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
C. Dowdy, Local Chairman – dowdy002@gmail.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 19 of 56 PageID #: 17064

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648017US**

J M FERGUSON
SHEETMETAL WORKER ID NO. 229155
605 FERRY AVE UNIT 514
WORTHINGTON, KY 41183-5033

**RE: File Number 313648**

Dear J M Ferguson:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 9, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
G. Jeffers, Local Chairman – GLjeffers75@yahoo.com
C. J. Fraley, General Chairman - jfraley@smart-gc1.org



J. . Yates
CMO Engineering & Strategy
Mech - Louisville Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185647833US**

J L FLOCKER
FIREMAN/OILER ID NO. 628968
PO BOX 161
WORTHINGTON, KY 41183-0161

**RE: File Number 313631**

Dear J L Flocker:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 7, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

*J. Yates*

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
C. Dowdy, Local Chairman – dowdy002@gmail.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



J. . Yates
CMO Engineering & Strategy
Mech - Louisville Division
500 Water Street
Jacksonville, FL 32202

July 28, 2017

**PRIORITY MAIL EXPRESS EF185647294US**

J K FRASURE
CARMAN ID NO. 628732
1201 HICKORY LN
RACELAND, KY 41169-2101

**RE: File Number 313824**

Dear J K Frasure:

You are instructed to attend a formal investigation at 1400 hours (CSX Time), on August 7, 2017, in the Coal Hump Building, 2nd Floor Conference Room, 551 Mechanical Road, Russell, KY.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 20, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647705US**

E F GLOWACKI
ELECTRICIAN ID NO. 273707
107 PINE STREET
HURRICANE, WV 25526

**RE: File Number 313712**

Dear E F Glowacki:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 16, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: J. Giuliano, General Chairman - ibewsc9@att.net



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647657US**

G T HAMM
MACHINIST ID NO. 267718
6501 FRENDSHIP RD.
CATLETTSBURG, KY 41129

**RE: File Number 313721**

Dear G T Hamm:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: R. Overton, Local Chairman - Richard_Overton@csx.com
J. M Perry, General Chairman - mike.perry@districtlodge19.com



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 24 of 56 PageID #: 17069

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647918US**

D A HUTCHINSON
CARMAN ID NO. 978419
3386 STATE ROUTE 2070
SOUTH SHORE, KY 41175-8342

**RE: File Number 313738**

Dear D A Hutchinson:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 15, 2017, in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185648119US**

J JEFFERS
BOILERMAKER/BLACKSMITH ID NO. 274346
1803 JEFFERSON BLVD.
POINT PLEASANT, WV 25550

**RE: File Number 313662**

Dear J Jeffers:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 9, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647626US**

E O JORDAN
ELECTRICIAN ID NO. 277088
420 JISCO WEST RD
JACKSON, OH 45640

**RE: File Number 313741**

Dear E O Jordan:

You are instructed to attend a formal investigation at 1200 hours (CSX Time), on August 16, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: J. Giuliano, General Chairman - ibewsc9@att.net



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 27 of 56 PageID #: 17072

J. . Yates
CMO Engineering & Strategy
Mech - Louisville Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648065US**

G H KELLEY
FIREMAN/OILER ID NO. 277812
32 PVT RD 1813 COUNTY RD 5
KITTS HILL, OH 45645

**RE: File Number 313632**

Dear G H Kelley:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 7, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
C. Dowdy, Local Chairman – dowdy002@gmail.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



A. D. Daly
Supt Train Operations
Louisville Division
1700 167th Street Chicago Command Center
Calumet City, IL 60409-5458

July 21, 2017

**PRIORITY MAIL EXPRESS EF 182734431 US**

C M LITTLE
CONDUCTOR ID NO. 539659
902 RACELAND AVE
RACELAND, KY 41169

**RE: File Number 313607**

Arrange to attend a formal investigation to be held in CSX Coal Hump Bldg., Second Floor, Russell, Kentucky, commencing at 1000 hours (CSX Time), on July 28, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

TL Abdon has been sent a separate letter for same incident date shown above.

You must be fully rested under the FRA Hours of Service Law to attend the scheduled investigation. You may be represented in accordance with the provisions of your working agreement. You may arrange to have present witnesses who have knowledge of the matter under investigation; however, it will be your responsibility to arrange for their participation.

If for some reason you are removed as principal, you are required to attend as a witness at the investigation.

Andrew D. Daly

A. D. Daly

hml

cc: B. S. Lusk, Trainmaster - Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness via telephone
T. L. Abdon (623782) – Arrange to be present as a witness – EF 182734445 US

**DEPOSITION EXHIBIT 2**

**Where Safety is First**



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 29 of 56 PageID #: 17074

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647997US**

S L MADDIX
CARMAN ID NO. 254051
PO BOX 1139
OLIVE HILL, KY 41164-1139

**RE: File Number 313715**

Dear S L Maddix:

You are instructed to attend a formal investigation at 1400 hours (CSX Time), on August 10, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt. – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647864US**

D R MANIS
CARMAN ID NO. 622020
136 WELCH LN
GREENUP, KY 41144-6378

**RE: File Number 313716**

Dear D R Manis:

You are instructed to attend a formal investigation at 1400 hours (CSX Time), on August 10, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt. – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648140US**

J C MARSHALL
FIREMAN/OILER ID NO. 625076
1500 PRESTON AVENUE
GREENUP, KY 41144

**RE: File Number 313636**

Dear J C Marshall:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 8, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
N. Henson, Local Chairman - bigwheel03@aol.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648105US**

H R MAYNARD
FIREMAN/OILER ID NO. 536041
194 CLAYTON BRANCH RD.
LOUISA, KY 41230

**RE: File Number 313637**

Dear H R Maynard:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 8, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
N. Henson, Local Chairman - bigwheel03@aol.com
R. Edmonds, General Chairman - edmondsr@ncfo.org

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647586US**

S M MORRISON
BOILERMAKER/BLACKSMITH ID NO. 273044
6086 KYLE LANE
HUNTINGTON, WV 25702

**RE: File Number 313706**

Dear S M Morrison:

You are instructed to attend a formal investigation at 1330 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org

**DEPOSITION EXHIBIT 2**



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647983US**

R E MOSTELLER
BOILERMAKER/BLACKSMITH ID NO. 267842
43 OLD COUNTY 5 RD.
SOD, WV 25564

**RE: File Number 313703**

Dear R E Mosteller:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 9, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 35 of 56 PageID #: 17080

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647691US**

E R MULLINS
MACHINIST ID NO. 273369
270 CYNTHIA CHAPEL ROAD
LOUISA, KY 41230

**RE: File Number 313724**

Dear E R Mullins:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: R. Overton, Local Chairman - Richard_Overton@csx.com
J. M Perry, General Chairman - mike.perry@districtlodge19.com



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648048US**

J R NAPIER
FIREMAN/OILER ID NO. 277837
5230 MILLS BRANCH ROAD
LAVALETTE, WV 25535

**RE: File Number 313633**

Dear J R Napier:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 7, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

*J. Yates*

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
N. Henson, Local Chairman - bigwheel03@aol.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647714US**

M S OWENS
MACHINIST ID NO. 522157
88 PRIVATE DR 2943 CO RD12
PROCTORVILLE, OH 45669

**RE: File Number 313719**

Dear M S Owens:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: R. Overton, Local Chairman - Richard_Overton@csx.com
J. M Perry, General Chairman - mike.perry@districtlodge19.com



J. . Yates
CMO Engineering & Strategy
Mech - Louisville Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647643US**

K L PALMER
ELECTRICIAN ID NO. 242399
1627 S 3RD ST
IRONTON, OH 45638-2268

**RE: File Number 313755**

Dear K L Palmer:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 16, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: J. Giuliano, General Chairman - ibewsc9@att.net



Case 3:18-cv-00321 Document 360-1 Filed 05/13/21 Page 39 of 56 PageID #: 17084

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648025US**

S D PATTERSON
FIREMAN/OILER ID NO. 246601
908 FEDERAL WAY
FLATWOODS, KY 41139

**RE: File Number 313634**

Dear S D Patterson:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 7, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
C. Dowdy, Local Chairman – dowdy002@gmail.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647949US**

M D POTTER
BOILERMAKER/BLACKSMITH ID NO. 267822
355 HUGH ST
GRAYSON, KY 41143

**RE: File Number 313663**

Dear M D Potter:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 9, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org

Where Safety is First



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647555US**

M L POTTER
BOILERMAKER/BLACKSMITH ID NO. 252378
734 CARDINAL POINT RD
GREENUP, KY 41144-8273

**RE: File Number 313707**

Dear M L Potter:

You are instructed to attend a formal investigation at 1500 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

*J. Yates*

/ksm

cc: K. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647688US**

S H PRESTON
ELECTRICIAN ID NO. 273403
2100 RT 3224
RIVER, KY 41254

**RE: File Number 313754**

Dear S H Preston:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 16, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: J. Giuliano, General Chairman - ibewsc9@att.net

Where Safety is First



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

September 25, 2017

**PRIORITY MAIL EXPRESS EF194865173US**

J P ROWE
MACHINIST ID NO. 223145
983 TURNER RD
HUNTINGTON, WV 25705

**RE: File Number 315262**

Dear J P Rowe:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on October 5, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on September 20, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: W. Ringkamp, Local Chairman - wringkamp@yahoo.com
A. W. Sandberg, General Chairman - andrew.sandberg@districtlodge19.com



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647665US**

D A SARGENT
ELECTRICIAN ID NO. 272564
513 MCGUIRE CEMETERY RD.
GREENUP, KY 41144

**RE: File Number 313713**

Dear D A Sargent:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 16, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: J. Giuliano, General Chairman - ibewsc9@att.net



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648122US**

E K SPEAKS
SHEETMETAL WORKER ID NO. 539836
812 JEFFERSON AVE
WURTLAND, KY 41144

**RE: File Number 313645**

Dear E K Speaks:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 9, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
C. Cook, Local Chairman - concook@roadrunner.com
C. J. Fraley, General Chairman - jfraley@smart-gc1.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 21, 2017

**PRIORITY MAIL EXPRESS EF185648051US**

D A STEPHENS
SHEETMETAL WORKER ID NO. 273371
104 MARY COURT
RUSH, KY 41168

**RE: File Number 313646**

Dear D A Stephens:

Arrange to attend a formal investigation to be held in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia, commencing at 0900 hours (CSX Time), on August 9, 2017.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

**You are being held out of service pending this investigation.**

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

J. Yates

hml/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
G. Jeffers, Local Chairman - GLjeffers75@yahoo.com
C. J. Fraley, General Chairman - jfraley@smart-gc1.org



J. . Yates
CMO Engineering & Strategy
Mech - Louisville Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647569US**

D M STEWART
MACHINIST ID NO. 573868
605 NEWSOME ST
ASHLAND, KY 41102-4278

**RE: File Number 313740**

Dear D M Stewart:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

*J. Yates*

/ksm

cc: R. Overton, Local Chairman - Richard_Overton@csx.com
J. M Perry, General Chairman - mike.perry@districtlodge19.com



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647609US**

C C STILTNER
FIREMAN/OILER ID NO. 232870
406 GREENHILL RD
ASHLAND, KY 41102

**RE: File Number 313756**

Dear C C Stiltner:

You are instructed to attend a formal investigation at 1600 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
N. Henson, Local Chairman - bigwheel03@aol.com
R. Edmonds, General Chairman - edmondsr@ncfo.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647820US**

J R STINNETT
CARMAN ID NO. 623386
PO BOX 671
GRAYSON, KY 41143-0671

**RE: File Number 313717**

Dear J R Stinnett:

You are instructed to attend a formal investigation at 1600 hours (CSX Time), on August 10, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647970US**

T A THAYER
CARMAN ID NO. 273373
155 MANILLA CRK RD
POCA, WV 25159

**RE: File Number 313714**

Dear T A Thayer:

You are instructed to attend a formal investigation at 1400 hours (CSX Time), on August 10, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: C. A. Shogren, Plant Supt. – Arrange to be present as a witness
C. S. Heligman, Chief Medical Officer – Arrange to be present as a witness
S. Hensley, Local Chairman - sehbowler@gmail.com
D. Grissom, National Rep. - grissomd@tcunion.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 31, 2017

**PRIORITY MAIL EXPRESS EF185647263US**

T L THORNSBERRY
ELECTRICIAN ID NO. 223144
180 HALLS RIDGE RD
WELLINGTON, KY 40387

**RE: File Number 313870**

Dear T L Thornsberry:

You are instructed to attend a formal investigation at 1400 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 28, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: J. Giuliano, General Chairman - ibewsc9@att.net

J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647966US**

J L WALLACE
BOILERMAKER/BLACKSMITH ID NO. 267945
332 CHAPEL CUT RD
GRAYSON, KY 41143

**RE: File Number 313702**

Dear J L Wallace:

You are instructed to attend a formal investigation at 1300 hours (CSX Time), on August 9, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

*J. Yates*

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 26, 2017

**PRIORITY MAIL EXPRESS EF185647816US**

L K WILLIAMS
MACHINIST ID NO. 267953
313 MEADES BRANCH RD.
LOUISA, KY 41230

**RE: File Number 313725**

Dear L K Williams:

You are instructed to attend a formal investigation at 1200 hours (CSX Time), on August 17, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: R. Overton, Local Chairman - Richard_Overton@csx.com
J. M. Perry, General Chairman - mike.perry@districtlodge19.com



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

September 7, 2017

**PRIORITY MAIL EXPRESS EF196379965US**

M D WILLIAMS
ELECTRICIAN ID NO. 273045
671 TOWNSHIP RD 88
PROCTORVILL, OH 45669

**RE: File Number 314900**

Dear M D Williams:

You are instructed to attend a formal investigation at 0900 hours (CSX Time), on September 19, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on September 6, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 60 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: J. Giuliano, General Chairman - ibewsc9@att.net



J. . Yates
CMO Engineering & Strategy
Mech - Florence Division
500 Water Street
Jacksonville, FL 32202

July 25, 2017

**PRIORITY MAIL EXPRESS EF185647952US**

T M WITT
BOILERMAKER/BLACKSMITH ID NO. 250668
531 FUDGES CREEK RD
BARBOURSVILLE, WV 25504-9718

**RE: File Number 313705**

Dear T M Witt:

You are instructed to attend a formal investigation at 1200 hours (CSX Time), on August 8, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV.

The purpose of this investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation.

You are being withheld from service pending the result of the investigation.

J. Yates

/ksm

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com
C. Browning, General Chairman - Cbrowning@boilermakers.org



K. R. Emerson
Roadmaster II
MW Louisville Division
3131 A Spring Grove Avenue
Cincinnati, OH 45225

July 21, 2017

**PRIORITY MAIL EXPRESS EF 185649940 US**

M M WOODS
FOREMAN ID NO. 234136
100 DUCK PUDDLE RD
GREENUP, KY 41144-7100

**RE: File Number 313586**

Dear M M Woods:

This will serve as your notification to attend a formal investigation at 1100 hours (CSX Time), on August 10, 2017, at the Louisville Division Office, Small Conference Room, 3131A Spring Grove Avenue, Cincinnati, Ohio, with you as principal. The purpose of this formal investigation is to determine the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

You may be represented in accordance with the provisions of your working agreement, and you may arrange to have present witnesses who have knowledge of the matter under investigation; however, it will be your responsibility to arrange for their participation.

**This will also serve to confirm that you have been removed from service pending the outcome of the formal investigation.**

*K. R. Emerson*
Roadmaster II

/lcb

cc: K. R. Emerson – Roadmaster II
C. S. Heligman – Chief Medical Officer via telephone
D. R. Albers, General Chairman – **BMWE via Electronic Mail** system.office@alliedfed.org

DEFS' EX 3

Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

September 8, 2017

B D AKERS
497 ARCHEY BR
GREENUP KY 41144-8907

ID 628955

Re: Medical Documentation

Dear Mr. Akers,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 23, 2017

J R BAKER
86 BURGESS ST
GREENUP KY 41144

ID 274769

Re: Medical Documentation

Dear Mr. Baker,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

September 7, 2017

G P BARBER
5864 LICK RUN I LYRA
WHEELERSBURG OH 45694

ID 628703

Re: Medical Documentation

Dear Mr. Barber,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

September 1, 2017

James Deal
RT. 1 BOX 128,
GLENWOOD, West Virginia, 25520

ID 252380

Re: Medical Documentation

Dear Mr. Deal,

You recently submitted medical documentation from Carey Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Pam Kessler, Medical Qualification Nurse, at 904-359-3621 or Pam_Kessler@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 23, 2017

E F GLOWACKI
107 PINE STREET
HURRICANE WV 25526

ID 273707

Re: Medical Documentation

Dear Mr. Glowacki,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 23, 2017

S L MADDIX
PO BOX 1139
OLIVE HILL KY 41164-1139

ID 254051

Re: Medical Documentation

Dear Mr. Maddix,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 30, 2017

H R MAYNARD
194 CLAYTON BRANCH RD.
LOUISA KY 41230

ID 536041

Re: Medical Documentation

Dear Mr. Maynard,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

September 20, 2017

S M MORRISON
6086 KYLE LANE
HUNTINGTON WV 25702

ID 273044

Re: Medical Documentation

Dear Mr. Morrison,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 25, 2017

Michael Owens
88 Private Drive 2943 CO Road 12
Proctorville OH 45669

ID 522157

Re: Medical Documentation

Dear Mr. Owens,

You recently submitted medical documentation from Carey Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

If you have any questions, please contact Pam Kessler, Medical Qualification Nurse, at 904-359-3621 or Pam_Kessler@CSX.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

September 14, 2017

K L PALMER
1627 S 3RD ST
IRONTON OH 456382268

ID 242399

Re: Medical Documentation

Dear Mr. Palmer,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Pam Kessler, Medical Qualification Nurse, at 904-359-3621 or Pam_Kessler@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

September 26, 2017

J P ROWE
983 TURNER RD.
HUNTINGTON WV 25705

ID 223145

Re: Medical Documentation

Dear Mr. Rowe,

You recently submitted medical documentation from Carey Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

December 8, 2017

D A SARGENT
513 MCGUIRE CEMETERY RD.
GREENUP KY 41144

ID 272564

Re: Medical Documentation

Dear Ms. Sargent,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action. If you are currently working, no further action is required.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 23, 2017

J R STINNETT
PO BOX 671
GRAYSON KY 41143-0671

ID 623386

Re: Medical Documentation

Dear Mr. Stinnett,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 31, 2017

Todd Thayer
155 MANILLA CRK RD,
POCA, West Virginia, 25159

ID 273373

Re: Medical Documentation

Dear Mr. Thayer,

You recently submitted medical documentation from Carey Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Pam Kessler, Medical Qualification Nurse, at 904-359-3621 or Pam_Kessler@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

September 22, 2017

T L THORNSBERRY
180 HALLS RIDGE RD
WELLINGTON KY 40387

ID 223144

Re: Medical Documentation

Dear Mr. Thornsberry,

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Pam Kessler, Medical Qualification Nurse, at 904-359-3621 or Pam_Kessler@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 23, 2017

M D WILLIAMS
671 TOWNSHIP RD. 88
PROCTORVILLE OH 45669

ID 273045

Re: Medical Documentation

Dear Mr. Williams,

You recently submitted medical documentation from Carey Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Case 3:18-cv-00321 Document 360-2 Filed 05/13/21 Page 17 of 18 PageID #: 17118

Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street, J290
Jacksonville, FL 32202
Phone 904-359-1500

August 24, 2017

T M WITT
531 FUDGES CREEK RD
BARBOURSVILLE WV 25504-9718

ID 250668

Re: Medical Documentation

Dear Mr. Witt,

You recently submitted medical documentation from Carey Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide updated medical documentation from your primary care or treating physician, other than the two referenced above.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer



Occupational Health Department
Craig Heligman, M.D. - Chief Medical Officer
500 Water Street. J290
Jacksonville, FL 32202
Phone 904-359-1500

September 8, 2017

M M WOODS
100 DUCK PUDDLE RD
GREENUP KY 41144-7100

ID 234136

Re: Medical Documentation

Dear Mr. Woods.

You recently submitted medical documentation from Johnson Chiropractic in support of your medical leave of absence. The purpose of this correspondence is to advise you that the CSX Medical Department is no longer accepting any medical documentation completed by Shannon Johnson, DC, or Daniel Carey, II, DC. If you continue to have a need to be off of work for a medical reason or wish to return to work from a medical leave, please provide sufficient, updated medical documentation from your primary care or treating physician, other than the two referenced above, within 30 days from the date of this letter. Failure to comply with this request may result in seniority forfeiture or disciplinary action.

If you have any questions, please contact Kelly Caudell, Medical Qualification Nurse, at 904-359-3173 or Kelly_Caudell@csx.com.

Sincerely,

Craig S Heligman

Dr. Craig Heligman
Chief Medical Officer

DEFS' EX 6

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 3**
**Award No. 3**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| | ) | **PARTIES TO** |
| **vs.** | ) | **DISPUTE** |
| | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler B.S. Adkins was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler B.S. Adkins be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 2017-227752]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of November 29, 2010. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington, WV and/or Russell, KY Locomotive Shop, a combined seniority roster district. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 8, 2017, on the charges against him, Firemen and Oiler J.R. Maynard (PLB 7879, Award No. 1) and Firemen and Oiler J.C. Marshall (PLB 7879, Award No. 2), the Claimant was notified by letter dated September 6, 2017, that the Carrier had found him guilty of the**

**offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more what seemed an unusually large number of Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees. This caused the Chief Medical Officer to scrutinize other sickness claims from the two chiropractors involved. Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant, although not in the immediate time of the furlough and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]**

**In particular, the Claimant had been marked off sick from work since April 21, 2017. He presented a note from one of the chiropractors in question that referenced being under his care from April 21, 2017, through June 21, 2017, and authorizing his absence from work through August 21, 2017. Dr. Heligman testified that the medical conditions described by the chiropractor were not sufficient to support a report of permanent and total disability for the Claimant, and that the minor conditions ascribed to the Claimant should have improved**

---

[1] Maynard and Marshall also were found guilty and dismissed. Their claims are addressed in Awards 1 and 2, respectively.

[2] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that his doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he was claiming for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and**

**fraud as charged. Although the Claimant testified that his April 2017 medical condition was in fact a reinjury for which he had been off until September 2016, and under treatment from other providers, Dr. Heligman noted that none of the documentation the Claimant provided, solely from his current chiropractor, addressed the prior condition. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt. The fact that the Claimant was already marked off sick and that he did not in fact face furlough as a result of the reductions announced June 16, 2017, does not excuse or mitigate his offense.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.**

**AWARD**

**Claim denied.**

**ORDER**

**This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.**

Lisa S Kohn

**Lisa Salkovitz Kohn**
**Neutral Member**

Penny Dreher
**Penny Dreher**
**Carrier Member**
**Dated:** July 9, 2018

RA Edmonds
**Richard A. Edmonds**
**Organization Member**

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 114**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Adkins be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Adkins be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Adkins's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant Justin Adkins—an employee with approximately eight years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated July 26, 2017, Claimant was instructed to attend an investigation:

> to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

An investigatory hearing was held on August 24, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren testified that furloughs were announced on June 16, and presented a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough effective June 23, 2017. According to Shogren, there was talk around the shop even prior to the

furlough notice, regarding how many employees might be furloughed and whether the third shift might be abolished. Claimant, however, was not affected by the furloughs.

Chief Medical Officer (CMO) Craig S. Heligman testified that he began to investigate documents received from the Huntington area, because on June 19, 2017, his office started receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors: Shannon Johnson and Daniel Carey. He found the circumstances suspicious because of the timing with regard to the furlough notice, as well as the similarity of the diagnoses and treatment recommendations on the COIIs. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees were pulled out of work for two months, for minor musculoskeletal injuries that normally resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, seeking a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work. Heligman called Carey and Johnson, but neither returned his call.

Heligman stated that he concluded that the employees and chiropractors had been engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and the extended benefit insurance providers. An employee who was furloughed would receive just four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from the extended benefits insurance provider. For one employee, Heligman testified, the cost to the Carrier could be approximately $16,000. Including the fifteen employees for which Carey sent in COIIs, and the fifty-two for which Johnson sent in COIIs, the total could be potentially more than $1 million.

Claimant saw Dr. Johnson on June 21, 2017. The COII submitted to the Company stated that Claimant had been diagnosed with cervicobrachial syndrome, a sprain of cervical lights, and muscle spasms. Treatment consisted of spinal manipulations, therapeutic exercises, and passive modalities. Testifying on his own behalf, Claimant stated that he had not been furloughed. He testified that the doctor's office had sent the forms in to the Carrier. According to Claimant, he had seen Dr. Johnson the previous year for a back injury. In 2017, he returned to Dr. Johnson after slipping in mud and falling down a hill. When he fell, he hit his elbow and shoulder. He also had neck pain. He acknowledged that Dr. Johnson's office is approximately one and one-half hours from home, but emphasized that his work site is the same distance away.

Claimant stated that he was aware that other employees were seeing Dr. Johnson. He acknowledged that he was not going to any other doctors for treatment of his neck. He had an x-ray taken at another facility. Dr. Johnson suggested that he see a specialist for his elbow and shoulder, so he went to Scotts Orthopedic but it took months to get the appointment. He sees Johnson twice a week for treatment for his neck. He further testified that Johnson's office sent in the paperwork for RRB benefits and the supplemental benefits from Aetna. Claimant asserted that he had complied with all rules and the Code of Ethics. He finally saw an orthopedist, Dr. Luis Bolano, on July 31, 2017 -- after having been charged with fraud on July 26. He was assessed with lateral epicondylitis of his left elbow, and tendonitis of his right shoulder. Dr. Bolano gave Claimant an injection of Lidocaine and Kenalog into his shoulder, and an elbow strap. He instructed him to come in for follow-up in two months.

By letter dated September 21, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2 (a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to extend CSXT Health and Welfare benefits and other benefits. Claimant acknowledged that he did not see any other doctor for his alleged neck injury, and provided no documentation of having seen any other provider for that condition. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. As Heligman testified, the diagnosis on Claimant's COII was very similar to that listed on the COIIs of other employees, and was for a minor condition that could be expected to heal within a few weeks. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's continuing absence from work.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by extending benefits for minor conditions. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, where dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant had violated 104.2 (a) or the Code of Ethics. It is undisputed that Claimant was injured on or around June 20, 2017, hurting his neck, as well as his left elbow and right shoulder. Moreover, Claimant was not affected in any way by the reduction in force announced on June 16. The Organization emphasizes that Heligman had only suspicion as proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived

pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

After reviewing the record in the instant matter, the Board finds Heligman's testimony to be persuasive regarding the existence of a clear pattern of abuse of benefits. Claimant submitted a COII on June 21, 2017, taking him off work for two months. His diagnosis, as Heligman emphasized, was for a minor injury—a sprain and muscle spasms—that should have healed in a few weeks. If Claimant truly was seeing Dr. Johnson twice a week, as Claimant asserted, but his alleged condition still had not improved, as a matter of common sense and self-interest he surely would have seen another doctor. Claimant did not testify that his condition had improved in any way, or provide any reason justifying his continued absence from work. His visit to an orthopedic physician occurred only after he was charged with fraud and dishonesty, and that doctor told him to return in two months. None of this persuades the Board the Claimant was too disabled to work. The Board is satisfied that Claimant has been involved in a concerted effort to defraud the Carrier. He has been dishonest in violation of Rule 104.2 (a), and has committed fraud in violation of the Carrier's Code of Ethics. The Board therefore concludes that Claimant's dismissal was warranted.

**Award:**

The claim is denied.

JOAN PARKER, Neutral Member

CARRIER MEMBER

DATED: 1/16/2019

ORGANIZATION MEMBER

DATED: 12/21/18

**PUBLIC LAW BOARD NO. 6392**

**Award No. 458**

**PARTIES** **Brotherhood Railway Carmen Division (BRC) Division of Transportation Communications Union (TCU/IAM)**

**TO** **-and-**

**DISPUTE** **CSX Transportation, Inc.**

**STATEMENT OF CLAIM**

1. The Carrier violated Rule 30 of the Controlling Agreement when on September 5, 2017 the Carrier erroneously disciplined BD Akers without a fair and impartial hearing.

2. Accordingly, the Carrier should now be required to compensate BD Akers ID# 628955 (Referenced from this point on as Claimant) for all time lost as a result of the Claimant's dismissal. Such reinstatement shall include all rights, seniority, and benefits, including applicable overtime that Claimant would have enjoyed had he never been discharged. The compensation shall continue until he is reinstated with each day being credited to a specific calendar date. Furthermore, Claimant should be compensated for other benefits accruing to all other employees as a condition of employment including, but unlimited to Holiday pay, vacation time, overtime, plus the health and welfare benefits now in effect and premiums the Claimant was required to pay for him and his dependents during his dismissal; to be made whole and complete. The Carrier should now be required to file with the Railroad Retirement Board all form necessary to ensure that the Claimant is properly credited for the months of service that he would have earned absent the dismissal. The Carrier shall now be required to expunge any adverse reference from the Claimant's personnel records relating to the events surrounding his termination.

**FINDINGS**

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction

over the dispute involved herein and that the parties were given due notice of hearing thereon.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> ...information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The background and facts leading up to the Claimant's formal investigation are stated in some detail in Award No. 456 of this Board, which by reference is made a part hereof.[1] At the formal investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that he received, over a short period of time, a large volume of Certification of Ongoing Illness or Injury (COII) medical forms covering over 60 employees, including the Claimant, sent by two chiropractors (Carey and Johnson) in the Huntington, West Virginia area. Dr. Heligman stated that this was particularly significant because the forms came in a short time frame and close in time to the announcement of force reductions in the Huntington area. Dr. Heligman further testified that the medical documentation received from the chiropractor (Johnson) in behalf of the Claimant, as well as that received for the other employees, was for minor medical conditions and did not justify the Claimant's extended absence from work. Specifically, Dr. Heligman noted that the Claimant had been off from work for a minor musculoskeletal condition which was very similar, and at times identical, with those noted on the COII's of the other 60+ employees, and that the Claimant's medical condition as noted on the COII should not have prevented him from work for this extended period of time. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

After reviewing the voluminous record in this case and giving careful consideration to the arguments of both parties, the Board finds that the Carrier sustained its burden of proving the Claimant's guilt of the charged offense. The Board, for the reasons stated in Award No. 456, finds that while the Organization has forcefully raised several arguments contending that the Claimant should not have been disciplined, such arguments do not exculpate the Claimant nor do they mitigate the severity of the proven offense.

Accordingly, the Board finds that the discipline of dismissal was not arbitrary or excessive and will not be disturbed by this Board.

---

[1] The Organization also raised the same procedural objections as it did in Award No. 456 and the Board's ruling in connection therewith is reaffirmed herein.

**Public Law Board No. 6392**
**Award No. 458**

**AWARD**

Claim denied.

Joseph M. Fagnani, Neutral Member

Carl Lakin
Employee Member

Katrina Donovan
Carrier Member

DATED: 8/9/2019

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 6

CASE NO. 6
CSXT LCAT File No. 2017-228563

**PARTIES TO THE DISPUTE:**

**International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant J. R. Baker, ID 274769

> "1. That under the Current and Controlling Agreement, Boilermaker J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant J. R. Baker was dismissed by letter dated September 5, 2017. At the time of his dismissal, claimant had less than three years of service with the Carrier. His work record did not contain any prior disciplinary entries.

As suggested by the above Statement of Claim, a single investigation was held on August 5, 2017 involving claimant and six other members of the Organization. All seven employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization, seven of whom were subject to the investigation in question.

In total, the furlough notices projected the furlough of more than sixty-five employees among seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extent that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims. A final letter identified four more employees.

Of the seven employees involved in the instant investigation, five saw the same chiropractor on June 19, 2017 and received absence excuses from work for two months. Claimant Baker was one of those five employees.

The record of investigation in question consists of 306 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. The United State Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'" in its 1938 decision in Consolidated Edison v. Labor Board. To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:
The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: February 4, 2019

**PUBLIC LAW BOARD NO. 6392**

**Award No. 462**

| | |
|---|---|
| **PARTIES** | **Brotherhood Railway Carmen Division (BRC) Division of Transportation Communications Union (TCU/IAM)** |
| **TO** | **-and-** |
| **DISPUTE** | **CSX Transportation, Inc.** |

**STATEMENT OF CLAIM**

1. The Carrier violated Rule 30 of the Controlling Agreement when on September 15, 2017 the Carrier erroneously disciplined GP Barber without a fair and impartial hearing.

2. Accordingly, the Carrier should now be required to compensate GP Barber ID# 628703 (Referenced from this point on as Claimant) for all time lost as a result of the Claimant's dismissal. Such reinstatement shall include all rights, seniority, and benefits, including applicable overtime that Claimant would have enjoyed had he never been discharged. The compensation shall continue until he is reinstated with each day being credited to a specific calendar date. Furthermore, Claimant should be compensated for other benefits accruing to all other employees as a condition of employment including, but unlimited to Holiday pay, vacation time, overtime, plus the health and welfare benefits now in effect and premiums the Claimant was required to pay for him and his dependents during his dismissal; to be made whole and complete. The Carrier should now be required to file with the Railroad Retirement Board all form necessary to ensure that the Claimant is properly credited for the months of service that he would have earned absent the dismissal. The Carrier shall now be required to expunge any adverse reference from the Claimant's personnel records relating to the events surrounding his termination.

**FINDINGS**

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction

over the dispute involved herein and that the parties were given due notice of hearing thereon.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> ...information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The background and facts leading up to the Claimant's formal investigation are stated in some detail in Award No. 456 of this Board, which by reference is made a part hereof.[1] At the formal investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that he received, over a short period of time, a large volume of Certification of Ongoing Illness or Injury (COII) medical forms covering over 60 employees, including the Claimant, sent by two chiropractors (Carey and Johnson) in the Huntington, West Virginia area. Dr. Heligman stated that this was particularly significant because the forms came in a short time frame and close in time to the announcement of force reductions in the Huntington area. Dr. Heligman further testified that the medical documentation received from the chiropractor (Johnson) in behalf of the Claimant, as well as that received for the other employees, was for minor medical conditions and did not justify the Claimant's extended absence from work. Specifically, Dr. Heligman noted that the Claimant had been off from work for a minor musculoskeletal condition which was very similar, and at times identical, with those noted on the COII's of the other 60+ employees, and that the Claimant's medical condition as noted on the COII should not have prevented him from work for this extended period of time. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

After reviewing the voluminous record in this case and giving careful consideration to the arguments of both parties, the Board finds that the Carrier sustained its burden of proving the Claimant's guilt of the charged offense. The Board, for the reasons stated in Award No. 456, finds that while the Organization has forcefully raised several arguments contending that the Claimant should not have been disciplined, such arguments do not exculpate the Claimant nor do they mitigate the severity of the proven offense.

Accordingly, the Board finds that the discipline of dismissal was not arbitrary or excessive and will not be disturbed by this Board.

---

[1] The Organization also raised the same procedural objections as it did in Award No. 456 and Award No. 459 and the Board's ruling in connection therewith is reaffirmed herein.

**Public Law Board No. 6392**
**Award No. 462**

**AWARD**

Claim denied.

Joseph M. Fagnani, Neutral Member

Carl Lakin
Employee Member

Katrina Donovan
Carrier Member

DATED: 8/9/2019

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 8**
**Award No. 8**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| | ) | **PARTIES TO DISPUTE** |
| **vs.** | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler J.A. Barker was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler J.A. Barker be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 18-000877-MECH-NCFOS]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of November 10, 2014. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington, WV and/or Russell, KY Locomotive Shop, a combined seniority roster district. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 7 and 8, 2017, on the charges against him, Firemen and Oilers J.R. Napier (PLB 7879,**

**Award No. 4), S.D. Patterson (PLB 7879, Award No. 5), J.L.Flocker (PLB 7879, Award No. 6), G.H. Kelley (PLB 7879, Award No. 7), and C.C. Dowdy (PLB 7879, Award No. 9), the Claimant was notified by letter dated September 5, 2017, that the Carrier had found him guilty of the offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]**

**In particular, the Claimant had been marked off sick from work since June 19, 2017. The office of one of the chiropractors in question sent a fax to the Carrier on June 19, 2017 that referred to the Claimant being under his care between beginning on that date, and authorizing his absence from work through the estimated date of August 19, 2017. Dr. Heligman testified that the medical conditions described by the chiropractor were not sufficient to support the initial report of the Claimant's inability to work, that the conditions**

[1] The other Claimants just named and subject to the same investigation hearing also were found guilty and dismissed. Their claims are addressed in the Awards cited.

[2] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**ascribed to the Claimant should have improved within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that his doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he initially claimed for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and**

**fraud as charged. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. In addition, although the Organization objects that the Hearing Officer testified on behalf of the Plant Superintendent as to the reason for the removal, his comments (which merely echoed the Superintendent's prior testimony upon repetitious questions from the General Chairman) did not demonstrate bias on the part of the Hearing Officer. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**The Organization also objects that the Claimant was denied a fair and impartial hearing because the Hearing Officer improperly suspended the hearing at approximately 12:40 p.m. on August 7, 2017, and reconvened at 6:30 a.m. on August 8, 2017, over the objection of both of the Claimant's Organization representatives. However, the Hearing Officer's decision was necessitated by the scheduling of other investigations on August 7 and 8, and the need to accommodate the schedules of the Carrier's key witnesses. While the suspension and reconvening were unusual for these parties, the Hearing Officer offered three alternate times for the second session on August 8. Although the Organization representatives did not attend on August 8, both the Plant Superintendent and Dr. Heligman were subjected to able and rigorous questioning by the General Chairman on the first day of the hearing. Notwithstanding that thorough examination, nothing was developed to clear or exonerate the Claimant or the other employees under investigation. At the continuation of the hearing on August 8, those charged who were present, including the Claimant, had the opportunity to examine the Carrier's witnesses and to present additional evidence and testimony. In light of these circumstances overall, the Board finds that the scheduling issue did not deprive the Claimant of a fair and impartial hearing.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.**

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 101 of 420

NCFO and CSX Transportation, Inc.
PLB No. 7879, Case No. 8, Award No. 8
Page 5

**AWARD**

**Claim denied.**

**ORDER**

**This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.**

**Lisa Salkovitz Kohn**
**Neutral Member**

**Penny Dreher**
**Carrier Member**
**Dated:** July 9, 2018

**Richard A. Edmonds**
**Organization Member**

CSXT(ADKINS)020055
USCA4 629

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 7

CASE NO. 7
CSXT LCAT File No. 2017-228564

**PARTIES TO THE DISPUTE:** **International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant J. L. Blain, ID 274819

> "1. That under the Current and Controlling Agreement, Boilermaker J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant J. L. Blain was dismissed by letter dated September 5, 2017. At the time of his dismissal, claimant had less than three years of service with the Carrier. His work record did not contain any prior disciplinary entries.

As suggested by the above Statement of Claim, a single investigation was held on August 5, 2017 involving claimant and six other members of the Organization. All seven employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization, seven of whom were subject to the investigation in question.

In total, the furlough notices projected the furlough of more than sixty-five employees among seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extent that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims. A final letter identified four more employees.

Of the seven employees involved in the instant investigation, five saw the same chiropractor on June 19, 2017 and received absence excuses from work for two months. Claimant Blain was one of those five employees.

The record of investigation in question consists of 306 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. The United State Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'" in its 1938 decision in Consolidated Edison v. Labor Board. To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:

The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: February 4, 2019

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 120**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Blake be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Blake be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Blake's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant J.A. Blake—an employee with approximately two and one-half years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated July 28, 2017, Claimant was instructed to attend an investigation:

> to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

An investigatory hearing was held on August 24, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren testified that furloughs were announced on June 16. He submitted a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough, effective June 23, 2017. Claimant was listed as an employee who would be placed on furlough.

According to Shogren, there was talk around the shop even prior to the furlough notice that there might be a reduction in force.

Chief Medical Officer (CMO) Craig S. Heligman testified that he started to investigate documents received from the Huntington area after his office began receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors—Shannon Johnson and Daniel Carey—beginning on June 19, 2017. He found the circumstances suspicious not only with regard to the proximity in time to the furlough notice, but because the diagnoses and treatment recommendations on the COIIs were very similar. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees initially were pulled out of work by the chiropractor they saw for two months, although they had been diagnosed only with minor musculoskeletal injuries that ordinarily would resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, and now sought a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work. Heligman called Carey and Johnson, but neither returned his call.

Heligman stated that he concluded that the employees and chiropractors had engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and extended benefit insurance providers. If furloughed, an employee would receive only four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from an extended benefits insurance provider. For each such employee, Heligman testified, the cost to the Carrier could be approximately $16,000. Including the fifteen employees for which Carey sent in COIIs,

and the fifty-two for which Johnson sent in COIIs, the total cost to the Carrier could be potentially more than $1 million.

Claimant's last day of work was June 15, 2017. He received pay for five days not worked from June 17, as did the other employees who were furloughed effective June 23. Claimant saw chiropractor Dr. Carey on July 5, 2017. The COII submitted to the Company listed Claimant's condition as involving mild thoracic sprain/strain and rotator cuff strain. Carey estimated Claimant's return to work as September 3, 2017, following treatment of spinal manipulation and therapeutic exercise.

Testifying on his own behalf, Claimant stated that he had heard other employees speak of Dr. Carey, and thereafter decided to seek treatment from him after injuring himself lifting a box over his head in his garage. According to Claimant, he had complied with all rules and the Code of Ethics.

By letter dated September 21, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2 (a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to obtain CSXT Health and Welfare benefits and other benefits. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. As Heligman testified, the diagnosis on Claimant's COII was very similar to that listed on the COIIs of other employees, and was for a minor condition that could be expected to heal within a few weeks. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's continuing absence from work, and Claimant failed to

do so.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by receiving benefits for minor conditions. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, in which dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant had violated 104.2 (a) or the Code of Ethics. The Organization emphasizes that Heligman had only suspicion as proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

After reviewing the record in the instant matter, the Board finds Heligman's testimony to be persuasive regarding the existence of a clear pattern of abuse of benefits. Moreover, the Board is persuaded that Claimant was a part of that pattern. Claimant submitted a COII on July 5, 2017, taking him off work for two months. He alleged that he had been seeing Dr. Johnson twice a week. If he truly had a medical problem that did not improve over several months, surely he would have seen another doctor for a second opinion, as a matter of common sense and self-interest. His failure to do so supports the conclusion that he went to Dr. Johnson for what was, at worst, a minor condition with the intention of dishonestly obtaining CSXT Health and Welfare

benefits, as well as Railroad Retirement Board benefits, to which he was not entitled.

Claimant did not provide any reason justifying his continued absence from work. Because Claimant had been furloughed, he may well have planned to submit additional COIIs—as other employees had done—to extend his benefits. The Board is satisfied that Claimant was involved in a concerted effort to defraud the Carrier. He thus was dishonest in violation of Rule 104.2 (a), and committed fraud in violation of the Carrier's Code of Ethics. The Board concludes that Claimant's dismissal was warranted.

**Award:**

The claim is denied.

JOAN PARKER, Neutral Member

CARRIER MEMBER

DATED: 1/16/2019

ORGANIZATION MEMBER

DATED: 12/21/18

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 12

CASE NO. 12
CSXT LCAT File No. 2017-228569

**PARTIES TO THE DISPUTE:**

**International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant DE Brown, ID 626080

> "1. That under the Current and Controlling Agreement, Boilermaker(s) ML Potter,TM Witt, SM Morrison and DE Brown was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) ML Potter,TM Witt, SM Morrison and DE Brown be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant DE Brown was dismissed by letter dated September 21, 2017. At the time of his dismissal, claimant had thirty-five total years of service with the Carrier, approximately nineteen of which was as a Boilermaker. His work record contained one active disciplinary entry.

As suggested by the above Statement of Claim, a single investigation was held August 23, 2017 involving claimant and three other members of the Organization. All four employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization. However, none of the four subjects of the investigation in question were among those listed.

In total, the furlough notices projected the furlough of more than sixty-five employees spread over seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extend that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions, if genuine, should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims, which included the four employees in the subject investigation. A final letter identified four more employees.

The thrust of the CMO's testimony was that employees who wanted to be excused from work for a two-month period, or, in some cases, successive two-month periods, would go to one of the two chiropractors in question and falsely claim to have sustained a minor sprain or strain for the purpose of obtaining a two-month excuse from working.

Of the four employees involved in the instant investigation, all saw one of the two suspect chiropractors between June 21 and July 19, 2017 and all received absence excuses from work for two months. In Claimant Brown's case, his excuse was a renewal for another two months. He had been continuously absent since August of 2016 for a claimed injury of his knee and shoulder.

The record of investigation in question consists of nearly 300 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions

raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. In its 1938 decision in Consolidated Edison v. Labor Board, the United States Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'". To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

The role of a Public Law Board is appellate in nature. We do not sit to reconcile competing bodies of evidence and contentions to determine which is the more persuasive. Instead, our authority is limited to reviewing the record of the investigation and the on-property handling of the dispute for the narrow purpose of determining whether the Carrier's disciplinary decision was supported by substantial evidence in the record. In other words, could a reasonable mind accept the Carrier's evidence as the requisite support for its disciplinary action against the claimant?

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:

The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: March 20, 2019

**PUBLIC LAW BOARD NO. 6964**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 29**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Communications Worker Campbell be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Communications Maintainer Campbell be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as a Communications Maintainer; and Communications Maintainer Campbell's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant M.D. Campbell—an employee with approximately fourteen years' tenure—was employed as a Communications Maintainer in the Louisville Division. By letter dated July 31, 2017, Claimant was instructed to attend an investigation:

> to determine the facts and place your responsibility, if any, in connection with an incident that occurred in the vicinity off Russell, Kentucky, with information received from the CSXT Chief Medical Officer on July 14, 2017, that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

An investigatory hearing was held on July 31, 2017. Manager – Communications Dillion D. Jones, who is headquartered in Louisville, Kentucky, presented announcements dated June 16 of employees whose positions were being abolished and employees who were being placed on furlough as of June 23, 2017. Jones acknowledged that Claimant had last worked on May 30, 2017, and had been out since then with pain in his shoulder and arm.

Jones also presented a letter dated July 14, 2017, from Chief Medical Officer (CMO) Craig S. Heligman—who subsequently testified telephonically—expressing to Mr. William Fergus of the U.S. Railroad Retirement Board's Office of Inspector General his concern that two chiropractors were "were removing our employees from work inappropriately and potentially in relationship to business changes in the region that may have resulted in furloughs or reduced work hours." Heligman believed that employees were reporting injuries to these particular providers to fraudulently obtain benefits that would offset potential wage losses. The two providers, Shannon Johnson and Daniel Carey, kept employees off work for a longer time than was medically necessary, Heligman believed. The injuries documented on the Certifications of Ongoing Illness and Injury ("COIIs") were general minor musculoskeletal issues that would easily resolve. Heligman's letter was sparked by the fact that his office had received COIIs regarding over fifty employees between June 19 and July 12, 2017, concurrent with the announcement of a reduction in force effective June 23.

Heligman's suspicions led to charges being brought against many of the employees who had submitted COIIs from the two chiropractors. Jones testified that Claimant was charged with being dishonest in violation of Operating Rule 104.2, as well as with violating the Carrier's Code of Ethics regarding Fraud and Theft. When Jones was asked, however, whether he felt that Claimant was dishonest when he applied for LTI (lost-time injury) benefits, he replied: "No." (Car. Exh. A at 9.)

Heligman testified that the influx of COIIs from the two chiropractors occurred after the reduction in force was announced on June 16, 2017. According to Heligman, sixty-two employees had faxed COIIs to his office between June 19 and July 28, 2017. As was typical with these two chiropractors, each COII stated a necessity to be off work for two months, or

sought to extend the time for an additional two months. Heligman stated that when the Railroad Retirement Board notifies the Carrier of an employee's illness, the Carrier pays health and welfare benefits for two years. If an employee is furloughed, however, the employee will receive only four months of health and welfare benefits.

Heligman admitted that the similarity between the COIIs was his only proof of fraud. He did not examine the employees in question, nor did he know whether the employees were seeing any other doctors. According to Heligman, Claimant fit the same profile as the other employees who submitted COIIs from Johnson and Carey. Claimant first submitted a COII on May 31, 2017. Heligman acknowledged that the only proof of the fraud scheme he suggested was the pattern of the receipt of the COIIs "and I have no evidence to the contrary." (Car. Exh. A at 22.)

Testifying on his own behalf, Claimant explained that he knew of Johnson's chiropractic practice because he would drive by often and notice his large sign. Claimant knew of no other Carrier employees who went to Johnson for treatment. Claimant had fallen and had hurt his left shoulder and arm. He thought that Johnson might be able to provide some relief from ongoing severe pain Claimant was experiencing. Claimant had been taking so many anti-inflammatories for the pain that he began to have gastric bleeding. He was put on steroids, but they did not help. In the meantime, Johnson was giving Claimant therapy to try to keep the pain from getting worse. Claimant was hoping that the chiropractic therapy would make surgery unnecessary, but he had ultimately seen an orthopedic surgeon.

Claimant presented a letter from Johnson stating that he had examined Claimant on May 17, 2017, and that Claimant was experiencing left shoulder pain after a fall. Johnson determined that Claimant's functionality in the area of the dorsal spine and his left shoulder and arm was approximately 58%. Johnson therefore took Claimant off work and had spine and shoulder x-

rays taken. The evaluating radiologists felt that Claimant had suffered a sprain of his left shoulder. Nevertheless, Claimant had gone for an evaluation by orthopedic surgeon Dr. Stanley Tao. Tao administered a NEER test to determine whether Claimant had rotator cuff impingement, and the test was positive. When Claimant was further examined, he had a significantly limited range of motion with left humeral flexion, humeral extension, humeral abduction, humeral adduction, and humeral external rotation. Tao took x-rays of Claimant's left shoulder. Tao concluded that it was likely that Claimant had a tear of the left glenoid labrum as well as impingement syndrome. He instructed Claimant to have an MRI.

Claimant was notified by letter dated September 13, 2017 that he had been found guilty of dishonesty and attempting "to defraud the Company and/or benefits providers when you as well as more than 50 other craft employees, submitted potentially fraudulent documentation" in violation of Rule 104.2 and the Carrier's Code of Ethics. Claimant was dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to extend CSXT Health and Welfare benefits. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. The Carrier argues that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. The evidence demonstrated that Claimant was involved with the other employees in a scheme to defraud the Carrier to extend benefits for minor conditions. The Carrier emphasizes that over sixty employees saw the same chiropractor to obtain COH forms in anticipation of a reduction of force. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier asserts that there is no reason to distinguish this case from others that were initiated in response

to Heligman's concerns, where dismissals were sustained.

According to the Organization, the Carrier presented no evidence relevant to Claimant's case. The influx of COIIs that concerned CMO Heligman occurred between June 19 and July 12, 2017. It is undisputed that Claimant was taken out of work on May 30, 2017. Moreover, Claimant was not affected in any way by the reduction in force announced on June 16. The Organization emphasizes that Heligman did nothing to follow up on and investigate the COII submitted by Claimant or any other employee. Heligman admitted that he did not know whether any of the employees were seeing providers other than Johnson. Claimant presented documents demonstrating that regardless of whether other employees had submitted COIIs to defraud the Carrier of health and welfare benefits, Claimant had not. Rather, he had a genuine incapacitating injury. The Carrier failed to provide any evidence to the contrary. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

The Carrier—following Heligman's lead—cast a wide net regarding the conspiracy in which it suspected that employees had engaged to fraudulently obtain benefits in the face of furloughs. After reviewing the record in the instant matter, the Board does not agree with the Carrier that Claimant "fits the profile" for the conspiracy Heligman suspects occurred. The only similarity the Carrier has shown between Claimant and other employees who submitted COIIs in June and July 2017 is that, like those employees, Claimant initially saw Dr. Johnson for help.

In other cases, the employees involved may not have seen anyone but Dr. Johnson, and they may have received diagnoses of the minor complaints Heligman felt was an abuse of benefits. The Board is convinced that it is not correct to make that claim in Claimant's case.

Claimant submitted documentary evidence corroborating his explanation of why he needed to be off work. While Johnson submitted Claimant's second COII on July 26, 2017, extending his time off work by another two months, he likely did so because Claimant could not get in to see orthopedic surgeon Stanley Tao until August 8. Once Claimant saw Dr. Tao, it became clear that there might well be a serious reason for his constant pain. Dr. Tao concluded that it was likely that Claimant had a glenoid labrum tear and instructed him to have an MRI. Dr. Tao's report was highly detailed, thorough in describing the testing he had performed while examining Claimant, and persuasive that—rather than trying to stay out of work on a minor or non-existent injury—Claimant had actually seriously injured himself in May and was genuinely seeking relief from it. Notably, Claimant's explanation of his medical status stands entirely unrebutted. The Board finds that Claimant's testimony was coherent, credible, and persuasive.

In contrast, the Carrier's only evidence of Claimant's involvement in the alleged fraud was the coincidence that he saw the same chiropractor as some sixty other employees. Whatever CMO Heligman may think of Johnson in other cases, it cannot be denied that Claimant had more than a minor musculoskeletal injury. The only thing the Carrier proved regarding Claimant was that he saw a chiropractor suspected of being complicit with other employees in committing fraud against the Carrier. However, the fact that Claimant saw a chiropractor whose practices Heligman found suspect is a far cry from proving that Claimant was engaged in the same misconduct as other employees. The record in this case is devoid of any proof that Claimant intended or engaged in misrepresenting his medical status to the Carrier.

Rather, while Claimant was caught up in the wide net the Carrier cast, he was able to show that *his* interactions with Johnson had nothing to do with the Carrier's June 2017 reduction in force. The Board finds it especially significant that Claimant's manager, Dillion Jones,

testified that he did not feel that Claimant had fraudulently applied for LTI. The Board also finds that the Carrier fell far short of the mark in proving its allegations against Claimant, and the Board thus concludes that the claim must be sustained. Therefore, Claimant will be reinstated, and will be compensated for any monetary loss he incurred from the date he was medically cleared to return to work to the date of his reinstatement, less any unemployment compensation or earnings from outside employment he may have received during that time period.

**Award:**

The claim is sustained. Claimant shall be reinstated, and made whole for any loss of compensation incurred once he was medically fit for work, less any unemployment compensation or earnings from outside employment in which he may have engaged between the date he was medically cleared to work and the date of his reinstatement.

JOAN PARKER, Neutral Member

CARRIER MEMBER

ORGANIZATION MEMBER

DATED:____________________

DATED:____________________

**P.L.B. No.7539**
**Case No. 81**
**Award No. 81**

**PUBLIC LAW BOARD**
**NO. 7539**
**CLAIMANT: J D CARPENTER**

**Parties to Dispute:**

**INTERNATIONAL ASSOCIATION OF MACHINIST & AEROSPACE WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

**Statement of Claim:**

In accordance with the applicable provisions of the Current Rules Agreement in effect between the International Association of Machinists and the CSXT Railroad, this is an appeal of the decision by letter dated September 21, 2017 from Brian Barr, Vice President Mechanical, unjustly terminating Mr. Carpenter.

The decision of Mr. Barr is rejected in its entirety and, by copy of this appeal, he is so notified.

## BACKGROUND FACTS

Claimant, John D. Carpenter, a Machinist in the Carrier's employ, received a letter dated July 26, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on July 14th, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits provider when you, as well as more than 50 other craft employees, submitted potentially fraudulent documents and all circumstances relating thereto." An

investigation, in fact, was held on August 22, 2017, following which the Carrier found Claimant guilty of violating its Operating Rule 104.2.a and its Code of Ethics Policy based on the allegations set forth in the Notice of Investigation. Claimant was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

The Organization claims that this proceeding was tainted by a number of procedural irregularities. It asserts that the Notice of Hearing was sent to the wrong representative and the time and location of the hearing was changed without notice or consent. The investigation in this matter, the Organization observes, "was conducted on a group basis, with the Carrier witnesses testifying generally as to a group of seven charged Machinist, as well as the dozens of employees who were not even present." According to the Organization, the Carrier engaged in a "rush to judgment" and also released personal and confidential medical records concerning over 50 employees. An unfair hearing, occurred, the Organization argues, as a result of these procedural flaws.

As to the merits, the Organization contends that Claimant is not guilty and his dismissal from service is unwarranted. The Carrier, according to the Organization, produced no evidence to meet its burden of establishing dishonesty and fraud and, in fact, "presented

no direct evidence supporting either charge" against Claimant. The fact that several of Claimant's co-workers were treated by the same physician, according to the Organization, cannot serve to uphold the charges of dishonesty and fraud against Claimant. "Mere suspicion," the Organization stresses, is an insufficient basis to find guilt. The opinion of the Carrier's Chief Medical Officer that Dr. Johnson's diagnosis and/or treatment of Claimant was not medically appropriate, the Organization stresses, must be considered irrelevant in the absence of any evidence that Claimant "went seeking anything other than a medically appropriate treatment for his injuries."

The Organization observes that Claimant has worked as a Machinist at the Huntington shop for over three years, and that his job as a Machinist required him to engage in substantial physical efforts. According to the Organization, the record shows that Claimant, in mid-June 2017, injured his back and his knee when he was getting off a tractor. It notes that on June 19, 2017, Claimant was seen by Dr. Johnson, a chiropractor, who treated other members of his family. Dr. Johnson, the Organization observes, diagnosed a "sprain of lumbar/pelvis, sprain r[igh]t knee, [and] spasm of back." It notes that Claimant was seen on the same day by an orthopedic surgeon who prescribed an anti-inflammatory pain medication. On June 19, 2017, the Organization notes, Dr. Johnson submitted a signed Certification of Ongoing Illness or Injury form to the Carrier that medically certified that

Claimant was injured and under his care, with an estimated unrestricted return to work date of August 19, 2017. The Organization notes that, on August 16, 2017, Dr. Johnson submitted a second COII form that reaffirmed his diagnosis and estimated an unrestricted return to work date now of September 18, 2017.

The Organization stresses that the Carrier never asked Claimant to see another physician for a second opinion and no Carrier physician ever conducted a physical exam of Claimant. The Notice of Investigation against Claimant, the Organization observes, occurred when he was out on medical leave. The only Carrier witness concerning Claimant's medical condition, the Organization notes, was its Chief Medical Officer, Dr. Heligman, who did not perform any medical assessment of Claimant. No evidence can be found, according to the Organization, "to support this utter speculation [of fraud and dishonesty] regarding the intention of Mr. Carpenter or any other individual patient" and "[t]he only evidence of record in his regard was Mr. Carpenter's unrebutted testimony regarding his injury, his inability to perform the essential functions of his job until he healed, and his decision to follow Dr. Johnson's treatment orders."

The Carrier initially contends that Claimant received a fair and impartial investigation under the provisions of the Parties' Agreement. Although the Organization, the Carrier notes, objected to the investigation during the hearing because it alleged that the Carrier had

unilaterally postponed the hearing, the Organization, according to the Carrier, "did not progress this contention on appeal; therefore, it's considered waived from further progression." The record also shows that, the Carrier observes, that it amended the hearing date and the Organization did not refute the facts that the second letter received two days after the charge notice was an amended Charge letter changing the hearing date. No other basis, the Carrier contends, can be found to support the conclusion that Claimant was denied a fair and impartial investigation. The Carrier, in making this argument, rejects any claim by the Organization that the Carrier violated its own Ethics Policy, contending, instead, that its Chief Medical Officer, Dr. Heligman, stated that the documents about which the Organization objected were provided in the course of doing business and not considered HIPAA protected, particularly since they contain no personal identifiable information and the other employees who received the documents were notified and were instructed not to divulge the information or distribute it outside the scope of business purposes. The claim that the charge letters were transmitted to the Organization's General Chairman and not any other official, the Carrier claims, was waived by the Organization since it "did not progress this contention on appeal" and, in any event, the Organization representative, Mr. Sandberg was present at the hearing and ready to proceed, having received proper notice.

The Carrier also maintains it sustained its burden of producing substantial evidence

of Claimant's culpability. It claims that the record establishes that over 60 Carrier employees, including Claimant, "were involved in a scheme to defraud CSXT and other providers of benefits, when each sought treatment from the same chiropractic provider in the Huntington, WV area, marking off work for extended periods for minor conditions and in an attempt to change their employment status to fraudulently extend benefits." It relies on the testimony of its Chief Medical Officer, Dr. Heligman, that he received over 60 employee Certifications of Ongoing Illness or Injury medical forms from two chiropractors in the area, which triggered his investigation because there was an "extremely large volume" of the forms from Claimant and other employees submitted in a very short period of time. Dr. Heligman testified, the Carrier notes, that he researched and reviewed the chiropractic notes and conditions which disclosed to him that the providers and the actions of the employees were fraudulent and reflected "a concerted fraud effort on behalf of the employees, including Claimants , and the Chiropractors." Dr. Heligman, the Carrier observes, testified that he submitted documentation to Carrier Local Officers initiating the charges as well as notifying the Railroad Retirement Board. The testimony of Plant Superintendent Shogren is also identified by the Carrier.

The Carrier observes that the testimony of Dr. Heligman disclosed that the employees' "medical conditions were practically identical, which they all had **minor** musculoskeletal

conditions, sprains and muscle spasms, including the Claimants [].” (Emphasis in original). Such conditions, according to the Carrier, relying on Dr. Heligman’s testimony, should have been resolved within a very short period of time but there was a fraudulent attempt to extend the benefits, all of which “occurred on or about the same time period the manpower reductions were occurring at the Huntington Mechanical facility, resulting in numerous furloughs.”

According to the Carrier, relying on the testimony of Plant Superintendent Shogren, numerous mechanical shop craft employees were notified on June 16, 2017, of furlough notices to become effective June 23, 2017. Claimant and other charged employees, the Carrier notes, submitted the chiropractic ongoing treatment forms during the same time line, and that the Plant Superintendent testified “there was a lot of shop talk amongst local Huntington employees about possible workforce reductions that would result in a large number of furloughs.” The record reflects, the Carrier notes, “that when CSXT employees are furloughed their Health & Welfare Benefits are extended for four (4) months from the date of furlough” but “when employees are marked off sick, their benefits are extended for up to a maximum of two (2) years under the CSXT H & W plan.” The testimony of Dr. Heligman, according to the Carrier, established “that the Claimants’ concerted efforts to extend their H&W benefits amounted to an additional sixteen though dollar ... fringe benefit

cost to CSXT" and considering "there was approximately 67 employees involved in this fraud scheme," the "dishonesty could have cost CSXT a total of one million dollars ... in fraudulent fringe benefits."

It is clear, according to the Carrier, as set forth in the testimony of Dr. Heligman, that the motivation of the employees, Claimant included, was "to extend their CSXT Health and Welfare Benefits" and also to defraud "the Railroad Retirement Board and other providers." The Carrier observes that its Code of Ethics contains a Zero Tolerance Policy concerning fraud and theft, and Claimant's training documents entered into evidence discloses he was trained on the applicable Rules and Policies. The Carrier also maintains it is clear that Claimant's "sick mark offs prior to furlough placed ... [him] in LTI status extending benefits and ... [he] would be protected for 5 years under the 1/1/2018 Agreement should ... [he] become medically qualified to return to work after 1/1/2018, which at that point ... [he] would then be subject for furlough status."

The Carrier notes that Claimant worked through June 16, 2017, the date of the furlough notices, and then claimed injury and was held off work by his chiropractor from June 19, 2017. Claimant testified that he traveled 30 minutes for chiropractic visits, the Carrier notes, and, though treatment was treated by other physicians, Claimant produced no evidence to that end. The Carrier also identifies Dr. Heligman's testimony that he had

received nothing on behalf of Claimant to justify his absence except for the chiropractor's COII form.

Finally, the Carrier asserts that the discipline imposed must be considered fully justified given the nature of the misconduct. It relies on cited arbitral authority in support of this point. It emphasizes that Claimant was part of "an intentional concerted effort" to "falsely ... [seek] treatment to expand ... [his] compensation and benefits."

**OPINION OF THE BOARD**

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. The Organization's claims regarding a denial of the right to a fair and impartial hearing have been advanced on a record where the Board is unable to conclude that the Parties have in place an Agreement calling for the dismissal of charges when, as in the instant case, no prejudice occurred to either the Organization or the Claimant. Therefore, the Board will proceed to examine the merits of the charges.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational

relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the instant case. In reviewing the record, the Board also notes that any evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees, and, of course, the timing of the claims asserted by Claimant and the other employees in connection with the June 16, 2017 furlough notice that became effective June 23, 2017. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negates the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate himself as self-serving. The Board finds, therefore, that the Charges against Claimant are

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 130 of 420

**P.L.B. No.7539**
**Case No. 81**
**Award No. 81**

fully established in the record. Based on the nature of the misconduct and the Carrier's Disciplinary Policy, the Board finds no reason to disturb the penalty imposed.

**AWARD**

The claim of the Organization denied.

**DATE:** 6/24/2014

Thomas Rinaldo

**THOMAS N. RINALDO, ESQ**
**NEUTRAL MEMBER**

**K. DONOVAN**
**CARRIER MEMBER**

**A. SANDBERG**
**ORGANIZATION MEMBER**

-11-

USCA4 658
CSXT(ADKINS)020181

**P.L.B. No.7539**
**Case No. 84**
**Award No. 84**

**PUBLIC LAW BOARD**
**NO. 7539**
**CLAIMANT: Q E CHRISTIAN**

**Parties to Dispute:**

**INTERNATIONAL ASSOCIATION OF MACHINIST & AEROSPACE WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

**Statement of Claim:**

In accordance with the applicable provisions of the Current Rules Agreement in effect between the International Association of Machinists and the CSXT Railroad, this is an appeal of the decision by letter dated September 21, 2017 from Brian Barr, Vice President Mechanical, unjustly terminating Mr. Christian.

The decision of Mr. Barr is rejected in its entirety and, by copy of this appeal, he is so notified.

## BACKGROUND FACTS

Claimant, Quincy E. Christian, a Machinist in the Carrier's employ, received a letter dated July 26, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on July 14th, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits provider when you, as well as more than 50 other craft employees, submitted potentially fraudulent documents and all circumstances relating thereto." An

investigation, in fact, was held on August 22, 2017, following which the Carrier found Claimant guilty of violating its Operating Rule 104.2.a and its Code of Ethics Policy based on the allegations set froth in the Notice of Investigation. Claimant was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

The Organization claims that this proceeding was tainted by a number of procedural irregularities. It asserts that the Notice of Hearing was sent to the wrong representative and the time and location of the hearing was changed without notice or consent. The investigation in this matter, the Organization observes, "was conducted on a group basis, with the Carrier witnesses testifying generally as to a group of seven charged Machinist, as well as the dozens of employees who were not even present." According to the Organization, the Carrier engaged in a "rush to judgment" and also released personal and confidential medical records of over 50 employees. An unfair hearing, occurred, the Organization argues, as a result of these procedural flaws.

As to the merits, the Organization contends that Claimant is not guilty and his dismissal from service is unwarranted. The Carrier, according to the Organization, produced no evidence to meet its burden of establishing dishonesty and fraud and, in fact, "presented

no direct evidence supporting either charge" against Claimant. The fact that several of Claimant's co-workers were treated by the same physicians, according to the Organization, cannot serve to uphold the charges of dishonesty and fraud against Claimant. "Mere suspicion," the Organization stresses, is an insufficient basis to find guilt. The opinion of the Carrier's Chief Medical Officer that Dr. Johnson's diagnosis and/or treatment of Claimant was not medically appropriate, the Organization stresses, must be considered irrelevant in the absence of any evidence that Claimant "went seeking anything other than a medically appropriate treatment for his injuries."

The Carrier initially contends that Claimant received a fair and impartial investigation under the provisions of the Parties' Agreement. Although the Organization, the Carrier notes, objected to the investigation during the hearing because it alleged that the Carrier had unilaterally postponed the hearing, the Organization, according to the Carrier, "did not progress this contention on appeal; therefore, it's considered waived from further progression." The record also shows that, the Carrier observes, that it amended the hearing date and the Organization did not refute the facts that the second letter received two days after the charge notice was an amended Charge letter changing the hearing date. No other basis, the Carrier contends, can be found to support the conclusion that Claimant was denied a fair and impartial investigation. The Carrier, in making this argument, rejects any claim

by the Organization that the Carrier violated its own Ethics Policy, contending, instead, that its Chief Medical Officer, Dr. Heligman, stated that the documents about which the Organization objected were provided in the course of doing business and not considered HIPAA protected, particularly since they contain no personal identifiable information and the other employees who received the documents were notified and were instructed not to divulge the information or distribute it outside the scope of business purposes. The claim that the charge letters were transmitted to the Organization's General Chairman and not any other official, the Carrier claims, was waived by the Organization since it "did not progress this contention on appeal" and, in any event, the Organization representative, Mr. Sandberg was present at the hearing and ready to proceed, having received proper notice.

The Carrier also maintains it sustained its burden of producing substantial evidence of Claimant's culpability. It claims that the record establishes that over 60 Carrier employees, including Claimant, "were involved in a scheme to defraud CSXT and other providers of benefits, when each sought treatment from the same chiropractic provider in the Huntington, WV area, marking off work for extended periods for minor conditions and in an attempt to change their employment status to fraudulently extend benefits." It relies on the testimony of its Chief Medical Officer, Dr. Heligman, that he received over 60 employee Certifications of Ongoing Illness or Injury medical forms from two chiropractors in the area,

which triggered his investigation because there was an "extremely large volume" of the forms from Claimant and other employees submitted in a very short period of time. Dr. Heligman testified, the Carrier notes, that he researched and reviewed the chiropractic notes and conditions which disclosed to him that the providers and the actions of the employees were fraudulent and reflected "a concerted fraud effort on behalf of the employees, including Claimants , and the Chiropractors." Dr. Heligman, the Carrier observes, testified that he submitted documentation to Carrier Local Officers initiating the charges as well as notifying the Railroad Retirement Board. The testimony of Plant Superintendent Shogren is also identified by the Carrier.

The Carrier observes that the testimony of Dr. Heligman disclosed that the employees' "medical conditions were practically identical, which they all had **minor** musculoskeletal conditions, sprains and muscle spasms, including the Claimants []." (Emphasis in original). Such conditions, according to the Carrier, relying on Dr. Heligman's testimony, should have been resolved within a very short period of time but there was a fraudulent attempt to extend the benefits, all of which "occurred on or about the same time period the manpower reductions were occurring at the Huntington Mechanical facility, resulting in numerous furloughs."

According to the Carrier, relying on the testimony of Plant Superintendent Shogren,

numerous mechanical shop craft employees were notified on June 16, 2017, of furlough notices to become effective June 23, 2017. Claimant and other charged employees, the Carrier notes, submitted the chiropractic ongoing treatment forms during the same time line, and that the Plant Superintendent testified "there was a lot of shop talk amongst local Huntington employees about possible workforce reductions that would result in a large number of furloughs." The record reflects, the Carrier notes, "that when CSXT employees are furloughed their Health & Welfare Benefits are extended for four (4) months from the date of furlough" but "when employees are marked off sick, their benefits are extended for up to a maximum of two (2) years under the CSXT H & W plan." The testimony of Dr. Heligman, according to the Carrier, established "that the Claimants' concerted efforts to extend their H&W benefits amounted to an additional sixteen though dollar ... fringe benefit cost to CSXT" and considering "there was approximately 67 employees involved in this fraud scheme," the "dishonesty could have cost CSXT a total of one million dollars ... in fraudulent fringe benefits."

It is clear, according to the Carrier, as set forth in the testimony of Dr. Heligman, that the motivation of the employees, Claimant included, was "to extend their CSXT Health and Welfare Benefits" and also to defraud "the Railroad Retirement Board and other providers." The Carrier observes that its Code of Ethics contains a Zero Tolerance Policy concerning

fraud and theft, and Claimant's training documents entered into evidence discloses he was trained on the applicable Rules and Policies. The Carrier also maintains it is clear that Claimant's "sick mark offs prior to furlough placed ... [him] in LTI status extending benefits and ... [he] would be protected for 5 years under the 1/1/2018 Agreement should ... [he] become medically qualified to return to work after 1/1/2018, which at that point ... [he] would then be subject for furlough status."

According to the Carrier, the record shows Claimant's chiropractor held him off work from June 21, 2017, with his last day worked being June 15, 2017. According to the Carrier, Claimant acknowledged he sought chiropractic treatment after he was put on notice of his furlough status and also acknowledged that he was not being treated by any other physician. Claimant, the Carrier observes, testified he travels 45 minutes to see the chiropractor and that he was aware that other Carrier employees were receiving treatment from the same chiropractor.

Finally, the Carrier asserts that the discipline imposed must be considered fully justified given the nature of the misconduct. It relies on cited arbitral authority in support of this point. It emphasizes that Claimant was part of "an intentional concerted effort" to "falsely ... [seek] treatment to expand ... [his] compensation and benefits."

**P.L.B. No.7539**
**Case No. 84**
**Award No. 84**

**OPINION OF THE BOARD**

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. The Organization's claims regarding a denial of the right to a fair and impartial hearing have been advanced on a record where the Board is unable to conclude that the Parties have in place an Agreement calling for the dismissal of charges when, as in the instant case, no prejudice occurred to either the Organization or the Claimant. Therefore, the Board will proceed to examine the merits of the charges.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the instant case. In reviewing the record, the Board also notes that any evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant

had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees, and, of course, the timing of the claims asserted by Claimant and the other employees in connection with the June 16, 2017 furlough notice that became effective June 23, 2017. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negates the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate himself as self-serving. The Board finds, therefore, that the Charges against Claimant are fully established in the record. Based on the nature of the misconduct and the Carrier's Disciplinary Policy, the Board finds no reason to disturb the penalty imposed.

**P.L.B. No.7539**
**Case No. 84**
**Award No. 84**

**AWARD**

The claim of the Organization denied.

**DATE: 6/24/19**

Thomas Rinaldo
**THOMAS N. RINALDO, ESQ**
**NEUTRAL MEMBER**

**K. DONOVAN**
**CARRIER MEMBER**

**A. SANDBERG**
**ORGANIZATION MEMBER**

# PUBLIC LAW BOARD NO. 6392

**Award No. 463**

| | |
|---|---|
| **PARTIES** | **Brotherhood Railway Carmen Division (BRC) Division of Transportation Communications Union (TCU/IAM)** |
| **TO** | **-and-** |
| **DISPUTE** | **CSX Transportation, Inc.** |

## STATEMENT OF CLAIM

1. The Carrier violated Rule 30 of the Controlling Agreement when on September 15, 2017 the Carrier erroneously disciplined ML Clark without a fair and impartial hearing.

2. Accordingly, the Carrier should now be required to compensate ML Clark ID# 621281 (Referenced from this point on as Claimant) for all time lost as a result of the Claimant's dismissal. Such reinstatement shall include all rights, seniority, and benefits, including applicable overtime that Claimant would have enjoyed had he never been discharged. The compensation shall continue until he is reinstated with each day being credited to a specific calendar date. Furthermore, Claimant should be compensated for other benefits accruing to all other employees as a condition of employment including, but unlimited to Holiday pay, vacation time, overtime, plus the health and welfare benefits now in effect and premiums the Claimant was required to pay for him and his dependents during his dismissal; to be made whole and complete. The Carrier should now be required to file with the Railroad Retirement Board all form necessary to ensure that the Claimant is properly credited for the months of service that he would have earned absent the dismissal. The Carrier shall now be required to expunge any adverse reference from the Claimant's personnel records relating to the events surrounding his termination.

## FINDINGS

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction

over the dispute involved herein and that the parties were given due notice of hearing thereon.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> …information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The background and facts leading up to the Claimant's formal investigation are stated in some detail in Award No. 456 of this Board, which by reference is made a part hereof.[1] At the formal investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that he received, over a short period of time, a large volume of Certification of Ongoing Illness or Injury (COII) medical forms covering over 60 employees, including the Claimant, sent by two chiropractors (Carey and Johnson) in the Huntington, West Virginia area. Dr. Heligman stated that this was particularly significant because the forms came in a short time frame and close in time to the announcement of force reductions in the Huntington area. Dr. Heligman further testified that the medical documentation received from the chiropractor (Johnson) in behalf of the Claimant, as well as that received for the other employees, was for minor medical conditions and did not justify the Claimant's extended absence from work. Specifically, Dr. Heligman noted that the Claimant had been off from work for a minor musculoskeletal condition which was very similar, and at times identical, with those noted on the COII's of the other 60+ employees, and that the Claimant's medical condition as noted on the COII should not have prevented him from work for this extended period of time. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

After reviewing the voluminous record in this case and giving careful consideration to the arguments of both parties, the Board finds that the Carrier sustained its burden of proving the Claimant's guilt of the charged offense. The Board, for the reasons stated in Award No. 456, finds that while the Organization has forcefully raised several arguments contending that the Claimant should not have been disciplined, such arguments do not exculpate the Claimant nor do they mitigate the severity of the proven offense.

Accordingly, the Board finds that the discipline of dismissal was not arbitrary or excessive and will not be disturbed by this Board.

---

[1] The Organization also raised the same procedural objections as it did in Award No. 456 and Award No. 459 and the Board's ruling in connection therewith is reaffirmed herein.

**Public Law Board No. 6392**
**Award No. 463**

**AWARD**

Claim denied.

Joseph M. Fagnani, Neutral Member

Carl Lakin
Employee Member

Katrina Donovan
Carrier Member

DATED: 8/9/2019

**PUBLIC LAW BOARD NO. 6392**

**Award No. 459**

**PARTIES** **Brotherhood Railway Carmen Division (BRC) Division of Transportation Communications Union (TCU/IAM)**

**TO** **-and-**

**DISPUTE** **CSX Transportation, Inc.**

**STATEMENT OF CLAIM**

1. The Carrier violated Rule 30 of the Controlling Agreement when on September 6, 2017 the Carrier erroneously disciplined RH Craycraft without a fair and impartial hearing.

2. Accordingly, the Carrier should now be required to compensate RH Craycraft ID# 623249 (Referenced from this point on as Claimant) for all time lost as a result of the Claimant's dismissal. Such reinstatement shall include all rights, seniority, and benefits, including applicable overtime that Claimant would have enjoyed had he never been discharged. The compensation shall continue until he is reinstated with each day being credited to a specific calendar date. Furthermore, Claimant should be compensated for other benefits accruing to all other employees as a condition of employment including, but unlimited to Holiday pay, vacation time, overtime, plus the health and welfare benefits now in effect and premiums the Claimant was required to pay for him and his dependents during his dismissal; to be made whole and complete. The Carrier should now be required to file with the Railroad Retirement Board all form necessary to ensure that the Claimant is properly credited for the months of service that he would have earned absent the dismissal. The Carrier shall now be required to expunge any adverse reference from the Claimant's personnel records relating to the events surrounding his termination.

**FINDINGS**

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction

over the dispute involved herein and that the parties were given due notice of hearing thereon.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> ...information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

Prior to discussing the merits of this case[1], the Board will address the Organization's contention that the claim should be sustained due to its position that the Carrier violated Rule 30 of the agreement when it failed to supply the Organization with a complete copy of the transcript in that certain exhibits were missing and that the Carrier failed to timely issue discipline within thirty days of the closing of the investigation. The Carrier notes that the Organization was permitted to review all exhibits at the hearing and further argues that Rule 30 only requires that the Carrier furnish the Organization with a copy of the transcript and there is no requirement for furnishing exhibits. Also, the Carrier supplied an email from the Field Administrator indicating that the transcript and exhibits were sent to the Organization on a USB drive. In addition, the Carrier submits that the hearing concluded on August 7, 2017 and that the notice of discipline was mailed on September 6, 2017, within the prescribed time limits.

While the Board cannot determine from the record before it what exhibits may have been missing from the USB drive, the Organization has failed to demonstrate that the omission of any exhibits hindered its ability to prepare and present an appeal in behalf of the Claimant. In reviewing what the Organization stated was missing, the Board does not find any critical information which would have adversely affected the appeal and in fact, some of the documents the Organization states were missing were Organization exhibits. Additionally, the Board finds that the notice of discipline was timely filed as provided for in the controlling agreement. Accordingly, the Board will address this case on its merits.

The background and facts leading up to the Claimant's formal investigation are stated in some detail in Award No. 456 of this Board, which by reference is made a part hereof. At the formal investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that he received, over a short period of time, a large volume of Certification of Ongoing Illness or Injury (COII) medical forms covering over 60 employees, including the Claimant, sent by two chiropractors (Carey and Johnson) in the Huntington, West Virginia area. Dr. Heligman stated that this was particularly significant because the forms came in a short time frame and close in time to the announcement of force reductions in the Huntington area. Dr. Heligman further testified that the medical

---

[1] The Organization also raised the same procedural objections as it did in Award No. 456 and the Board's ruling in connection therewith is reaffirmed herein.

documentation received from the chiropractor (Carey) in behalf of the Claimant, as well as that received for the other employees, was for minor medical conditions and did not justify the Claimant's extended absence from work. Specifically, Dr. Heligman noted that the Claimant had been off from work for a minor musculoskeletal condition which was very similar, and at times identical, with those noted on the COII's of the other 60+ employees, and that the Claimant's medical condition as noted on the COII should not have prevented him from work for this extended period of time. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

After reviewing the voluminous record in this case and giving careful consideration to the arguments of both parties, the Board finds that the Carrier sustained its burden of proving the Claimant's guilt of the charged offense. The Board, for the reasons stated in Award No. 456, finds that while the Organization has forcefully raised several arguments contending that the Claimant should not have been disciplined, such arguments do not exculpate the Claimant nor do they mitigate the severity of the proven offense.

Accordingly, the Board finds that the discipline of dismissal was not arbitrary or excessive and will not be disturbed by this Board.

**AWARD**

Claim denied.

Joseph M. Fagnani, Neutral Member

Carl Lakin
Employee Member

Katrina Donovan
Carrier Member

DATED: 8/9/2019

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 9**
**Award No. 9**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| **vs.** | ) | **PARTIES TO DISPUTE** |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler C.C. Dowdy was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler C.C. Dowdy be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 2017-229463]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of June 9, 2014. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington, WV and/or Russell, KY Locomotive Shop, a combined seniority roster district. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 7 and 8, 2017, on the charges against him, Firemen and Oilers J.R. Napier (PLB 7879,**

**Award No. 4), S.D. Patterson (PLB 7879, Award No. 5), J.L.Flocker (PLB 7879, Award No. 6), G.H. Kelley (PLB 7879, Award No. 7), and J.A. Barker (PLB 7879, Award No. 8) the Claimant was notified by letter dated September 5, 2017, that the Carrier had found him guilty of the offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]**

**In particular, the Claimant had been marked off sick from work since June 19, 2017. He presented a note from one of the chiropractors in question dated June 19, 2017 that referenced being under his care between beginning on that date, and authorized his absence from work through the estimated date of August 19, 2017. Dr. Heligman testified that the medical conditions described by the chiropractor were not sufficient to support the initial report of permanent and total disability for the Claimant, that the conditions ascribed to the**

[1] The other Claimants just named and subject to the same investigation hearing also were found guilty and dismissed. Their claims are addressed in the Awards cited.
[2] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**Claimant should have improved within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that his doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he initially claimed for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and**

**fraud as charged. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. In addition, although the Organization objects that the Hearing Officer testified on behalf of the Plant Superintendent as to the reason for the removal, his comments (which merely echoed the Superintendent's prior testimony upon repetitious questions from the General Chairman) did not demonstrate bias on the part of the Hearing Officer. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**The Organization also objects that the Claimant was denied a fair and impartial hearing because the Hearing Officer improperly suspended the hearing at approximately 12:40 p.m. on August 7, 2017, and reconvened at 6:30 a.m. on August 8, 2017, over the objection of both of the Claimant's Organization representatives. However, the Hearing Officer's decision was necessitated by the scheduling of other investigations on August 7 and 8, and the need to accommodate the schedules of the Carrier's key witnesses. While the suspension and reconvening were unusual for these parties, the Hearing Officer offered three alternate times for the second session on August 8. Although the Organization representatives did not attend on August 8, both the Plant Superintendent and Dr. Heligman were subjected to able and rigorous questioning by the General Chairman on the first day of the hearing. Notwithstanding that thorough examination, nothing was developed to clear or exonerate the Claimant or the other employees under investigation. At the continuation of the hearing on August 8, those charged who were present, including the Claimant, had the opportunity to examine the Carrier's witnesses and to present additional evidence and testimony. In light of these circumstances overall, the Board finds that the scheduling issue did not deprive the Claimant of a fair and impartial hearing.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.**

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 151 of 420

NCFO and CSX Transportation, Inc.
PLB No. 7879, Case No. 9, Award No. 9
Page 5

**AWARD**

**Claim denied.**

**ORDER**

**This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.**

Lisa S Kohn
**Lisa Salkovitz Kohn**
**Neutral Member**

Penny Dreher
**Penny Dreher**
**Carrier Member**
**Dated:** July 9, 2018

RA Edmonds
**Richard A. Edmonds**
**Organization Member**

CSXT(ADKINS)020074
USCA4 679

**P.L.B. No. 7508**
**Case No. 22**
**Award No. 22**

**PUBLIC LAW BOARD**
**NO. 7508**
**CSXT FILE NO. 313648**
**LCAT FILE NO. 2017-228776**

**Parties to Dispute:**

**INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

**Statement of Claim:**

The Organization requests the discipline assessed be removed from the claimants' record and the Claimant be made whole for all wages and benefits lost from the assessed discipline, including time withheld from service pending the investigation.

## BACKGROUND FACTS

The Claimant Joshua Ferguson, a Sheet Metal Worker in the Carrier's employ, received a letter dated July 21, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto." An investigation, in fact, was held, following which, in a September 6, 2017, letter,

from the Carrier to Claimant, Claimant was informed that the Carrier had determined that he was guilty as charged and had violated Carrier Operating Rule 104.2.a and Code of Ethics Policy. Claimant was notified that he was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

Before the Board, the Organization asserts that the Carrier did not provide any witnesses to corroborate the documentation that it submitted in support of its contention that Claimant acted in a manner that was fraudulent. It contends that Claimant was not affected by the furlough notice. Regarding the letter from the Carrier's Medical Officer to the Railroad Retirement Board concerning a claim made against the chiropractors, the Organization observes that the Kentucky Board of Chiropractic Examiners responded by stating that it had dismissed the complaints.

The medical documentation regarding all charged employees, according to the Organization, contains one page relating to Claimant, which document, the Organization claims, stated the legitimacy of Claimant's medical condition as confirmed by the chiropractor. The Organization also contends that the Carrier did not provide any factual documentation to establish that Claimant's behavior was dishonest or that it violated the Carrier's Code of Ethics.

Case 3:18-cv-00321 Document 360-6 Filed 05/13/21 Page 76 of 260 PageID #: 17323

A genuine understanding of the record, according to the Organization, would reflect that the so-called conspiracy between and among a number of employees was based on assumption and suspicion of Dr. Heligman because of a large volume of documents received from two providers. Further, the Organization notes that the Carrier identified a motive regarding extending health benefits, but, the Organization insists, the Carrier established no direct tie to the Claimant and the Charges brought against him. It also must be kept in mind, the Organization argues, that Dr. Heligman testified there is no issue with an employee being out under a physician's care and Claimant, in this proceeding, testified that he complied with all Carrier Operating Rules and its Code of Ethics. Further, the Claimant testified, the Organization notes, that he acted without any intent to file for sickness benefits in a fraudulent manner.

According to the Carrier, Claimant was afforded a fair and impartial investigation and the Carrier avers that it sustained its burden of producing substantial evidence of Claimant's culpability. Claimant, according to the Carrier, fraudulently claimed sickness in an effort to extend CSXT Health and Welfare benefits and benefits from other providers. Thus, the Carrier posits, Claimant was dishonest. The Carrier maintains that the record reflects that Claimant was involved in a scheme along with a number of other Carrier employees to defraud the Carrier and other providers of benefits by seeking treatment from the same

chiropractic provider in the Huntington West Virginia area, which found Claimant marking off of work for extended periods for minor conditions and seeking to change employment status to fraudulently extend benefits.

What the record shows, according to the Carrier, is that its Chief Medical Officer, Dr. Heligman, received over 60 plus employee Certification of Ongoing Illness or Injury Medical Forms from two chiropractors in the Huntington West Virginia area - Carey and Shannon - that triggered the investigation. According to the Carrier, Dr. Heligman gave credible testimony that there was a large volume of the medical forms from Claimant and other employees received by his office in a short period of time, which forms were then submitted to Carrier Medical after a large business manpower reduction occurred at the Huntington West Virginia Mechanical Facility. Dr. Heligman testified, the Carrier observes, that he researched and reviewed the chiropractic notes and conditions and, as of the date of his testimony, his Office continued to receive forms for employees from these two chiropractors. Claimant's payroll records, the Carrier notes, reflect the last date Claimant worked. Dr. Heligman testified, the Carrier observes, that the medical documentation that he received from the chiropractors did not justify Claimant from an extended absence from work but reflected only minor conditions. Accordingly, the Carrier notes, Dr. Heligman testified that his review of the forms confirmed that the providers' and Claimant's actions were fraudulent

and reflected, in fact, a concerted fraud effort on behalf of the employees and the chiropractors.

The Carrier also observes that Dr. Heligman testified that he submitted the documentation to Carrier Local Officers, which initiated the Charge against Claimant and other employees and notified the Railroad Retirement Board of the Claimant's attempt to obtain benefits fraudulently, which then led to the Railroad Retirement Board to conduct an investigation.

The Carrier maintains that the record demonstrates that Claimant and the other employees had reported medical conditions from the chiropractors that were "practically identical," in that "they all had minor musculorskeletal conditions, sprains and muscle spasms," which, per the testimony of Dr. Heligman, would have been conditions that improved quickly within the first several weeks of care. Had such conditions not abated, the Carrier claims, again relying on Dr. Heligman's testimony, the Claimant should have sought medical treatment from another provider for further evaluation. Moreover, the record shows, according to the Carrier, that the forms submitted by chiropractors and forwarded to the Carrier medical on behalf of Claimant and other employees occurred on or about the same time period when there were manpower reductions at the Huntington Mechanical facility, which resulted in numerous furloughs. The Carrier claims that the "employees involved in

this scheme," which included Claimant, "attempted to fraudulently extend their CSXT Heath & Welfare Benefits an additional 20 months (almost two years) from the date of their last compensation."

The Carrier also identifies the testimony of Plant Superintendent Shogren that a number of mechanical shop craft employees, on June 16, 2017, received notice of furlough, which was to be effective June 23, 2017. Claimant, and others, then submitted the chiropractic forms, the Carrier asserts, within the same time line of the furlough notices. Dr. Heligman testified, according to the Carrier, that the details of the medical conditions from the chiropractors "were very consistent from person to person," including Claimant, "and the alleged condition was not unique to each person." The information received from the chiropractors, according to the Carrier, "was not an individualized assessment nor was the Claimant's treatment plan individualized." The Plant Superintendent also testified, according to the Carrier, that before the manpower reduction notice was posted on June 16, 2017, there was talk at the work site by a number of employees about possible workforce reductions.

The Carrier rejects defenses offered by the Organization. Thus, the Carrier claims that the Organization's contention that fraud was not established is without merit given the fact that Dr. Heligman's testimony established that, when CSXT employees are furloughed, their Health & Welfare Benefits are extended for four months from the date of the furlough but

when employees are marked off sick, their benefits are extended for up to a maximum of two years under the CSXT Health & Welfare Plan. Thus, according to the Carrier, Dr. Heligman gave credible testimony, which was documented, that Claimant and the others engaged in "concerted efforts to extend H & W benefits," which "amounted to an additional sixteen thousand dollars ( $16K) fringe benefit cost to CSXT." Because there were approximately 67 employees involved in the fraudulent scheme, according to the Carrier, the dishonesty of Claimant and the other employees "could have costs CSXT a total of one million dollars ($1M) in fraudulent fringe benefits."

The Carrier also underscores the fact that Dr. Heligman testified that, before the hearing, Carrier Medical had not received any medical documentation to certify that Claimant's absence from work was due to any other type of treatment, and, in fact, all employees involved in the scheme, Claimant included, submitted forms from the same chiropractors in a short period following the mechanical reduction of forces. It cannot be reasonably concluded, according to the Carrier, that Claimant's dismissal was bottomed on only suspicion and assumptions given the direct testimony of Dr. Heligman and the other evidence set forth in the record. It is clear, the Carrier claims, that Claimant's misconduct violated the Carrier's Rule 104.2(a) as well as the Carrier's Code of Ethics. Claimant , that he was actively working and following the furlough notice, marked off sick on June 30,

2017, worked July 1,2017, through July 11, 2017, and had been marked off sick since July 12, 2017,"seeking treatment for alleged minor conditions from same chiropractor."Claimant also acknowledged, according to the Carrier, that he was aware that other Carrier employees were seeking treatment from the same chiropractor. There is no competent and credible evidence in the record, the Carrier stresses, that any documentation relative to Claimant justified disability. Finally, according to the Carrier, the disciple assessed was fully appropriate given its Disciplinary Policy and the nature of the misconduct, which penalty is also supported, the Carrier argues, by a number of Public Law Board Awards.

## OPINION OF THE BOARD

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. Included in this finding is the Board's determination that the Charges against Claimant were in compliance with Rule 30 of the Parties' Agreement. In arriving at this conclusion, the Board also observes the lack any evidence that either Claimant or the Organization was prejudiced in any way by the Carrier's handling of this matter on the Property.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of

fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the instant case. In reviewing the record, the Board also notes that evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees, and, of course, the timing of the claims asserted by Claimant and the other employees in connection with the June 16, 2017 furlough notice that became effective June 23, 2017. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negates the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 161 of 420

**P.L.B. No. 7508**
**Case No. 22**
**Award No. 22**

himself as self-serving. The Board finds, therefore, that the Charges against Claimant are fully established in the record. Based on the nature of the misconduct and the Carrier's Disciplinary Policy, the Board finds no reason to disturb the penalty imposed.

**AWARD**

The claim of the Organization denied.

**DATE:** January 17, 2019

Thomas Rinaldo

**THOMAS N. RINALDO, ESQ**
**NEUTRAL MEMBER**

Penny Dreher

**PENNY DREHER**
**CARRIER MEMBER**

Joe Fraley

**JOE FRALEY**
**ORGANIZATION MEMBER**

-10-

USCA4 689
CSXT(ADKINS)020201

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 6**
**Award No. 6**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) ) ) | **PARTIES TO DISPUTE** |
| **vs.** | ) ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler J.L. Flocker was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler J.L.Flocker be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 2017-229470]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of March 9, 2015. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington, WV and/or Russell, KY Locomotive Shop, a combined seniority roster district. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 7 and 8, 2017, on the charges against him, Firemen and Oilers J.R. Napier (PLB 7879,**

**Award No. 4), S.D. Patterson (PLB 7879, Award No. 5), G.H. Kelley (PLB 7879, Award No. 7), J.A. Barker (PLB 7879, Award No. 8), and C.C. Dowdy (PLB 7879, Award No. 9), the Claimant was notified by letter dated September 5, 2017, that the Carrier had found him guilty of the offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]**

**In particular, the Claimant had been marked off sick from work since June 19, 2017. He presented a note from one of the chiropractors in question dated June 19, 2017 that referenced being under his care between beginning on that date through present, and authorized his absence from work through the estimated date of August 19, 2017. Dr. Heligman testified that the medical conditions described by the chiropractor were not sufficient to support a report of permanent and total disability for the Claimant, that the**

[1] The other Claimants just named and subject to the same investigation hearing also were found guilty and dismissed. Their claims are addressed in the Awards cited.
[2] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**conditions ascribed to the Claimant should have improved within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that her doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he was claiming for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and**

**fraud as charged. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. In addition, although the Organization objects that the Hearing Officer testified on behalf of the Plant Superintendent as to the reason for the removal, his comments (which merely echoed the Superintendent's prior testimony upon repetitious questions from the General Chairman) did not demonstrate bias on the part of the Hearing Officer. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**The Organization also objects that the Claimant was denied a fair and impartial hearing because the Hearing Officer improperly suspended the hearing at approximately 12:40 p.m. on August 7, 2017, and reconvened at 6:30 a.m. on August 8, 2017, over the objection of both of the Claimant's Organization representatives. However, the Hearing Officer's decision was necessitated by the scheduling of other investigations on August 7 and 8, and the need to accommodate the schedules of the Carrier's key witnesses. While the suspension and reconvening were unusual for these parties, the Hearing Officer offered three alternate times for the second session on August 8. Although the Organization representatives did not attend on August 8, both the Plant Superintendent and Dr. Heligman were subjected to able and rigorous questioning by the General Chairman on the first day of the hearing. Notwithstanding that thorough examination, nothing was developed to clear or exonerate the Claimant or the other employees under investigation. At the continuation of the hearing on August 8, those charged who were present, including the Claimant, had the opportunity to examine the Carrier's witnesses and to present additional evidence and testimony. In light of these circumstances overall, the Board finds that the scheduling issue did not deprive the Claimant of a fair and impartial hearing.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.**

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 166 of 420

NCFO and CSX Transportation, Inc.
PLB No. 7879, Case No. 6, Award No. 6
Page 5

**AWARD**

**Claim denied.**

**ORDER**

**This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.**

**Lisa Salkovitz Kohn**
**Neutral Member**

**Penny Dreher**
**Carrier Member**
**Dated:** July 9, 2018

**Richard A. Edmonds**
**Organization Member**

CSXT(ADKINS)020079
USCA4 694

**PUBLIC LAW BOARD NO. 6392**

**Award No. 460**

**PARTIES** **Brotherhood Railway Carmen Division (BRC) Division of Transportation Communications Union (TCU/IAM)**

**TO** **-and-**

**DISPUTE** **CSX Transportation, Inc.**

**STATEMENT OF CLAIM**

1. The Carrier violated Rule 30 of the Controlling Agreement when on September 6, 2017 the Carrier erroneously disciplined JK Frasure without a fair and impartial hearing.

2. Accordingly, the Carrier should now be required to compensate JK Frasure ID# 628732 (Referenced from this point on as Claimant) for all time lost as a result of the Claimant's dismissal. Such reinstatement shall include all rights, seniority, and benefits, including applicable overtime that Claimant would have enjoyed had he never been discharged. The compensation shall continue until he is reinstated with each day being credited to a specific calendar date. Furthermore, Claimant should be compensated for other benefits accruing to all other employees as a condition of employment including, but unlimited to Holiday pay, vacation time, overtime, plus the health and welfare benefits now in effect and premiums the Claimant was required to pay for him and his dependents during his dismissal; to be made whole and complete. The Carrier should now be required to file with the Railroad Retirement Board all form necessary to ensure that the Claimant is properly credited for the months of service that he would have earned absent the dismissal. The Carrier shall now be required to expunge any adverse reference from the Claimant's personnel records relating to the events surrounding his termination.

**FINDINGS**

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction

over the dispute involved herein and that the parties were given due notice of hearing thereon.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> ... information received on July 20, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The background and facts leading up to the Claimant's formal investigation are stated in some detail in Award No. 456 of this Board, which by reference is made a part hereof.[1] At the formal investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that he received, over a short period of time, a large volume of Certification of Ongoing Illness or Injury (COII) medical forms covering over 60 employees, including the Claimant, sent by two chiropractors (Carey and Johnson) in the Huntington, West Virginia area. Dr. Heligman stated that this was particularly significant because the forms came in a short time frame and close in time to the announcement of force reductions in the Huntington area. Dr. Heligman further testified that the medical documentation received from the chiropractor (Johnson) in behalf of the Claimant, as well as that received for the other employees, was for minor medical conditions and did not justify the Claimant's extended absence from work. Specifically, Dr. Heligman noted that the Claimant had been off from work for a minor musculoskeletal condition which was very similar, and at times identical, with those noted on the COII's of the other 60+ employees, and that the Claimant's medical condition as noted on the COII should not have prevented him from work for this extended period of time. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

In addition to the arguments raised in Award Nos. 456 to 459, the Organization has cited additional factors which the Organization contends differentiate the Claimant's case from those of other individuals charged in this matter. Specifically, at the investigation, the Claimant presented documentation from his primary care physician, Dr. Fields, indicating that the Claimant was suffering from Crohn's Disease and had a surgical ileostomy and that such condition was a contributory factor to the Claimant's absence from work.

The Board has carefully reviewed the voluminous record and has fully considered the arguments of both parties relative to the Claimant's culpability in this matter. Although the Board does find that the Carrier sustained its burden of proving the

---

[1] The Organization also raised the same procedural objections as it did in Award No. 456 and Award No. 459 and the Board's ruling in connection therewith is reaffirmed herein.

Claimant's guilt of the charged offense, the Board also finds that the circumstances unique to the Claimant, while not exculpatory, are somewhat mitigating as to the severity of the offense. Accordingly, the Board rules that under the specific and particular circumstances in the present case, the Claimant should be reinstated to service with seniority unimpaired but with no payment for time lost.

**AWARD**

Claim sustained to the extent provided in the Findings. The Carrier is directed to make the Award effective within 30 days of the date of this Award.

Joseph M. Fagnani, Neutral Member

Carl Lakin
Employee Member

Katrina Donovan
Carrier Member

DATED: 8/9/2019

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 116**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Glowacki be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Glowacki be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Glowacki's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant Edmund Glowacki—an employee with approximately two and one-half years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated July 26, 2017, Claimant was instructed to attend an investigation:

> to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

An investigatory hearing was held on August 24, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren testified that furloughs were announced on June 16, and presented a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough effective June 23, 2017. Claimant was listed as an employee who would be placed on furlough. According to Shogren, there was talk around the shop even prior to the furlough notice,

regarding how many employees might be furloughed and whether the third shift might be abolished.

Chief Medical Officer (CMO) Craig S. Heligman testified that he began to investigate documents received from the Huntington area, because on June 19, 2017, his office started receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors: Shannon Johnson and Daniel Carey. He found the circumstances suspicious because of the timing with regard to the furlough notice, as well as the similarity of the diagnoses and treatment recommendations on the COIIs. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees were pulled out of work for two months, for minor musculoskeletal injuries that normally resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, seeking a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work. Heligman called Carey and Johnson, but neither returned his call.

Heligman stated that he concluded that the employees and chiropractors had been engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and the extended benefit insurance providers. An employee who was furloughed would receive just four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from the extended benefits insurance provider. For one employee, Heligman testified, the cost to the Carrier could be approximately $16,000. Including the fifteen employees for which Carey sent in COIIs, and the fifty-two for which Johnson sent in COIIs, the total could be potentially more than $1 million.

Claimant saw Dr. Johnson on June 19, 2017. The COII submitted to the Company stated that Claimant had been diagnosed with sprain of lumbar/pelvis, and muscle spasms of back. Treatment consisted of spinal manipulations, therapeutic exercises, and passive modalities. His estimated return to work was August 19, 2017. Testifying on his own behalf, however, Claimant stated that if he had not been out sick, he would have been on furlough. He testified that the doctor's office had sent the forms in to the Carrier. According to Claimant, he had seen Dr. Johnson after some older employees had mentioned some chiropractors, including Johnson. Dr. Johnson's office is approximately forty-five minutes from Claimant's home.

Claimant recalled that he had injured himself on June 18, 2017, experiencing muscle spasms while sweeping rock into a pothole. He couldn't get into the Veteran's Administration (VA) to be seen by a doctor there. He sees Johnson twice a week for heat, exercises, and application of the transcutaneous electrical nerve stimulation—or TENS—unit. Claimant asserted that he also performed exercises at home. According to Claimant, he had complied with all rules and the Code of Ethics. He was finally seen at the VA on July 27, the day after the letter informing him of the investigation. Claimant submitted a letter that appeared to be from the VA stating that he had been seen on July 27, and was not permitted to work at all for four weeks, and not to overwork for four weeks. He also submitted a list of dates and times for physical therapy through September 20, 2017, but the document does not identify where it came from or have any VA identification marking. Earlier documents Claimant submitted from the VA related to a case of pneumonia.

By letter dated September 21, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2 (a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to obtain CSXT Health and Welfare benefits and other benefits. Claimant submitted some documentation appearing to be from the VA, taking him off work for eight weeks, but nothing was given as a diagnosis. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. As Heligman testified, the diagnosis on Claimant's COII was very similar to that listed on the COIIs of other employees, and was for a minor condition that could be expected to heal within a few weeks. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's continuing absence from work.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by receiving benefits for minor conditions. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, where dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant had violated 104.2 (a) or the Code of Ethics. The Organization emphasizes that Heligman had only suspicion as proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

After reviewing the record in the instant matter, the Board finds Heligman's testimony to be persuasive regarding the existence of a clear pattern of abuse of benefits. Moreover, the Board is persuaded that Claimant was a part of that pattern. Claimant submitted a COII on June 19, 2017, taking him off work for two months. He offered no detailed explanation for how he had gotten hurt, other than feeling spasms while sweeping rocks. His diagnosis, as Heligman emphasized, was for a minor injury—a sprain and muscle spasms—that should have healed in a few weeks. If Claimant truly was seeing Dr. Johnson twice a week, as Claimant asserted, but his alleged condition still had not improved, as a matter of common sense and self-interest he surely would have seen another doctor.

Claimant did not testify that his condition had improved in any way, or provide any reason justifying his continued absence from work. The day he received the Notice of Investigation, he apparently went to the VA, but he provided no documentation of the VA's diagnosis of the condition that was asserted to require eight weeks to heal. Additionally, some of the documents alleged to be from the VA had no identifying insignia to demonstrate that they actually had come from the VA. Therefore, the VA documentation does not support Claimant's assertion of an injury keeping him off work. Moreover, the similarity of his diagnosis and treatment to the diagnosis and chiropractic treatment of many of his coworkers – right around the time of the furlough – was no mere coincidence.

Because Claimant had been furloughed, he may well have planned to submit additional COIIs—as other employees had done—to extend his benefits. Perhaps his visit to the VA was intended to be insurance that Claimant could achieve this objective. But because of the lack of diagnosis on the purported VA documentation and the minor condition identified on Claimant's

COII, the Board is satisfied that Claimant was involved in a concerted effort to defraud the Carrier. He was dishonest in violation of Rule 104.2 (a), and committed fraud in violation of the Carrier's Code of Ethics. The Board therefore concludes that Claimant's dismissal was warranted.

**Award:**

The claim is denied.

JOAN PARKER, Neutral Member

CARRIER MEMBER

ORGANIZATION MEMBER

DATED: 1/16/2019

DATED: 12/21/18

**PUBLIC LAW BOARD NO. 6392**

**Award No. 464**

**PARTIES** **Brotherhood Railway Carmen Division (BRC) Division of Transportation Communications Union (TCU/IAM)**

**TO** **-and-**

**DISPUTE** **CSX Transportation, Inc.**

**STATEMENT OF CLAIM**

1. The Carrier violated Rule 30 of the Controlling Agreement when on September 15, 2017 the Carrier erroneously disciplined DA Hutchinson without a fair and impartial hearing.

2. Accordingly, the Carrier should now be required to compensate DA Hutchinson ID# 978419 (Referenced from this point on as Claimant) for all time lost as a result of the Claimant's dismissal. Such reinstatement shall include all rights, seniority, and benefits, including applicable overtime that Claimant would have enjoyed had he never been discharged. The compensation shall continue until he is reinstated with each day being credited to a specific calendar date. Furthermore, Claimant should be compensated for other benefits accruing to all other employees as a condition of employment including, but unlimited to Holiday pay, vacation time, overtime, plus the health and welfare benefits now in effect and premiums the Claimant was required to pay for him and his dependents during his dismissal; to be made whole and complete. The Carrier should now be required to file with the Railroad Retirement Board all form necessary to ensure that the Claimant is properly credited for the months of service that he would have earned absent the dismissal. The Carrier shall now be required to expunge any adverse reference from the Claimant's personnel records relating to the events surrounding his termination.

**FINDINGS**

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction

over the dispute involved herein and that the parties were given due notice of hearing thereon.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> ... information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The background and facts leading up to the Claimant's formal investigation are stated in some detail in Award No. 456 of this Board, which by reference is made a part hereof.[1] At the formal investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that he received, over a short period of time, a large volume of Certification of Ongoing Illness or Injury (COII) medical forms covering over 60 employees, including the Claimant, sent by two chiropractors (Carey and Johnson) in the Huntington, West Virginia area. Dr. Heligman stated that this was particularly significant because the forms came in a short time frame and close in time to the announcement of force reductions in the Huntington area. Dr. Heligman further testified that the medical documentation received from the chiropractor (Johnson) in behalf of the Claimant, as well as that received for the other employees, was for minor medical conditions and did not justify the Claimant's extended absence from work. Specifically, Dr. Heligman noted that the Claimant had been off from work for a minor musculoskeletal condition which was very similar, and at times identical, with those noted on the COII's of the other 60+ employees, and that the Claimant's medical condition as noted on the COII should not have prevented him from work for this extended period of time. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

After reviewing the voluminous record in this case and giving careful consideration to the arguments of both parties, the Board finds that the Carrier sustained its burden of proving the Claimant's guilt of the charged offense. The Board, for the reasons stated in Award No. 456, finds that while the Organization has forcefully raised several arguments contending that the Claimant should not have been disciplined, such arguments do not exculpate the Claimant nor do they mitigate the severity of the proven offense.

Accordingly, the Board finds that the discipline of dismissal was not arbitrary or excessive and will not be disturbed by this Board.

---

[1] The Organization also raised the same procedural objections as it did in Award No. 456 and Award No. 459 and the Board's ruling in connection therewith is reaffirmed herein.

Case 3:18-cv-00321 Document 360-6 Filed 05/13/21 Page 100 of 260 PageID #: 17347

**Public Law Board No. 6392**
**Award No. 464**

**AWARD**

Claim denied.

Joseph M. Fagnani, Neutral Member

Carl Lakin
Employee Member

Katrina Donovan
Carrier Member

DATED: 8/9/2019

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 8

CASE NO. 8
CSXT LCAT File No. 2017-228565

**PARTIES TO THE DISPUTE:** **International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant J. Jeffers, ID 274346

> "1. That under the Current and Controlling Agreement, Boilermaker J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant J. Jeffers was dismissed by letter dated September 5, 2017. At the time of his dismissal, claimant had less than three years of service with the Carrier. His work record did not contain any prior disciplinary entries.

As suggested by the above Statement of Claim, a single investigation was held on August 5, 2017 involving claimant and six other members of the Organization. All seven employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization, seven of whom were subject to the investigation in question.

In total, the furlough notices projected the furlough of more than sixty-five employees among seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extent that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims. A final letter identified four more employees.

Of the seven employees involved in the instant investigation, five saw the same chiropractor on June 19, 2017 and received absence excuses from work for two months. Claimant Jeffers was one of those five employees.

The record of investigation in question consists of 306 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. The United State Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'" in its 1938 decision in Consolidated Edison v. Labor Board. To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:
The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: February 4, 2019

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 113**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Jordan be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Jordan be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Jordan's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant Eric Jordan —an employee with approximately two and one-half years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated July 28, 2017, Claimant was instructed to attend an investigation:

> to determine the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

An investigatory hearing was held on August 24, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren, testified that furloughs were announced on June 16, and presented a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough effective June 23, 2017. According to Shogren, there was talk around the shop even prior to the

furlough notice, regarding how many employees might be furloughed and whether the third shift might be abolished. Claimant, however, was not affected by the furloughs.

Chief Medical Officer (CMO) Craig S. Heligman testified that he began to investigate documents received from the Huntington area, because on June 19, 2017, his office started receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors: Shannon Johnson and Daniel Carey. He found the circumstances suspicious because of the timing with regard to the furlough notice, as well as the similarity of the diagnoses and treatment recommendations on the COIIs. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees were pulled out of work for two months, for minor musculoskeletal injuries that should resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, seeking a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work. Heligman called Carey and Johnson, but neither returned his call.

Heligman stated that he concluded that the employees and chiropractors had been engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and the extended benefit insurance providers. An employee who was furloughed would receive just four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from the extended benefits insurance provider. For one employee, Heligman testified, the cost to the Carrier could be approximately $16,000. Including the fifteen employees for which Carey sent in COIIs, and the fifty-two for which Johnson sent in COIIs, the total could be potentially over $1 million.

Claimant had been out since May 27, 2017, and predicted to be back to work at the end of July, 2017. A new COII extended his return date to September 25, 2017. The COII stated that Claimant had been diagnosed with a cervical/lumbar sprain or strain, and with lumbar degenerative arthritis. Treatment consisted of spinal manipulations and therapeutic exercises. Testifying on his own behalf, Claimant stated that he had not been furloughed. He testified that the doctor's office had sent the forms in to the Carrier. According to Claimant, family members had told him about Dr. Carey. He acknowledged that Dr. Carey's office is approximately forty to forty-five minutes from home.

Claimant acknowledged that he was not going to any other doctors for treatment of his condition. He stated that it was quicker to get an appointment with Carey than with his primary care physician. He sees Carey twice a week for electro therapy and massage therapy. An x-ray at another facility supported Carey's conclusions, Claimant said. He further testified that Carey's office sent in the paperwork for RRB benefits and the supplemental benefits from Aetna. Claimant asserted that he had complied with all rules and the Code of Ethics.

By letter dated September 21, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2 (a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to extend CSXT Health and Welfare benefits and other benefits. Claimant acknowledged that he did not see any other doctor for his alleged injury, and provided no documentation of having seen any other provider. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. As Heligman testified,

the diagnosis on Claimant's COII was very similar to that listed on the COIIs of other employees, and was for a minor condition that could be expected to heal within a few weeks. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's continuing absence from work.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by extending benefits for minor conditions. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, where dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant had violated 104.2 (a) or the Code of Ethics. The influx of COIIs that concerned CMO Heligman occurred between June 19 and July 12, 2017. It is undisputed that Claimant was taken out of work on May 25, 2017. Moreover, Claimant was not affected in any way by the reduction in force announced on June 16. The Organization emphasizes that Heligman had only suspicion as proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

After reviewing the record in the instant matter, the Board finds Heligman's testimony to be persuasive regarding the existence of a clear pattern of abuse of benefits. Claimant submitted a COII in May taking him off work for two months, and another COII in July to extend his being

off work for another two months, a total of four. His diagnosis, as Heligman emphasized, was for a minor injury—a sprain and muscle spasms—that should have healed in a few weeks. If Claimant truly was seeing Dr. Carey twice a week, as Claimant asserted, but his alleged condition still had not improved, as a matter of common sense and self-interest he surely would have seen another doctor. Claimant did not testify that his condition had improved in any way, or provide any reason justifying his continued absence from work. The similarity of his diagnosis and treatment to the diagnosis and treatment of many other employees by the same chiropractor was more than a coincidence. The Board is satisfied that Claimant has been involved in a concerted effort to defraud the Carrier. He has been dishonest in violation of Rule 104.2 (a), and has committed fraud in violation of the Carrier's Code of Ethics. The Board therefore concludes that Claimant's dismissal was warranted.

**Award:**

The claim is denied.

JOAN PARKER, Neutral Member

CARRIER MEMBER

ORGANIZATION MEMBER

DATED: 1/16/2019

DATED: 12/21/18

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 7**
**Award No. 7**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| | ) | **PARTIES TO DISPUTE** |
| **vs.** | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler G.H. Kelley was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler G.H. Kelley be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 2017-229467]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of April 20, 2015. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington, WV and/or Russell, KY Locomotive Shop, a combined seniority roster district. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 7 and 8, 2017, on the charges against him, Firemen and Oilers J.R. Napier (PLB 7879,**

**Award No. 4), S.D. Patterson (PLB 7879, Award No. 5), J.L.Flocker (PLB 7879, Award No. 6), J.A. Barker (PLB 7879, Award No. 8), and C.C. Dowdy (PLB 7879, Award No. 9), the Claimant was notified by letter dated September 5, 2017, that the Carrier had found him guilty of the offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]**

**In particular, the Claimant had been marked off sick from work since June 21, 2017. He presented a note from one of the chiropractors in question dated June 21, 2017 that referenced being under his care between beginning on that date, and authorized his absence from work through the estimated date of August 21, 2017. (In fact, the chiropractor subsequently responded on July 19, 2017, to a form requested by Dr. Heligman stating that the Claimant was released to return to work without restrictions as of that date.) Dr.**

---

[1] The other Claimants just named and subject to the same investigation hearing also were found guilty and dismissed. Their claims are addressed in the Awards cited.

[2] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**Heligman testified that the medical conditions described by the chiropractor were not sufficient to support the initial report of permanent and total disability for the Claimant, that the conditions ascribed to the Claimant should have improved within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that his doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he initially claimed for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information**

**beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and fraud as charged. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. Claimant marked off sick after he received his notice to be furloughed, before his furlough status became effective. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. In addition, although the Organization objects that the Hearing Officer testified on behalf of the Plant Superintendent as to the reason for the removal, his comments (which merely echoed the Superintendent's prior testimony upon repetitious questions from the General Chairman) did not demonstrate bias on the part of the Hearing Officer. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**The Organization also objects that the Claimant was denied a fair and impartial hearing because the Hearing Officer improperly suspended the hearing at approximately 12:40 p.m. on August 7, 2017, and reconvened at 6:30 a.m. on August 8, 2017, over the objection of both of the Claimant's Organization representatives. However, the Hearing Officer's decision was necessitated by the scheduling of other investigations on August 7 and 8, and the need to accommodate the schedules of the Carrier's key witnesses. While the suspension and reconvening were unusual for these parties, the Hearing Officer offered three alternate times for the second session on August 8. Although the Organization representatives did not attend on August 8, both the Plant Superintendent and Dr. Heligman were subjected to able and rigorous questioning by the General Chairman on the first day of the hearing. Notwithstanding that thorough examination, nothing was developed to clear or exonerate the Claimant or the other employees under investigation. At the continuation of the hearing on August 8, those charged who were present, including the Claimant, had the opportunity to examine the Carrier's witnesses and to present additional evidence and testimony. In light of these circumstances overall, the Board finds that the scheduling issue did not deprive the Claimant of a fair and impartial hearing.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for**

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 191 of 420

NCFO and CSX Transportation, Inc.
PLB No. 7879, Case No. 7, Award No. 7
Page 5

benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.

## AWARD

Claim denied.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.

Lisa Salkovitz Kohn
Neutral Member

Penny Dreher
Carrier Member
Dated: July 9, 2018

Richard A. Edmonds
Organization Member

CSXT(ADKINS)020098
USCA4 719

**PUBLIC LAW BOARD NO. 7655**

**Award No. 106**

| | |
|---|---|
| **PARTIES** | **Brotherhood of Locomotive Engineers and Trainmen** |
| **TO** | **-and-** |
| **DISPUTE** | **CSX Transportation, Inc.** |

**STATEMENT OF CLAIM**

The appeal is submitted on behalf of Engineer/Conductor C. M. Little, ID 539659, requesting compensation for all lost time while being held out of service, since being released from his treating physicians to return to work, which includes time spent attending the investigation held August 4, 2017. Claimant to be made whole for all lost agreement entitlements, such as Perfect Attendance Stock Award, Demand Day Off, Vacation, Personal Leave and including Health and Welfare and Railroad Retirement benefits with seniority unimpaired.

**FINDINGS**

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction over the dispute involved herein and that the parties were given due notice of hearing thereon.

Claimant C. M. Little entered the Carrier's service on March 9, 2003, and was employed as a Conductor on the Carrier's Louisville Division on July 14, 2017.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> …information received that on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

The background and facts leading up to the Claimant's formal investigation are stated in some detail in Award No. 104 of this Board, which by reference is made a part hereof. However, there are some factual differences which will be hereinafter discussed. At the investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that the Carrier received a large volume of COII's from two chiropractors (Carey and Shannon) in behalf of 60 plus employees, including the Claimant who was seen by one of the chiropractors (Shannon), all of which were for minor musculoskeletal conditions which did not require extended absences from work. Relative to Claimant, Dr. Heligman stated that the Claimant had been off work since November 2016 (approximately 8 months) for a minor musculoskeletal condition which was very similar or identical to the conditions noted in the COII's for the other 60+ employees. Dr. Heligman stated that the medical condition as noted on the Claimant's COII, i.e. sprain/strain lumbar, muscle spasm, should have improved in 4 to 8 weeks and would not have taken 8 months to resolve. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

At the investigation, the Claimant supplied over 100 pages of medical records, some from his chiropractor and also records relative to a heart problem that the Claimant had experienced in December 2016. The Organization posits that these documents prove that the Claimant was still experiencing his musculoskeletal problem and in any event, the Claimant would not have been able to work due to his heart issues. The Organization concludes that these documents prove that the Claimant was not engaged in a fraudulent conspiracy.

Contrariwise, the Carrier notes that Dr. Heligman testified that the only documentation that he had ever received regarding the Claimant's medical condition was the COII's describing the minor musculoskeletal condition and that the documentation presented at the investigation was not submitted until after the Claimant had been charged in this matter. The Carrier also notes there has been no connection shown between the Claimant's reported back issues and his heart issues. Relative to the more detailed report from the Claimant's chiropractor, the Carrier submits that this report is self-serving at best, as it comes from the same chiropractor who treated 51 other employees involved in this incident. It is the Carrier's position that the Claimant was relying solely on the COII's provided by his chiropractor as his reason for not working for an extended period of time for the same reasons as the other 60+ employees, i.e. to defraud the Carrier.

Upon its review of the voluminous record, the Board finds that the Carrier sustained its burden of proving the Claimant's guilt of the charged offense. The Board fails to see the relevancy of the medical documents referring to the heart condition, since prior to the investigation the Carrier had no knowledge of these records and at the investigation, the Claimant's representative said that the Claimant no longer was treating for his heart issues. Based on the timing of the detailed report of the Claimant's

chiropractor and the nature of his involvement in the overall issue, the Board finds that the additional documentation does not outweigh the testimony and conclusions reached by Dr. Heligman. Relative to the Carrier's reliance on circumstantial evidence, the Board refers to its Findings in Award No. 104, cited above.

Similarly, the Board in its Award No. 104 gave its rationale for concluding that the discipline of dismissal was appropriate in light of the seriousness of the proven offense. Accordingly, the Board finds that the discipline of dismissal assessed the Claimant was not harsh or excessive and will not be disturbed by this Board.

**AWARD**

Claim denied.

Joseph M. Fagnani, Neutral Member

Gil Gore
Employee Member

Macon Jones
Carrier Member

Dated:

Dated: July 24, 2018

CSXT(ADKINS)020101
USCA4 722

**PUBLIC LAW BOARD NO. 6392**

**Award No. 457**

**PARTIES** **Brotherhood Railway Carmen Division (BRC)**
**Division of Transportation Communications Union**
**(TCU/IAM)**

**TO** **-and-**

**DISPUTE** **CSX Transportation, Inc.**

**STATEMENT OF CLAIM**

1. The Carrier violated Rule 30 of the Controlling Agreement when on September 5, 2017 the Carrier erroneously disciplined SL Maddix without a fair and impartial hearing.

2. Accordingly, the Carrier should now be required to compensate SL Maddix ID# 254051 (Referenced from this point on as Claimant) for all time lost as a result of the Claimant's dismissal. Such reinstatement shall include all rights, seniority, and benefits, including applicable overtime that Claimant would have enjoyed had he never been discharged. The compensation shall continue until he is reinstated with each day being credited to a specific calendar date. Furthermore, Claimant should be compensated for other benefits accruing to all other employees as a condition of employment including, but unlimited to Holiday pay, vacation time, overtime, plus the health and welfare benefits now in effect and premiums the Claimant was required to pay for him and his dependents during his dismissal; to be made whole and complete. The Carrier should now be required to file with the Railroad Retirement Board all form necessary to ensure that the Claimant is properly credited for the months of service that he would have earned absent the dismissal. The Carrier shall now be required to expunge any adverse reference from the Claimant's personnel records relating to the events surrounding his termination.

**FINDINGS**

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction

over the dispute involved herein and that the parties were given due notice of hearing thereon.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> ...information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

The background and facts leading up to the Claimant's formal investigation are stated in some detail in Award No. 456 of this Board, which by reference is made a part hereof.[1] At the formal investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that he received, over a short period of time, a large volume of Certification of Ongoing Illness or Injury (COII) medical forms covering over 60 employees, including the Claimant, sent by two chiropractors (Carey and Johnson) in the Huntington, West Virginia area. Dr. Heligman stated that this was particularly significant because the forms came in a short time frame and close in time to the announcement of force reductions in the Huntington area. Dr. Heligman further testified that the medical documentation received from the chiropractor (Johnson) in behalf of the Claimant, as well as that received for the other employees, was for minor medical conditions and did not justify the Claimant's extended absence from work. Specifically, Dr. Heligman noted that the Claimant had been off from work for a minor musculoskeletal condition which was very similar, and at times identical, with those noted on the COII's of the other 60+ employees, and that the Claimant's medical condition as noted on the COII should not have prevented him from work for this extended period of time. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

After reviewing the voluminous record in this case and giving careful consideration to the arguments of both parties, the Board finds that the Carrier sustained its burden of proving the Claimant's guilt of the charged offense. The Board, for the reasons stated in Award No. 456, finds that while the Organization has forcefully raised several arguments contending that the Claimant should not have been disciplined, such arguments do not exculpate the Claimant nor do they mitigate the severity of the proven offense.

Accordingly, the Board finds that the discipline of dismissal was not arbitrary or excessive and will not be disturbed by this Board.

---

[1] The Organization also raised the same procedural objections as it did in Award No. 456 and the Board's ruling in connection therewith is reaffirmed herein.

CSXT(ADKINS)020103
USCA4 724

**Public Law Board No. 6392**
**Award No. 457**

**AWARD**

Claim denied.

Joseph M. Fagnani, Neutral Member

Carl Lakin
Employee Member

Katrina Donovan
Carrier Member

DATED: 8/9/2019

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 2**
**Award No. 2**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| | ) | **PARTIES TO** |
| **vs.** | ) | **DISPUTE** |
| | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler J.C. Marshall was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler J.C. Marshall be made whole so that she does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 2017-227751]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of June 6, 1999. At all times relevant, the Claimant was employed as a Utility Worker at Huntington WV. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 8, 2017, on the charges against her, Firemen and Oiler J.R. Maynard (PLB 7879, Award No. 1) and Firemen and Oiler B.S. Adkins (PLB 7879, Award No. 3), the Claimant**

**was notified by letter dated September 6, 2017, that the Carrier had found him guilty of the offense charged, had determined that she had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed her from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of what seemed an unusually large number of Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees. This caused the Chief Medical Officer to scrutinize other sickness claims from the two chiropractors involved. Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant, although not in the immediate time of the furlough, and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]**

**In particular, the Claimant had been marked off sick from work since April 26, 2016, and had been receiving disability benefits. Dr. Heligman testified that the medical conditions described by the chiropractor were not sufficient to support a report of permanent and total disability for the Claimant. More specifically, although the Claimant testified at the hearing that she had "bad knees" and problems with her "backbone," the documentation from the chiropractor did not address those conditions or support her assertions. The Carrier**

[1] Maynard and Adkins also were found guilty and dismissed. Their claims are addressed in Awards 1 and 3, respectively.
[2] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to her. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while she had been away from duty, and cannot declare without prior notice that her doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – her purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of her chiropractor's report to justify the length of time she was claiming for treatment or for total disability; and her failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and fraud as charged. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be**

**deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt. The fact that the Claimant was already marked off sick and that she did not in fact face furlough as a result of the reductions announced June 16, 2017, does not excuse or mitigate his offense.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.**

## AWARD

**Claim denied.**

## ORDER

**This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.**

**Lisa Salkovitz Kohn**
**Neutral Member**

**Penny Dreher**
**Carrier Member**
**Dated:** July 9, 2018

**Richard A. Edmonds**
**Organization Member**

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 1**
**Award No. 1**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| | ) | **PARTIES TO** |
| **vs.** | ) | **DISPUTE** |
| | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> "1. That under the current and controlling agreement, Firemen and Oiler H.R. Maynard was unjustly dismissed from service without just cause.
>
> "2. That accordingly, Firemen & Oiler H.R. Maynard be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 2017-227753]

**OPINION OF THE BOARD:**

This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.

The Claimant had mechanical seniority date of September 4, 2002. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington WV and/or Russell KY Locomotive Shops, a combined seniority roster district. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation

> "to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."

The Claimant was held out of service pending the investigation. After a hearing held August 8, 2017, on the charges against him, Firemen and Oiler J.C. Marshall (PLB 7879,

Award No. 2) and Firemen and Oiler B.S. Adkins (PLB 7879, Award No. 3), the Claimant was notified by letter dated September 6, 2017, that the Carrier had found him guilty of the offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.

The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]

In particular, the Claimant had been marked off sick from work since April 26, 2016, and requested a week's vacation pay from October 24 through 28, 2016, which extended his benefits. Dr. Heligman testified that the minor conditions ascribed to the Claimant should have improved within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. He further testified that the conditions described by the chiropractor were not

---

[1] Marshall and Adkins also were found guilty and dismissed. Their claims are addressed in Awards 2 and 3, respectively.

[2] Heligman also notified the Railroad Retirement Board of the attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

sufficient to support a report of permanent and total disability for the Claimant. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.

The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman' s analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren' s suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that his doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.

The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he was claiming for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and fraud as charged. The Carrier, and this Board, are entitled to

**rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt. The fact that the Claimant was already marked off sick and that he did not in fact face furlough as a result of the reductions announced June 16, 2017, does not excuse or mitigate his offense.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.**

**AWARD**

**Claim denied.**

**ORDER**

**This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.**

**Lisa Salkovitz Kohn**
**Neutral Member**

**Penny Dreher**
**Carrier Member**
**Dated:** 5/22/2018

**Richard A. Edmonds**
**Organization Member**

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 14

CASE NO. 14
CSXT LCAT File No. 2017-228571

**PARTIES TO THE DISPUTE:**

**International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant SM Morrison, ID 273044

> "1. That under the Current and Controlling Agreement, Boilermaker(s) ML Potter,TM Witt, SM Morrison and DE Brown was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) ML Potter,TM Witt, SM Morrison and DE Brown be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant SM Morrison was dismissed by letter dated September 21, 2017. At the time of his dismissal, claimant had approximately two and one-half years of service with the Carrier. His work record was clear of any prior disciplinary entries.

As suggested by the above Statement of Claim, a single investigation was held August 23, 2017 involving claimant and three other members of the Organization. All four employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization. However, none of the four subjects of the investigation in question were among those listed.

In total, the furlough notices projected the furlough of more than sixty-five employees spread over seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extend that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions, if genuine, should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims, which included the four employees in the subject investigation. A final letter identified four more employees.

The thrust of the CMO's testimony was that employees who wanted to be excused from work for a two-month period, or, in some cases, successive two-month periods, would go to one of the two chiropractors in question and falsely claim to have sustained a minor sprain or strain for the purpose of obtaining a two-month excuse from working.

Of the four employees involved in the instant investigation, all saw one of the two suspect chiropractors between June 21 and July 19, 2017 and all received absence excuses from work for two months. In Claimant Morrison's case, he went to one of the chiropractors on July 19th and received an excuse for two more months. He had been off work since the previous May 21st.

The record of investigation in question consists of nearly 300 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions

raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. In its 1938 decision in Consolidated Edison v. Labor Board, the United States Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'". To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

The role of a Public Law Board is appellate in nature. We do not sit to reconcile competing bodies of evidence and contentions to determine which is the more persuasive. Instead, our authority is limited to reviewing the record of the investigation and the on-property handling of the dispute for the narrow purpose of determining whether the Carrier's disciplinary decision was supported by substantial evidence in the record. In other words, could a reasonable mind accept the Carrier's evidence as the requisite support for its disciplinary action against the claimant?

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:
The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: March 20, 2019

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 11

CASE NO. 11
CSXT LCAT File No. 2017-228568

**PARTIES TO THE DISPUTE:**

**International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant R. E. Mosteller, ID 267842

> "1. That under the Current and Controlling Agreement, Boilermaker J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant R. E. Mosteller was dismissed by letter dated September 5, 2017. At the time of his dismissal, claimant had less than three years of service with the Carrier. His work record did not contain any prior disciplinary entries.

As suggested by the above Statement of Claim, a single investigation was held on August 5, 2017 involving claimant and six other members of the Organization. All seven employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization, seven of whom were subject to the investigation in question.

In total, the furlough notices projected the furlough of more than sixty-five employees among seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extent that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims. A final letter identified four more employees.

Of the seven employees involved in the instant investigation, five saw the same chiropractor on June 19, 2017 and received absence excuses from work for two months. Claimant Mosteller was one of those five employees.

The record of investigation in question consists of 306 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. The United State Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'" in its 1938 decision in Consolidated Edison v. Labor Board. To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:
The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: February 4, 2019

**P.L.B. No.7539**
**Case No. 80**
**Award No. 80**

**PUBLIC LAW BOARD**
**NO. 7539**
**CLAIMANT: ETHAN R MULLINS**

**Parties to Dispute:**

**INTERNATIONAL ASSOCIATION OF MACHINIST & AEROSPACE WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

***Statement of Claim:***

In accordance with the applicable provisions of the Current Rules Agreement in effect between the International Association of Machinists and the CSXT Railroad, this is an appeal of the decision by letter dated September 21, 2017 from Brian Barr, Vice President Mechanical, unjustly terminating Mr. Mullins.

The decision of Mr. Barr is rejected in its entirety and, by copy of this appeal, he is so notified.

**BACKGROUND FACTS**

Claimant, Ethan R. Mullins, a Machinist in the Carrier's employ, received a letter dated July 26, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on July 14th, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits provider when you, as well as more than 50 other craft employees, submitted potentially fraudulent documents and all circumstances relating thereto." An

investigation, in fact, was held on August 22, 2017, following which the Carrier found Claimant guilty of violating its Operating Rule 104.2.a and its Code of Ethics Policy based on the allegations set forth in the Notice of Investigation. Claimant was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

The Organization notes that Claimant has worked as a Machinist at the Huntington shop for over three years and his job duties required him to undertake substantial physical efforts. In mid-June 2017, the Organization notes, Claimant was injured when the universal terrain vehicle he was driving rolled over. The Organization notes that, on June 19, 2017, Claimant was seen by Dr. Johnson, who was recommended to him by an aunt. Dr. Johnson, the chiropractor, the Organization notes, diagnosed "a sprain of lumbar/pelvis' and muscle spasms." Dr. Johnson then submitted to the Carrier a Certification of Ongoing Illness or Injury on June 21, 2017, according to the Organization, that medically certified that Claimant was injured and under his care.

The Carrier never asked Claimant to see another physician for a second opinion, the Organization puts forth, and no Carrier physician ever conducted a physical exam of Claimant. After served with the Notice of Investigation, Claimant, the Organization also

notes, saw Dr. Johnson on August 21, 2017, and Dr. Johnson submitted an Attending Physician's Return to Work Report to the Carrier, setting forth his medical opinion that Claimant could return to work with no restrictions. Despite this Return to Work Report, according to the Organization, the Carrier nevertheless proceeded with the investigation. Dr. Heligman, the Carrier's Chief Medical Officer and witness in this proceeding, the Organization observes, did not medically assess Claimant and there is "no evidence to support this utter speculation [of dishonesty and fraud] regarding the intention of Mr. Mullins," and "[t]he only evidence of record in this regard was Mr. Mullins' unrebutted testimony regarding his injury, his inability to perform the essential functions of his job until healed, and his decision to follow Dr. Johnson's treatment orders."

The Organization observes that the only witness against Claimant as to his medical condition was the Carrier's Chief Medical Officer, Dr. Heligman, who, the Organization notes, never met with or diagnosed Claimant and did not direct him to obtain any second opinion. The Organization claims that Dr. Heligman's so-called investigation consisted of essentially of a review of the ongoing illness or injury certification forms and related documents involving other people who had been seen either by Dr. Johnson or an unrelated chiropractor, Dr. Carey. The Organization emphasizes that Dr. Heligman did not medically assess Claimant and, the Organization puts forth, "[t]here was no evidence to support this

utter speculation" regarding Claimant's intention.

The Organization claims that this proceeding was tainted by a number of procedural irregularities. It asserts that the Notice of Hearing was sent to the wrong representative and the time and location of the hearing was changed without notice or consent. The investigation in this matter, the Organization observes, "was conducted on a group basis, with the Carrier witnesses testifying generally as to a group of seven charged Machinist, as well as the dozens of employees who were not even present." According to the Organization, the Carrier engaged in a "rush to judgment" and also released personal and confidential medical records of over 50 employees. An unfair hearing, occurred, the Organization argues, as a result of these procedural flaws.

As to the merits, the Organization contends that Claimant is not guilty and his dismissal from service is unwarranted. The Carrier, according to the Organization, produced no evidence to meet its burden of establishing dishonesty and fraud and, in fact, "presented no direct evidence supporting either charge" against Claimant. The fact that several of Claimant's co-workers were treated by the same physician, according to the Organization, cannot serve to uphold the charges of dishonesty and fraud against Claimant. "Mere suspicion," the Organization stresses, is an insufficient basis to find guilt. The opinion of the Carrier's Chief Medical Officer that Dr. Johnson's diagnosis and/or treatment of Claimant

was not medically appropriate, the Organization stresses, must be considered irrelevant in the absence of any evidence that Claimant "went seeking anything other than a medically appropriate treatment for his injuries."

The Carrier initially contends that Claimant received a fair and impartial investigation under the provisions of the Parties' Agreement. Although the Organization, the Carrier notes, objected to the investigation during the hearing because it alleged that the Carrier had unilaterally postponed the hearing, the Organization, according to the Carrier, "did not progress this contention on appeal; therefore, it's considered waived from further progression." The record also shows that, the Carrier observes, that it amended the hearing date and the Organization did not refute the facts that the second letter received two days after the charge notice was an amended Charge letter changing the hearing date. No other basis, the Carrier contends, can be found to support the conclusion that Claimant was denied a fair and impartial investigation. The Carrier, in making this argument, rejects any claim by the Organization that the Carrier violated its own Ethics Policy, contending, instead, that its Chief Medical Officer, Dr. Heligman, stated that the documents about which the Organization objected were provided in the course of doing business and not considered HIPAA protected, particularly since they contain no personal identifiable information and the other employees who received the documents were notified and were instructed not to

divulge the information or distribute it outside the scope of business purposes. The claim that the charge letters were transmitted to the Organization's General Chairman and not any other official, the Carrier claims, was waived by the Organization since it "did not progress this contention on appeal" and, in any event, the Organization representative, Mr. Sandberg was present at the hearing and ready to proceed, having received proper notice.

The Carrier also maintains it sustained its burden of producing substantial evidence of Claimant's culpability. It claims that the record establishes that over 60 Carrier employees, including Claimant, "were involved in a scheme to defraud CSXT and other providers of benefits, when each sought treatment from the same chiropractic provider in the Huntington, WV area, marking off work for extended periods for minor conditions and in an attempt to change their employment status to fraudulently extend benefits." It relies on the testimony of its Chief Medical Officer, Dr. Heligman, that he received over 60 employee Certifications of Ongoing Illness or Injury medical forms from two chiropractors in the area, which triggered his investigation because there was an "extremely large volume" of the forms from Claimant and other employees submitted in a very short period of time. Dr. Heligman testified, the Carrier notes, that he researched and reviewed the chiropractic notes and conditions which disclosed to him that the providers and the actions of the employees were fraudulent and reflected "a concerted fraud effort on behalf of the employees, including

Claimants , and the Chiropractors." Dr. Heligman, the Carrier observes, testified that he submitted documentation to Carrier Local Officers initiating the charges as well as notifying the Railroad Retirement Board. The testimony of Plant Superintendent Shogren is also identified by the Carrier.

*The Carrier observes* that the testimony of Dr. Heligman disclosed that the *employees'* "medical conditions were practically identical, which they all had **minor** *musculoskeletal* conditions, sprains and muscle spasms, including the Claimants []." (Emphasis in original). Such conditions, according to the Carrier, relying on Dr. Heligman's testimony, should have been resolved within a very short period of time but there was a fraudulent attempt to extend the benefits, all of which "occurred on or about the same time period the manpower reductions were occurring at the Huntington Mechanical facility, resulting in numerous furloughs."

According to the Carrier, relying on the testimony of Plant Superintendent Shogren, numerous mechanical shop craft employees were notified on June 16, 2017, of furlough notices to become effective June 23, 2017. Claimant and other charged employees, the Carrier notes, submitted the chiropractic ongoing treatment forms during the same time line, and that the Plant Superintendent testified "there was a lot of shop talk amongst local Huntington employees about possible workforce reductions that would result in a large

number of furloughs." The record reflects, the Carrier notes, "that when CSXT employees are furloughed their Health & Welfare Benefits are extended for four (4) months from the date of furlough" but "when employees are marked off sick, their benefits are extended for up to a maximum of two (2) years under the CSXT H & W plan." The testimony of Dr. Heligman, according to the Carrier, established "that the Claimants' concerted efforts to extend their H&W benefits amounted to an additional sixteen though dollar ... fringe benefit cost to CSXT" and considering "there was approximately 67 employees involved in this fraud scheme," the "dishonesty could have cost CSXT a total of one million dollars ... in fraudulent fringe benefits."

It is clear, according to the Carrier, as set forth in the testimony of Dr. Heligman, that the motivation of the employees, Claimant included, was "to extend their CSXT Health and Welfare Benefits" and also to defraud "the Railroad Retirement Board and other providers." The Carrier observes that its Code of Ethics contains a Zero Tolerance Policy concerning fraud and theft, and Claimant's training documents entered into evidence discloses he was trained on the applicable Rules and Policies. The Carrier also maintains it is clear that Claimant's "sick mark offs prior to furlough placed ... [him] in LTI status extending benefits and ... [he] would be protected for 5 years under the 1/1/2018 Agreement should ... [he] become medically qualified to return to work after 1/1/2018, which at that point ... [he]

would then be subject for furlough status."

The Carrier notes that Claimant's payroll records show him working through June 15, 2017, and, thereafter, he was "paid not worked" because of a furlough notice served on June 16, 2017. Claimant, though he testified that the chiropractor submitted the COH form on June 21, 2017, did not take the form to the chiropractor, the Carrier notes, and claimed not to have seen the form until the date of the hearing. Claimant confirmed in his testimony, the Carrier notes, that he told the Carrier and the Railroad Retirement Board he was taken out of service on medical. In addition, Claimant acknowledged he traveled 45 minutes to see his chiropractor and was aware that other Carrier employees were seeing the same chiropractor. Claimant also acknowledged, according to the Carrier, he sought no other physician for care. Claimant also acknowledged, consistent with the record evidence, the Carrier asserts, that he was released by the chiropractor only on the day before the formal hearing.

Finally, the Carrier asserts that the discipline imposed must be considered fully justified given the nature of the misconduct. It relies on cited arbitral authority in support of this point. It emphasizes that Claimant was part of "an intentional concerted effort" to "falsely ... [seek] treatment to expand ... [his] compensation and benefits."

**P.L.B. No.7539**
**Case No. 80**
**Award No. 80**

**OPINION OF THE BOARD**

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. The Organization's claims regarding a denial of the right to a fair and impartial hearing have been advanced on a record where the Board is unable to conclude that the Parties have in place an Agreement calling for the dismissal of charges when, as in the instant case, no prejudice occurred to either the Organization or the Claimant. Therefore, the Board will proceed to examine the merits of the charges.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the instant case. In reviewing the record, the Board also notes that any evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant

had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees, and, of course, the timing of the claims asserted by Claimant and the other employees in connection with the June 16, 2017 furlough notice that became effective June 23, 2017. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negates the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate himself as self-serving. The Board finds, therefore, that the Charges against Claimant are fully established in the record. Based on the nature of the misconduct and the Carrier's Disciplinary Policy, the Board finds no reason to disturb the penalty imposed.

P.L.B. No.7539
Case No. 80
Award No. 80

**AWARD**

The claim of the Organization denied.

DATE: 6/24/19

THOMAS N. RINALDO, ESQ
NEUTRAL MEMBER

K. DONOVAN
CARRIER MEMBER

A. SANDBERG
ORGANIZATION MEMBER

Case 3:18-cv-00321 Document 360-6 Filed 05/13/21 Page 146 of 260 PageID #: 17393

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 4**
**Award No. 4**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| | ) | **PARTIES TO DISPUTE** |
| **vs.** | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler J.R. Napier was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler J.R. Napier be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 2017-229468]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of April 20, 2015. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington, WV and/or Russell, KY Locomotive Shop, a combined seniority roster district. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 7 and 8, 2017, on the charges against him, Firemen and Oilers S.D. Patterson (PLB**

**7879, Award No. 5), J.L. Flocker (PLB 7879, Award No. 6), G.H. Kelley (PLB 7879, Award No. 7), J.A. Barker (PLB 7879, Award No. 8), and C.C. Dowdy (PLB 7879, Award No. 9), the Claimant was notified by letter dated September 5, 2017, that the Carrier had found him guilty of the offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]**

**In particular, the Claimant had been marked off sick from work since June 21, 2017. He presented a note from one of the chiropractors in question dated June 21, 2017 that referenced being under his care beginning on that date, and authorized his absence from work through the estimated date of August 21, 2017. Dr. Heligman testified that the medical conditions described by the chiropractor were not sufficient to support a report of permanent and total disability for the Claimant, and that the minor conditions ascribed to**

---

[1] The other Claimants just listed and subject to the same investigation hearing also were found guilty and dismissed. Their claims are addressed in the Awards cited.
[2] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**the Claimant should have improved within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that his doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he was claiming for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and**

**fraud as charged. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. Claimant marked off sick after he received his notice to be furloughed, before his furlough status became effective. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. In addition, although the Organization objects that the Hearing Officer testified on behalf of the Plant Superintendent as to the reason for the removal, his comments (which merely echoed the Superintendent's prior testimony upon repetitious questions from the General Chairman) did not demonstrate bias on the part of the Hearing Officer. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**The Organization also objects that the Claimant was denied a fair and impartial hearing because the Hearing Officer improperly suspended the hearing at approximately 12:40 p.m. on August 7, 2017, and reconvened at 6:30 a.m. on August 8, 2017, over the objection of both of the Claimant's Organization representatives. However, the Hearing Officer's decision was necessitated by the scheduling of other investigations on August 7 and 8, and the need to accommodate the schedules of the Carrier's key witnesses. While the suspension and reconvening were unusual for these parties, the Hearing Officer offered three alternate times for the second session on August 8. Although the Organization representatives did not attend on August 8, both the Plant Superintendent and Dr. Heligman were subjected to able and rigorous questioning by the General Chairman on the first day of the hearing. Notwithstanding that thorough examination, nothing was developed to clear or exonerate the Claimant or the other employees under investigation. At the continuation of the hearing on August 8, those present had the opportunity to examine the Carrier's witnesses and to present additional evidence and testimony. However, the Claimant did not attend the August 8 session. Employees charged who have due notice of their hearing have an obligation to communicate with the Carrier if rescheduling is requested and otherwise to make themselves available for the Carrier's investigation. In these circumstances overall, the Board finds that the scheduling issue did not deprive the Claimant of a fair and impartial hearing.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for**

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 228 of 420

**NCFO and CSX Transportation, Inc.**
**PLB No. 7879, Case No. 4, Award No. 4**
**Page 5**

**benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.**

**AWARD**

**Claim denied.**

**ORDER**

**This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.**

**Lisa Salkovitz Kohn**
**Neutral Member**

**Penny Dreher**
**Carrier Member**
**Dated:** July 9, 2018

**Richard A. Edmonds**
**Organization Member**

CSXT(ADKINS)020120
USCA4 756

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 119**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Palmer be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Palmer be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Palmer's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant Kevin Palmer—an employee with approximately seven years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated September 26, 2017, Claimant was instructed to attend an investigation:

> to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

An investigatory hearing was held on August 24, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren testified that furloughs were announced on June 16. He submitted a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough, effective June 23, 2017. Claimant was not listed as an employee who would be placed on furlough.

Chief Medical Officer (CMO) Craig S. Heligman testified that he started to investigate documents received from the Huntington area after his office began to receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors—Shannon Johnson and Daniel Carey—beginning on June 19, 2017. He found the circumstances suspicious not only with regard to the proximity in time to the furlough notice, but because the diagnoses and treatment recommendations on the COIIs were very similar. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees initially were pulled out of work by the chiropractor they saw for two months, although they had been diagnosed only with minor musculoskeletal injuries that ordinarily would resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, and now sought a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work.

Heligman stated that he concluded that the employees and chiropractors had engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and extended benefit insurance providers. If furloughed, an employee would receive only four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from an extended benefits insurance provider.

Claimant's last day of work was July 3, 2017. He took vacation days July 6 though July 10, 2017, then marked off sick. Claimant acknowledged that coworkers told him how to mark off on a long-term illness. A COII was sent in on his behalf by Dr. Shannon Johnson on July 6, 2017, although Claimant testified that he first saw the chiropractor June 23. Claimant admitted

Case 3:18-cv-00321 Document 360-6 Filed 05/13/21 Page 153 of 260 PageID #: 17400

that he had seen other Carrier employees at Johnson's office. He stated that he had gone to Johnson because his girlfriend's son had been treated there for his knee. The COII submitted by Johnson stated that Claimant would be unable to work between July 6 and September 6, 2017. Johnson diagnosed Claimant with sprain of cervical lights, cervicocranial syndrome, and muscle spasms.

Claimant stated that he had been treated for neck and back pain in the past, and that physicians tended to want to treat him with medications. He had also previously seen a chiropractor for his pain, and preferred that manner of treatment. Claimant submitted documents dating back to 2015. On May 21, 2015, Claimant had reported chronic pain toward the right in his neck, which had begun over one year prior, to Ronda Nickoson, APRN. Various medications had been tried including Neurontin. On February 11, 2016, Claimant's cervical spine was x-rayed. Dr. Dhiremkumer Desai evaluated the x-rays as showing decreased disc space height at C5/C6 and C6/C7, with endplate hypertrophic changes. Dr. Desai concluded that Claimant had degenerative changes which were most marked at C5/C6.

On February 12, 2016, Claimant was evaluated by Daniel L. VanHoose, APRN, who found that Claimant had pain with rotation of his right shoulder. VanHoose referred Claimant to a chiropractor for evaluation of his neck pain and degenerative arthritis in his spine. Claimant returned to VanHoose on February 22 and 29 for cervical trigger point lidocaine injections into the muscles in his areas of pain.

Additionally, on February 18, 2016, Claimant was evaluated by chiropractor Brandon Holmes for moderate to severe neck pain radiating down Claimant's right arm. Holmes performed numerous tests, and found that Claimant had a decreased range of motion in his cervical spine. Holmes also noted a loss of flexibility and functional range of motion in

Claimant's lumbar spine. Holmes developed a treatment plan for Claimant that included spinal manipulations and adjustments as well as therapeutic exercises. Claimant continued to see Holmes regularly until at least April 6, 2016.

By letter dated September 21, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2 (a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to obtain CSXT Health and Welfare benefits and other benefits. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's absence from work, and Claimant failed to do so. His COII listed the same minor musculoskeletal issues as the other employees involved in the scheme to defraud the Carrier.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by receiving benefits for minor conditions. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, in which dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant violated 104.2 (a) or the Code of Ethics. The Organization emphasizes that Heligman had only suspicion as

proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof. Moreover, in contrast to other employees the Carrier has charged, Claimant has submitted documentation confirming that he has had years of chronic neck pain. In the absence of any proof that Claimant saw Dr. Johnson for treatment of a non-existent illness, or attempted to defraud the Carrier in any other way, the Organization argues that the claim should be sustained.

**Opinion**

Chief Medical Officer Heligman's testimony regarding the existence of a clear pattern of abuse of benefits engaged in by a group of Carrier employees in June and July 2017 may be correct. However, the Board is not persuaded that Claimant was a part of that group. Claimant does not fit the profile of the other employees seeking to maximize access to benefits if they were furloughed. Claimant was not furloughed, and was actively working through July 3, 2017. The medical documentation Claimant submitted demonstrates that he had sought relief from chronic neck pain from several providers since 2015. Indeed, in 2016, he received treatment from chiropractor Brandon Holmes for a period of at least two months. Claimant credibly testified that when he decided to seek treatment for his pain again, he preferred to see a chiropractor rather than take medications. He went to Shannon Johnson—rather than Brandon Holmes, for instance—simply because Dr. Johnson had been treating the knee of Claimant's girlfriend's son.

In these circumstances, the Board finds that the Carrier has failed to prove with substantial evidence that Claimant was dishonest or attempted to engage in fraud under either Rule 104.2(a) or the Code of Ethics. Whether or not Dr. Heligman believes that chiropractic

treatment for Claimant's condition should have resulted in recovery much sooner than the two months off work he requested, it was Claimant's prerogative to determine what kind of treatment to undergo for his chronic condition, as long as he was not dishonest with the Carrier. He tried numerous treatments in the past, and was able to present a legitimate reason for choosing chiropractic care. This is not a case where a furloughed employee relied solely on a last-minute appointment with a generous chiropractor to obtain health and welfare benefits to which he was not otherwise entitled. Rather, the evidence shows that Claimant suffered years of chronic neck pain for which he tried a variety of treatments. The record does not establish that Claimant fraudulently claimed illness. The Board thus declines to find that Claimant sought treatment with Johnson in an effort to defraud the Carrier, and concludes that the claim must be sustained.

**Award:**

The claim is sustained. Claimant shall be reinstated and made whole for all compensation lost as a result of his termination. His reinstatement shall be subject to a medical examination clearing Claimant for work. His back pay eligibility calculation will begin on the date he is medically certified to return to work, and the Carrier may offset any interim earnings Claimant may have had while he was out of the Carrier's Service.

Joan Parker
JOAN PARKER
Neutral Member

Kenny Dreher "Dissent"
CARRIER MEMBER
DATED: 1/16/2019

ORGANIZATION MEMBER
DATED: 1/16/19

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 5**
**Award No. 5**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| | ) | **PARTIES TO DISPUTE** |
| **vs.** | ) | |
| | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler S.D. Patterson was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler S.D. Patterson be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 2017-229473]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of February 3, 2014. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington, WV and/or Russell, KY Locomotive Shop, a combined seniority roster district. By letter dated July 21, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 7 and 8, 2017, on the charges against him, Firemen and Oilers J.R. Napier (PLB 7879,**

**Award No. 4), J.L. Flocker (PLB 7879, Award No. 6), G.H. Kelley (PLB 7879, Award No. 7), J.A. Barker (PLB 7879, Award No. 8), and C.C. Dowdy (PLB 7879, Award No. 9), the Claimant was notified by letter dated September 5, 2017, that the Carrier had found him guilty of the offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service.[1] The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[2]**

**In particular, the Claimant had been marked off sick from work since July 11, 2017. He presented a note from one of the chiropractors in question dated July 11, 2017, that referenced being under his care beginning on that date, and authorized his absence from work through the estimated date of September 11, 2017. Dr. Heligman testified that the medical conditions described by the chiropractor were not sufficient to support a report of permanent and total disability for the Claimant, and that the minor conditions ascribed to**

---

[1] The other Claimants just named and subject to the same investigation hearing also were found guilty and dismissed. Their claims are addressed in the Awards cited.

[2] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**the Claimant should have improved within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that his doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he was claiming for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and**

**fraud as charged. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt.**

**The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. In addition, although the Organization objects that the Hearing Officer testified on behalf of the Plant Superintendent as to the reason for the removal, his comments (which merely echoed the Superintendent's prior testimony upon repetitious questions from the General Chairman) did not demonstrate bias on the part of the Hearing Officer. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.**

**The Organization also objects that the Claimant was denied a fair and impartial hearing because the Hearing Officer improperly suspended the hearing at approximately 12:40 p.m. on August 7, 2017, and reconvened at 6:30 a.m. on August 8, 2017, over the objection of both of the Claimant's Organization representatives. However, the Hearing Officer's decision was necessitated by the scheduling of other investigations on August 7 and 8, and the need to accommodate the schedules of the Carrier's key witnesses. While the suspension and reconvening were unusual for these parties, the Hearing Officer offered three alternate times for the second session on August 8. Although the Organization representatives did not attend on August 8, both the Plant Superintendent and Dr. Heligman were subjected to able and rigorous questioning by the General Chairman on the first day of the hearing. Notwithstanding that thorough examination, nothing was developed to clear or exonerate the Claimant or the other employees under investigation. At the continuation of the hearing on August 8, those charged who were present had the opportunity to examine the Carrier's witnesses and to present additional evidence and testimony. However, the Claimant did not attend the August 8 session. In light of these circumstances overall, the Board finds that the scheduling issue did not deprive the Claimant of a fair and impartial hearing.**

**Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award**

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 239 of 420

NCFO and CSX Transportation, Inc.
PLB No. 7879, Case No. 5, Award No. 5
Page 5

66.

## AWARD

Claim denied.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.

Lisa Salkovitz Kohn
Neutral Member

Penny Dreher
Carrier Member
Dated: July 9, 2018

Richard A. Edmonds
Organization Member

CSXT(ADKINS)020125
USCA4 767

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 9

CASE NO. 9
CSXT LCAT File No. 2017-228566

**PARTIES TO THE DISPUTE:** **International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant MD Potter, ID 267822

> "1. That under the Current and Controlling Agreement, Boilermaker J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant MD Potter was dismissed by letter dated September 5, 2017. At the time of his dismissal, claimant had approximately four years of service with the Carrier. The record did not portray any prior disciplinary entries in his work history.

As suggested by the above Statement of Claim, a single investigation was held on August 5, 2017 involving claimant and six other members of the Organization. All seven employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization. Six of the seven subjects of the investigation in question were among those listed. Claimant was one of the six.

In total, the furlough notices projected the furlough of more than sixty-five employees spread over seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extend that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions, if genuine, should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims. A final letter identified four more employees.

Of the seven employees involved in the instant investigation, five saw the same chiropractor on June 19, 2017 and received absence excuses from work for two months. Claimant Potter, however, was not one of those five employees. Instead, he saw one of the chiropractors on July 6th and, according to the CMO's testimony, received another two-month excuse from work until September 6th. He had claimed a minor shoulder strain the previous March when he allegedly fell in his yard doing yard work. He had been excused from work by the same chiropractor since his last day worked on March 9th.

The record of investigation in question consists of 306 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the

Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. In its 1938 decision in Consolidated Edison v. Labor Board, the United States Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'". To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:

The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: March 20, 2019

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 15

CASE NO. 15
CSXT LCAT File No. 2017-228572

**PARTIES TO THE DISPUTE:**

**International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant ML Potter, ID 252378

> "1. That under the Current and Controlling Agreement, Boilermaker(s) ML Potter,TM Witt, SM Morrison and DE Brown was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) ML Potter,TM Witt, SM Morrison and DE Brown be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant ML Potter was dismissed by letter dated September 21, 2017. At the time of his dismissal, claimant had approximately six years of service with the Carrier. The record does not portray any prior disciplinary entries in his work history.

As suggested by the above Statement of Claim, a single investigation was held August 23, 2017 involving claimant and three other members of the Organization. All four employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization. However, none of the four subjects of the investigation in question were among those listed.

In total, the furlough notices projected the furlough of more than sixty-five employees spread over seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extend that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions, if genuine, should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims, which included the four employees in the subject investigation. A final letter identified four more employees.

The thrust of the CMO's testimony was that employees who wanted to be excused from work for a two-month period, or, in some cases, successive two-month periods, would go to one of the two chiropractors in question and falsely claim to have sustained a minor sprain or strain for the purpose of obtaining a two-month excuse from working.

Of the four employees involved in the instant investigation, all saw one of the two suspect chiropractors between June 21 and July 19, 2017 and all received absence excuses from work for two months. In Claimant Potter's case, he went to one of the chiropractors on July 19th and received an another excuse for two more months. He had been off work since the previous March 20th.

The record of investigation in question consists of nearly 300 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions

raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. In its 1938 decision in Consolidated Edison v. Labor Board, the United States Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'". To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

The role of a Public Law Board is appellate in nature. We do not sit to reconcile competing bodies of evidence and contentions to determine which is the more persuasive. Instead, our authority is limited to reviewing the record of the investigation and the on-property handling of the dispute for the narrow purpose of determining whether the Carrier's disciplinary decision was supported by substantial evidence in the record. In other words, could a reasonable mind accept the Carrier's evidence as the requisite support for its disciplinary action against the claimant?

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:
The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: March 20, 2019

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 118**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Preston be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Preston be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Preston's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant S.H. Preston—an employee with approximately two and one-half years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated July 26, 2017, Claimant was instructed to attend an investigation:

> to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

An investigatory hearing was held on August 24, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren testified that furloughs were announced on June 16. He submitted a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough, effective June 23, 2017. Claimant was listed as an employee who would be placed on furlough.

According to Shogren, there was talk around the shop even prior to the furlough notice that there might be a reduction in force.

Chief Medical Officer (CMO) Craig S. Heligman testified that he started to investigate documents received from the Huntington area after his office began receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors—Shannon Johnson and Daniel Carey—beginning on June 19, 2017. He found the circumstances suspicious not only with regard to the proximity in time to the furlough notice, but because the diagnoses and treatment recommendations on the COIIs were very similar. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees initially were pulled out of work by the chiropractor they saw for two months, although they had been diagnosed only with minor musculoskeletal injuries that ordinarily would resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, and now sought a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work. Heligman called Carey and Johnson, but neither returned his call.

Heligman stated that he concluded that the employees and chiropractors had engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and extended benefit insurance providers. If furloughed, an employee would receive only four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from an extended benefits insurance provider. For each such employee, Heligman testified, the cost to the Carrier could be approximately $16,000. Including the fifteen employees for which Carey sent in COIIs,

and the fifty-two for which Johnson sent in COIIs, the total cost to the Carrier could be potentially more than $1 million.

Claimant's last day of work was June 12, 2017. He was off work on excused absences on June 13 through 15, 2017. He received pay for five days not worked from June 17, as did the other employees who had been furloughed effective June 23. Claimant saw chiropractor Dr. Johnson on June 13, 2017. The COII submitted to the Company did not list the nature of Claimant's condition, but estimated his return to work as August 13, 2017.

Testifying on his own behalf, Claimant stated that he had heard of Dr. Johnson because Claimant's wife knew the doctor's family. Johnson's office was fifty-five minutes away from Claimant's home. Claimant admitted that he was aware that other employees were also seeing Johnson. Claimant had no primary care physician and had not seen any other physician for treatment. Claimant saw Johnson twice a week for exercises, hot and cold packs, adjustment, and TENS. Claimant asserted that he also performed exercises at home. According to Claimant, he had complied with all rules and the Code of Ethics.

By letter dated September 21, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2 (a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to obtain CSXT Health and Welfare benefits and other benefits. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's absence from work, and Claimant failed to do so.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by receiving benefits for minor conditions. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, in which dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant had violated 104.2 (a) or the Code of Ethics. The Organization emphasizes that Heligman had only suspicion as proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

After reviewing the record in the instant matter, the Board finds Heligman's testimony to be persuasive regarding the existence of a clear pattern of abuse of benefits. Moreover, the Board is persuaded that Claimant was a part of that pattern. Claimant submitted a COII on June 13, 2017, taking him off work for two months. He offered no explanation for how he had gotten hurt, or even the nature of his injury. Claimant alleged that he had been seeing Dr. Johnson twice a week. If Claimant truly had a medical problem, and his alleged condition did not improve over two months, surely he would have seen another doctor for a second opinion, as a matter of common sense and self-interest. However, Claimant testified that he did not even have a primary care physician.

Claimant did provide any reason justifying his continued absence from work. Because Claimant had been furloughed, he may well have planned to submit additional COIIs—as other employees had done—to extend his benefits. The Board is satisfied that Claimant was involved in a concerted effort to defraud the Carrier. He thus was dishonest in violation of Rule 104.2 (a), and committed fraud in violation of the Carrier's Code of Ethics. The Board concludes that Claimant's dismissal was warranted.

**Award:**

The claim is denied.

JOAN PARKER, Neutral Member

CARRIER MEMBER

DATED: 1/16/2019

ORGANIZATION MEMBER

DATED: 12/21/18

**P.L.B. No.7539**
**Case No. 85**
**Award No. 85**

**PUBLIC LAW BOARD**
**NO. 7539**
**CLAIMANT: J P ROWE**

**Parties to Dispute:**

**INTERNATIONAL ASSOCIATION OF MACHINIST & AEROSPACE WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

**Statement of Claim:**

In accordance with the applicable provisions of the Current Rules Agreement in effect between the International Association of Machinists and the CSXT Railroad, this is an appeal of the decision by letter dated October 27, 2017 from Brian Barr, Vice President Mechanical, unjustly terminating Mr. Rowe.

The decision of Mr. Barr is rejected in its entirety and, by copy of this appeal, he is so notified.

## BACKGROUND FACTS

Claimant, Jonathan P. Rowe, a Machinist in the Carrier's employ, received a letter dated September 25, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on September 20th, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documents and all circumstances relating

thereto." An investigation, in fact, was held on October 5, 2017, following which the Carrier found Claimant guilty of violating its Operating Rule 104.2.a and its Code of Ethics Policy based on the allegations set forth in the Notice of Investigation. Claimant was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

The Organization notes that Claimant had been in the Carrier's employ for approximately 11 years as a Machinist at the Huntington shop. His duties, the Organization notes, were physically demanding. In early May 2017, according to the Organization, Claimant fell on broken steps at his home and injured his back , which led to treatment by chiropractor, Dr. Carey who diagnosed a "cervical and lumbar sprain/strain." Dr. Carey, the Organization notes, signed and submitted to the Carrier a Certification of Ongoing Illness or Injury, which medically certified that Claimant was injured and under his care. Claimant was released to work on September 22, 2017, by Dr. Carey, the Organization observes, and the Organization also maintains that no Carrier physician ever examined Claimant, including its Chief Medical Officer. The Chief Medical Officer Dr. Heligman, according to the Organization, made no medical assessment of Claimant and engaged in no more than "utter speculation" of fraud and dishonesty on Claimant's part.

The Organization claims that this proceeding was tainted by a number of procedural irregularities. It asserts that the Notice of Hearing was sent to the wrong representative and the time and location of the hearing was changed without notice or consent. The investigation in this matter, the Organization observes, "was conducted on a group basis, with the Carrier witnesses testifying generally as to a group of seven charged Machinist, as well as the dozens of employees who were not even present." According to the Organization, the Carrier engaged in a "rush to judgment" and also released personal and confidential medical records of more than 50 employees. An unfair hearing, occurred, the Organization argues, as a result of these procedural flaws.

As to the merits, the Organization contends that Claimant is not guilty and his dismissal from service is unwarranted. The Carrier, according to the Organization, produced no evidence to meet its burden of establishing dishonesty and fraud and, in fact, "presented no direct evidence supporting either charge" against Claimant. The fact that several of Claimant's co-workers were treated by the same physician, according to the Organization, cannot serve to uphold the charges of dishonesty and fraud against Claimant. "Mere suspicion," the Organization stresses, is an insufficient basis to find guilt. The opinion of the Carrier's Chief Medical Officer that Dr. Johnson's diagnosis and/or treatment of Claimant was not medically appropriate, the Organization stresses, must be considered irrelevant in

the absence of any evidence that Claimant "went seeking anything other than a medically appropriate treatment for his injuries."

The Carrier initially contends that Claimant received a fair and impartial investigation under the provisions of the Parties' Agreement. Although the Organization, the Carrier notes, objected to the investigation during the hearing because it alleged that the Carrier had unilaterally postponed the hearing, the Organization, according to the Carrier, "did not progress this contention on appeal; therefore, it's considered waived from further progression." The record also shows that, the Carrier observes, that it amended the hearing date and the Organization did not refute the facts that the second letter received two days after the charge notice was an amended Charge letter changing the hearing date. No other basis, the Carrier contends, can be found to support the conclusion that Claimant was denied a fair and impartial investigation. The Carrier, in making this argument, rejects any claim by the Organization that the Carrier violated its own Ethics Policy, contending, instead, that its Chief Medical Officer, Dr. Heligman, stated that the documents about which the Organization objected were provided in the course of doing business and not considered HIPAA protected, particularly since they contain no personal identifiable information and the other employees who received the documents were notified and were instructed not to divulge the information or distribute it outside the scope of business purposes. The claim

that the charge letters were transmitted to the Organization's General Chairman and not any other official, the Carrier claims, was waived by the Organization since it "did not progress this contention on appeal" and, in any event, the Organization representative, Mr. Sandberg was present at the hearing and ready to proceed, having received proper notice.

The Carrier also maintains it sustained its burden of producing substantial evidence of Claimant's culpability. It claims that the record establishes that more than 60 Carrier employees, including Claimant, "were involved in a scheme to defraud CSXT and other providers of benefits, when each sought treatment from the same chiropractic provider in the Huntington, WV area, marking off work for extended periods for minor conditions and in an attempt to change their employment status to fraudulently extend benefits." It relies on the testimony of its Chief Medical Officer, Dr. Heligman, that he received more than 60 employee Certifications of Ongoing Illness or Injury medical forms from two chiropractors in the area, which triggered his investigation because there was an "extremely large volume" of the forms from Claimant and other employees submitted in a very short period of time. Dr. Heligman testified, the Carrier notes, that he researched and reviewed the chiropractic notes and conditions which disclosed to him that the providers and the actions of the employees were fraudulent and reflected "a concerted fraud effort on behalf of the employees, including Claimants , and the Chiropractors." Dr. Heligman, the Carrier

observes, testified that he submitted documentation to Carrier Local Officers initiating the charges as well as notifying the Railroad Retirement Board. The testimony of Plant Superintendent Shogren is also identified by the Carrier.

The Carrier observes that the testimony of Dr. Heligman disclosed that the employees' "medical conditions were practically identical, which they all had **minor** musculoskeletal conditions, sprains and muscle spasms, including the Claimants []." (Emphasis in original). Such conditions, according to the Carrier, relying on Dr. Heligman's testimony, should have been resolved within a very short period of time but there was a fraudulent attempt to extend the benefits, all of which "occurred on or about the same time period the manpower reductions were occurring at the Huntington Mechanical facility, resulting in numerous furloughs."

According to the Carrier, relying on the testimony of Plant Superintendent Shogren, numerous mechanical shop craft employees were notified on June 16, 2017, of furlough notices to become effective June 23, 2017. Claimant and other charged employees, the Carrier notes, submitted the chiropractic ongoing treatment forms during the same time line, and that the Plant Superintendent testified "there was a lot of shop talk amongst local Huntington employees about possible workforce reductions that would result in a large number of furloughs." The record reflects, the Carrier notes, "that when CSXT employees

are furloughed their Health & Welfare Benefits are extended for four (4) months from the date of furlough" but "when employees are marked off sick, their benefits are extended for up to a maximum of two (2) years under the CSXT H & W plan." The testimony of Dr. Heligman, according to the Carrier, established "that the Claimants' concerted efforts to extend their H&W benefits amounted to an additional sixteen though dollar ... fringe benefit cost to CSXT" and considering "there was approximately 67 employees involved in this fraud scheme," the "dishonesty could have cost CSXT a total of one million dollars ... in fraudulent fringe benefits."

It is clear, according to the Carrier, as set forth in the testimony of Dr. Heligman, that the motivation of the employees, Claimant included, was "to extend their CSXT Health and Welfare Benefits" and also to defraud "the Railroad Retirement Board and other providers." The Carrier observes that its Code of Ethics contains a Zero Tolerance Policy concerning fraud and theft, and Claimant's training documents entered into evidence discloses he was trained on the applicable Rules and Policies. The Carrier also maintains it is clear that Claimant's "sick mark offs prior to furlough placed ... [him] in LTI status extending benefits and ... [he] would be protected for 5 years under the 1/1/2018 Agreement should ... [he] become medically qualified to return to work after 1/1/2018, which at that point ... [he] would then be subject for furlough status."

Finally, the Carrier asserts that the discipline imposed must be considered fully justified given the nature of the misconduct. It relies on cited arbitral authority in support of this point. It emphasizes that Claimant was part of "an intentional concerted effort" to "falsely ... [seek] treatment to expand ... [his] compensation and benefits."

## OPINION OF THE BOARD

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. The Organization's claims regarding a denial of the right to a fair and impartial hearing have been advanced on a record where the Board is unable to conclude that the Parties have in place an Agreement calling for the dismissal of charges when, as in the instant case, no prejudice occurred to either the Organization or the Claimant. Therefore, the Board will proceed to examine the merits of the charges.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the

instant case. In reviewing the record, the Board also notes that any evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees, and, of course, the timing of the claims asserted by Claimant and the other employees in connection with the June 16, 2017 furlough notice that became effective June 23, 2017. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negates the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate himself as self-serving. The Board finds, therefore, that the Charges against Claimant are fully established in the record. Based on the nature of the misconduct and the Carrier's Disciplinary Policy, the Board finds no reason to disturb the penalty imposed.

**P.L.B. No.7539**
**Case No. 85**
**Award No. 85**

**AWARD**

The claim of the Organization denied.

**DATE:** 6/24/2019

Thomas Rinaldo

**THOMAS N. RINALDO, ESQ**
**NEUTRAL MEMBER**

**K. DONOVAN**
**CARRIER MEMBER**

**A. SANDBERG**
**ORGANIZATION MEMBER**

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 117**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Sargent be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Sargent be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Sargent's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant D.A. Sargent—an employee with approximately three years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated July 26, 2017, Claimant was instructed to attend an investigation:

> to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

An investigatory hearing was held on August 24, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren testified that furloughs were announced on June 16. He submitted a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough, effective June 23, 2017. Claimant was listed as an employee who would be placed on furlough.

According to Shogren, there was talk around the shop even prior to the furlough notice that there might be a reduction in force.

Chief Medical Officer (CMO) Craig S. Heligman testified that he started to investigate documents received from the Huntington area after his office began receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors—Shannon Johnson and Daniel Carey—beginning on June 19, 2017. He found the circumstances suspicious not only with regard to the proximity in time to the furlough notice, but because the diagnoses and treatment recommendations on the COIIs were very similar. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees initially were pulled out of work by the chiropractor they saw for two months, although they had been diagnosed only with minor musculoskeletal injuries that ordinarily would resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, and now sought a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work. Heligman called Carey and Johnson, but neither returned his call.

Heligman stated that he concluded that the employees and chiropractors had engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and extended benefit insurance providers. If furloughed, an employee would receive only four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from an extended benefits insurance provider. For each such employee, Heligman testified, the cost to the Carrier could be approximately $16,000. Including the fifteen employees for which Carey sent in COIIs,

and the fifty-two for which Johnson sent in COIIs, the total cost to the Carrier could be potentially more than $1 million.

Claimant's last day of work was June 14, 2017. After rest days on June 15 and June 16, 2017, he received pay for five days not worked from June 17, as did the other employees who had been furloughed effective June 23. Claimant saw chiropractor Dr. Johnson on June 19, 2017. The COII submitted to the Company stated that Claimant had been diagnosed with sprain of lumbar/pelvis, and muscle spasms of back. Treatment consisted of spinal manipulations, therapeutic exercises, and passive modalities. His estimated return to work was August 19, 2017.

Testifying on his own behalf, Claimant stated that he had seen Dr. Johnson off and on for several years. Johnson's office was located ten minutes from Claimant's home. He acknowledged that he was not seeing any other doctors for the injury for which Johnson was treating him, although an x-ray had been performed that supported Johnson's diagnosis. Claimant acknowledged that he knew other employees were also receiving treatment from Johnson. According to the Claimant, Johnson's office had taken care of sending the forms in to the Carrier.

Claimant sees Johnson twice a week for heat, exercises, manipulation or adjustments, and application of the transcutaneous electrical nerve stimulation—or TENS—unit. Claimant asserted that he also performed exercises at home. According to Claimant, he had complied with all rules and the Code of Ethics. He denied telling Dr. Johnson how long he wanted to be off work or what should be written on the COII form.

By letter dated September 21, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2(a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting

fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to obtain CSXT Health and Welfare benefits and other benefits. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. As Heligman testified, the diagnosis on Claimant's COII was very similar to that listed on the COIIs of other employees, and was for a minor condition that could be expected to heal within a few weeks. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's continuing absence from work, and Claimant failed to do so.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by receiving benefits for minor conditions. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, in which dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant had violated 104.2 (a) or the Code of Ethics. The Organization emphasizes that Heligman had only suspicion as proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

After reviewing the record in the instant matter, the Board finds Heligman's testimony to be persuasive regarding the existence of a clear pattern of abuse of benefits. Moreover, the Board is persuaded that Claimant was a part of that pattern. Claimant submitted a COII on June 19, 2017, taking him off work for two months. He offered no explanation for how he had gotten hurt. His diagnosis, as Heligman emphasized, was for a minor injury—a sprain and muscle spasms—that should have healed in a few weeks. If Claimant truly was seeing Dr. Johnson twice a week, as Claimant asserted, but his alleged condition had not improved, surely he would have seen another doctor for a second opinion, as a matter of common sense and self-interest.

Claimant did not testify that his condition had improved in any way, or provide any reason justifying his continued absence from work. Because Claimant had been furloughed, he may well have planned to submit additional COIIs—as other employees had done—to extend his benefits. However, the diagnosis on Claimant's COII was for only a minor condition. The Board is satisfied that Claimant was involved in a concerted effort to defraud the Carrier. He thus was dishonest in violation of Rule 104.2 (a), and committed fraud in violation of the Carrier's Code of Ethics. The Board concludes that Claimant's dismissal was warranted.

**Award:**

The claim is denied.

JOAN PARKER, Neutral Member

CARRIER MEMBER
DATED: 1/16/2019

ORGANIZATION MEMBER
DATED: 12/21/18

**P.L.B. No. 7508**
**Case No. 21**
**Award No. 21**

**PUBLIC LAW BOARD**
**NO. 7508**
**CSXT FILE NO. 313645**
**LCAT FILE NO. 2017-228779**

**Parties to Dispute:** **INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

**Statement of Claim:** The Organization requests the discipline assessed be removed from the claimants' record and the Claimant be made whole for all wages and benefits lost from the assessed discipline, including time withheld from service pending the investigation.

## BACKGROUND FACTS

Claimant, Eric Speaks, a Sheet Metal Worker in the Carrier's employ, received a letter dated July 21, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto." An investigation, in fact, was held, following which, in a September 6, 2017, letter, from the

Carrier to Claimant (Speaks), Claimant was informed that the Carrier had determined that he was guilty as charged and had violated Carrier Operating Rule 104.2.a and Code of Ethics Policy. Claimant was notified that he was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

Before the Board, the Organization contends essentially that Charge against Claimant that he was dishonest and attempted to defraud the Carrier was not established. In the Organization's estimation, the Carrier did not provide witnesses to corroborate the documentation in the record that the Carrier claims established that Claimant was fraudulent. It also identifies the testimony of Dr. Heligman that the documentation regarding Claimant was received July 10, 2017. This observation allows the Organization to claim that the Carrier did not charge the Claimant within the time limits specified in Rule 30, which mandates that, when the Carrier believes there is cause for disciplining an employee, the Carrier must notify the employee within ten days of its knowledge of the alleged offense by way of written charges against the employee and the time and place of a hearing.

Additionally, the Organization takes note of the Carrier's contention that documentation of the July 16, 2017, furlough notice supported the claim of fraud yet, the Organization maintains, Claimant was not affected by the furlough notice. The Organization

further claims that the letter from the Carrier's Medical Officer to the Railroad Retirement Board and the documentation following regarding the investigation reflects that the Kentucky Board of Chiropractic Examiners stated that it had dismissed the complaints against both chiropractors. The medical documentation regarding all charged employees, according to the Organization, contains one page relating to Claimant, which document, the Organization claims, confirms the legitimacy of Claimant's medical condition as stated by the chiropractor. The Organization also contends that the Carrier did not provide any factual documentation to establish that Claimant's behavior was dishonest or that it violated the Carrier's Code of Ethics.

A genuine understanding of the record, according to the Organization, would reflect that the so-called conspiracy between and among a number of employees was based on assumption and suspicion of Dr. Heligman because of a large volume of documents received from two providers. Further, the Organization notes that the Carrier identified a motive regarding extending health benefits, but, the Organization insists, the Carrier established no direct tie to the Claimant and the Charges brought against him. It also must be kept in mind, the Organization argues, that Dr. Heligman testified there is no issue with an employee being out under a physician's care and Claimant, in this proceeding, testified that he complied with all Carrier Operating Rules and its Code of Ethics. Further, the Claimant testified, the

Organization notes, that he acted without any intent to file for sickness benefits in a fraudulent manner. Claimant's surgery scheduled for October 25, 2017, in connection with his injuries, the Organization stresses, corroborates its position in this proceeding.

According to the Carrier, Claimant was afforded a fair and impartial investigation and the Carrier avers that it sustained its burden of producing substantial evidence of Claimant's culpability. Claimant, according to the Carrier, fraudulently claimed sickness in an effort to extend CSXT Health and Welfare benefits and benefits from other providers. Thus, the Carrier posits, Claimant was dishonest. The Carrier maintains that the record reflects that Claimant was involved in a scheme along with a number of other Carrier employees to defraud the Carrier and other providers of benefits by seeking treatment from the same chiropractic provider in the Huntington West Virginia area, which found Claimant marking off of work for extended periods for minor conditions and seeking to change employment status to fraudulently extend benefits.

What the record shows, according to the Carrier, is that its Chief Medical Officer, Dr. Heligman, received over 60 plus employee Certification of Ongoing Illness or Injury Medical Forms from two chiropractors in the Huntington West Virginia area - Carey and Shannon - that triggered the investigation. According to the Carrier, Dr. Heligman gave credible testimony that there was a large volume of the medical forms from Claimant and other

employees received by his office in a short period of time, which forms were then submitted to Carrier Medical after a large business manpower reduction occurred at the Huntington West Virginia Mechanical Facility. Dr. Heligman testified, the Carrier observes, that he researched and reviewed the chiropractic notes and conditions and, as of the date of his testimony, his Office continued to receive forms for employees from these two chiropractors. Claimant's payroll records, the Carrier notes, reflect the last date Claimant worked. Dr. Heligman testified, the Carrier observes, that the medical documentation that he received from the chiropractors did not justify Claimant from an extended absence from work but reflected only minor conditions. Accordingly, the Carrier notes, Dr. Heligman testified that his review of the forms confirmed that the providers' and Claimant's actions were fraudulent and reflected, in fact, a concerted fraud effort on behalf of the employees and the chiropractors.

The Carrier also observes that Dr. Heligman testified that he submitted the documentation to Carrier Local Officers, which initiated the Charge against Claimant and other employees and notified the Railroad Retirement Board of the Claimant's attempt to obtain benefits fraudulently, which then led to the Railroad Retirement Board to conduct an investigation.

The Carrier maintains that the record demonstrates that Claimant and the other

employees had reported medical conditions from the chiropractors that were "practically identical," in that "they all had minor musculorskeletal conditions, sprains and muscle spasms," which, per the testimony of Dr. Heligman, would have been conditions that improved quickly within the first several weeks of care. Had such conditions not abated, the Carrier claims, again relying on Dr. Heligman's testimony, the Claimant should have sought medical treatment from another provider for further evaluation. Moreover, the record shows, according to the Carrier, that the forms submitted by chiropractors and forwarded to the Carrier medical on behalf of Claimant and other employees occurred on or about the same time period when there were manpower reductions at the Huntington Mechanical facility, which resulted in numerous furloughs. The Carrier claims that the "employees involved in this scheme," which included Claimant, "attempted to fraudulently extend their CSXT Heath & Welfare Benefits an additional 20 months (almost two years) from the date of their last compensation."

The Carrier also identifies the testimony of Plant Superintendent Shogren that a number of mechanical shop craft employees, on June 16, 2017, received notice of furlough, which was to be effective June 23, 2017. Claimant, and others, then submitted the chiropractic forms, the Carrier asserts, within the same time line of the furlough notices. Dr. Heligman testified, according to the Carrier, that the details of the medical conditions from

the chiropractors "were very consistent from person to person," including Claimant, "and the alleged condition was not unique to each person." The information received from the chiropractors, according to the Carrier, "was not an individualized assessment nor was the Claimant's treatment plan individualized." The Plant Superintendent also testified, according to the Carrier, that before the manpower reduction notice was posted on June 16, 2017, there was talk at the work site by a number of employees about possible workforce reductions.

The Carrier rejects defenses offered by the Organization. Thus, the Carrier claims that the Organization's contention that fraud was not established is without merit given the fact that Dr. Heligman's testimony established that, when CSXT employees are furloughed, their Health & Welfare Benefits are extended for four months from the date of the furlough but when employees are marked off sick, their benefits are extended for up to a maximum of two years under the CSXT Health & Welfare Plan. Thus, according to the Carrier, Dr. Heligman gave credible testimony, which was documented, that Claimant and the others engaged in "concerted efforts to extend H & W benefits," which "amounted to an additional sixteen thousand dollars ( $16K) fringe benefit cost to CSXT." Because there were approximately 67 employees involved in the fraudulent scheme, according to the Carrier, the dishonesty of Claimant and the other employees "could have costs CSXT a total of one million dollars ($1M) in fraudulent fringe benefits."

The Carrier also underscores the fact that Dr. Heligman testified that, before the hearing, Carrier Medical had not received any documentation to certify that Claimant's absence from work was due to any other type of treatment. Claimant submitted forms from the same chiropractors in a short period following the mechanical reduction of forces. It cannot be reasonably concluded, according to the Carrier, that Claimant's dismissal was bottomed on only suspicion and assumptions given the direct testimony of Dr. Heligman and the other evidence set forth in the record. It is clear, the Carrier claims, that Claimant's misconduct violated the Carrier's Rule 104.2(a) as well as the Carrier's Code of Ethics. It notes, as to Claimant, that he was actively working and following the furlough notice but then took a vacation from June 17 to June 24, 2017, returned to duty, then marked off sick on June 30, 2017, worked July 1, 2017, took a vacation from July 4 to July 8, 2017, and had been marked off sick since July 11, 2017, "seeking treatment for alleged minor conditions from the same chiropractor." Claimant also acknowledged, according to the Carrier, that he was aware that other Carrier employees were seeking treatment from the same chiropractor. There is no competent and credible evidence in the record, the Carrier stresses, that any documentation relative to Claimant justified disability. Finally, according to the Carrier, the disciple assessed was fully appropriate given its Disciplinary Policy and the nature of the misconduct, which penalty is also supported, the Carrier argues, by a number of Public Law

Board Awards.

**OPINION OF THE BOARD**

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. Included in this finding is the Board's determination that the Charges against Claimant were in compliance with Rule 30 of the Parties' Agreement. Prior to the issuance of the Notice of Investigation, the Carrier, the Board finds, properly awaited Dr. Heligman's assessment of the medical documentation, which included a number of employees other than the Claimant, and the Carrier's issuance of the Notice of Investigation on July 21, 2017, complied with the ten day Rule set forth in Rule 30. In arriving at this conclusion, the Board also observes the lack of any evidence that either Claimant or the Organization were prejudiced in any way by the Carrier's handling of this matter on the Property.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the

instant case. In reviewing the record, the Board also notes that evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees, and, of course, the timing of the claims asserted by Claimant and the other employees in connection with the June 16, 2017 furlough notice that became effective June 23, 2017. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negates the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate himself as self-serving. The Board finds, therefore, that the Charges against Claimant are fully established in the record. Based on the nature of the misconduct and the Carrier's Disciplinary Policy, the Board finds no reason to disturb the penalty imposed.

Case 3:18-cv-00321 Document 360-6 Filed 05/13/21 Page 198 of 260 PageID #: 17445

**P.L.B. No. 7508**
**Case No. 21**
**Award No. 21**

**AWARD**

The claim of the Organization is denied.

**DATE:** January 17, 2019

Thomas Rinaldo

**THOMAS N. RINALDO, ESQ**
**NEUTRAL MEMBER**

Penny Dreher

**PENNY DREHER**
**CARRIER MEMBER**

Joe Fraley

**JOE FRALEY**
**ORGANIZATION MEMBER**

**P.L.B. No. 7508**
**Case No. 23**
**Award No. 23**

**PUBLIC LAW BOARD**
**NO. 7508**
**CSXT FILE NO. 313646**
**LCAT FILE NO. 2017-228777**

**Parties to Dispute:** **INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

**Statement of Claim:** The Organization requests the discipline assessed be removed from the claimants' record and the Claimant be made whole for all wages and benefits lost from the assessed discipline, including time withheld from service pending the investigation.

## BACKGROUND FACTS

The Claimant Donald Stephens, a Sheet Metal Worker in the Carrier's employ, received a letter dated July 21, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto." An investigation, in fact, was held, following which, in a September 6, 2017, letter,

from the Carrier to Claimant, Claimant was informed that the Carrier had determined that he was guilty as charged and had violated Carrier Operating Rule 104.2.a and Code of Ethics Policy. Claimant was notified that he was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

Before the Board, the Organization asserts that the Carrier did not provide any witnesses to corroborate the documentation that it submitted in support of its contention that Claimant acted in a manner that was fraudulent. It contends that Claimant was not affected by the furlough notice. Regarding the letter from the Carrier's Medical Officer to the Railroad Retirement Board concerning a claim made against the chiropractors, the Organization observes that the Kentucky Board of Chiropractic Examiners responded by stating that it had dismissed the complaints.

The medical documentation regarding all charged employees, according to the Organization, contains one page relating to Claimant, which document, the Organization claims, stated the legitimacy of Claimant's medical condition as confirmed by the chiropractor. The Organization also contends that the Carrier did not provide any factual documentation to establish that Claimant's behavior was dishonest or that it violated the Carrier's Code of Ethics.

A genuine understanding of the record, according to the Organization, would reflect that the so-called conspiracy between and among a number of employees was based on assumption and suspicion of Dr. Heligman because of a large volume of documents received from two providers. Further, the Organization notes that the Carrier identified a motive regarding extending health benefits, but, the Organization insists, the Carrier established no direct tie to the Claimant and the Charges brought against him. It also must be kept in mind, the Organization argues, that Dr. Heligman testified there is no issue with an employee being out under a physician's care and Claimant, in this proceeding, testified that he complied with all Carrier Operating Rules and its Code of Ethics. Further, the Claimant testified, the Organization notes, that he acted without any intent to file for sickness benefits in a fraudulent manner. Claimant's surgery scheduled for October 25, 2017, in connection with his injuries, the Organization stresses, corroborates its position in this proceeding.

According to the Carrier, Claimant was afforded a fair and impartial investigation and the Carrier avers that it sustained its burden of producing substantial evidence of Claimant's culpability. Claimant, according to the Carrier, fraudulently claimed sickness in an effort to extend CSXT Health and Welfare benefits and benefits from other providers. Thus, the Carrier posits, Claimant was dishonest. The Carrier maintains that the record reflects that Claimant was involved in a scheme along with a number of other Carrier employees to

defraud the Carrier and other providers of benefits by seeking treatment from the same chiropractic provider in the Huntington West Virginia area, which found Claimant marking off of work for extended periods for minor conditions and seeking to change employment status to fraudulently extend benefits.

What the record shows, according to the Carrier, is that its Chief Medical Officer, Dr. Heligman, received over 60 plus employee Certification of Ongoing Illness or Injury Medical Forms from two chiropractors in the Huntington West Virginia area - Carey and Shannon - that triggered the investigation. According to the Carrier, Dr. Heligman gave credible testimony that there was a large volume of the medical forms from Claimant and other employees received by his office in a short period of time, which forms were then submitted to Carrier Medical after a large business manpower reduction occurred at the Huntington West Virginia Mechanical Facility. Dr. Heligman testified, the Carrier observes, that he researched and reviewed the chiropractic notes and conditions and, as of the date of his testimony, his Office continued to receive forms for employees from these two chiropractors. Claimant's payroll records, the Carrier notes, reflect the last date Claimant worked. Dr. Heligman testified, the Carrier observes, that the medical documentation that he received from the chiropractors did not justify Claimant from an extended absence from work but reflected only minor conditions. Accordingly, the Carrier notes, Dr. Heligman testified that

his review of the forms confirmed that the providers' and Claimant's actions were fraudulent and reflected, in fact, a concerted fraud effort on behalf of the employees and the chiropractors.

The Carrier also observes that Dr. Heligman testified that he submitted the documentation to Carrier Local Officers, which initiated the Charge against Claimant and other employees and notified the Railroad Retirement Board of the Claimant's attempt to obtain benefits fraudulently, which then led to the Railroad Retirement Board to conduct an investigation.

The Carrier maintains that the record demonstrates that Claimant and the other employees had reported medical conditions from the chiropractors that were "practically identical," in that "they all had minor musculorskeletal conditions, sprains and muscle spasms," which, per the testimony of Dr. Heligman, would have been conditions that improved quickly within the first several weeks of care. Had such conditions not abated, the Carrier claims, again relying on Dr. Heligman's testimony, the Claimant should have sought medical treatment from another provider for further evaluation. Moreover, the record shows, according to the Carrier, that the forms submitted by chiropractors and forwarded to the Carrier medical on behalf of Claimant and other employees occurred on or about the same time period when there were manpower reductions at the Huntington Mechanical facility,

which resulted in numerous furloughs. The Carrier claims that the "employees involved in this scheme," which included Claimant, "attempted to fraudulently extend their CSXT Heath & Welfare Benefits an additional 20 months (almost two years) from the date of their last compensation."

The Carrier also identifies the testimony of Plant Superintendent Shogren that a number of mechanical shop craft employees, on June 16, 2017, received notice of furlough, which was to be effective June 23, 2017. Claimant, and others, then submitted the chiropractic forms, the Carrier asserts, within the same time line of the furlough notices. Dr. Heligman testified, according to the Carrier, that the details of the medical conditions from the chiropractors "were very consistent from person to person," including Claimant, "and the alleged condition was not unique to each person." The information received from the chiropractors, according to the Carrier, "was not an individualized assessment nor was the Claimant's treatment plan individualized." The Plant Superintendent also testified, according to the Carrier, that before the manpower reduction notice was posted on June 16, 2017, there was talk at the work site by a number of employees about possible workforce reductions.

The Carrier rejects defenses offered by the Organization. Thus, the Carrier claims that the Organization's contention that fraud was not established is without merit given the fact that Dr. Heligman's testimony established that, when CSXT employees are furloughed, their

Health & Welfare Benefits are extended for four months from the date of the furlough but when employees are marked off sick, their benefits are extended for up to a maximum of two years under the CSXT Health & Welfare Plan. Thus, according to the Carrier, Dr. Heligman gave credible testimony, which was documented, that Claimant and the others engaged in "concerted efforts to extend H & W benefits," which "amounted to an additional sixteen thousand dollars ( $16K) fringe benefit cost to CSXT." Because there were approximately 67 employees involved in the fraudulent scheme, according to the Carrier, the dishonesty of Claimant and the other employees "could have costs CSXT a total of one million dollars ($1M) in fraudulent fringe benefits."

The Carrier also underscores the fact that Dr. Heligman testified that, before the hearing, Carrier Medical had not received any medical documentation to certify that Claimant's absence from work was due to any other type of treatment, and, in fact, all employees involved in the scheme, Claimant included, submitted forms from the same chiropractors in a short period following the mechanical reduction of forces. It cannot be reasonably concluded, according to the Carrier, that Claimant's dismissal was bottomed on only suspicion and assumptions given the direct testimony of Dr. Heligman and the other evidence set forth in the record. It is clear, the Carrier claims, that Claimant's misconduct violated the Carrier's Rule 104.2(a) as well as the Carrier's Code of Ethics. It notes, as to

Claimant, that he was noticed on June 16, 2017 of the effective furlough date of June 23, 2017, and visited the chiropractor for the first time on June 19, 2017. Claimant also acknowledged, according to the Carrier, that he was aware that other Carrier employees were seeking treatment from the same chiropractor. There is no competent and credible evidence in the record, the Carrier stresses, that any documentation relative to Claimant justified disability. Finally, according to the Carrier, the disciple assessed was fully appropriate given its Disciplinary Policy and the nature of the misconduct, which penalty is also supported, the Carrier argues, by a number of Public Law Board Awards.

## OPINION OF THE BOARD

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. Included in this finding is the Board's determination that the Charges against Claimant were in compliance with Rule 30 of the Parties' Agreement. In arriving at this conclusion, the Board also observes the lack any evidence that either Claimant or the Organization were prejudiced in any way by the Carrier's handling of this matter on the Property.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of

fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the instant case. In reviewing the record, the Board also notes that evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees, and, of course, the timing of the claims asserted by Claimant and the other employees in connection with the June 16, 2017 furlough notice that became effective June 23, 2017. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negates the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 286 of 420

**P.L.B. No. 7508**
**Case No. 23**
**Award No. 23**

himself as self-serving. The Board finds, therefore, that the Charges against Claimant are fully established in the record. Based on the nature of the misconduct and the Carrier's Disciplinary Policy, the Board finds no reason to disturb the penalty imposed.

**AWARD**

The claim of the Organization denied.

**DATE:** January 17, 2019

Thomas Rinaldo

**THOMAS N. RINALDO, ESQ**
**NEUTRAL MEMBER**

Penny Dreher

**PENNY DREHER**
**CARRIER MEMBER**

Joe Fraley

**JOE FRALEY**
**ORGANIZATION MEMBER**

-10-

USCA4 814
CSXT(ADKINS)020241

**P.L.B. No.7539**
**Case No. 82**
**Award No. 82**

**PUBLIC LAW BOARD**
**NO. 7539**
**CLAIMANT: D M STEWART**

**Parties to Dispute:** **INTERNATIONAL ASSOCIATION OF MACHINIST & AEROSPACE WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

**Statement of Claim:** In accordance with the applicable provisions of the Current Rules Agreement in effect between the International Association of Machinists and the CSXT Railroad, this is an appeal of the decision by letter dated September 21, 2017 from Brian Barr, Vice President Mechanical, unjustly terminating Mr. Stewart.

The decision of Mr. Barr is rejected in its entirety and, by copy of this appeal, he is so notified.

## BACKGROUND FACTS

Claimant, Danny M. Stewart, a Machinist in the Carrier's employ, received a letter dated July 26, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on July 14th, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits provider when you, as well as more than 50 other craft employees, submitted potentially fraudulent documents and all circumstances relating thereto." An

investigation, in fact, was held on August 22, 2017, following which the Carrier found Claimant guilty of violating its Operating Rule 104.2.a and its Code of Ethics Policy based on the allegations set forth in the Notice of Investigation. Claimant was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

The Organization observes that Claimant has been a Machinist for nearly 13 years for the Carrier and his job at the Russell Locomotive shop was physically demanding. On July 6, 2017, the Organization notes, Claimant slipped on a wet surface and fell, injuring his shoulder and lower back. He went to an Urgent Care Facility the next day, according to the Organization, and having experienced no improvement, visited nearby chiropractor, Dr. Johnson. Dr. Johnson, the Organization notes, diagnosed a "sprain of lumbar/pelvis" and "muscle spasms" and removed Claimant from service. Dr. Johnson, on July 10, 2017, according to the Organization, signed and submitted a Certification of Ongoing Illness or Injury form that medically certified that Claimant was injured and under his care. Significantly, the Organization claims, Claimant then visited an independent medical office, on August 3, 2017, known as King's Daughters Medical Care for a second opinion concerning continuing shoulder pain. This attending physician, Dr. Lewis, the Organization

observes, reported the Claimant had "acute pain of left shoulder" and could "only raise arm from shoulder to 90 degrees." On October 2, 2017, the Organization notes, Claimant followed up with a Dr. Gilliland of King's Daughters Medical Center, who diagnosed Claimant was "bicep tendinitis of left upper extremity" and "degenerative tear of glenoid labrum of left shoulder."

The Organization also observes that the Carrier never asked Claimant to see another physician for a second opinion, nor was he assessed by the Chief Medical Officer, Dr. Heligman, or any other physician on behalf of the Carrier. No evidence can be found to support Dr. Heligman's "utter speculation" regarding fraud and dishonesty on Claimant's part the Organization argues, and the record shows no more than Claimant sought appropriate medical treatment regarding a valid injury.

The Organization claims that this proceeding was tainted by a number of procedural irregularities. It asserts that the Notice of Hearing was sent to the wrong representative and the time and location of the hearing was changed without notice or consent. The investigation in this matter, the Organization observes, "was conducted on a group basis, with the Carrier witnesses testifying generally as to a group of seven charged Machinist, as well as the dozens of employees who were not even present." According to the Organization, the Carrier engaged in a "rush to judgment" and also released personal and confidential

medical records of more than 50 employees. An unfair hearing, occurred, the Organization argues, as a result of these procedural flaws.

As to the merits, the Organization contends that Claimant is not guilty and his dismissal from service is unwarranted. The Carrier, according to the Organization, produced no evidence to meet its burden of establishing dishonesty and fraud and, in fact, "presented no direct evidence supporting either charge" against Claimant. The fact that several of Claimant's co-workers were treated by the same physician, according to the Organization, cannot serve to uphold the charges of dishonesty and fraud against Claimant. "Mere suspicion," the Organization stresses, is an insufficient basis to find guilt. The opinion of the Carrier's Chief Medical Officer that Dr. Johnson's diagnosis and/or treatment of Claimant was not medically appropriate, the Organization stresses, must be considered irrelevant in the absence of any evidence that Claimant "went seeking anything other than a medically appropriate treatment for his injuries."

The Carrier initially contends that Claimant received a fair and impartial investigation under the provisions of the Parties' Agreement. Although the Organization, the Carrier notes, objected to the investigation during the hearing because it alleged that the Carrier had unilaterally postponed the hearing, the Organization, according to the Carrier, "did not progress this contention on appeal; therefore, it's considered waived from further

progression." The record also shows that, the Carrier observes, that it amended the hearing date and the Organization did not refute the facts that the second letter received two days after the charge notice was an amended Charge letter changing the hearing date. No other basis, the Carrier contends, can be found to support the conclusion that Claimant was denied a fair and impartial investigation. The Carrier, in making this argument, rejects any claim by the Organization that the Carrier violated its own Ethics Policy, contending, instead, that its Chief Medical Officer, Dr. Heligman, stated that the documents about which the Organization objected were provided in the course of doing business and not considered HIPAA protected, particularly since they contain no personal identifiable information and the other employees who received the documents were notified and were instructed not to divulge the information or distribute it outside the scope of business purposes. The claim that the charge letters were transmitted to the Organization's General Chairman and not any other official, the Carrier claims, was waived by the Organization since it "did not progress this contention on appeal" and, in any event, the Organization representative, Mr. Sandberg was present at the hearing and ready to proceed, having received proper notice.

The Carrier also maintains it sustained its burden of producing substantial evidence of Claimant's culpability. It claims that the record establishes that more than 60 Carrier employees, including Claimant, "were involved in a scheme to defraud CSXT and other

providers of benefits, when each sought treatment from the same chiropractic provider in the Huntington, WV area, marking off work for extended periods for minor conditions and in an attempt to change their employment status to fraudulently extend benefits." It relies on the testimony of its Chief Medical Officer, Dr. Heligman, that he received more than 60 employee Certification of Ongoing Illness or Injury medical forms from two chiropractors in the area, which triggered his investigation because there was an "extremely large volume" of the forms from Claimant and other employees submitted in a very short period of time. Dr. Heligman testified, the Carrier notes, that he researched and reviewed the chiropractic notes and conditions which disclosed to him that the providers and the actions of the employees were fraudulent and reflected "a concerted fraud effort on behalf of the employees, including Claimants , and the Chiropractors." Dr. Heligman, the Carrier observes, testified that he submitted documentation to Carrier Local Officers initiating the charges as well as notifying the Railroad Retirement Board. The testimony of Plant Superintendent Shogren is also identified by the Carrier.

The Carrier observes that the testimony of Dr. Heligman disclosed that the employees' "medical conditions were practically identical, which they all had **minor** musculoskeletal conditions, sprains and muscle spasms, including the Claimants []." (Emphasis in original). Such conditions, according to the Carrier, relying on Dr. Heligman's testimony, should have

been resolved within a very short period of time but there was a fraudulent attempt to extend the benefits, all of which "occurred on or about the same time period the manpower reductions were occurring at the Huntington Mechanical facility, resulting in numerous furloughs."

According to the Carrier, relying on the testimony of Plant Superintendent Shogren, numerous mechanical shop craft employees were notified on June 16, 2017, of furlough notices to become effective June 23, 2017. Claimant and other charged employees, the Carrier notes, submitted the chiropractic ongoing treatment forms during the same time line, and that the Plant Superintendent testified "there was a lot of shop talk amongst local Huntington employees about possible workforce reductions that would result in a large number of furloughs." The record reflects, the Carrier notes, "that when CSXT employees are furloughed their Health & Welfare Benefits are extended for four (4) months from the date of furlough" but "when employees are marked off sick, their benefits are extended for up to a maximum of two (2) years under the CSXT H & W plan." The testimony of Dr. Heligman, according to the Carrier, established "that the Claimants' concerted efforts to extend their H&W benefits amounted to an additional sixteen though dollar ... fringe benefit cost to CSXT" and considering "there was approximately 67 employees involved in this fraud scheme," the "dishonesty could have cost CSXT a total of one million dollars ... in

fraudulent fringe benefits."

It is clear, according to the Carrier, as set forth in the testimony of Dr. Heligman, that the motivation of the employees, Claimant included, was "to extend their CSXT Health and Welfare Benefits" and also to defraud "the Railroad Retirement Board and other providers." The Carrier observes that its Code of Ethics contains a Zero Tolerance Policy concerning fraud and theft, and Claimant's training documents entered into evidence discloses he was trained on the applicable Rules and Policies. The Carrier also maintains it is clear that Claimant's "sick mark offs prior to furlough placed ... [him] in LTI status extending benefits and ... [he] would be protected for 5 years under the 1/1/2018 Agreement should ... [he] become medically qualified to return to work after 1/1/2018, which at that point ... [he] would then be subject for furlough status."

The Carrier observes that Claimant was working during the June 16, 2017, furlough notice and marked off sick on July 8, 2017. According to the Carrier, Claimant stated that Dr. Johnson, the chiropractor, was "highly recommended in the area" and he saw other Carrier employees visiting the same chiropractor. Claimant, the Carrier stresses, asserted he was seeing other doctors but did not submit any documentation from any other physician.

Finally, the Carrier asserts that the discipline imposed must be considered fully justified given the nature of the misconduct. It relies on cited arbitral authority in support

of this point. It emphasizes that Claimant was part of "an intentional concerted effort" to "falsely ... [seek] treatment to expand ... [his] compensation and benefits."

**OPINION OF THE BOARD**

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. The Organization's claims regarding a denial of the right to a fair and impartial hearing have been advanced on a record where the Board is unable to conclude that the Parties have in place an Agreement calling for the dismissal of charges when, as in the instant case, no prejudice occurred to either the Organization or the Claimant. Therefore, the Board will proceed to examine the merits of the charges.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the instant case. In reviewing the record, the Board also notes that any evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part

of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, and the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negates the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate himself as self-serving. The Board finds, therefore, that the Charges against Claimant are established in the record.

Nevertheless, the Board finds there are particular facts and circumstances in the record in this proceeding that are unique when compared to other employees who have been terminated by virtue of the same Charges that form the basis of Claimant's culpability. Notably, the Board observes, Claimant was not subject to furlough and, additionally, treated with another physician contemporaneously with the chiropractic care that has formed the

basis of the finding of misconduct in this proceeding. Under all of the attendant circumstances set forth in this record, and based entirely thereon, the Board, in a non-precedent setting Award, modifies the penalty of termination to one of an unpaid suspension, which period of suspension shall end when Claimant is restored to the workforce. Claimant should be restored to the workforce after complying with the Carrier's return to work requirements.

**AWARD**

The claim of the Organization is denied except to the extent indicated.

**DATE: 6/24/2109**

Thomas Rinaldo
**THOMAS N. RINALDO, ESQ**
**NEUTRAL MEMBER**

**K. DONOVAN**
**CARRIER MEMBER**

Andrew W. Sandberg
**A. SANDBERG**
**ORGANIZATION MEMBER**

**BEFORE**
**PUBLIC LAW BOARD No. 7879**
**Case No. 10**
**Award No. 10**

| | | |
|---|---|---|
| **NATIONAL CONFERENCE OF FIREMEN AND OILERS** | ) | |
| | ) | **PARTIES TO** |
| **vs.** | ) | **DISPUTE** |
| | ) | |
| **CSX TRANSPORTATION, INC.** | ) | |

**STATEMENT OF CLAIM:**

> **"1. That under the current and controlling agreement, Firemen and Oiler C.C. Stiltner was unjustly dismissed from service without just cause.**
>
> **"2. That accordingly, Firemen & Oiler C.C. Stiltner be made whole so that he does not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter." [Carrier File 17-06012-MECH-NCFOS]**

**OPINION OF THE BOARD:**

**This Board, upon the whole record and all of the evidence, finds and holds that the Employee and Carrier involved in this dispute are respectively Employee and Carrier within the meaning of the Railway Labor Act, as amended, and that the Board has jurisdiction over the dispute involved herein.**

**The Claimant had a mechanical seniority date of March 10, 2010. At all times relevant, the Claimant was employed as a Utility Worker with rights to work at either the Huntington, WV and/or Russell, KY Locomotive Shop, a combined seniority roster district. By letter dated July 26, 2017 and amended July 28, 2017, the Claimant was instructed to attend a formal investigation**

> **"to develop the facts and place your responsibility, if any, in connection with information received on July 21, 2017, that on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto."**

**The Claimant was held out of service pending the investigation. After a hearing held August 22, 2017, on the charges against him, the Claimant was notified by letter dated**

**September 21, 2017, that the Carrier had found him guilty of the offense charged, had determined that he had violated CSX Operating Rule 104.2.a and Code of Ethics Policy and dismissed him from service. The Organization filed a timely claim asserting that the Carrier had failed to prove its charges and had imposed discipline that was arbitrary, capricious, and an abuse of managerial discretion.**

**The Carrier contends that there is substantial evidence to support the determination of guilt and the penalty assessed. The record demonstrates that numerous Mechanical shop craft employees were notified on June 16, 2017, of an impending furlough (effectuated June 23, 2017) at the Huntington Mechanical facility. According to Mechanical Plant Superintendent Curt Shogren, there was much discussion and speculation among Huntington employees about possible workforce reductions, prior to the June 16 announcement. During the timeframe of the rumors and the furlough notice the Carrier received Certification of Ongoing Illness or Injury (COII) medical forms on behalf of the Claimant and over 60 more what seemed an unusually large number of Huntington Mechanical employees that had been issued by two chiropractors in the Huntington WV area. Chief Medical Officer Dr. Heligman testified that the forms were received from Claimant and the other employees within a very short period, all for the purpose of changing the employees' employment status to extend their benefits in the event of furlough. The forms did not provide individualized assessments of the employees. This caused the Chief Medical Officer to scrutinize other sickness claims from the two chiropractors involved. Because of the large volume of forms, the coincidence of the impending reductions, and the use of the same two chiropractic providers, Dr. Heligman reviewed the forms and information provided and determined that the documentation received from the Claimant, although not in the immediate time of the furlough and the other employees involved did not justify extended absences from work. He found that the documentation described the employees as suffering from practically identical medical conditions, which he characterized as minor musculoskeletal conditions, sprains and muscle spasms. He also concluded that the chiropractors who issued the forms extended the employees' time off work well beyond what was medically necessary, in his opinion. Dr. Heligman concluded from these circumstances that there had been a concerted fraud by the employees, including the Claimant, and the chiropractors, to fraudulently extend their CSXT Health & Welfare benefits an additional 20 months from the date of their last compensation in they were impacted by the coming manpower reductions. As a result, Dr. Heligman initiated the charges against the Claimant and the other employees.[1]**

**In particular, the Claimant had been marked off sick from work since May 24, 2017. The office of one of the chiropractors in question sent a fax to the Carrier in May 2017 and an updated form on July 19, 2017 that referred to the Claimant being under his care between beginning on that date, and authorizing his absence from work through the estimated date of September 19, 2017 (Tr. pg. 21). Dr. Heligman testified that the medical conditions described by the chiropractor in that note and in the notes of treatment beginning in May 2017 were not sufficient to support the report of the Claimant's inability to work, that the**

[1] Heligman also notified the Railroad Retirement Board of the alleged attempts to obtain benefits fraudulently, and as of the time of the on-property handling, the RRB investigation was still pending.

**conditions ascribed to the Claimant should have improved within the first two weeks of care, and that if they did not, the Claimant should have sought further evaluation and treatment from a different provider. The Carrier concludes that the testimony of Dr. Heligman and Plant Superintendent Shogren, along with the documents in evidence, provide substantial evidence to support its determination that the Claimant had violated the prohibition of dishonesty in Rule 104.2, and the prohibition against fraud and theft in the Code of Ethics. Such offenses are Major Offenses that warrant dismissal under the Carrier's IDPAP Policy.**

**The Organization objects that the Carrier has failed to prove the charges against the Claimant of dishonesty or an attempt to defraud the Carrier. Superintendent Shogren had only a suspicion of fraudulent activity, based on Dr. Heligman's analysis, and there was no specific proof that the Claimant took any actions to be dishonest or to defraud the company. The Carrier failed to demonstrate by substantial evidence that the Claimant submitted fraudulent documentation, the Organization asserts. Suspicions, assumptions and possibilities of fraud are not enough. Moreover, while Shogren cited rumors about anticipated furloughs as a reason for suspecting fraud, the Claimant was not facing furlough and therefore the record itself demonstrates that Shogren's suspicions were unfounded as to him. Indeed, Shogren could not identify any employees who were involved in spreading the purported rumors. The Organization also notes that Dr. Heligman reached his conclusions that the documentation submitted for the Claimant and over 60 other employees was fraudulent, without himself having examined a single employee, or having sought an additional examination or documentation from any employee. Dr. Heligman's professional disagreement with the chiropractor's assessment and treatment of an employee does not demonstrate fraud or dishonesty on the part of the employee. In addition, the Carrier had accepted the Claimant's medical forms while he had been away from duty, and cannot declare without prior notice that his doctor's forms are no longer acceptable, the Organization asserts. Without any information about the Claimant's actual physical condition, the Carrier cannot say that the documentation he provided was fraudulent, the Organization concludes, requesting that the claim be sustained in full.**

**The Board has reviewed carefully both the record of the investigation and the Organization's objections on appeal, and concludes that the claim must be denied. First, while the Organization asserts that there are no facts pointing directly to the Claimant's guilt – his purported dishonesty and attempt to defraud the Carrier - the record is replete with evidence of suspicious activity by the Claimant and other employees: The timing of these medical forms, coming right around the time of rumors of furlough and the reduction notices themselves; the number of employees using the same two chiropractors who issued forms with the same type of diagnosis and description of minor musculoskeletal conditions to support claims of illness or disability; the Claimant's recourse to one of those two chiropractors; the inadequacy of his chiropractor's report to justify the length of time he initially claimed for treatment or for total disability; and his failure to supply other documentation other than records from the same chiropractor that provided no information beyond that in the COII form. Dr. Heligman, a medical professional, opined in detail that this activity was suspicious, and the record overall provided substantial evidence from which the Carrier could reasonably conclude that the Claimant had committed dishonesty and**

fraud as charged. The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt.

The Organization also objects that the Claimant did not receive a fair and impartial hearing. The Organization objects that the Carrier removed the Claimant from service without a hearing in violation of Rule 41 – Discipline. However, the Claimant was already marked off sick prior to the hearing, so this was at worst a harmless error. More important, the charged offenses of dishonesty and fraud were major offenses that if committed, would significantly undermine the employment relationship between the Carrier and the Claimant. Rule 41 was not violated. In addition, although the Organization objects that the Hearing Officer testified on behalf of the Plant Superintendent as to the reason for the removal, his comments (which merely echoed the Superintendent's prior testimony upon repetitious questions from the General Chairman) did not demonstrate bias on the part of the Hearing Officer. The record of this hearing does not indicate any prejudgment or bias on the part of the Hearing Officer.

Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106 – 110; PLB 7255, Award 2; PLB 2599, Award 66.

**AWARD**

Claim denied.

**ORDER**

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant not be made in accordance.

Lisa S Kohn
Lisa Salkovitz Kohn
Neutral Member

Penny Dreher
Penny Dreher
Carrier Member
Dated: July 9, 2018

RA Edmonds
Richard A. Edmonds
Organization Member

**PUBLIC LAW BOARD NO. 6392**

**Award No. 456**

| | |
|---|---|
| **PARTIES** | **Brotherhood Railway Carmen Division (BRC) Division of Transportation Communications Union (TCU/IAM)** |
| **TO** | **-and-** |
| **DISPUTE** | **CSX Transportation, Inc.** |

**STATEMENT OF CLAIM**

1. The Carrier violated Rule 30 of the Controlling Agreement when on September 5, 2017 the Carrier erroneously disciplined TA Thayer without a fair and impartial hearing.

2. Accordingly, the Carrier should now be required to compensate TA Thayer ID# 273373 (Referenced from this point on as Claimant) for all time lost as a result of the Claimant's dismissal. Such reinstatement shall include all rights, seniority, and benefits, including applicable overtime that Claimant would have enjoyed had he never been discharged. The compensation shall continue until he is reinstated with each day being credited to a specific calendar date. Furthermore, Claimant should be compensated for other benefits accruing to all other employees as a condition of employment including, but unlimited to Holiday pay, vacation time, overtime, plus the health and welfare benefits now in effect and premiums the Claimant was required to pay for him and his dependents during his dismissal; to be made whole and complete. The Carrier should now be required to file with the Railroad Retirement Board all form necessary to ensure that the Claimant is properly credited for the months of service that he would have earned absent the dismissal. The Carrier shall now be required to expunge any adverse reference from the Claimant's personnel records relating to the events surrounding his termination.

**FINDINGS**

The Board, after hearing upon the whole record and all the evidence, finds that the Carrier and Employee involved in this dispute are respectively Carrier and Employee within the meaning of the Railway Labor Act, as amended, that the Board has jurisdiction

over the dispute involved herein and that the parties were given due notice of hearing thereon.

The Claimant was dismissed from the Carrier's service following a formal investigation in connection with the following:

> ...information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

Prior to discussing the merits of the subject case, the Board will first address several procedural objections raised by the Organization during the handling of this case on the property. Initially, the Organization claimed that the notice to attend the investigation was "too vague and omnibus" and deprived the Claimant of his contractual right to a fair and impartial investigation. The Organization has also taken exception to the fact that Dr. Heligman referred to notes during his testimony and that documentation of other employees, allegedly involved in this matter, was included in the investigation record.

Regarding the notice of investigation, the Board notes that numerous arbitration awards have held that a notice which sufficiently apprises the employee of the matter under in investigation so that a proper defense can be prepared, fulfills agreement requirements for specificity. The Board finds that the notice of investigation did so in this case. In light of the scope of the investigatory hearing, the Board finds that neither Dr. Heligman's use of his personal notes nor information regarding other employees was prejudicial to the Claimant's contractual rights. Accordingly, the Board will decide this case on its merits.

At the formal investigation, the Carrier's Chief Medical Officer, Dr. Heligman, testified that he received, over a short period of time, a large volume of Certification of Ongoing Illness or Injury (COII) medical forms covering over 60 employees, including the Claimant, sent by two chiropractors (Carey and Johnson) in the Huntington, West Virginia area. Dr. Heligman stated that this was particularly significant because the forms came in a short time frame and close in time to the announcement of force reductions in the Huntington area. Dr. Heligman further testified that the medical documentation received from the chiropractor (Carey) in behalf of the Claimant, as well as that received for the other employees, was for minor medical conditions and did not justify the Claimant's extended absence from work. Specifically, Dr. Heligman noted that the Claimant had been off from work for a minor musculoskeletal condition which was very similar, and at times identical, with those noted on the COII's of the other 60+ employees, and that the Claimant's medical condition as noted on the COII should not have prevented him from work for this extended period of time. Based on his review of the medical records, it was Dr. Heligman's professional opinion that the Claimant, as well as the other employees, was engaged in medical fraud in an attempt to extend Health

and Welfare benefits as well as RRB sickness benefits and other insurance supplemental benefits.

The Organization has strongly argued that the Carrier failed to sustain its burden of proving that the Claimant was engaged in any fraud or dishonesty and that the Carrier's entire case is based on suspicion and assumption, not on facts. Furthermore, the Organization notes that Dr. Heligman did not personally examine the Claimant nor was the Claimant asked to supply any additional medical documentation or to undergo any other physical examination.

The Carrier's burden of proof in disciplinary cases is that the evidence must be substantial and credible and that such proof can be circumstantial evidence so long as it is substantial. Substantial evidence has been defined as such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Numerous arbitral awards have upheld the Carrier's right to rely on circumstantial evidence in determining an employee's guilt. In Public Law Board No. 7655, Award No. 104, the Neutral Member of this Board, in deciding a case involving another Carrier employee similarly charged as the Claimant, cited as especially applicable herein, the following Findings of arbitrator Kohn in Award No. 1 of Public Law Board No. 7879, which appears to be the seminal Award relative to these particular circumstances:

> The Carrier, and this Board, are entitled to rely on circumstantial evidence as proof of the matters charged, as long as that evidence is sufficiently compelling to be deemed substantial. In this case, the number of employees who filed right around the time of the furlough, the fact that those employees relied solely on the same two chiropractors, who provided similar documentation for all, and the professional opinion of the Chief Medical Officer that none of the documentation was adequate to justify the determination sought, together provided circumstantial evidence sufficiently compelling to constitute substantial evidence to support the Carrier's determination of the Claimant's guilt. The fact that the Claimant was already marked off sick and that he did not in fact face furlough as a result of the reductions announced June 16, 2017, does not excuse or mitigate his offense.

As in Award No. 1, the circumstantial evidence in the case at bar was of such weight as to support the Carrier's burden of proving the Claimant's guilt of the charged offense.

Relative to the discipline of dismissal assessed in this matter, the Board again refers to the Findings of Ms. Kohn in Award No. 1 of Public Law Board 7879:

> Finally, the Organization asserts that the level of discipline was excessive and therefore arbitrary, capricious and an abuse of discretion. However, fraudulent requests for benefits are theft and a form of dishonesty. Such an offense destroys the element of trust that is crucial to an employer-employee relationship and therefore dismissal was appropriate. Accord, PLB 7529, Awards 106-110; PLB 7255, Award 2; PLB 2599, Award 66.

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 305 of 420

**Public Law Board No. 6392**
**Award No. 456**

As succinctly set forth by arbitrator Kohn, due to the extreme seriousness of the Claimant's proven violation, the discipline of dismissal assessed the Claimant was not harsh or excessive but was fully warranted, and, accordingly, will not be disturbed by this Board.

**AWARD**

Claim denied.

Joseph M. Fagnani, Neutral Member

Carl Lakin
Employee Member

Katrina Donovan
Carrier Member

DATED: 8/9/2019

4

CSXT(ADKINS)020152
USCA4 833

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 112**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Thornsberry be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Thornsberry be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Thornsberry's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant Travis Thornsberry—an employee with approximately ten and one-half years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated July 31, 2017, Claimant was instructed to attend an investigation:

> to determine the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

An investigatory hearing was held on August 24, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren, testified that furloughs were announced on June 16, and presented a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough effective June 23, 2017. According to Shogren, there was talk around the shop even prior to the

furlough notice, regarding how many employees might be furloughed and whether the third shift might be abolished. Claimant, however, was not affected by the furloughs.

Chief Medical Officer (CMO) Craig S. Heligman testified that he began to investigate documents received from the Huntington area, because on June 19, 2017, his office started receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors: Shannon Johnson and Daniel Carey. He found the circumstances suspicious because of the timing with regard to the furlough notice, as well as the similarity of the diagnoses and treatment recommendations on the COIIs. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees were pulled out of work for two months, for minor musculoskeletal injuries that normally resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, seeking a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work. Heligman called Carey and Johnson, but neither returned his call.

Heligman stated that he concluded that the employees and chiropractors had been engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and the extended benefit insurance providers. An employee who was furloughed would receive just four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from the extended benefits insurance provider. For one employee, Heligman testified, the cost to the Carrier could be approximately $16,000. Including the fifteen employees for which Carey sent in COIIs and the fifty-two for which Johnson sent in COIIs, the total could be potentially over $1 million.

Claimant had been out since March 29, 2017, and predicted to be back to work at the end of May, 2017. A new COII extended his return date to July 27, 2017. The COII stated that he had been diagnosed with a lumbar/pelvic sprain and muscle spasms. Treatment consisted of spinal manipulations, therapeutic exercises, and passive modalities. Testifying on his own behalf, Claimant stated that he had not been furloughed. He asserted that he had found Dr. Johnson online and had seen him for years. Claimant's wife was currently a patient of the doctor's. Claimant admitted that Johnson's office is approximately an hour and ten minutes from home. He acknowledged that he had not seen any other doctors, other than an x-ray at another facility. He claimed that he did know whether other employees were seeing Johnson. He saw Johnson twice a week for electro therapy and spinal manipulations, and had seen him the morning of the hearing. The doctor's office filled out the forms and sent them in to the Carrier. He acknowledged that he was receiving benefits from the RRB and Aetna. He testified that he had followed his doctor's advice, and had not violated any rules.

By letter dated September 21, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2 (a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to extend CSXT Health and Welfare benefits and other benefits. Claimant acknowledged that he did not see any other doctor for his alleged injury, and provided no documentation of having seen any other provider. According to the Carrier, substantial evidence was presented demonstrating Claimant's dishonesty. As Heligman testified, the diagnosis on Claimant's COII was very similar to that listed on the COIIs of other

employees, and was for a minor condition that could be expected to heal within a few weeks. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's continuing absence from work.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by extending benefits for minor conditions. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, where dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant had violated 104.2 (a) or the Code of Ethics. The influx of COIIs that concerned CMO Heligman occurred between June 19 and July 12, 2017. It is undisputed that Claimant was taken out of work on March 29, 2017. Moreover, Claimant was not affected in any way by the reduction in force announced on June 16. The Organization emphasizes that Heligman had only suspicion as proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

After reviewing the record in the instant matter, the Board finds Heligman's testimony to be persuasive regarding the existence of a clear pattern of abuse of benefits. Claimant submitted a COII in March taking him off work for two months, and another COII in May to extend his being off work for another two months, a total of four. His diagnosis, as Heligman emphasized,

was for a minor injury—a sprain and muscle spasms—that should have healed in a few weeks. If Claimant truly was seeing Dr. Johnson twice a week, as Claimant asserted, but his alleged condition still had not improved, as a matter of common sense and self-interest he surely would have seen another doctor. Claimant did not testify that his condition had improved in any way, or provide any reason justifying his continued absence from work. The similarity of his diagnosis and treatment to the diagnosis and treatment of many other employees at almost the same time was no mere coincidence. The Board is satisfied that Claimant was involved in a concerted effort to defraud the Carrier. He was dishonest in violation of Rule 104.2 (a), and committed fraud in violation of the Carrier's Code of Ethics. The Board therefore concludes that Claimant's dismissal was warranted.

**Award:**

The claim is denied.

JOAN PARKER, Neutral Member

CARRIER MEMBER

ORGANIZATION MEMBER

DATED: 1/16/2019

DATED: 12/21/18

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 10

CASE NO. 10
CSXT LCAT File No. 2017-228567

**PARTIES TO THE DISPUTE:** **International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant J.L. Wallace, ID 267945

> "1. That under the Current and Controlling Agreement, Boilermaker J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) J. R. Baker, JR Deal,, JL Blain, MD Potter, RE Mosteller, JL Wallace, and J Jeffers be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant J. L. Wallace was dismissed by letter dated September 5, 2017. At the time of his dismissal, claimant had less than three years of service with the Carrier. His work record did not contain any prior disciplinary entries.

As suggested by the above Statement of Claim, a single investigation was held on August 5, 2017 involving claimant and six other members of the Organization. All seven employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization, seven of whom were subject to the investigation in question.

In total, the furlough notices projected the furlough of more than sixty-five employees among seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extent that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims. A final letter identified four more employees.

Of the seven employees involved in the instant investigation, five saw the same chiropractor on June 19, 2017 and received absence excuses from work for two months. Claimant Wallace was one of those five employees.

The record of investigation in question consists of 306 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. The United State Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'" in its 1938 decision in Consolidated Edison v. Labor Board. To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:
The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: February 4, 2019

**P.L.B. No.7539**
**Case No. 79**
**Award No. 79**

**PUBLIC LAW BOARD**
**NO. 7539**
**CLAIMANT: LLOYD K WILLIAMS**

**Parties to Dispute:**

**INTERNATIONAL ASSOCIATION OF MACHINIST & AEROSPACE WORKERS**

**Vs.**

**CSX TRANSPORTATION, INC.**

**Statement of Claim:**

In accordance with the applicable provisions of the Current Rules Agreement in effect between the International Association of Machinists and the CSXT Railroad, this is an appeal of the decision by letter dated September 21, 2017 from Brian Barr, Vice President Mechanical, unjustly terminating Mr. Williams.

The decision of Mr. Barr is rejected in its entirety and, by copy of this appeal, he is so notified.

**BACKGROUND FACTS**

Claimant, Lloyd K. Williams, a Machinist in the Carrier's employ, received a letter dated July 26, 2017, directing him to attend an investigation "to develop the facts and place your responsibility, if any, in connection with information received on July 14th, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits provider when you, as well as more than 50 other craft employees, submitted potentially fraudulent documents and all circumstances relating thereto." An

investigation, in fact, was held on August 22, 2017, following which the Carrier found Claimant guilty of violating its Operating Rule 104.2.a and its Code of Ethics Policy based on the allegations set forth in the Notice of Investigation. Claimant was dismissed in all capacities. Thereafter, the Organization duly appealed on Claimant's behalf, which appeal was denied at every level of handling on the Property. The matter now stands before this Board for adjudication.

Before the Board, the Organization identifies the fact that Claimant had been employed for more than three years and, as a Machinist, he was required to engage in substantial physical efforts on behalf of the Carrier. It notes there is record evidence that Claimant, in February 2017, was injured in an ATV accident and was diagnosed with a "lumbar sprain" and "muscle spasms," which saw him removed from service. Dr. Johnson, the Organization observes, submitted a certification of ongoing illness or injury to the Carrier on July 5, 2017 and the Carrier never asked Claimant to see another doctor for a second opinion and no Carrier physician ever conducted a physical examination of Claimant. Notwithstanding the foregoing, the Organization observes, the Carrier, while the Claimant was out on medical leave, served Claimant with the Notice of Investigation.

The Organization observes that the only witness against Claimant as to his medical condition was the Carrier's Chief Medical Officer, Dr. Heligman, who, the Organization

notes, never met with or diagnosed Claimant and did not direct him to obtain any second opinion. The Organization claims that Dr. Heligman's so-called investigation consisted of essentially of a review of the ongoing illness or injury certification forms and related documents involving other people who had been seen either by Dr. Johnson or an unrelated chiropractor, Dr. Carey. The Organization emphasizes that Dr. Heligman did not medically assess Claimant and, the Organization puts forth, "[t]here was no evidence to support this utter speculation regarding the intention of Mr. Williams," and "[t]he only evidence of record in this regard was Mr. Williams's unrebutted testimony regarding his injury, his inability to perform the essential functions of his job until healed, and his decision to follow Dr. Johnson's treatment orders."

The Organization claims that this proceeding was tainted by a number of procedural irregularities. It asserts that the Notice of Hearing was sent to the wrong representative and the time and location of the hearing was changed without notice or consent. The investigation in this matter, the Organization observes, "was conducted on a group basis, with the Carrier witnesses testifying generally as to a group of seven charged Machinist, as well as the dozens of employees who were not even present." According to the Organization, the Carrier engaged in a "rush to judgment" and also released personal and confidential medical records of over 50 employees. An unfair hearing, occurred, the Organization argues,

as a result of these procedural flaws.

As to the merits, the Organization contends that Claimant is not guilty and his dismissal from service is unwarranted. The Carrier, according to the Organization, produced no evidence to meet its burden of establishing dishonesty and fraud and, in fact, "presented no direct evidence supporting either charge" against Claimant. The fact that several of Claimant's co-workers were treated by the same physician, according to the Organization, cannot serve to uphold the charges of dishonesty and fraud against Claimant. "Mere suspicion," the Organization stresses, is an insufficient basis to find guilt. The opinion of the Carrier's Chief Medical Officer that Dr. Johnson's diagnosis and/or treatment of Claimant was not medically appropriate, the Organization stresses, must be considered irrelevant in the absence of any evidence that Claimant "went seeking anything other than a medically appropriate treatment for his injuries."

The Carrier initially contends that Claimant received a fair and impartial investigation under the provisions of the Parties' Agreement. Although the Organization, the Carrier notes, objected to the investigation during the hearing because it alleged that the Carrier had unilaterally postponed the hearing, the Organization, according to the Carrier, "did not progress this contention on appeal; therefore, it's considered waived from further progression." The record also shows that, the Carrier observes, that it amended the hearing

date and the Organization did not refute the facts that the second letter received two days after the charge notice was an amended Charge letter changing the hearing date. No other basis, the Carrier contends, can be found to support the conclusion that Claimant was denied a fair and impartial investigation. The Carrier, in making this argument, rejects any claim by the Organization that the Carrier violated its own Ethics Policy, contending, instead, that its Chief Medical Officer, Dr. Heligman, stated that the documents about which the Organization objected were provided in the course of doing business and not considered HIPAA protected, particularly since they contain no personal identifiable information and the other employees who received the documents were notified and were instructed not to divulge the information or distribute it outside the scope of business purposes. The claim that the charge letters were transmitted to the Organization's General Chairman and not any other official, the Carrier claims, was waived by the Organization since it "did not progress this contention on appeal" and, in any event, the Organization representative, Mr. Sandberg was present at the hearing and ready to proceed, having received proper notice.

The Carrier also maintains it sustained its burden of producing substantial evidence of Claimant's culpability. It claims that the record establishes that over 60 Carrier employees, including Claimant, "were involved in a scheme to defraud CSXT and other providers of benefits, when each sought treatment from the same chiropractic provider in the

Huntington, WV area, marking off work for extended periods for minor conditions and in an attempt to change their employment status to fraudulently extend benefits." It relies on the testimony of its Chief Medical Officer, Dr. Heligman, that he received over 60 employee Certifications of Ongoing Illness or Injury medical forms from two chiropractors in the area, which triggered his investigation because there was an "extremely large volume" of the forms from Claimant and other employees submitted in a very short period of time. Dr. Heligman testified, the Carrier notes, that he researched and reviewed the chiropractic notes and conditions which disclosed to him that the providers and the actions of the employees were fraudulent and reflected "a concerted fraud effort on behalf of the employees, including Claimants , and the Chiropractors." Dr. Heligman, the Carrier observes, testified that he submitted documentation to Carrier Local Officers initiating the charges as well as notifying the Railroad Retirement Board. The testimony of Plant Superintendent Shogren is also identified by the Carrier.

The Carrier observes that the testimony of Dr. Heligman disclosed that the employees' "medical conditions were practically identical, which they all had **minor** musculoskeletal conditions, sprains and muscle spasms, including the Claimants [ ]." (Emphasis in original). Such conditions, according to the Carrier, relying on Dr. Heligman's testimony, should have been resolved within a very short period of time but there

was a fraudulent attempt to extend the benefits, all of which "occurred on or about the same time period the manpower reductions were occurring at the Huntington Mechanical facility, resulting in numerous furloughs."

According to the Carrier, relying on the testimony of Plant Superintendent Shogren, numerous mechanical shop craft employees were notified on June 16, 2017, of furlough notices to become effective June 23, 2017. Claimant and other charged employees, the Carrier notes, submitted the chiropractic ongoing treatment forms during the same time line, and the Plant Superintendent testified "there was a lot of shop talk amongst local Huntington employees about possible workforce reductions that would result in a large number of furloughs." The record reflects, the Carrier notes, "that when CSXT employees are furloughed their Health & Welfare Benefits are extended for four (4) months from the date of furlough" but "when employees are marked off sick, their benefits are extended for up to a maximum of two (2) years under the CSXT H & W plan." The testimony of Dr. Heligman, according to the Carrier, established "that the Claimants concerted efforts to extend their H&W benefits amounted to an additional sixteen though dollar ... fringe benefit cost to CSXT" and considering "there was approximately 67 employees involved in this fraud scheme," the "dishonesty could have cost CSXT a total of one million dollars ... in fraudulent fringe benefits."

It is clear, according to the Carrier, as set forth in the testimony of Dr. Heligman, that the motivation of the employees, Claimant included, was "to extend their CSXT Health and Welfare Benefits" and also to defraud "the Railroad Retirement Board and other providers." The Carrier observes that its Code of Ethics contains a Zero Tolerance Policy concerning fraud and theft, and Claimant's training documents entered into evidence discloses he was trained on the applicable Rules and Policies. The Carrier also maintains it is clear that Claimant's "sick mark offs prior to furlough placed ... [him] in LTI status extending benefits and ... [he] would be protected for 5 years under the 1/1/2018 Agreement should ... [he] become medically qualified to return to work after 1/1/2018, which at that point ... [he] would then be subject for furlough status."

The record also shows, the Carrier contends, that Claimant was working though February 24, 2017 and began to mark off sick on February 27, 2017, using the same chiropractor to mark off sick. Claimant, according to the Carrier, "admitted that he did not submit any other documentation from a specialist or treating physician to justify his medical absence from work" and "admitted the chiropractor already had CSX COII forms in his office and submitted to CSX on his behalf to withhold him from service." Additionally, the Carrier notes, "Claimant admitted he had been seeing the chiropractor for six months and he was not seeking treatment or seeing any other doctor or specialist" and "he was aware other

CSXT employees were seeing the same chiropractor."

As to Claimant's testimony that he had an ATV accident that caused his alleged condition, the Carrier notes that Claimant drove 50 miles to see the chiropractor, and the fact remains that Dr. Heligman, after reviewing Claimant's "belated documentation provided during the hearing," testified that "all of the documents do not expand on any additional medical explanation for why someone would choose to be out as long as stated on their chiropractors' COII forms." As to the claim by the Organization that Dr. Heligman did not ask Claimant to see another physician for a second opinion and that the Carrier did not conduct a fitness for duty exam, the Carrier points to Dr. Heligman's testimony that "it was Claimant's responsibility to provide CSXT medical information" that would "justify" his "absence from work."

Finally, the Carrier asserts that the discipline imposed must be considered fully justified given the nature of the misconduct. It relies on cited arbitral authority in support of this point. It emphasizes that Claimant was part of "an intentional concerted effort" to "falsely ... [seek] treatment to expand ... [his] compensation and benefits."

**P.L.B. No.7539**
**Case No. 79**
**Award No. 79**

**OPINION OF THE BOARD**

The Board finds initially that there was no conduct on the part of the Carrier that violated Claimant's right to a fair and impartial hearing. The Organization's claims regarding a denial of the right to a fair and impartial hearing have been advanced on a record where the Board is unable to conclude that the Parties have in place an Agreement calling for the dismissal of charges when, as in the instant case, no prejudice occurred to either the Organization or the Claimant. Therefore, the Board will proceed to examine the merits of the charges.

Turning to the Charges, the Board first notes that it sits in review of the findings made by the Carrier on property and the Board, therefore, does not engage in *de novo* findings of fact. Accordingly, the Board accepts the Carrier's findings provided that they bear a rational relationship to the record evidence. Implicit in this observation is the Board's acceptance of credibility determinations made by the Carrier save for rare instances not present in the instant case. In reviewing the record, the Board also notes that any evidence submitted after the investigation by the Organization on behalf of a Claimant is properly not considered part of the record.

The Board notes that the record contains, in effect, a strong circumstantial case against Claimant based on the medical documentation from the chiropractor showing that Claimant

had only a minor physical problem, the lack of any supporting documentation from any other provider establishing that Claimant had any significant medical problem that would have justified the time Claimant marked off sick, the fact that the medical documentation from the chiropractor related to Claimant was remarkably similar to documentation pertaining to a number of other employees, and, of course, the timing of the claims asserted by Claimant and the other employees in connection with the June 16, 2017 furlough notice that became effective June 23, 2017. The testimony of Dr. Heligman on behalf of the Carrier, the Board finds, combined with all the other record evidence, negated the Organization's claim that the Charges against Claimant were based only on speculation or assumptions. Further, the Carrier acted within its rights when it rejected Claimant's testimony seeking to exculpate himself as self-serving. The Board finds, therefore, that the Charges against Claimant are fully established in the record. Based on the nature of the misconduct and the Carrier's Disciplinary Policy, the Board finds no reason to disturb the penalty imposed.

**P.L.B. No.7539**
**Case No. 79**
**Award No. 79**

**AWARD**

The claim of the Organization denied.

**DATE: 6/24/19**

Thomas Rinaldo
**THOMAS N. RINALDO, ESQ**
**NEUTRAL MEMBER**

**K. DONOVAN**
**CARRIER MEMBER**

**A. SANDBERG**
**ORGANIZATION MEMBER**

**PUBLIC LAW BOARD NO. 6965**

**SYSTEM COUNCIL NO. 9**
**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**

**and**

**CSX TRANSPORTATION, INC.**

**Case No. 121**

**Statement of Claim:**

> We, the Electrical Workers Committee, therefore request Electrical Worker Williams be compensated for any and all lost wages, including lost work opportunities, as a result of this unjust discipline; that Electrical Worker Williams be made whole for all fringe benefits, including but not limited to health, dental, disability and life insurance, vacation and retirement credits, to which he would be entitled by virtue of his continued employment as an Electrical Worker; and Electrical Worker Williams's personal record be expunged of any and all references to this unjust dismissal.

**Background**

Claimant Michael Williams—an employee with approximately three years' tenure—was employed as an Electrical Worker in the Louisville Division. By letter dated September 7, 2017, Claimant was instructed to attend an investigation:

> to develop the facts and place your responsibility, if any, in connection with information received on September 6, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 60 other craft employees, submitted potentially fraudulent documentation, and all circumstances related thereto.

An investigatory hearing was held on October 5, 2017. Plant Superintendent of the Huntington Locomotive Shop Curtis Shogren testified that furloughs were announced on June 16. He submitted a copy of the announcement, which listed the names of those employees whose positions were being abolished and those employees who were being placed on furlough, effective June 23, 2017. Claimant was listed as an employee who would be placed on furlough.

According to Shogren, there was talk around the shop even prior to the furlough notice that there might be a reduction in force.

Chief Medical Officer (CMO) Craig S. Heligman testified that he started to investigate documents received from the Huntington area after his office began receiving numerous Certifications of Ongoing Illness and Injury (COII) from the same two Huntington area chiropractors—Shannon Johnson and Daniel Carey—beginning on June 19, 2017. He found the circumstances suspicious not only with regard to the proximity in time to the furlough notice, but because the diagnoses and treatment recommendations on the COIIs were very similar. Many of the employees had been seen by the doctor in question on the same day as others. All of the employees initially were pulled out of work by the chiropractor they saw for two months, although they had been diagnosed only with minor musculoskeletal injuries that ordinarily would resolve in a matter of weeks. Many of the COIIs received were for employees who had been out prior to the furloughs, and now sought a two-month extension for their minor condition. It appeared to Heligman that there was an unusual and clear pattern of collusion between the two doctors and the employees to keep the employees off work. Heligman called Carey and Johnson, but neither returned his call.

Heligman stated that he concluded that the employees and chiropractors had engaged in a concerted effort to defraud the Carrier, the Railroad Retirement Board (RRB), and extended benefit insurance providers. If furloughed, an employee would receive only four months of health and welfare benefits. An employee who was out sick would receive health and welfare benefits for two years, benefits from the RRB, and supplemental benefits from an extended benefits insurance provider. For each such employee, Heligman testified, the cost to the Carrier could be approximately $16,000. Including the fifteen employees for which Carey sent in COIIs,

and the fifty-two for which Johnson sent in COIIs, the total cost to the Carrier could be potentially more than $1 million.

Claimant's last day of work was June 15, 2017. He was off work for rest days on June 16 and 17. Testifying on his own behalf, he asserted that he was never told that he had been furloughed. Rather, he was determined to be unable to work by Dr. Daniel Carey as of June 16, 2017. Claimant had been seeing Carey for various ailments since 2015, after hearing about him by word of mouth. Carey's office was ten minutes from Claimant's home. Claimant testified that he was not aware that other employees were also seeing Carey. While he had a primary care physician, he initially went to Carey after feeling that he had incurred a new injury to his back. He stated that he had purchased a welder unit on eBay, and had injured himself at some point prior to his last day of work while the seller assisted him in lifting the welder—some three hundred pounds—into the his vehicle's trunk.

Claimant testified that he saw Carey on July 10, 2017 and August 22, 2017, the dates of the two COIIs submitted to the Carrier by Carey. However, the August 22, 2017 COII stated contradictorily that Claimant had been under care from June 16 through August 21, 2017, while his duration of treatment was listed as having begun on June 18. The August 22, 2017 COII sought to extend Claimant's time off to September 24. Carey diagnosed Claimant with thoracic sprain/strain and intercostal neuritis in his middle back. The treatment recommended was spinal manipulation, therapeutic exercise, and deep tissue massage.

By letter dated August 23, 2017, Claimant was informed by Heligman that the Carrier would no longer accept documentation of injury from either Dr. Shannon Johnson or Dr. Daniel Carey. On September 5, 2017, Claimant saw his primary care physician at Moses Family Medicine, who recommended physical therapy. Claimant submitted documents showing his

participation in physical therapy at Riverside Physical Therapy three times per week. Claimant asserted that his primary care physician told him to continue seeing Carey. While Carey initially determined that Claimant's injury was in his middle back, Claimant's primary care physician found that it was in his lower back, and the notes from Claimant's physical therapy show pain in different areas depending on the date. On a document dated September 11, 2017, Carey noted that both the middle and lower back were implicated, adding that Claimant was continuing with physical therapy although the therapy appeared to increase Claimant's pain.

Recalled as witness, Heligman stated that according to the documents, Claimant had ongoing issues involving musculoskeletal pain since 2015. At various times, he had experienced pain in his upper back, middle back, lower back, and shoulder. Heligman noted that the physical therapy did not seem to be having any positive impact, nor had Claimant's range of motion improved. Claimant had been treated for similar minor musculoskeletal injuries on and off since 2015, yet during all that time had not been found to be unable to work—until he was furloughed. In Heligman's opinion, Claimant offered no explanation for why the alleged current injury was different and rendered him unable to work.

By letter dated November 2, 2017, Claimant was informed that he had been found guilty of violating Operating Rule 104.2 (a) (Dishonesty) and the Carrier's Code of Ethics (prohibiting fraud and theft), and had been dismissed.

**Contentions of the Parties**

The Carrier contends that the evidence adduced at hearing proved that Claimant fraudulently claimed sickness in an effort to obtain CSXT Health and Welfare benefits and other benefits. According to the Carrier, substantial evidence was presented demonstrating Claimant's

dishonesty. The Carrier argues that it is the employee's responsibility to provide documentation justifying the employee's absence from work, and Claimant failed to do so.

The Carrier further asserts that substantial evidence is relevant evidence that one might reasonably accept as adequate to support a conclusion. According to the Carrier, the evidence herein demonstrates that Claimant was involved with other employees in a scheme to defraud the Carrier by receiving benefits for minor conditions. Claimant's COII's from Carey were post-dated back to June 16 and 18, although Claimant had not seen Carey until July 10, 2017. Moreover, while Claimant reported to Carey pain in his middle back, the nurse practitioner who examined Claimant on September 5, 2017 recorded that Claimant's pain was in his lower back. As Dr. Heligman pointed out, pain from a sprain or strain would not move from one part of the back to another. It is well-established by arbitral precedent, the Carrier submits, that employee dishonesty is cause for dismissal. The Carrier argues that there is no reason to distinguish the instant matter from others initiated in response to Heligman's concerns, in which dismissals were sustained.

According to the Organization, the Carrier failed to prove that Claimant had violated 104.2 (a) or the Code of Ethics. The Organization emphasizes that Heligman had only suspicion as proof of the alleged concerted effort by employees to defraud the Carrier. The Organization submits that suspicion based on a perceived pattern showing a potential conspiracy to commit fraud is grossly insufficient to meet the Carrier's burden of proof, and the claim should be sustained.

**Opinion**

After reviewing the record in the instant matter, the Board finds Heligman's testimony to be persuasive regarding the existence of a clear pattern of abuse of benefits. Moreover, the

Board is persuaded that Claimant was a part of that pattern. Claimant submitted his first COII July 10, 2017, and admitted having seen Dr. Daniel Carey on that date. Carey nevertheless *backdated* the duration of care and treatment to June 16 or June 18—prior to Claimant's June 23, 2017 furlough. Claimant presented records demonstrating that he had been treated by Carey for various issues since 2015. Only after Claimant was furloughed, however, did Carey determine that Claimant was unable to work for an extended period of time, despite a lack of any documented evidence that the injury for which Claimant received treatment in 2017 was any different than those for which he had been previously treated. The only apparent change in circumstances is that on June 23, 2017, Claimant was furloughed, while he had not been furloughed on prior occasions.

Moreover, with the history of ailments Claimant had accrued since 2015, one would have expected Claimant to recognize that it was foolhardy to attempt to lift a welding unit weighing three hundred pounds, even with assistance. Furthermore, Claimant's alleged condition had not improved during the time in which he had received treatment from Carey. Nevertheless, he only sought a second opinion from his primary care physician after receiving Dr. Heligman's letter stating that Carey's documentation would no longer be acceptable as proof of disability.

Adding to the suspicious nature of Claimant's malady, his reports to his physical therapists reflect a pain that seems to shift around. As Dr. Heligman persuasively testified, if one has pain from an injury, the pain tends to remain localized at the site of the injury. It does not move around apparently at random. The documents that Claimant submitted in support of his assertion that he has a disabling injury put into doubt whether Claimant had any injury at all, where such an injury might be located, and what sort of treatment would assist in healing the injury.

Claimant had been furloughed. The Board is satisfied that he developed his sudden disability—on an uncertain date—in order to avoid the limitation of his health and welfare benefits to only four months. The Board is persuaded that Claimant was involved in a concerted effort to defraud the Carrier. He thus was dishonest in violation of Rule 104.2 (a), and committed fraud in violation of the Carrier's Code of Ethics. The Board concludes that Claimant's dismissal was justified.

**Award:**

The claim is denied.

JOAN PARKER, Neutral Member

CARRIER MEMBER

DATED: 1/16/2019

ORGANIZATION MEMBER

DATED: 12/21/18

**PUBLIC LAW BOARD NO. 7768**

AWARD NO. 13

CASE NO. 13
CSXT LCAT File No. 2017-228570

**PARTIES TO THE DISPUTE:** **International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers**

**-and-**

**CSX Transportation, Inc.**

ARBITRATOR: Gerald E. Wallin

DECISION: Claim denied.

STATEMENT OF CLAIM: Appeal of Claimant TM Witt, ID 250668

> "1. That under the Current and Controlling Agreement, Boilermaker(s) ML Potter,TM Witt, SM Morrison and DE Brown was *[sic]* unjustly dismissed from service without just cause.
>
> 2. That accordingly, Boilermaker(s) ML Potter,TM Witt, SM Morrison and DE Brown be made whole so that they do not suffer loss due to this unjust discipline. This is to include all lost time wages, with seniority rights unimpaired, vacation and qualification days reinstated, health and welfare, hospital and life insurance benefits paid until date returned to service with the personal record expunged of any reference to the matter."

FINDINGS OF THE BOARD:

The Board, upon the whole record and on the evidence, finds that the parties herein are Carrier and Employees within the meaning of the Railway Labor Act, as amended; that this Board is duly constituted by agreement of the parties; that the Board has jurisdiction over the dispute, and that the parties were given due notice of the hearing.

Claimant TM Witt was dismissed by letter dated September 21, 2017. At the time of his dismissal, claimant had some six years of service with the Carrier. His work record was clear of any prior disciplinary entries.

As suggested by the above Statement of Claim, a single investigation was held August 23, 2017 involving claimant and three other members of the Organization. All four employees received notices of charges that, in substance, were identical. The notices read, in pertinent part, as follows:

* * *

> The purpose of the investigation is to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances thereto.

* * *

According to the record, rumors of a furlough of employees at the Carrier's mechanical operations in Huntington, West Virginia had been circulating during the early part of 2017. The rumors came true when, on June 16, 2017, furlough notices were posted to become effective on June 23, 2017. The notices projected the furlough of eleven members of the Boilermaker Organization. However, none of the four subjects of the investigation in question were among those listed.

In total, the furlough notices projected the furlough of more than sixty-five employees spread over seven different crafts. Public Law Boards 7879 (Cases 1-10) and 7655 (Cases 104 and 106) heard the dismissal cases of several of these employees in the BLET and NCF&O crafts. According to the awards of those two Boards, each of the affected employees received charge notices identical in substance to the notices involved with the investigation in question. The descriptive text of the awards of the two Boards strongly suggests that the Carrier's evidence was substantially similar to that presented in the instant investigation. Those awards can be reviewed for additional detail.

According to the evidence, if an employee is off work due to illness or injury, they continue on paid disability benefits and do not go into furlough status until after they are fit to return to duty. The disability plan can continue paid benefits for 4 months and then another benefit plan can extend that period for up to 2 years.

According to the Carrier's evidence, within days of the posting of the furlough notices, the Carrier's Chief Medical Officer (CMO) received documents from two chiropractors in the region that saw more than fifty employees for a variety of alleged off-duty injuries involving, in the CMO's opinion as a practitioner of Occupational Medicine, minor musculoskeletal sprains or strains. In the CMO's opinion, none of the alleged conditions, if genuine, should have involved recovery periods of more than a few days to a week or so. The chiropractors, however, had authorized a consistent period of absence from work of two months for each employee. By letter dated July 14, 2017, the CMO alerted the Carrier and the benefit providers of his suspicions that employees were fraudulently claiming injuries to avoid the loss of pay associated with going into furlough status. According to his testimony at the investigation, the number of injury claims following the posting of the furlough notices was abnormally large. A week later, the CMO's letter dated July 21, 2017 reported another 10 similarly suspicious employee claims, which included the four employees in the subject investigation. A final letter identified four more employees.

The thrust of the CMO's testimony was that employees who wanted to be excused from work for a two-month period, or, in some cases, successive two-month periods, would go to one of the two chiropractors in question and falsely claim to have sustained a minor sprain or strain for the purpose of obtaining a two-month excuse from working.

Of the four employees involved in the instant investigation, all saw one of the two suspect chiropractors between June 21 and July 19, 2017 and all received absence excuses from work for two months. In Claimant Witt's case, he went to one of the chiropractors on June 21st and received an excuse for two more months. He had been off work since the previous May 4th.

The record of investigation in question consists of nearly 300 pages of testimony transcript and exhibits. It has been thoroughly reviewed. In addition, this Board has reviewed all of the contentions

raised by the parties during their handling of the dispute on the property.

Our review of the record does not disclose any irregularities of a procedural nature in the handling of the matter on the property. On the merits, the Organization strenuously contended the Carrier failed to sustain its burden of proving that claimant violated the Carrier's dishonesty rule or the Code of Ethics as charged.

The Carrier's burden of proof in disciplinary disputes is to present "substantial" evidence to support its discipline of an employee. In its 1938 decision in Consolidated Edison v. Labor Board, the United States Supreme Court defined substantial evidence to be "... such relevant evidence as a reasonable mind might accept as adequate to support a 'conclusion'". To satisfy the substantial evidence test, it is not necessary that the evidence is undisputed. In addition, circumstantial evidence may be relied upon to prove charges if it is sufficiently compelling.

The role of a Public Law Board is appellate in nature. We do not sit to reconcile competing bodies of evidence and contentions to determine which is the more persuasive. Instead, our authority is limited to reviewing the record of the investigation and the on-property handling of the dispute for the narrow purpose of determining whether the Carrier's disciplinary decision was supported by substantial evidence in the record. In other words, could a reasonable mind accept the Carrier's evidence as the requisite support for its disciplinary action against the claimant?

After careful review of the record in this matter, we find the Carrier's disciplinary action of claimant is supported by substantial evidence. The nature of claimant's misconduct is categorized under the Carrier's performance policy as a Major Offense. Major Offenses are those that warrant dismissal from employment for even a single offense.

Given the state of the record before us, we do not find any proper basis for disturbing the Carrier's disciplinary decision. As a result, we must deny the claim.

AWARD:

The Claim is denied.

Gerald E. Wallin, Chairman
and Neutral Member

Chris Browning,
Organization Member

Penny Dreher,
Carrier Member

DATE: March 20, 2019

**NATIONAL MEDIATION BOARD**

**PUBLIC LAW BOARD NO. 7163**
**CASE NO. 396**

| | | |
|---|---|---|
| **PARTIES** | **)** | **BROTHERHOOD OF MAINTENANCE OF WAY** |
| | **)** | **EMPLOYES DIVISION – IBT RAIL CONFERENCE** |
| | **)** | |
| **TO** | **)** | **VS.** |
| | **)** | |
| **DISPUTE** | **)** | **CSX TRANSPORTATION, INC.** |

**STATEMENT OF CLAIM:**

"Claim of the System Committee of the Brotherhood that:

1. The Carrier's discipline (dismissal) imposed upon Mr. M. Woods, by letter dated September 1, 2017, in connection with allegations that he was in violation of CSX Transportation Operating Rule 104.2(a) and CSX Code of Ethics was arbitrary, unsupported, unwarranted and in violation of the Agreement (System File D604317/2017-226590 CSX).

2. As a consequence of the violation referred to in Part 1 above, Claimant M. Woods must have all mention of this matter removed from his personal record, be immediately returned to service with rights and benefits unimpaired and be compensated for all loss suffered. This loss includes, but is not limited to, any straight time, overtime, double-time or other Carrier provided compensation lost as a consequence of the discipline. It also includes healthcare, credit rating, investment, banking mortgage/rent or other financial loss suffered as a consequence of the discipline."

**FINDINGS:**

The Board, upon the whole record and all the evidence, finds that: the Carrier and the Employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved on June 21, 1934. This Board has jurisdiction over this dispute involved herein. Parties to said dispute were given due notice of hearing.

**STATEMENT OF FACTS:**

Claimant, M. M. Woods was hired on September 13, 2010. Claimant was charged with dishonesty, as delineated in Rule 104.2(a). Specifically, the Claimant was charged with his involvement with a scheme to defraud the Carrier in a medical fraud involving sixty-seven (67)

employees, seeking sickness benefits through deceit. The investigative hearing was held on August 10, 2017. It was revealed at that juncture that there was a force reduction in the Huntington, West Virginia area and close proximity in time the Carrier received sixty-seven (67) Certificates of Ongoing Illness and Injury (COII) involving two (2) medical providers. Subsequently, these employees had a concurrent right to file for sickness benefits by way of the Railroad Retirement Board for up to two (2) years. This cost the Carrier millions of dollars. The Claimant sought COII, but was not affected by the furlough. The record reflects a pattern of abuse by the Claimant and concurrently with the other sixty-seven (67) participant-employees.

It is the position of the Organization that the Carrier's medical officer should be required to testify in person for a claim of this magnitude, not over the phone. The Organization also argues that the Carrier's medical officer and hearing officer were biased and unfair, when the medical officer refused to argue with the interpretation of medical documentation and opinions cited by the Organization. Lastly, the Organization asserts that the Carrier had already predetermined the guilt of the Claimant prior to the investigative hearing. As to the merit of the claim, the Organization retorts that the Claimant sustained legitimate on-the-job injuries requiring medical treatment on June 20, 2017 and was subsequently denied follow-up treatment, as required. Thus, the Organization concludes that the Claimant did not violate CSX's Code of Ethics and should not be dismissed for defrauding the Carrier, as CSX contends.

On the other hand, the Carrier counters that it is clear that in accordance with the Carrier's Individual Development and Personal Accountability Policy (IDPAP), a Major Offence can result in dismissal. Moreover, the Carrier asserts that fraud is the type of dishonesty that routinely results in termination. Here, the Claimant was inextricably involved in a scheme to defraud the Carrier. In light of the details earlier described in the facts, the Carrier requests the Board to consider the Claimant's dismissal to be justified under the circumstances enunciated. In regards to the procedural irregularities noted by the Organization, the Carrier retorts that the Claimant was given a fair and impartial hearing. Lastly, the Carrier points out that a telephonic testimony is now widely acceptable, especially at an administrative hearing as the investigative hearing is categorized.

**OPINION OF THE BOARD:**

After a careful analysis of the investigation, the Board finds that dismissal of the Claimant based upon his engagement with a dishonest medical fraudulent scheme in a pattern and practice involving sixty-seven (67) employees to be an egregious act. In light of his prior charge of insubordination and his short tenure with the Carrier, the Claimant's termination is appropriate under the Individual Development and Personal Accountability Policy (IDPAP) even for the first offense.

**AWARD:**

The claim is denied. Claimant M. M. Woods is hereby terminated.

USCA4 Appeal: 21-2051 Doc: 32-2 Filed: 07/30/2022 Pg: 338 of 420

PLB 7163 | Case No. 396

Dr. A. Y McKissick, Referee

Carrier Member

Organization Member

**DATE:** February 27, 2020

Page 3 of 3
USCA4 866
CSXT(ADKINS)020270



DEFS' EX 7

112 South Ramsey Street
Charlotte, NC. 28208

S. Kuhner
General Superintendent
Northeast Region

August 31, 2017
File Number 313606 **– Discipline**

**EXPRESS MAIL EF 181466597 US**

T L ABDON
CONDUCTOR ID NO. 623782
57 YELLOWBIRD ST
GREENUP, KY 41144-7794

Reference the formal investigation held in CSX Coal Hump Bldg., Second Floor, Russell, Kentucky, commencing at 1208 hours (CSX Time), on August 4, 2017, to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

As a result of the testimony and other evidence presented in this investigation, it has been determined that you violated CSX Transportation Operating Rule 104.2 and CSX Code of Ethics.

For your violation of the above incident and due to the serious nature of the infraction, you are **dismissed** in all capacities from the service of CSX Transportation effective immediately.

Arrange to return any company materials in your possession to the nearest CSX Location.

The importance of working safely and strict adherence to the operating rules cannot be emphasized too strongly.

S. Kuhner

**Enclosure**: Transcript with exhibits (1)

/elm

cc: P/R: Abdon, T. L., 623782
DL Crew Management
Florence Division
J. S. Reid, Local Chairman- ***Transcript and exhibits accessible via electronic FACTS access - EF 181466610 US***



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF196380212US**

B S ADKINS
FIREMAN/OILER ID NO. 236278
1163 CRAIG RD
WAYNE, WV 25570

**RE: File Number 313635 – Discipline**

Dear B S Adkins:

A formal investigation was held at 0900 hours on August 8, 2017 in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org- Att: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196381147US**

J R ADKINS
ELECTRICIAN ID NO. 229559
174 FRYE RIDGE RD
RANGER, WV 25557

**RE: File Number 313710 - Discipline**

Dear J R Adkins:

A formal investigation was held at 0900 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits



Case 3:18-cv-00321 Document 360-7 Filed 05/13/21 Page 4 of 56 PageID #: 17511

B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF185649026US**

B D AKERS
CARMAN ID NO. 628955
497 ARCHERY BR
GREENUP, KY 41144-8907

**RE: File Number 313693 – Discipline**

Dear B D Akers:

A formal investigation was held at 1400 hours on August 10, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: J. Cox, Asst. National Rep - coxj@tcunion.org – EF196379951US - Enc: Transcipt/Exhibits on USB Drive 5 Employees
D. Grissom, National Rep. - grissomd@tcunion.org – Atts: Transcipt/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF185648873US**

J R BAKER
BOILERMAKER/BLACKSMITH ID NO. 274769
86 BURGESS ST
GREENUP, KY 41144

**RE: File Number 313660 – Discipline**

Dear J R Baker:

A formal investigation was held at 1300 hours on August 9, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. Browning, General Chairman - Cbrowning@boilermakers.org – EF131463712US - Enc: Transcipt/Exhibits on USB Drive 7 Employees



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 15, 2017

**EXPRESS MAIL EF196380265US**

G P BARBER
CARMAN ID NO. 628703
5864 LICK RUN 1 LYRA
WHEELERSBURG, OH 45694

**RE: File Number 313735 - Discipline**

Dear G P Barber:

A formal investigation was held at 0900 hours on August 9, 2017 in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Cox, Asst. National Rep. - coxj@tcunion.org - Atts: Transcript/Exhibits
D. Grissom, National Rep. - grissomd@tcunion.org - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF131463672US**

J A BARKER
FIREMAN/OILER ID NO. 234784
1709 TURNER ST
FLATWOODS, KY 41139-1265

**RE: File Number 313629 – Discipline**

Dear J A Barker:

A formal investigation was held at 0630 hours on August 8, 2017 in the Conference Room 203 22nd Street and 6th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org – EF131463686US - Enc: Transcipt/Exhibits on USB Drive 6 Employees

**Where Safety is First**



Case 3:18-cv-00321 Document 360-7 Filed 05/13/21 Page 8 of 56 PageID #: 17515

B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF185649012US**

J W BILLS
CARMAN ID NO. 623762
2372 COUNTY ROAD 144
SOUTH POINT, OH 45680-8997

**RE: File Number 313731 – Discipline**

Dear J W Bills:

A formal investigation was held at 1400 hours on August 7, 2017 in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: J. Cox, Asst. National Rep - coxj@tcunion.org – EF196379979US - Enc: Transcipt/Exhibits on USB Drive 4 Employees
D. Grissom, National Rep. - grissomd@tcunion.org – Atts: Transcipt/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF185648895US**

J L BLAIN
BOILERMAKER/BLACKSMITH ID NO. 273819
4830 5 MILE RD
GALLIPOLIS FERRY, WV 25515

**RE: File Number 313661 – Discipline**

Dear J L Blain:

A formal investigation was held at 1300 hours on August 9, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. Browning, General Chairman - Cbrowning@boilermakers.org – EF131463712US - Enc: Transcipt/Exhibits on USB Drive 7 Employees



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196381093US**

J A BLAKE
ELECTRICIAN ID NO. 273279
1044 1ST AVE
GALLIPOLIS, OH 45631

**RE: File Number 313823 - Discipline**

Dear J A Blake:

A formal investigation was held at 0900 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits



Case 3:18-cv-00321 Document 360-7 Filed 05/13/21 Page 11 of 56 PageID #: 17518

B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379792US**

D E BROWN
BOILERMAKER/BLACKSMITH ID NO. 626080
135 COLLINS LN
GREENUP, KY 41144-6342

**RE: File Number 313704 - Discipline**

Dear D E Brown:

A formal investigation was held at 0900 hours (CSX Time), on August 23, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com - Atts: Transcript/Exhibits
C. Browning, General Chairman - Cbrowning@boilermakers.org - Atts: Transcript/Exhibits

**Where Safety is First**



N. M. Hagen
Division C&S Engineer
C&S Louisville
3131A Spring Grove Avenue
Cincinnati, Ohio 45225

September 13, 2017
**Discipline**

**PRIORITY MAIL 2312 3170 0000 3516 2112**

M D CAMPBELL
COMM MAINTAINER ID NO. 539650
12670 HIGHWAY 1
WEBBVILLE, KY 41180

**RE: File Number 313808**

Dear M D Campbell:

This is in reference to a hearing that was held on Tuesday, August 15, 2017 in Russell, Kentucky in regards to Carrier file 313808, involving charges, in connection with an incident that occurred in the vicinity of Russell, Kentucky, with information received from the CSXT Chief Medical Officer on July 14, 2017, that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

A thorough review of the transcript and exhibits demonstrates that during the hearing you and your representative were allowed to cross-examine all Carrier witnesses and present any witnesses, documents and testimony on your behalf, in accordance with your contractual due process rights. All objections were properly addressed by the conducting officer during the course of the hearing.

Substantial evidence was revealed in the hearing demonstrating that you are guilty of violating CSX Transportation Operating Rule 104.2 and the CSX Code of Ethics.

**Upon my analysis of all factors related herein, the discipline to be assessed is your immediate dismissal in all capacities from CSXT Transportation.**

*N. M. Hagen*
Division C&S Engineer

asb

**Enclosure:** Transcript & Exhibits

cc: C. L. Griffith, Asst. Division C&S Engineer
J. J. Giuliano, General Chairman IBEW (Transcript & Exhibits) **2312 3170 0000 3516 2105**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379850US**

J D CARPENTER
MACHINIST ID NO. 267785
12045 CO. RD. 14
WATERLOO, OH 45688

**RE: File Number 313720 - Discipline**

Dear J D Carpenter:

A formal investigation was held at 0900 hours (CSX Time), on August 22, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. M Perry, General Chairman - mike.perry@districtlodge19.com - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196380155US**

Q E CHRISTIAN
MACHINIST ID NO. 277683
537 LITTLE HARTS CREEK
HARTS, WV 25524

**RE: File Number 313718 - Discipline**

Dear Q E Christian:

A formal investigation was held at 0900 hours (CSX Time), on August 22, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. M Perry, General Chairman - mike.perry@districtlodge19.com - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 15, 2017

**EXPRESS MAIL EF196380274US**

M L CLARK
CARMAN ID NO. 621281
515 POWELL LN. HIGHLANDS APT #6
FLATWOODS, KY 41139-1952

**RE: File Number 313709 - Discipline**

Dear M L Clark:

A formal investigation was held at 0900 hours on August 9, 2017 in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Cox, Asst. National Rep. - coxj@tcunion.org - Atts: Transcript/Exhibits
D. Grissom, National Rep. - grissomd@tcunion.org - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF185649088US**

R H CRAYCRAFT
CARMAN ID NO. 623249
172 CRAYCRAFT LN
GREENUP, KY 41144-6691

**RE: File Number 313732 – Discipline**

Dear R H Craycraft:

A formal investigation was held at 1400 hours on August 7, 2017 in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: J. Cox, Asst. National Rep - coxj@tcunion.org – EF196379979US - Enc: Transcipt/Exhibits on USB Drive 4 Employees
D. Grissom, National Rep. - grissomd@tcunion.org – Atts: Transcipt/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF185649009US**

J R DEAL
BOILERMAKER/BLACKSMITH ID NO. 252380
RT. 1 BOX 128
GLENWOOD, WV 25520

**RE: File Number 313659 – Discipline**

Dear J R Deal:

A formal investigation was held at 1300 hours on August 9, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. Browning, General Chairman - Cbrowning@boilermakers.org – EF131463712US - Enc: Transcipt/Exhibits on USB Drive 7 Employees

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF131463655US**

C C DOWDY
FIREMAN/OILER ID NO. 268429
4920 TAYLOR LN
CATLETTSBURG, KY 41129

**RE: File Number 313630 – Discipline**

Dear C C Dowdy:

A formal investigation was held at 0630 hours on August 8, 2017 in the Conference Room 203 22nd Street and 6th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org – EF131463686US - Enc: Transcipt/Exhibits on USB Drive 6 Employees



Case 3:18-cv-00321 Document 360-7 Filed 05/13/21 Page 19 of 56 PageID #: 17526

B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF196379903US**

J M FERGUSON
SHEETMETAL WORKER ID NO. 229155
605 FERRY AVE UNIT 514
WORTHINGTON, KY 41183-5033

**RE: File Number 313648 – Discipline**

Dear J M Ferguson:

A formal investigation was held at 0900 hours on August 9, 2017 in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. J. Fraley, General Chairman - jfraley@smart-gc1.org - Att: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF131463638US**

J L FLOCKER
FIREMAN/OILER ID NO. 628968
PO BOX 161
WORTHINGTON, KY 41183-0161

**RE: File Number 313631 – Discipline**

Dear J L Flocker:

A formal investigation was held at 0630 hours on August 8, 2017 in the Conference Room 203 22nd Street and 6th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org – EF131463686US - Enc: Transcipt/Exhibits on USB Drive 6 Employees

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF185649030US**

J K FRASURE
CARMAN ID NO. 628732
1201 HICKORY LN
RACELAND, KY 41169-2101

**RE: File Number 313824 – Discipline**

Dear J K Frasure:

A formal investigation was held at 1400 hours on August 7, 2017 in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: J. Cox, Asst. National Rep - coxj@tcunion.org – EF196379979US - Enc: Transcipt/Exhibits on USB Drive 4 Employees
D. Grissom, National Rep. - grissomd@tcunion.org – Atts: Transcipt/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196381133US**

E F GLOWACKI
ELECTRICIAN ID NO. 273707
107 PINE STREET
HURRICANE, WV 25526

**RE: File Number 313712 - Discipline**

Dear E F Glowacki:

A formal investigation was held at 0900 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379863US**

G T HAMM
MACHINIST ID NO. 267718
6501 FRENDSHIP RD.
CATLETTSBURG, KY 41129

**RE: File Number 313721 - Discipline**

Dear G T Hamm:

A formal investigation was held at 0900 hours (CSX Time), on August 22, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. M Perry, General Chairman - mike.perry@districtlodge19.com - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 15, 2017

**EXPRESS MAIL EF196380288US**

D A HUTCHINSON
CARMAN ID NO. 978419
3386 STATE ROUTE 2070
SOUTH SHORE, KY 41175-8342

**RE: File Number 313738 - Discipline**

Dear D A Hutchinson:

A formal investigation was held at 0900 hours on August 9, 2017 in the CSX Coal Hump Building, 2nd Floor Conference Room of 440 Vernon Street, Russell, KY to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Cox, Asst. National Rep. - coxj@tcunion.org - Atts: Transcript/Exhibits
D. Grissom, National Rep. - grissomd@tcunion.org - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF185648913US**

J JEFFERS
BOILERMAKER/BLACKSMITH ID NO. 274346
1803 JEFFERSON BLVD.
POINT PLEASANT, WV 25550

**RE: File Number 313662 – Discipline**

Dear J Jeffers:

A formal investigation was held at 1300 hours on August 9, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. Browning, General Chairman - Cbrowning@boilermakers.org – EF131463712US - Enc: Transcipt/Exhibits on USB Drive 7 Employees



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379758US**

E O JORDAN
ELECTRICIAN ID NO. 277088
420 JISCO WEST RD
JACKSON, OH 45640

**RE: File Number 313741 - Discipline**

Dear E O Jordan:

A formal investigation was held at 1400 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF131463765US**

G H KELLEY
FIREMAN/OILER ID NO. 277812
1813 COUNTY RD 5
KITTS HILL, OH 45645

**RE: File Number 313632 – Discipline**

Dear G H Kelley:

A formal investigation was held at 0630 hours on August 8, 2017 in the Conference Room 203 22nd Street and 6th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org – EF131463686US - Enc: Transcipt/Exhibits on USB Drive 6 Employees

**Where Safety is First**



1200 Don Hutson Blvd
Louisville, KY. 40219

N. M. Male
General Superintendent
Midwest Region

September 1, 2017
File Number 313607 **– Discipline**

**EXPRESS MAIL EF 194876715 US**

C M LITTLE
CONDUCTOR ID NO. 539659
902 RACELAND AVE
RACELAND, KY 41169

Reference the formal investigation held in CSX Coal Hump Bldg., Second Floor, Russell, Kentucky, commencing at 1010 hours (CSX Time), on August 4, 2017, to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

As a result of the testimony and other evidence presented in this investigation, it has been determined that you violated CSX Transportation Operating Rule 104.2 and CSX Code of Ethics.

For your violation of the above incident and due to the serious nature of the infraction, you are **dismissed** in all capacities from the service of CSX Transportation effective immediately.

Arrange to return any company materials in your possession to the nearest CSX Location.

The importance of working safely and strict adherence to the operating rules cannot be emphasized too strongly.

N. M. Male

N. M. Male

**Enclosure**: Transcript with exhibits (1)

/elm

cc: P/R: Little, C. M., 539659
DL Crew Management
Louisville Division
S. Kiser, Local Chairman- ***Transcript and exhibits accessible via electronic FACTS access –EF 194876701 US***



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF196380190US**

S L MADDIX
CARMAN ID NO. 254051
PO BOX 1139
OLIVE HILL, KY 41164-1139

**RE: File Number 313715 – Discipline**

Dear S L Maddix:

A formal investigation was held at 1400 hours on August 10, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: J. Cox, Asst. National Rep - coxj@tcunion.org – EF196379951US - Enc: Transcipt/Exhibits on USB Drive 5 Employees
D. Grissom, National Rep. - grissomd@tcunion.org – Atts: Transcipt/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF196380186US**

D R MANIS
CARMAN ID NO. 622020
136 WELCH LN
GREENUP, KY 41144-6378

**RE: File Number 313716 – Discipline**

Dear D R Manis:

A formal investigation was held at 1400 hours on August 10, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: J. Cox, Asst. National Rep - coxj@tcunion.org – EF196379951US - Enc: Transcipt/Exhibits on USB Drive 5 Employees
D. Grissom, National Rep. - grissomd@tcunion.org – Atts: Transcipt/Exhibits



Case 3:18-cv-00321 Document 360-7 Filed 05/13/21 Page 31 of 56 PageID #: 17538

B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF196380226US**

J C MARSHALL
FIREMAN/OILER ID NO. 625076
1500 PRESTON AVENUE
GREENUP, KY 41144

**RE: File Number 313636 – Discipline**

Dear J C Marshall:

A formal investigation was held at 0900 hours on August 8, 2017 in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org- Att: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF196380230US**

H R MAYNARD
FIREMAN/OILER ID NO. 536041
194 CLAYTON BRANCH RD.
LOUISA, KY 41230

**RE: File Number 313637 – Discipline**

Dear H R Maynard:

A formal investigation was held at 0900 hours on August 8, 2017 in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org- Att: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379801US**

S M MORRISON
BOILERMAKER/BLACKSMITH ID NO. 273044
6086 KYLE LANE
HUNTINGTON, WV 25702

**RE: File Number 313706 - Discipline**

Dear S M Morrison:

A formal investigation was held at 0900 hours (CSX Time), on August 23, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com - Atts: Transcript/Exhibits
C. Browning, General Chairman - Cbrowning@boilermakers.org - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF131464219US**

R E MOSTELLER
BOILERMAKER/BLACKSMITH ID NO. 267842
43 OLD COUNTY 5 RD.
SOD, WV 25564

**RE: File Number 313703 – Discipline**

Dear R E Mosteller:

A formal investigation was held at 1300 hours on August 9, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

/ksm

Enc: Transcipt/Exhibits

cc: C. Browning, General Chairman - Cbrowning@boilermakers.org – EF131463712US - Enc: Transcipt/Exhibits on USB Drive 7 Employees



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379846US**

E R MULLINS
MACHINIST ID NO. 273369
270 CYNTHIA CHAPEL ROAD
LOUISA, KY 41230

**RE: File Number 313724 - Discipline**

Dear E R Mullins:

A formal investigation was held at 0900 hours (CSX Time), on August 22, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. M Perry, General Chairman - mike.perry@districtlodge19.com - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF131463743US**

J R NAPIER
FIREMAN/OILER ID NO. 277837
5230 MILLS BRANCH ROAD
LAVALETTE, WV 25535

**RE: File Number 313633 – Discipline**

Dear J R Napier:

A formal investigation was held at 0630 hours on August 8, 2017 in the Conference Room 203 22nd Street and 6th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org – EF131463686US - Enc: Transcipt/Exhibits on USB Drive 6 Employees

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379885US**

M S OWENS
MACHINIST ID NO. 522157
88 PRIVATE DR 2943 CO RD12
PROCTORVILLE, OH 45669

**RE: File Number 313719 - Discipline**

Dear M S Owens:

A formal investigation was held at 0900 hours (CSX Time), on August 22, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. M Perry, General Chairman - mike.perry@districtlodge19.com - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196381120US**

K L PALMER
ELECTRICIAN ID NO. 242399
1627 S 3RD ST
IRONTON, OH 45638-2268

**RE: File Number 313755 - Discipline**

Dear K L Palmer:

A formal investigation was held at 0900 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF131463726US**

S D PATTERSON
FIREMAN/OILER ID NO. 246601
908 FEDERAL WAY
FLATWOODS, KY 41139

**RE: File Number 313634 – Discipline**

Dear S D Patterson:

A formal investigation was held at 0630 hours on August 8, 2017 in the Conference Room 203 22nd Street and 6th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: R. Edmonds, General Chairman - edmondsr@ncfo.org – EF131463686US - Enc: Transcipt/Exhibits on USB Drive 6 Employees

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF185648935US**

M D POTTER
BOILERMAKER/BLACKSMITH ID NO. 267822
355 HUGH ST
GRAYSON, KY 41143

**RE: File Number 313663 – Discipline**

Dear M D Potter:

A formal investigation was held at 1300 hours on August 9, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. Browning, General Chairman - Cbrowning@boilermakers.org – EF131463712US - Enc: Transcipt/Exhibits on USB Drive 7 Employees

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379829US**

M L POTTER
BOILERMAKER/BLACKSMITH ID NO. 252378
734 CARDINAL POINT RD
GREENUP, KY 41144-8273

**RE: File Number 313707 - Discipline**

Dear M L Potter:

A formal investigation was held at 0900 hours (CSX Time), on August 23, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com - Atts: Transcript/Exhibits
C. Browning, General Chairman - Cbrowning@boilermakers.org - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196381102US**

S H PRESTON
ELECTRICIAN ID NO. 273403
2100 RT 3224
RIVER, KY 41254

**RE: File Number 313754 - Discipline**

Dear S H Preston:

A formal investigation was held at 0900 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

October 27, 2017

**EXPRESS MAIL EF194865261US**

J P ROWE
MACHINIST ID NO. 223145
983 TURNER RD
HUNTINGTON, WV 25705

**RE: File Number 315262 - Discipline**

Dear J P Rowe:

A formal investigation was held at 0900 hours (CSX Time), on October 5, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, West Virginia to determine the facts in connection with information received on September 20, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: W. Ringkamp, Local Chairman - wringkamp@yahoo.com - Atts: Transcript/Exhibits
A. W. Sandberg, General Chairman - andrew.sandberg@districtlodge19.com - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196381155US**

D A SARGENT
ELECTRICIAN ID NO. 272564
513 MCGUIRE CEMETERY RD.
GREENUP, KY 41144

**RE: File Number 313713 - Discipline**

Dear D A Sargent:

A formal investigation was held at 0900 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits



Case 3:18-cv-00321 Document 360-7 Filed 05/13/21 Page 45 of 56 PageID #: 17552

B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF196379996US**

E K SPEAKS
SHEETMETAL WORKER ID NO. 539836
812 JEFFERSON AVE
WURTLAND, KY 41144

**RE: File Number 313645 – Discipline**

Dear E K Speaks:

A formal investigation was held at 0900 hours on August 9, 2017 in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. J. Fraley, General Chairman - jfraley@smart-gc1.org - Att: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 6, 2017

**PRIORITY MAIL EXPRESS EF196380019US**

D A STEPHENS
SHEETMETAL WORKER ID NO. 273371
104 MARY COURT
RUSH, KY 41168

**RE: File Number 313646 – Discipline**

Dear D A Stephens:

A formal investigation was held at 0900 hours on August 9, 2017 in Conference Room 203, Huntington Loco Shop, 22nd Street and 6th Avenue, Huntington, West Virginia to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. J. Fraley, General Chairman - jfraley@smart-gc1.org - Att: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379877US**

D M STEWART
MACHINIST ID NO. 573868
605 NEWSOME ST
ASHLAND, KY 41102-4278

**RE: File Number 313740 - Discipline**

Dear D M Stewart:

A formal investigation was held at 0900 hours (CSX Time), on August 22, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. M Perry, General Chairman - mike.perry@districtlodge19.com - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196380305US**

C C STILTNER
FIREMAN/OILER ID NO. 232870
406 GREENHILL RD
ASHLAND, KY 41102

**RE: File Number 313756 - Discipline**

Dear C C Stiltner:

A formal investigation was held at 1600 hours (CSX Time), on August 22, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: N. Henson, Local Chairman - bigwheel03@aol.com - Atts: Transcript/Exhibits
R. Edmonds, General Chairman - edmondsr@ncfo.org - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF196380209US**

J R STINNETT
CARMAN ID NO. 623386
PO BOX 671
GRAYSON, KY 41143-0671

**RE: File Number 313717 – Discipline**

Dear J R Stinnett:

A formal investigation was held at 1400 hours on August 10, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

/ksm

Enc: Transcipt/Exhibits

cc: J. Cox, Asst. National Rep - coxj@tcunion.org – EF196379951US - Enc: Transcipt/Exhibits on USB Drive 5 Employees
D. Grissom, National Rep. - grissomd@tcunion.org – Atts: Transcipt/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF196380172US**

T A THAYER
CARMAN ID NO. 273373
155 MANILLA CRK RD
POCA, WV 25159

**RE: File Number 313714 – Discipline**

Dear T A Thayer:

A formal investigation was held at 1400 hours on August 10, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: J. Cox, Asst. National Rep - coxj@tcunion.org – EF196379951US - Enc: Transcipt/Exhibits on USB Drive 5 Employees
D. Grissom, National Rep. - grissomd@tcunion.org – Atts: Transcipt/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379775US**

T L THORNSBERRY
ELECTRICIAN ID NO. 223144
180 HALLS RIDGE RD
WELLINGTON, KY 40387

**RE: File Number 313870 - Discipline**

Dear T L Thornsberry:

A formal investigation was held at 1400 hours (CSX Time), on August 24, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 21, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 5, 2017

**PRIORITY MAIL EXPRESS EF131464222US**

J L WALLACE
BOILERMAKER/BLACKSMITH ID NO. 267945
332 CHAPEL CUT RD
GRAYSON, KY 41143

**RE: File Number 313702 – Discipline**

Dear J L Wallace:

A formal investigation was held at 1300 hours on August 9, 2017 in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcipt/Exhibits

cc: C. Browning, General Chairman - Cbrowning@boilermakers.org – EF131463712US - Enc: Transcipt/Exhibits on USB Drive 7 Employees

**Where Safety is First**



Case 3:18-cv-00321 Document 360-7 Filed 05/13/21 Page 53 of 56 PageID #: 17560

B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379832US**

L K WILLIAMS
MACHINIST ID NO. 267953
313 MEADES BRANCH RD.
LOUISA, KY 41230

**RE: File Number 313725 - Discipline**

Dear L K Williams:

A formal investigation was held at 0900 hours (CSX Time), on August 22, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. M Perry, General Chairman - mike.perry@districtlodge19.com - Atts: Transcript/Exhibits



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

November 2, 2017

**EXPRESS MAIL EF194865417US**

M D WILLIAMS
ELECTRICIAN ID NO. 273045
671 TOWNSHIP RD 88
PROCTORVILL, OH 45669

**RE: File Number 314900 - Discipline**

Dear M D Williams:

A formal investigation was held at 1400 hours (CSX Time), on October 5, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, West Virginia to determine the facts in connection with information received on September 6, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 60 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are dismissed in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: J. Giuliano, General Chairman - ibewsc9@att.net - Atts: Transcript/Exhibits

**Where Safety is First**



B. Barr
VP Mechanical
500 Water Street
Jacksonville, FL 32202

September 21, 2017

**EXPRESS MAIL EF196379815US**

T M WITT
BOILERMAKER/BLACKSMITH ID NO. 250668
531 FUDGES CREEK RD
BARBOURSVILLE, WV 25504-9718

**RE: File Number 313705 - Discipline**

Dear T M Witt:

A formal investigation was held at 0900 hours (CSX Time), on August 23, 2017, in the 2nd Floor Conference Room of 935 7th Avenue, Huntington, WV to determine the facts in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation.

As a result of the testimony and other evidence presented during the investigation, it has been determined that you violated CSX Operating Rule 104.2.a, and Code of Ethics Policy. For your violation of the Rule and Policy listed, the discipline assessed is you are **dismissed** in all capacities from the service of CSX Transportation, effective immediately.

Arrange to return any company materials in your possession to a supervisor at the nearest CSX location.

Brian Barr

/ksm

Enc: Transcript/Exhibits

cc: K. L. Orndorff, Local Chairman - leebob1026@gmail.com - Atts: Transcript/Exhibits
C. Browning, General Chairman - Cbrowning@boilermakers.org - Atts: Transcript/Exhibits

**Where Safety is First**



Case 3:18-cv-00321 Document 360-7 Filed 05/13/21 Page 56 of 56 PageID #: 17563

B. D. Crossman
Division Engineer - Louisville
MW Louisville Division
3131 A Spring Grove Avenue
Cincinnati, OH 45225

September 1, 2017
**Discipline**

**PRIORITY MAIL 2315 1670 0000 3035 7689**

M M WOODS
FOREMAN ID NO. 234136
100 DUCK PUDDLE RD
GREENUP, KY 41144-7100

**RE: File Number 313586**

Dear M M Woods:

This is in reference to the formal investigation that was held on Monday, August 14, 2017, at the Louisville Division Office, Small Conference Room at 3131A Spring Grove Avenue, Cincinnati, Ohio. The notice of formal investigation, transcript and exhibits reviewed and discussed during the course of the investigation are included in this packet.

Based on the evidence presented during the course of hearing, substantial evidence was revealed demonstrating that you violated CSX Transportation Operating Rule 104.2(a) and CSX Code of Ethics.

**Upon my analysis of all factors related herein, the discipline to be assessed is your immediate dismissal in all capacities from CSXT Transportation.**

Please arrange to return any company materials in your possession to any Supervisor at the nearest CSX location.

*B. D. Crossman*
Division Engineer - Louisville

/lcb

**Enclosure: Transcript & Exhibits**

cc: K. R. Emerson – Roadmaster II
C. S. Heligman – Chief Medical Officer
Patrick H. Quigley, Vice Chairman – **BMWE via Electronic Mail** quigley885@gmail.com
D. R. Albers, General Chairman – **BMWE via Electronic Mail** system.office@alliedfed.org

DEFS' EX 123

Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS 9410801699320003448430**

T. L. Abdon
Conductor, ID No. 623782
57 Yellowbird St
Greenup, KY, 41144-7794

**RE: File No. 313606**

Dear Conductor T. L. Abdon,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: B. S. Lusk, Trainmaster
Travis Raynes, General Chairman - **Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS 9410801699320003448508**

B. S. Adkins
Fireman/Oiler, ID No. 236278
1163 Craig Rd
Wayne, WV, 25570

**RE: File No. 313635**

Dear Fireman/Oiler B. S. Adkins,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Noah Henson , Local Chairman - **Electronic Mail**
Richard Edmonds, General Chairman - **Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

J. A. Barker
Fireman/Oiler, ID No. 234784
1709 Turner St
Flatwoods, KY, 41139-1265

**RE: File No. 313629**

Dear Fireman/Oiler J. A. Barker,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Chad Dowdy, Local Chairman **- Electronic Mail**
Richard Edmonds, General Chairman **- Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

J. W. Bills
Carman, ID No. 623762
2372 County Road 144
South Point, OH, 45680-8997

**RE: File No. 313731**

Dear Carman J. W. Bills,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Steve Hensley, Local Chairman - **Electronic Mail**
Don Grissom, National Representative - **Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

R. H. Craycraft
Carman, ID No. 623249
172 Craycraft Ln
Greenup, KY, 41144-6691

**RE: File No. 313732**

Dear Carman R. H. Craycraft,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Steve Hensley, Local Chairman - **Electronic Mail**
Don Grissom, National Representative - **Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

C. C. Dowdy
Fireman/Oiler, ID No. 268429
4920 Taylor Ln
Catlettsburg, KY, 41129

**RE: File No. 313630**

Dear Fireman/Oiler C. C. Dowdy,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Chad Dowdy, Local Chairman - **Electronic Mail**
Richard Edmonds, General Chairman - **Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

J. L. Flocker
Fireman/Oiler, ID No. 628968
Po Box 161
Worthington, KY, 41183-0161

**RE: File No. 313631**

Dear Fireman/Oiler J. L. Flocker,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Chad Dowdy, Local Chairman **- Electronic Mail**
Richard Edmonds , General Chairman **- Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

J. K. Frasure
Carman, ID No. 628732
1201 Hickory Ln
Raceland, KY, 41169-2101

**RE: File No. 313824**

Dear Carman J. K. Frasure,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Steve Hensley, Local Chairman - **Electronic Mail**
Don Grissom, National Representative - **Electronic Mail**



Case 3:18-cv-00321 Document 360-8 Filed 05/13/21 Page 9 of 14 PageID #: 17572

Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

G. H. Kelley
Fireman/Oiler, ID No. 277812
32 Pvt Rd 1813 County Rd 5
Kitts Hill, OH, 45645

**RE: File No. 313632**

Dear Fireman/Oiler G. H. Kelley,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Chad Dowdy, Local Chairman **- Electronic Mail**
Richard Edmonds, General Chairman **- Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

C. M. Little
Conductor, ID No. 539659
902 Raceland Ave
Raceland, KY, 41169

**RE: File No. 313607**

Dear Conductor C. M. Little,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: B. S. Lusk, Trainmaster
Travis Raynes, General Chairman - **Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

J. C. Marshall
Fireman/Oiler, ID No. 625076
1500 Preston Avenue
Greenup, KY, 41144

**RE: File No. 313636**

Dear Fireman/Oiler J. C. Marshall,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Noah Henson , Local Chairman - **Electronic Mail**
Richard Edmonds, General Chairman - **Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

H. R. Maynard
Fireman/Oiler, ID No. 536041
194 Clayton Branch Rd.
Louisa, KY, 41230

**RE: File No. 313637**

Dear Fireman/Oiler H. R. Maynard,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Noah Henson , Local Chairman - **Electronic Mail**
Richard Edmonds, General Chairman - **Electronic Mail**



Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

J. R. Napier
Fireman/Oiler, ID No. 277837
5230 Mills Branch Road
Lavalette, WV, 25535

**RE: File No. 313633**

Dear Fireman/Oiler J. R. Napier,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Noah Henson , Local Chairman - **Electronic Mail**
Richard Edmonds, General Chairman - **Electronic Mail**



Case 3:18-cv-00321 Document 360-8 Filed 05/13/21 Page 14 of 14 PageID #: 17577

Zachery Jones
VP Labor Relations
500 Water Street, J405
Jacksonville, FL 32202

August 23, 2017

**USPS**

S. D. Patterson
Fireman/Oiler, ID No. 246601
908 Federal Way
Flatwoods, KY, 41139

**RE: File No. 313634**

Dear Fireman/Oiler S. D. Patterson,

As you know, you recently participated in an on-property hearing(s) involving suspected fraud. During the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees. During the hearing, those social security numbers were redacted and the documents re-introduced as evidence.

This is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential.

If you have any questions or concerns, please contact CSXConnect at **1-800-633-4045** or CSXConnect@csx.com. CSXConnect team members are available 7:00 a.m. - 5 p.m. EST.

Zachery Jones

Zachery Jones, VP Labor Relations

cc: Chad Dowdy, Local Chairman **- Electronic Mail**
Richard Edmonds, General Chairman **- Electronic Mail**

Eight & Sand
LAW OFFICE OF JEFF R. DINGWALL

Shelby Cardoza <shelby@eightandsandlaw.com>

**Activity in Case 3:18-cv-00321 Adkins et al v. Craig S. Heligman et al Sealed Materials Pursuant to Court Order**

1 message

**wvsd_cmecf@wvsd.uscourts.gov** <wvsd_cmecf@wvsd.uscourts.gov> Fri, May 14, 2021 at 7:23 AM
To: Courtmail@wvsd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**Southern District of West Virginia**

## Notice of Electronic Filing

The following transaction was entered on 5/14/2021 at 10:23 AM EDT and filed on 5/13/2021

**Case Name:** Adkins et al v. Craig S. Heligman et al
**Case Number:** 3:18-cv-00321
**Filer:** CSX Transportation, Inc.
Elizabeth Creedon
Tom DeAngelo
Kenneth Ray Emerson
Craig S. Heligman
Delando Jones
Shawn Lusk
Curt Shogren
Milton Storm
Gus Thoele
**Document Number:** 370

**Docket Text:**
**EXHIBITS in Support of Defendants' [360] MOTION for Summary Judgment; filed under seal pursuant to the [357] Order. (Attachments: # (1) Exhibit 2 part 2, # (2) Exhibit 8, # (3) Exhibit 9, # (4) Exhibit 10, # (5) Exhibit 11, # (6) Exhibit 12, # (7) Exhibit 13, # (8) Exhibit 14, # (9) Exhibit 15, # (10) Exhibit 16, # (11) Exhibit 17, # (12) Exhibit 18, # (13) Exhibit 19, # (14) Exhibit 20, # (15) Exhibit 21, # (16) Exhibit 22, # (17) Exhibit 23, # (18) Exhibit 24, # (19) Exhibit 25, # (20) Exhibit 26, # (21) Exhibit 27, # (22) Exhibit 28, # (23) Exhibit 29, # (24) Exhibit 30, # (25) Exhibit 31, # (26) Exhibit 32, # (27) Exhibit 33, # (28) Exhibit 34, # (29) Exhibit 35, # (30) Exhibit 36, # (31) Exhibit 37, # (32) Exhibit 38, # (33) Exhibit 39, # (34) Exhibit 40, # (35) Exhibit 41, # (36) Exhibit 42, # (37) Exhibit 43, # (38) Exhibit 44, # (39) Exhibit 45, # (40) Exhibit 46, # (41) Exhibit 47, # (42) Exhibit 48, # (43) Exhibit 49, # (44) Exhibit 50, # (45) Exhibit 51, # (46) Exhibit 52, # (47) Exhibit 53, # (48) Exhibit 54, # (49) Exhibit 55, # (50) Exhibit 56, # (51) Exhibit 57, # (52) Exhibit 58, # (53) Exhibit 59, # (54) Exhibit 60, # (55) Exhibit 61, # (56) Exhibit 62, # (57) Exhibit 63, # (58) Exhibit 64, # (59) Exhibit 65, # (60) Exhibit 66, # (61) Exhibit 67, # (62) Exhibit 68, # (63) Exhibit 69, # (64) Exhibit 70, # (65) Exhibit 71, # (66) Exhibit 72, # (67) Exhibit 73, # (68) Exhibit 74, # (69) Exhibit 75, # (70) Exhibit 76, # (71) Exhibit 77, # (72) Exhibit 78, # (73) Exhibit 79, # (74) Exhibit 80, # (75) Exhibit 81, # (76) Exhibit 82, # (77) Exhibit 83, # (78) Exhibit 84, # (79) Exhibit 85, # (80) Exhibit 86, # (81) Exhibit 87, # (82) Exhibit 88, # (83) Exhibit 89, # (84) Exhibit 90, # (85) Exhibit 91, # (86) Exhibit 92, # (87) Exhibit 93, # (88) Exhibit 94, # (89) Exhibit 95, # (90) Exhibit 96, # (91) Exhibit 97, # (92) Exhibit 98, # (93) Exhibit 99, # (94) Exhibit 100, # (95) Exhibit 101, # (96) Exhibit 102, # (97) Exhibit 103, # (98) Exhibit 104, # (99) Exhibit 105, # (100) Exhibit 106, # (101) Exhibit 107, # (102) Exhibit 108, # (103) Exhibit 109, # (104) Exhibit 110, # (105) Exhibit 111, # (106) Exhibit 112, # (107)**

**Exhibit 113, # (108) Exhibit 114, # (109) Exhibit 115, # (110) Exhibit 116, # (111) Exhibit 117, # (112) Exhibit 118, # (113) Exhibit 119, # (114) Exhibit 120, # (115) Exhibit 121, # (116) Exhibit 122, # (117) Exhibit 124, # (118) Exhibit 172) (jsa)**

**3:18-cv-00321 Notice has been electronically mailed to:**

Charles Kiel Garella     kiel@gljustice.com, ecf@gljustice.com

Gregory G. Paul     gregpaul@morgan-paul.com, bferris@morgan-paul.com, jen@morgan-paul.com, nina@morgan-paul.com

Jeffrey R. Dingwall     jeff@eightandsandlaw.com, shelby@eightandsandlaw.com

John Patrick L. Stephens     nhall@underwoodlawoffices.com, pstephens@underwoodlawoffices.com

Mark F. Underwood     munderwood@underwoodlawoffices.com, cmorales@underwoodlawoffices.com, cunderwood@underwoodlawoffices.com, nhall@underwoodlawoffices.com

Megan Basham Davis     megan.davis@nelsonmullins.com, kendra.huff@nelsonmullins.com, leeann.lemon@nelsonmullins.com

Melissa Foster Bird     melissa.fosterbird@nelsonmullins.com, meg.thrasher@nelsonmullins.com, natalie.taylor@nelsonmullins.com, rebecca.mitchell@nelsonmullins.com

Nathan R. Hamons     nathan.hamons@nelsonmullins.com

**3:18-cv-00321 Notice has been delivered by other means to:**

Kenneth R. Reed
241 Elm Street
Ludlow, KY 41016

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-0] [2c1c51a9b3cc1e6220446a4da18f62398fb54188420dfe33ea9ba79e462a61c8dc e847ff22789b27d7628720f32c4c9bfc2ab30a1d65d7ea798fd13b9c690983]]
**Document description:**Exhibit 2 part 2
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-1] [172c4890b092764dcb9a3fbabab567b89631a0d14790726a0f765183446755feaa 1d467ea079296c90d06d0f718b947d104c04bbf142b1525d25f5d2cb6acff7]]
**Document description:**Exhibit 8
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-2] [5e4f1a2053fe5ea18dac959601b3982646f2ec267f30d45dd6c4f7eb5ee79ae360 ecd4a58717baf6185ff9b935e3e590814a477fc74226f04344084bd874896d]]
**Document description:**Exhibit 9
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-3] [a6cc32b70283e2ce50d04d4ea228c9ae8e38a2c0755ff1db4d71d0926d118a7d17 55a1a506b3bc5dfd99084a5eba7a87baa5da362523b648260967d5c220b2ae]]
**Document description:**Exhibit 10
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-4] [2633986d9de0e9a6416c586324a4af7b8ac5b607ba1bc70f60bffddfd286df9e69 66378c1e4613ae289491a7e7a86be3bb0aadc1625d7f60e10aa122aa821942]]
**Document description:**Exhibit 11
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-5] [879ac0c8bd07bb3aaea078743a137d17da70f6887ec9c6689e03d6ad0885c13dcd

0c5e453ccc11d188c17f611a60327d74b57f4e10b3b6ce4bd2e78b147e3c72]]
**Document description:**Exhibit 12
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-6] [5b8c57bb96c560a8733b1a8d39d5ccd89c8ad29366424153fbd67cdb52a15a3826 63a2ccfb991aa2264e03fa0a44344baaa4d15bda80c4f8ca9a5dc094575b89]]
**Document description:**Exhibit 13
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-7] [3b39959f654db4934b3fa86676ceecc61727a6cf18bb5ab8887f946bd91b07bb70 80a1dd8cd39cd52f2fe2de43f5148a826def01a2d17163dbba11c394cab847]]
**Document description:**Exhibit 14
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-8] [2943c3fc7973ea59625a70e8a5453a3e65cef05d20b022787f756ef6a0808c97e4 871d6f8398dbcc80c18134e8362ab8ecbc983491f4a82e941989e73c976a3b]]
**Document description:**Exhibit 15
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-9] [4d5b414c5f683d6d3ed24885e126e8009732fa8fff159e0595cb9db5beb93fc51d ac3d6b461a506a29524930fa2ecbed91d85f85bc22ef1dd724e5ea9038456c]]
**Document description:**Exhibit 16
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-10] [6bb2e860166c067df5b96e64094efb62c9c4ab536b99e809f09f9689212ae7376 69e7292b5efb8b6a2198ab816bb2fe32844e607088cfcb4a2151fc5f7d9ff57]]
**Document description:**Exhibit 17
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-11] [40bd9c817bb1d0c6b9af669db2d7003ec88b2856b0ba4450f5f4e303276319dd9 af1e272905ea647b978358e63594ca60140436b759206cc14df102455dfe7cb]]
**Document description:**Exhibit 18
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-12] [915bd1ffcfdacd3893ad805a987ae8950a021810674ce35568b981e8574f62daa 43abd6e99b99cf84a07f83ff852680e8ee2f61bd1a2dc5bcade2ed251457506]]
**Document description:**Exhibit 19
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-13] [3b62412a46026cffa246963959c80c205481a6d7c1c27a4479cdb8a720c53cab4 dc7a8ebadf51662824d20c50435a7b9292f28f3aca2c13671155d614f0c6699]]
**Document description:**Exhibit 20
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-14] [48f8931d946d853abb3165a3bbeb3bfb12eb0dba8361b061fc60f724ea3994306 a67126b7be43300a589ae0670229fe5c29d8bff0e9aad9ae870dd37b7957487]]
**Document description:**Exhibit 21
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-15] [8e66d916b4e48ef52b9d6b4fc8552a8a0a1610feb0bce5d189371c01529f69a7f 060dc4e2e28f9036dfce7b58a59e8ff9b18ccbde0a8494f26d0e1bf6f072b5a]]
**Document description:**Exhibit 22
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-16] [6cc3c3ec23c3dba13c8025f6e0c437a75a0c6990a680ab12ba845f14699ee76f1 4688ba3b67295d09eef47fdacf0b3640abd44a1aec09976f4577493b436d11c]]
**Document description:**Exhibit 23
**Original filename:**n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-17] [2b3c0743cb0fba336ec1f2377dfcb25e98285e503e224731f7a56e1b69c74b952 14d00831ad1cb18fd64b01548d1aa704e677552ea20f092db0f6cbd052c7f6d]]
**Document description:**Exhibit 24
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-18] [7f134ef7501d85a5bb6705887951f2ab7a270fa3588d989839f16dd2e6b156007 60810954699b48a85d4caaf9b8283202bc6d98b78734258c0a0a3cc85d54d73]]
**Document description:**Exhibit 25
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-19] [4ea92444013c50b400468e5d94e94b40a4a9a39b493a0f2df33a7138985013f41 ff409d363c5cb141fab6a7443899f4f201c2827b899d59dd9d8908e5536370f]]
**Document description:**Exhibit 26
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-20] [5dff33df6b1df4ecfb14e09ef338b52cef9b6895da890a279673bdc4b46fac00b d5172bcebaf46ab8331e775f6bc4b155c19f11e5138754a7e01c509c91faffa]]
**Document description:**Exhibit 27
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-21] [80bc35d4c9c36cfe33535e52fe5c4f714c0780c00cb12fd0440556bc4e91d559b 2c029472e840d0b21b164828a8e16f73aa5e04c36abfc8ae3c1b8393d5fbb21]]
**Document description:**Exhibit 28
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-22] [967b19e0422ada9bfe7474889409088f2e46a5101a781ec6b8d9a1713cfb499df fa6ce925043422c8c68de2756b8869617b9132dd378fd795744c218b7fe5404]]
**Document description:**Exhibit 29
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-23] [5abbb90a6640517fa26d782d1fc4947db49f6c542db125efa5c423c252188c8aa 0f1dd308b9f0787f42091042b79b1e4c9c5eb9312df7aba46a4f353824abe47]]
**Document description:**Exhibit 30
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-24] [3047c511c8ce4ae9961addaeebea2bdac73bb31e33b499d230cb5c06abca5bf97 2995ce6fe563f3e472943214bd059ea994209cd4d2297d577cfeff4436112f4]]
**Document description:**Exhibit 31
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-25] [186a4c650cb5ad77fe05def55f9f26bad104dde401a360eb77d05d6829e5bc957 3bb77f9a3080035c000820cb824436708eca0673de91678570a17f5a00fe952]]
**Document description:**Exhibit 32
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-26] [9294f3d80358500da59cd9118ea25393bf87ebc45e63ab1d28cab34d38e114381 9b4e58f5c0c47f64934ad18825a2aaeceb9aac755e014cbb3af9fd1db45e4e3]]
**Document description:**Exhibit 33
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-27] [b28c48104be9e7986773da32cc0fcbd331bc5c30a8c5bd3b0e212cacccd11689d 6268192fda8742fb08b7cf87641018090ab98dadb5a3a25ff41077023d328c4]]
**Document description:**Exhibit 34
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-28] [0560dc2c6a9793a30f070b96d8d403b1e783df4eb1976f89da0d5382fd640a257 53d6af28fd347828b64b931bbdbad03d743ddb9d11d47b970e3ca0713a0b6fd]]
**Document description:**Exhibit 35

**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-29] [869d12b3a632f701304e34e488f89382a39930baf67a63dfe33321a95d42d3f49ea3f2705da3487224b640668514a8e51d92e325e5df97b8ecd8fb3b0264ed11]]
**Document description:**Exhibit 36
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-30] [9688ce5ca99cfda1d3a736898f48dcacf0b338eb1804e9cb399721671e08efcbd2a5c1d7ac7f26263221dc0e9f93ffa4b4689a9a11380f7ee5b0aad2b94b30ff]]
**Document description:**Exhibit 37
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-31] [a3faa6fed9057e3b113b76aff8bfb30129d58132325b57ee6520b660871b14716e7e756e40985223b43d9315d06ac8e1bd20f89904dd4deb41b3351f342b0d10]]
**Document description:**Exhibit 38
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-32] [6bf92842497851902d5d21af270c5b92148bfc58a114aa41e9a71f0157e7047f022ccf30b4aed2025618e0140a911598c62d30f7c6dfbecd5cd5cabb33a32e8b]]
**Document description:**Exhibit 39
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-33] [a67edf05ecddc46403e1a36afd8f7dd1428c46f61784a753370608352619bdb049cf826fbf86f95cd47ece4d191aebb522560db51541be289600a54591364e0d]]
**Document description:**Exhibit 40
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-34] [152c87fd2fdf3801aac7ad0dc66eb311d6f88561fbda5b471e97f08ebc692a36ceeb9e8fc64f9bc0c9c67d5e58ab66dfebf3cd2e0fa0926f15b55b1660e62984]]
**Document description:**Exhibit 41
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-35] [17df2917a01fb7743af2bd39709d2f12dc4317b1182867b83ca375ddb02b7857b44ba530101b74530977d775d8c62a1f9bc724af92ed8de4853493fe2ae249ce]]
**Document description:**Exhibit 42
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-36] [1c9d3cd93e8a922a4fb269ab2e1e949d66afa35be958dd5e9c8f0a70265fce4e7d7dc9c2db22e52e71ea7bfc1da77bfccfe3a279226080e8266919a4d173d208]]
**Document description:**Exhibit 43
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-37] [724de7e12320659c52a7e91258891fd7a4c5f95eb660125ede67beb8d5046204dc528bf815e8d2a4f87d112aa0ab3bdc92ce79cde8553dcc6506cfbedd302102]]
**Document description:**Exhibit 44
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-38] [7738c52feed4a9cc0a8df9b1e09836f9c79d807cc0c8f3708e876c49762a58a8376820f48893dada3d488acb9e16cc91299c5e0905452dfb4ce5d8343eec6c9a]]
**Document description:**Exhibit 45
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-39] [04794a9b0a470a22a1c4dd5d8ed348cd2f7f10fb50ed514edd4eabbc770d4de07dbb46bd87c06c1bed028ed710f6883b03e46a9436aa3fd9ca04deb7d54cc7e2]]
**Document description:**Exhibit 46
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-40] [0487da6009ff9c8246c7347e7e67af43ce8397914158a4951da96a03196ee0bbf

847bf0c72d6041e745ef4823acbde13875769d1ed99b050566315944d2d3459]]

**Document description:**Exhibit 47

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-41] [a7d7208e088548daf2db6708d7a1db1aaded6f4c2696294acdb329932cf703f53 64ef85a4277057f8b43bce3fff79f9d41a8e252f30b9c22b612e3dd6fce5bf4]]

**Document description:**Exhibit 48

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-42] [64a2d4531ff81df7bf3abe426af6f4427e29e6dae5c8fb6625fac218fe045156a 3bafdfcb48058ae601cc4859158af8230c53d231da5bf874e2f9625c705ee84]]

**Document description:**Exhibit 49

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-43] [b48bf1b0d27044757bfc399fc04471811bf3679bd1084c8fefbfca34dd094cd8f 0ef5c8ed8ee2d819c8a650158a43796b9277dab3968ca184c65ce7e0cf8e213]]

**Document description:**Exhibit 50

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-44] [30367c24a0b1b18333adbdd389c94bdc717214813c752cd25b88fafc908a524e7 d1e0086afe989093325c7cdc0c337a234d1ca1dda4f8657358c6471497a99d8]]

**Document description:**Exhibit 51

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-45] [477e9e52aeb9f6302a2db3dae43ad85669aeb6c3c9a22d56fd5bc94f3d3a7b1db 73052c5f51e60e37646ff252a6a77a2c3010fbd2d7885c9960066921da8f750]]

**Document description:**Exhibit 52

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-46] [a563d20453597f7b79dcb3c4586d236aee2aaf669edeae99872bf6bf8d832ba4f d4937443961f44197383370a393095b0672c520d9b75255ac3419aa4e76545a]]

**Document description:**Exhibit 53

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-47] [2f6210aa4c553f6c84e62830b20c97e9dfd23e334b706c462c1a3462f709e1fb6 8d6d726ffc774a547d36d2195445de6def64711709cf28a1a79ab3cee717f0e]]

**Document description:**Exhibit 54

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-48] [3a76dd36cdeefa214cb7f0fb177e0cae685ce4d4a14974ebfaa5c4a4b74574911 f22510784fc9f82b926c79857f7e125ec7958002cf404b2ff9b2ac23d45a4eb]]

**Document description:**Exhibit 55

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-49] [8374b677bf24d23ec4d97c654a449defe5a73af209ccde66f8dc932eb804b2406 e96c5b1d043b68a1e2d361a34fd175c43f71117d2efe6d831592bd02de9d014]]

**Document description:**Exhibit 56

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-50] [1e86a418bd108a6813848a3213595b7d2ad26fa15d2101b72b2c1c5cf0994535f b73daab99c33ea73d4d86b212d52d6f3b586fc78eede80b51127a21ec2eb261]]

**Document description:**Exhibit 57

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-51] [7bcd81f7806ac81140dbe24f5f544ee7abd3ccd0334d4f344fb2efb6993ce3836 5ce24f8b5e508c3c70d7c5df73940aa50a0c374664caf226c9c00cf2c2a23f0]]

**Document description:**Exhibit 58

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-52] [5002f462fcbe687e730a8b0364d2547d7ac210a0fcafce76648d9d7e311419555e3498017fd89c0c2aa804d33f0570ac0464a6fd1b4354e44661a50aab79add0]]
**Document description:**Exhibit 59
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-53] [9b37ff16386bd0d6a05b03ac4c0847a6e8fa5fe83f1711aa4d222efc562db422a8b9b0f42a34b3bde56ff68ed1c0432b2d4c9235f7a115ed43fd32b5cda0e346]]
**Document description:**Exhibit 60
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-54] [476d61d6aea9aa33067f57d739415dcf8a22852f50612e048a975029826787c20132c0ad25f79e29cf98cf6291f131a0246d840f2d7f7062c7cd9a8f143bd0c5]]
**Document description:**Exhibit 61
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-55] [59e211c38f0133e55b223c64ed045317d65367abf093dc4b5da5e03867a68f250c6d1a5c8bfbff6171fc45154da12fbb88cacad003e0b750b9aca6d916fee3cf]]
**Document description:**Exhibit 62
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-56] [7e1556b829ea3a246bc4238871597770c9c38830c8b7de453e7b6e3b22032c2bbb3b74bdf3f6c4784bf589720fb9c6bd3fb65c678382a26b09589d0bcb3cc681]]
**Document description:**Exhibit 63
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-57] [55d339c0295f33bfb25304994b4308bce74ed0f3a09797294e0bfa8614967ef587fa2ea026878e039ad556ac00f1d266d9b688820a1459625a52f92f3eb12093]]
**Document description:**Exhibit 64
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-58] [30037077f24b397c23df8821fb0555d74dd96e341bae4fb3a2d0bcdacb7185444d6d0492612245b73073209c4e0c6187b50eaddbcf73ae9b970a7d2b646f4493]]
**Document description:**Exhibit 65
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-59] [510a682c4279fbdf065b62ece6e1cbeaa69cb11e1fc598622fda9f5db29db8c35a542de5904929e1e98928d0fe6a8f9a8dbc639da2a0a2dcebd43f72eabe6b03]]
**Document description:**Exhibit 66
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-60] [4c1417c5ec4c962aefaa4554675e96b7d7fa7ad1438c9855f3f87a0f2a99068f397719c22b71708aac7980b6a4dc4f2668888352ee9e101002a720150e816ee9]]
**Document description:**Exhibit 67
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-61] [4f4d5a3e3053c37bd41c4d48eb804d957831bad9e148344aadb1755036b6898277b598ab4064e1e63330ee9dbd6e8d34d2ef6274f8cc216d9bf6d8d1279f417a]]
**Document description:**Exhibit 68
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-62] [1c9c29883caee6f2f8323c364470260f274f42bc503177202b20bf9a87b7736b9bf26674af9c07b1dfabd6e540efff2d74d50b42f39a307249458a50f0646182]]
**Document description:**Exhibit 69
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-63] [6ca760c3a6c134e47e1e27b3623958fdf92154d2e4c833855619cc2bff2486ae554cf56a46ae8a5ab5a040059b4d24ba7a8cfb42fbac3e14904ea3c0a8e39f73]]
**Document description:**Exhibit 70

**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-64] [614451aaba26179544dca9f403c7f1f3168559695891a1df2995ab4755da5d44f6b95956ed304d76aea9aa9dcdcb53b5e558292b98cd721128fca1e5aef48add]]
**Document description:**Exhibit 71
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-65] [48348ad16526ff5bc3e7f44864a077b219e3ddd2bbabb5254b5b146ff932a3545fc5f8a600983cd71b2032213638e1b4eff363bc98d1245a1b7621f51ba476d6]]
**Document description:**Exhibit 72
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-66] [b88e7b1d4b348c925921754e92705ee4303db3f7c90bccc49891d6b0a50348dd33d602d4ffc3bf4f73726bdde0b338ae72dc737d943cb6d96bd0658cfb39bca6]]
**Document description:**Exhibit 73
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-67] [b34ecf3a09bb96789521281dbb2f3a14d4f3b3f8307087b2f0ac2242e619896cc2a626e9dcc117017bc5e3f28d8086ef33c466d62f4635429aff1488ef3cb768]]
**Document description:**Exhibit 74
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-68] [5ff7e75d22d9e79fe73bc009ced5f62a9215d0b0f2850710600460f0e32d9dbd466a23125e3d6a7118027cb29c88963c454885407d83fa8243d797e20066e69f]]
**Document description:**Exhibit 75
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-69] [03677cc6635dc1302fefa217a62d41d788818a0cbdfd461ed7247dd29b8644243a7687ddd73a5e5f636c36214f455db9e67dc33f736ec10401a38330922f8d16]]
**Document description:**Exhibit 76
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-70] [121b2cd2f443779bbf10862aa95ebd9f9ebe4ac819b3049d7494fcaeaffd2bb60518735a0f864e6258d2feb3e6ac0f71dda6e3eb4371df7f7b0b1ad7173b9c91]]
**Document description:**Exhibit 77
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-71] [5cd0ddd65cee8b953064aec45320fcf0446d37861739f36a1bd81434d9e505787711677473fc25510e02fed3229887aef6eec839e95fad3eb859ab0849f04da5]]
**Document description:**Exhibit 78
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-72] [4fbe5bb4f02c107fba265fbdd1dd49a9f32bceafb009ef519a193430cfbcf876b3fba4e4605de368b032ba1ecb05294cbc5ad4e724e98b5e0a4a315ea5d7b921]]
**Document description:**Exhibit 79
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-73] [6165cab467b43c9ee52950697240a64890c6222d2bf94464df1f2fc1e35352e6dd3a04d095bf746b827849914e614ee60fdec9f398d34c24f3ae7659d4019d59]]
**Document description:**Exhibit 80
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-74] [b10c4220e559e122d5f025e5075a99e7470af330dbcf66b5785269e609277d5e3aa0ec9fd65e4dfdbd3970c66a6000861fbe037d9b682444bc42cbe0b3ea9fb1]]
**Document description:**Exhibit 81
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-75] [1bf368938ea492e799b424bec17285c2a9fb1887617f72636254ef353a3006120

f8d38517873a91a64781945a1152f0f8727fb5d327ad95f2274cfabff32877c]]
**Document description:**Exhibit 82
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-76] [8df79d527587c55f959625799ef3b3dcf78e44d366958a395afb5ad80ba87b4c05301c0800d0e0a1aa5c6386ead2eabe82ea8abd3ec1cd79ce6364b7be66382c]]
**Document description:**Exhibit 83
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-77] [5d259d89f172094387c9468b4666af4ce6e8e5f94284e480e32f30ad3a33805e61debb957d4413b31b8fc1e39b2f9000e7f0005a0b85bf0bf0a518d158c088ae]]
**Document description:**Exhibit 84
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-78] [74364f560c5400136a244debf71437b5a5539ed804416b2b6c7f51622e24a723eee2f8a413a1ca87e15bcbe357cdf2fb3eadabe42d8d49bacbed5568c0f4b2f3]]
**Document description:**Exhibit 85
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-79] [5975b0858eb242d780f25a08fe08b9d019247bd15aa27796b8666477193d62a00d3dfcbb39857bf9ddcfdcdbc0a99c38bb5e47fcfb5cfed30c6d63f0805e26c6]]
**Document description:**Exhibit 86
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-80] [a7beae0d4c6c2a854d680ad0f1408c568b16f196e2c73bf400f69bc45661f0ac3d03ac8800c19c25f3283a33dda055ec3059a23135411c89b677b3ddde8cdb83]]
**Document description:**Exhibit 87
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-81] [11d4058d6efbe57d41bddc58b2c4b07a3ba1e4c14c4189622eeea2f67b0bb7fd3556dccc81c6a9349962c5d3e7aa3a1bd6f5b95c177a084c33a55d67f0b2d311]]
**Document description:**Exhibit 88
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-82] [9bb5dae6e5b8d940f31d29a49cc7161a46cbf100251e958ee71984c431ef7331b7727c989f6976bafa6e5b37494241a82eb063b33140b9502b052115e0d15b9f]]
**Document description:**Exhibit 89
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-83] [58b74e6290163fbdde3ee5f3f08604dc028c7d5bc18cb1bb0c6e290e38e7e702bc5125cbf1ddf981feec1501fae15f0ef4258a80f1e90238ea87d043ed698511]]
**Document description:**Exhibit 90
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-84] [6f642b22672f9e2f82e7d10025cc610e5c4a23908cde64f608e14dbdb733b351c31b4717258c9c61c034762418faf62950268913fddbe474e9e99f25e081c225]]
**Document description:**Exhibit 91
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-85] [b07d1d498e6b37951117674befbed7143564982ce96f96a290ce9a19891c4af7a2d754a92936811b178ff2cb61e53a4747e81d3dbd99096cc38d39c545c4b1ff]]
**Document description:**Exhibit 92
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-86] [01b6abaab7bc9e6e0f1e839686af32821ed509156de5bd59039d508bb768b520b524becdd45c4f9eec8c9751c3bb2738ae34c33e2af7e67cb44cabceb1daf813]]
**Document description:**Exhibit 93
**Original filename:**n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-87] [3e91bc6331418 5b23a7b51c44117979b7c51f6ea3404cbbf743be8d443a4be3c9 6c091ae26e6edda0452f0e3b559459dfe3a5c04bbaac70a243d7f43ff8e74e6]]
**Document description:**Exhibit 94
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-88] [0901e8457b0053f2827352b7a16801495dcc3e79dbda7862b75c0b91c9f0e02ff 2d50a2c6fa3c42cf707b762f4bae399578d3db15df341fd669ae8a03598b63c]]
**Document description:**Exhibit 95
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-89] [a0dc836929d16c82001cb7a86497bca6d30949b4797af03002ae8171e7c354a09 facdec27e29bc391f2cb96e477e3a0f3655a08b1908db30bafb95c436a03f22]]
**Document description:**Exhibit 96
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-90] [9e21b5c2d6e19a02e22027719e789d5e4c4263bc4a490e704ea1dcf5776743da0 96e6be65a817eed3568c2a25608a0a01b4a9a4c61c62c99d68db0d5042f6006]]
**Document description:**Exhibit 97
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-91] [96cabada912b391a9764b5d3eb90e00d4c1386ef42d9587ea45418d00797eb808 832291db16f9c0410ffdc18e5b8cc22b781ae90adf1c1a7d2ef7be5c62e82d4]]
**Document description:**Exhibit 98
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-92] [16dea8915706e2ea64302f86683467b1a447b93bfb6fbbe43511aefb83ea9d52d 430b95a0edf7ccfcff68eadd32254ad82892f42557d5ef7b4b32e505bf7c02b]]
**Document description:**Exhibit 99
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-93] [ad06e24e55dc18ab51ec78d2a6c9825c7576ebdc432b09e62c27f1ac081aa3046 22f0b3c01e22c20e3a6ad51ba6dfe87600725b3cbc9942b9fb82ca019b82761]]
**Document description:**Exhibit 100
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-94] [74e13d4884bfbf226f8e3ed86dfa277efa0f467868d0be3a651fa06c759114520 c81f63be4a13101996cb8daf0f9cad18f73bf34be14693d4c61a61f8c091865]]
**Document description:**Exhibit 101
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-95] [233938a02eb27608fe0ea89861247977308e36c6982badbf44af51a164ba961a4 961488d60f594f08e7e9a74e2822c21a2f0cac753b5a7bd02786f0e83f8d31f]]
**Document description:**Exhibit 102
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-96] [84d0e766bd3e49fcc9e907b4d3190b15dece69d02fe797f03bef3d0dde3519044 577a576be4932ae7945e15d2215a5df23d00779fc55c7eb9aec494a18cd9e5f]]
**Document description:**Exhibit 103
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-97] [8107b9f7b4b7845d51c2c72036bb9b73cc3c09168dcdc6155fb051c9e649dbb02 41d07cd88fecc3494437f64064841a670d604e3608e87d8ae7ef6c84d28b0cb]]
**Document description:**Exhibit 104
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-98] [22b0d0de337a68175ec639eefe4e8fc96cbf2e3e9c1e630ccb56d3bbb58801edf e2f968c091e8accd69e4c4bd6b6739ee40540cdccec52f55d6f695f1c9e70c0]]
**Document description:**Exhibit 105

**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-99] [10f4f0868aee62071bf026704575ccb4b7df07ad8c2782f7a72f848fd4d076a2a08663da4ffb7c3787d7227aebb4ada8b65be9ec1a369569b12a9ea41ce19bcb]]
**Document description:**Exhibit 106
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-100] [a31acb28d2fc096af29fc6fc2be413d94faca8385ad9731e5f863cc22683c6f6dcf749b429365770d502918bf94b524bf45e4af70c712d649c68bf7ee46dc6cb]]
**Document description:**Exhibit 107
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-101] [5fd5e38d57f24a3ab71202493bbffae83771f679bdeee87fb7377bd5234d51b182406ea29378446b5a42e0a03b190023b0a22f78533854e24672c70ca34b2a21]]
**Document description:**Exhibit 108
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-102] [6660ac822947cfdde02ba2802d3f99ce73108624f683026bfedab50cea932b9dde398b20aca27953b02a0c317b4aacf80db8a83c01e0358b3bbfa0465b3f68e8]]
**Document description:**Exhibit 109
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-103] [06617a61a870218a4dd634be04fabeea0b335851ad28f1f21eb4f5ca7bd1927f7a1530f6253dfdd7d16c00f50e813e5b0517e67aa719c659bbb4c75d3942ecdd]]
**Document description:**Exhibit 110
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-104] [662e449855fa72267c5ee3c7d099652b4cfe567de5684e58fb4e1bf84e6b37cf05a6379097fd980c72c8181137029a9deb40141ba36c010a531e541b17f89817]]
**Document description:**Exhibit 111
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-105] [65045243e34be1b69c069734833f384752bd0859787ab806192becc5cd1a841cb5d3755cd64663978bd0a8eae872154a033e1df45039dfaa909540a5339df31e]]
**Document description:**Exhibit 112
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-106] [097e667cd2478d011f119ca8573b76b64435155bca6a5c9d778b7d70604cd98dd24ad831f6f2a19e694ac22d2428069a9a58f9301939919e0d4462ce687c6445]]
**Document description:**Exhibit 113
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-107] [419cc988f579a6a0d35451be015f7d9524a1656d3548f0b9edbab9af30e3897e3afff4c3b5f9e1671ccbfd97fee4f9309400295db9b2adca464488132346614f]]
**Document description:**Exhibit 114
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-108] [1b3553c4a73fd0d0e3fa6309acd55f6cb323da8cf43f87d19ce5f1786e40d18237f896efbe0d77e21dacc9672dd0ed92744bdd959177795881f683534916a4e9]]
**Document description:**Exhibit 115
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-109] [2f568ac79f6b34b2313bd12789583e1c96a6b8f7c5bacc4dd1e4a885ed42a0088e26ae44a960e63d67961e72e47a0d81fc4af7e24d16767cccc912d6ba898584]]
**Document description:**Exhibit 116
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-110] [0c359b17155d147f10b97f338cdb71d907635758bb4fd22929791afe11b0e844

8c0404a0a064a283557bd865199643c221d8ff6a1d85efa1243bd744f37aa714]]
**Document description:**Exhibit 117
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-111] [5bd6a1d3f887ddd4b7d0998b85af62fcf51cd1d0c683ddeb4851fc2b0b88aac300743db82ab252dab5a4954e0284d2e089d55492dc740fcb7326680b182ea5da]]
**Document description:**Exhibit 118
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-112] [99a0034a307be73169ae0fee73da227a2696cb15bfd0d1def65dcdfd4719c4a52120fab511254357e4e09205d97ab8c07b9e3778e476e20a3377c8a800ee39e0]]
**Document description:**Exhibit 119
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-113] [73f7264536713d19ba345fb64f0a2f4c5411c2ac1e593f26f89b9b2caa6257a36ee428e5fbd0f144e3578a3e260c57df7605cf3577fb8432fb69549d6a8ccc6d]]
**Document description:**Exhibit 120
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-114] [6108876dc6051552acfdf3bce33c43d5d4cfc072c50975813effbc98900d9f569456e4c5692dc94b12bb1751dbe5b70e12410679d3a785b90462674a9fd75cc9]]
**Document description:**Exhibit 121
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-115] [0592759b8d109e311f9d0aadc60fea4c4e72e224387797210fd2e0d3ab4350cb9ddac512248fdd1ecb82934aef43544fb87885f2e5b67aaf2c23f06e4b9083f2]]
**Document description:**Exhibit 122
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-116] [3fd54090e89ce0300e21ecf885b5bc3b98f92ebb62a4b41489d3103401964cfcc6451cbde76031eefb9b69bdcda3f9f65c8df6200d37dfdaa780c1223970954d]]
**Document description:**Exhibit 124
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-117] [03c5507897329d60a1b99da1c0cdeb20ce27d3fad91bd0c12a641b5a18837ffbf7dd272783bde09aad79517591379d1b9ef7164c40f2dc44a9d8a2abe335776d]]
**Document description:**Exhibit 172
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060112543 [Date=5/14/2021] [FileNumber=10011999-118] [9e71eaa3dc1828533039d68d768e14d80ffa9107a6c05f8bd87e22e79f3cf675f8f30ccc60bfb44110a4ce3ce998fa0cca2c9959f14c5776c0b7c17d3ec7d50c]]