**CASE NO. 21-2051**

———————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————————

**JUSTIN ADKINS; JUSTIN BLAKE; EDWIN GLOWACKI; ERIC JORDAN; KEVIN PALMER; DENNIS SARGENT; TRAVIS THORNSBERRY; MICHAEL WILLIAMS; JOHN BAKER; JAMES BLAIN; DEVERY BROWN; JAMES DEAL; JONATHAN JEFFERS; ROBERT MOSTELLER; MICHAEL L. POTTER; MICHAEL D. POTTER; JESSEE WALLACE; TIMOTHY WITT; JOHN BILLS; MICHAEL CLARK; RANDALL CRAYCRAFT; JOHN FRASURE; SAMMY MADDIX; JAMES STINNETT; TODD THAYER; MICHAEL CAMPBELL; TONY ABDON; THE ESTATE OF CHAD LITTLE; BRANDON ADKINS; JACQUELINE MARSHALL; HOMER MAYNARD; SCOTT MORRISON; JEREMY NAPIER; SHAWN PATTERSON; MATTHEW WOODS; JOHN CARPENTER; QUINCY CHRISTIAN; GREGORY HAMM; ETHAN MULLINS; MICHAEL OWENS; JONATHAN ROWE; DANNY STEWART; LLOYD WILLIAMS; DAVID MANIS; JOSHUA FERGUSON; ERIC SPEAKS; DONALD STEPHENS; JASON BARKER; CHAD DOWDY; JERRY FLOCKER; GROVER KELLEY; CHRISTOPHER CLAY STILTNER; DENNIS HUTCHINSON; JOSHUA HALL; ZACH POTTER; DEANNA LANHAM; SAMUEL PRESTON; BOBBY AKERS; GERALD BARBER,**

**Plaintiffs – Appellants**

**v.**

**CSX TRANSPORTATION, INCORPORATED; CRAIG S. HELIGMAN, M.D.; GUS THOELE; CURT SHOGREN; MILTON STORM; DELANDO JONES; TOM DEANGELO; SHAWN LUSK; ELIZABETH CREEDON; KENNETH RAY EMERSON**

**Defendants – Appellees**

———————————————

**Appeal from the United States District Court
for the Southern District of West Virginia**

———————————

**APPELLANTS' REPLY BRIEF**

———————————

Jeff R. Dingwall
EIGHT & SAND
750 West Fir Street, Suite 602
San Diego, CA 92101
Tel: (619) 796-3464
Fax: (619) 717-8762
jeff@eightandsandlaw.com

Gregory G. Paul
PAUL LAW OFFICES
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
Tel: (412) 417-5862
Fax: (888) 822-9421
gregpaul@morgan-paul.com

**ATTORNEYS FOR APPELLANTS**

# TABLE OF CONTENTS

Table of Authorities....................................................................................................iii

Argument.................................................................................................................1

I.    THE COURT OF APPEALS SHOULD REJECT THE
      PRIVATE SYSTEM OF INJUSTICE IMPOSED BY CSX
      AND ENDORSED BY THE DISTRICT COURT.............................1

II.   IT IS BEYOND DISPUTE THAT THE DISTRICT COURT
      INVADED THE PROVINCE OF THE JURY AS A FACT-FINDER
      BY RESOLVING ISSUES OF MATERIAL FACT AND MAKING
      CREDIBILITY DETERMINATIONS IN FAVOR OF CSX..................2

      A.   The District Court Clearly Invaded The Province Of The Jury
           In "Believing" CSX's Arguments Over Those Of The Plaintiffs'
           On Summary Judgment..................................................................3

      B.   The District Court Erred In Depriving Plaintiffs' Of A Jury
           Determination As To The Credibility Of CSX's Private System
           Of Discipline.................................................................................7

III.  CSX DOES NOT NOW HAVE, AND HAS NEVER HAD, ANY
      EVIDENCE TO SUPPORT A BELIEF THAT APPELLANTS
      ENGAGED IN FRAUD OR CONSPIRACY, THAT THEY
      IMPROPERLY RECEIVED BENEFITS, OR OTHERWISE DID
      ANYTHING OTHER THAN OBTAIN MEDICAL TREATMENT.........9

IV.   THE EMPLOYEES SUFFERED PREJUDICE WHEN CSX
      FAILED TO PROVIDE THE MANDATORY NOTICE UNDER
      THE FMLA......................................................................................12

      A.   An Employer Shall Provide Written Notice...............................12

      B.   The FMLA Certification Process Itself Allows An Employer To
           Question Authentication, Seek Clarification, And A Second
           Opinion.........................................................................................13

      C.   An Employer's Failure To Comply With The Notice

i

Requirements Has Consequences……………………………………...14

D.  The Plaintiffs Suffered Prejudice Without The Ability To
    Structure 6-8 Weeks Of Leave Within The Protection Of
    The FMLA's 12 Weeks…………………………………………...14

Conclusion and Request for Relief.........................................................17

## TABLE OF AUTHORITIES

**CASES**

*Charbonnages de France v. Smith,*
  597 F.2d 406, 414 (4th Cir. 1979)........................................................ 4

*Crouch v Whirlpool Corp.,*
  447 F.3d 984 (7th Cir. 2006)…………………………………………16

*Daniel J. Carey II, D.C. et al. v. CSX Transportation, Inc., et al.,*
  18-cv-00079-HRW, at *7 (E.D. Ky. Jan. 11, 2019).......................... 11

*Daniel Carey, et al. v. CSX Transportation et al.,*
  No. 18-CI-00348 (Greenup (Ky.) Circuit Court Nov. 9, 2022) .................. 11 n.1

*Fresquez v. BNSF Ry. Co.,*
  No. 21-1118, at *46-47 (10th Cir. Nov. 10, 2022)............................. 9

*In re French,*
  499 F.3d 345, 354 (4th Cir. 2007)........................................................ 5

*Lyons v. Norfolk & Western Ry. Co.,*
  163 F.3d 466, 469 (7th Cir. 1999 ........................................................ 8

*Magill v. Gulf Western Industries, Inc.,*
  736 F.2d 976, 979 (4th Cir. 1984)........................................................ 4

*Monumental Paving Excavating, Inc. v. Pa. Mfrs.'Ass'n Ins. Co.,*
  176 F.3d 794, 797 (4th Cir. 1999)........................................................ 4

*Norfolk Southern Railway Co. v. City of Alexandria,*
  608 F.3d 150, 156 (4th Cir. 2010)........................................................ 4

*Skiba v. Ill. Cent. R.R..,*
  No. 19 CV 2267, at *17 (N.D. Ill. Mar. 23, 2020)............................. 8

*U.S. v. Dollar Bank Money Market Account,*
  980 F.3d 233, 240 (3d Cir. 1992)........................................................ 3

*U.S. v. E. Fairmont Ave., Baltimore, Md.,*

722 F.Supp. 1273, 1277 (D. Md. 1989) ............................................................ 3,4

*United States v. Leak.*,
123 F.3d 787, 794 (4th Cir. 1997) ........................................................ 3

*Vannoy v FRB of Richmond*,
827 F.3d 296 (4th Cir. 2016)…………………………………………………14

**RULES**

Fed. R. Civ. P. 56................................................................................ 1, 2
29 C.F.R. 825.300…………………………………………..………12, 14
29 C.F.R. 825.307…………………………..…………………………13, 14

**CONSTITUTIONAL AMENDMENTS**

U.S. Const. amend. VII........................................................................ 1, 2

Appellants John Baker, Randall Craycraft, Chad Dowdy, Sammy Maddix, Danny Stewart, and James Stinnett ("Plaintiffs" or "Appellants") bring forth the following in Reply to Appellees CSX Transportation, Inc., Gus Thoele, Curt Shogren, Milton Storm, Delando Jones, Tom Deangelo, Shawn Lusk, Elizabeth Creedon, Kenneth Ray Emerson, and Dr. Craig Heligman (collectively "CSX") Answering Brief.

## I.    THE COURT OF APPEALS SHOULD REJECT THE PRIVATE SYSTEM OF INJUSTICE IMPOSED BY CSX AND ENDORSED BY THE DISTRICT COURT.

CSX, as did the District Court, asserts that an employer's subjective reasoning for firing its employees provides absolute immunity from legal liability such that the subjective reasoning cannot even be weighed against competing facts or considered by a factfinder. If this is true then the entire body of employment law in this country is rendered meaningless, as is the meaning and effect of Fed. R. Civ. P. 56, and the right to a jury trial guaranteed by the Seventh Amendment. U.S. Const. amend. VII.

Equally offensive to all notions of justice is CSX's position that the legal rights of the Plaintiff-Appellants here were fully and finally adjudicated through a contractual process in which the accused have no right to counsel, no right to discovery, no prior notice of the charges, there are no rules of evidence or procedure, the judge, jury, prosecutor, and witnesses are all employed by the accuser, the

intermediate appeals are determined by the accuser, and the highest and final level of review is restricted to the record established in this process.

This is the platform of CSX's position before this Court, built on the rulings of the district court: that CSX doesn't believe it did anything wrong in firing the Appellants; and that its reasoning for firing these employees was nevertheless vindicated through a process that the Company controls from start to finish. In signing off on this aberration of justice and depriving the Appellants of the opportunity to return to their livelihoods, vindicate their reputations, and seek recompense for themselves and their families, the district court violated one of the more fundamental tenets of the civil justice system – deciding issues of fact and credibility that must be reserved for a jury.

This Court should reject the private injustice system imposed on Appellants by CSX and endorsed by the district court. The judgment should be vacated, and the case remanded with instructions, including for a jury trial.

## II.     IT IS BEYOND DISPUTE THAT THE DISTRICT COURT INVADED THE PROVINCE OF THE JURY AS A FACT-FINDER BY RESOLVING ISSUES OF MATERIAL FACT AND MAKING CREDIBILITY DETERMINATIONS IN FAVOR OF CSX.

Among the foremost tenets of the civil justice system is that issues of fact and credibility are to be decided by a jury. *See* Fed. R. Civ. P. 56; U.S. Const. amend. VII. And while perhaps not the most titillating of appellate issues, it is elemental to the rights of litigants and among the most detectable where, as here, the District

Court spotlights its fact-finding and credibility determinations through phraseology such as "the Court does not *believe* Plaintiffs' arguments" and "it is clear that [Dr. Heligman] *believed* that the circumstances indicated fraudulent acts." JA 2701-2702 (emphasis added). That the District Court resolved such issues of material fact and credibility in favor of CSX while failing to address each party's motion separately mandates reversal.

A.    The District Court Clearly Invaded The Province Of The Jury In "Believing" CSX's Arguments Over Those Of The Plaintiffs' On Summary Judgment.

In granting summary judgment to CSX on Plaintiffs' FMLA Retaliation, ERISA, West Virginia Human Rights Act, and Rehabilitation Act claims, the District Court undeniably resolved issues of material fact in favor of CSX and explicitly made credibility determinations regarding the evidence while failing to address the facts of each individual party.

This is specifically true because "a party's mental state," such as what they believed or did not believe, "is inherently a question of fact which turns on credibility." *United States v. Leak*, 123 F.3d 787, 794 (4th Cir. 1997)(*citing U.S. v. Dollar Bank Money Market Account*, 980 F.2d 233, 240 (3d Cir. 1992)). The Fourth Circuit has repeatedly emphasized that summary judgment is inappropriate in cases where states of mind "are decisive as elements of a claim or a defense." *U.S. v. E.*

*Fairmont Ave., Baltimore, Md*., 722 F. Supp. 1273, 1277 (D. Md. 1989) (*citing*

*Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

> Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented.

*Magill v. Gulf Western Industries, Inc.*, 736 F.2d 976, 979 (4th Cir. 1984). And a

district court must "rule upon each party's motion separately and determine whether

summary judgment is appropriate as to each under the [Federal Rule of Civil

Procedure] 56 standard." *Norfolk Southern Railway Co. v. City of Alexandria*, 608

F.3d 150, 156 (4th Cir. 2010)(*quoting Monumental Paving Excavating, Inc. v. Pa.

Mfrs.'Ass'n Ins. Co*., 176 F.3d 794, 797 (4th Cir. 1999)). Here the District Court

simply lumped all Plaintiffs' and causes of action together and accepted that CSX's

proffered explanation for firing them applied equally to all. *See* JA 2701-2702.

In accepting CSX's version of events, the District Court held that "the final

decisionmaker heard more than just Dr. Heligman's opinions, and Plaintiffs have no

evidence that the hearing process was somehow pretextual." JA 2701. But the

District Court did not identify whom it accepted as a matter of law was the final

decisionmaker, nor did it cite any evidence of what information the decisionmaker

did or did not hear or did or did not consider in firing the Plaintiffs. *Id*. Thus, whether

the termination decisions were pretextual is impossible to conclusively determine on

summary judgment. Further, the District Court made a finding that Dr. Heligman "believed the circumstances indicated fraudulent acts" despite undisputed evidence and testimony from him that he didn't have any proof or belief that any of the Plaintiffs committed fraud. *See* Section III, *infra*. In any event, that analysis is fundamentally flawed. On the one hand, the District Court credits Dr. Heligman's "belief" as indicia of a legitimate reason for CSX's actions but then separates Dr. Heligman from the unidentified "ultimate decisionmaker" as evidence against Plaintiffs' case of pretext. JA 2701-2702. It simply cannot be that Dr. Heligman's "belief" is sufficient to establish CSX's case as a matter of law but that him not being the "final decisionmaker" is fatal to Plaintiffs' case of pretext. If it was Dr. Heligman's "belief" that establishes the basis for CSX's defense, then there must be evidence demonstrating the "final decisionmaker's" process – yet none is cited by the District Court. *Id*. This alone requires reversal of the judgment.

Moreover, the District Court swept all Plaintiffs and their individual claims into one waste bin without any analysis of their differing factual underpinnings. It held:

> Finally, the Court does not believe Plaintiffs' argument that not all the Plaintiffs were subject to furlough is evidence of pretext. Even without the furlough notice, the Defendants had sufficient reason to believe that the Plaintiffs were improperly seeking leave.

*Id.* at 2701-2702. But it is not the District Court's province to believe Plaintiff's argument as to what the evidence means, or to determine conclusively that "Defendants had sufficient reason to believe that Plaintiffs were improperly seeking leave." *In re French*, 499 F.3d 345, 354 (4th Cir. 2007)("In the summary judgment context, a court is simply not empowered to make such [credibility] determinations.").

More importantly however, is that the District Court completely ignored that the claimed basis for CSX firing Plaintiffs was that the employees received treatment from Dr. Carey or Dr. Johnson around the time that furloughs were announced. *See* CSX Answering Brief at *2 ("That astronomically unlikely confluence of claimed off-work injuries—on the heels of furlough notice postings and rumored force reductions—led CSXT's Chief Medical Officer, Dr. Craig S. Heligman, to call for investigation."). CSX undeniably fired Plaintiffs based on a claimed "correlation" between submissions of COII forms on behalf of Plaintiffs and the furloughs:

> The COII submissions coincided with CSXT posting furlough notices at the Huntington facility and rumors that other force reductions were to come. In fact, the furlough list was posted at the mechanical facility on June 16—the Friday before Baker, Dowdy, Maddix, and over a dozen other employees visited Dr. Johnson (many of them for the first time) and received COIIs from him. An employee on medical leave while furloughed would receive benefits for up to two years, but if furloughed while not on leave would receive just four months of continued benefits. In Dr. Heligman's view, these happenings thus "had the potential to explain" the unprecedented influx of near-identical COIIs he had received. They contributed to the picture that was

developing of an "extremely unique" and potentially suspicious scenario.

CSX Answering Brief at *7-8 (internal citations omitted). Thus, whether Plaintiffs were subject to furlough is critical to a pretext analysis and requires a determination by a jury. Further, that the District Court dismissed Plaintiffs' claims by asserting, without any evidence or analysis, that "Defendants had sufficient reason to believe that the Plaintiffs were improperly seeking leave" is yet another reason that the judgment must be vacated.

Because the District Court's summary judgment decision was based upon credibility determinations, upon resolving issues of material fact in favor of CSX, and without analysis of the individual facts of the parties, the judgment must be vacated, and the case remanded for a jury trial.

B.   The District Court Erred In Depriving Plaintiffs' Of A Jury Determination As To The Credibility Of CSX's Private System Of Discipline.

The District Court credited, and CSX argues at length, that the private system of discipline it imposed on Plaintiffs affords those employees all the justice they should be allowed. *See* JA 2701-2702; CSX Answering Brief at *9-10. CSX specifically leans hard into the claim that a Public Law Board ("PLB") upheld many of the termination decisions. CSX Answering Brief at *12. But federal courts have repeatedly recognized that PLB's do not and cannot determine the legal rights of railroad employees because PLB's exist solely to determine contractual rights as set

forth by the applicable collective bargaining agreement. In fact, the decisions of

PLB's are not even held to a standard of being "correct."

> **A public law board is limited to evaluating the contractual agreement between the union and the railroad.** *Lyons v. Norfolk & Western Ry. Co.*, **163 F.3d 466, 469 (7th Cir. 1999). Whether the decision is correct is irrelevant. Hill, 814 F.2d at 1197. "All that matters is that they were interpreting the contract" and not "imposing private notions of workplace justice."** *Id.*

*Skiba v. Ill. Cent. R.R.*, No. 19 CV 2267, at *17 (N.D. Ill. Mar. 23, 2020)(emphasis

added). "In other words, the PLB's decision must be based on the provisions of the

CBA." *Lyons* at 469.

The Tenth Circuit Court of Appeals very recently emphasized the province of

a jury in evaluating the private disciplinary system imposed by railroads.

Considering nearly identical arguments as those of CSX here, the Tenth Circuit held

that a jury absolutely may find that the discipline process is weighted in favor of

railroad management and thus militates against the proffered "legitimate" reasons

for a railroad firing an employee.

> The evidence presented at trial, however, would have allowed the jury to find that the hearing process was weighted in favor of BNSF management. To begin with, BNSF management determined which employees would testify at the hearing in support of the alleged charge and paid only those selected employees for their time appearing at the hearing. Although the charged employee could request to present his or her own witnesses, those BNSF employees were not paid for their time appearing at the hearing. A BNSF management employee presided over the hearing and effectively acted as the hearing officer. In that role, the presiding BNSF management employee questioned the witnesses, ruled on objections, and ultimately prepared written findings of fact. The

charged BNSF employee could not have legal representation at the hearing, and instead had to either proceed pro se or have a union representative (non-lawyer) appear on his or her behalf. The presiding BNSF management employee's findings of fact were forwarded to division management employees and BNSF's Labor Relations Department, who determined whether to uphold the alleged charge or remove or reduce the charge. In making that determination, the division management employees and the Labor Relations Department were limited to the record produced at the hearing.

*Fresquez v. BNSF Ry. Co.*, No. 21-1118, at *46-47 (10th Cir. Nov. 10, 2022).

It is abundantly clear that no deference or credence should be afforded CSX's private disciplinary system on summary judgment, nor the decisions of any of the PLB's as to the Plaintiffs' terminations, because such evidence requires credibility determinations by a jury.

## III. CSX DOES NOT NOW HAVE, AND HAS NEVER HAD, ANY EVIDENCE TO SUPPORT A BELIEF THAT APPELLANTS ENGAGED IN FRAUD OR CONSPIRACY, THAT THEY IMPROPERLY RECEIVED BENEFITS, OR OTHERWISE DID ANYTHING OTHER THAN OBTAIN MEDICAL TREATMENT.

In the summer of 2017 CSX launched an unprecedented and wholly unsupported campaign claiming that two local chiropractors, Drs. Daniel Carey, II and Dr. Shannon Johnson, conspired with their CSX employee patients to falsify medical records for the purpose of fraudulently obtaining health benefits. On July 14, 2017 CSX Chief Medical Officer Dr. Craig Heligman sent the first of a series of letters to the U.S. Railroad Retirement Board (RRB), private health insurance providers, and the Kentucky and Ohio chiropractic licensing boards accusing the

chiropractors of engaging in excessive, inappropriate, and fraudulent treatment practices (collectively, the "Heligman Letters"). JA 1697-1698. CSX then charged every CSX employee treating with the chiropractors during an undefined timeframe with having engaged in dishonesty and fraud and fired them. JA 106. Dr. Heligman was the sole witness in each of the disciplinary hearings.

Prior to sending the Letters and appearing as a witness in the disciplinary hearings, Dr. Heligman never evaluated the respective employees, never requested that they be examined by another doctor, never reviewed their medical records, and never spoke with either Dr. Johnson or Dr. Carey. *Daniel J. Carey II, D.C. et al. v. CSX Transportation, Inc., et al.*, 18-cv-00079-HRW, at *7 (E.D. Ky. Jan. 11, 2019). Rather, the only "facts" upon which Dr. Heligman seemingly relied upon in sending the Letters and testifying against the employees was the doctor's note submitted to CSX on the employees' behalf by Dr. Carey or Johnson. *See* Opening Brief at *31-33.

Further, Dr. Heligman is an occupational medicine doctor with no training or experience in chiropractic care, is not licensed to practice in Kentucky or Ohio, and hasn't personally treated patients since 2012. JA 949 at 98:4 - 99:3. He therefore lacks the qualifications to evaluate, let alone conclusively establish the standard of care provided by Drs. Carey and Johnson to their CSX employee patients. In fact, his entire job is to rely on the medical information that he receives from providers

10

such as Drs. Carey and Johnson and he admits that it is not his job, nor within his ability, to second guess the treatment provided by those outside his area of specialty. *Id*. at 100:18-23; 102:3-18. Yet he did exactly that here.

Notably, in a lawsuit brought by Drs. Carey and Johnson against the same Defendants and based on the same facts as here, United States District Judge Henry R. Wilhoit, Jr. sniffed out the unjustifiable actions of Dr. Heligman and CSX:

> **The basis for Dr. Heligman's allegations of excessive treatment and fraud were based on nothing more than his own unsupported conclusions. Dr. Heligman never evaluated the respective employees, never requested that they be examined by another doctor, never reviewed their medical records, and never spoke with either [Dr. Carey or Dr. Johnson].**

*Daniel J. Carey II, D.C. et al. v. CSX Transportation, Inc., et al.*, 18-cv-00079-HRW, at \*7 (E.D. Ky. Jan. 11, 2019)(emphasis added). A jury later returned a verdict for Drs. Carey and Johnson in that case, finding Dr. Heligman and CSX liable for defamation and intentional interference with a business expectancy.[1] The findings by Judge Wilhoit and the jury verdict in favor of Drs. Carey and Johnson reflect the

---

[1] Upon remand to the Greenup County (Ky.) Circuit Court, this case was tried to a jury in September 2022. The jury found Dr. Heligman and CSX liable for defamation against Drs. Carey and Johnson in accusing them of fraud and conspiracy by submitting false medical reports to CSX, and that Dr. Heligman and CSX intentionally interfered with the business relationships or expectancies of Drs. Carey and Johnson when CSX refused to accept medical documentation from them on behalf of CSX employees. The jury returned a verdict of $22.815 million in favor of Drs. Carey and Johnson, jointly and severally against Dr. Heligman and CSX. *See Daniel Carey, et al. v. CSX Transportation et al.*, No. 18-CI-00348 (Greenup (Ky.) Circuit Court Nov. 9, 2022).

utter lack of any evidence underpinning CSX's position in this case – specifically that there was anything suspicious about the forms submitted by Drs. Carey and Johnson on behalf of CSX employees; that there was any correlation between those seeking treatment with Drs. Carey and Johnson and those who were being furloughed; that there was any basis to suspect fraud or conspiracy on behalf of the employees or Drs. Carey and Johnson; or that the employees sought or received *any* improper benefits as a result of their treating with Drs. Carey or Johnson.

These issues of material fact were fully presented to the district court and were more than sufficient to meet the standards of Fed. R. Civ. P. 56. The district court improperly disregarded these critical facts in favor of lumping all Plaintiffs and all claims together, painting them with a broad brush by accepting CSX's self-serving statements and private system of "justice," and thereby committing reversible error.

## IV. THE EMPLOYEES SUFFERED PREJUDICE WHEN CSX FAILED TO PROVIDE THE MANDATORY NOTICE UNDER THE FMLA.

### A.    An Employer Shall Provide Written Notice.

Referred to as the "Rights and Responsibilities Notice", an employer "shall" provide written notice. The statute is clear that "[e]mployers shall provide written notice detailing the specific expectations and obligations of the employee and explaining the consequences of a failure to meet those obligations". 29 CFR 825.300(c)(1). When an employer fails to provide such notice, the consequences are set forth in section (e) that "[f]ailure to follow the notice requirements set forth in

this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights."

Importantly, the employer's statutory duty to provide notice is not excused at the onset based upon a suspicion of potential misuse. Indeed, the certification process itself allows for an employer to question the basis for the leave in multiple ways.

B.    <u>The FMLA Certification Process Itself Allows An Employer To Question Authentication, Seek Clarification, And A Second Opinion</u>.

First, the certification process itself would have dispelled any concern about the legitimacy of the leave because the employer can seek clarification and authentication:

> **(a)** Clarification and authentication. If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider. **However, the employer may contact the health care provider for purposes of clarification and authentication of the medical certification (whether initial certification or recertification)** after the employer has given the employee an opportunity to cure any deficiencies as set forth in § 825.305(c). (emphasis added).

> 29 CFR 825.307

Additionally, if the employer has "reason to doubt the validity of a medical certification", it may require the employee to get a second opinion.

> (b) Second opinion.

(1) An employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense.

29 CFR 825.307.

      C.    <u>An Employer's Failure To Comply With The Notice Requirements Has Consequences</u>.

In *Vannoy v FRB of Richmond*, 827 F.3d 296 (4th Cir. 2016), the Fourth Circuit reversed summary judgment on the FMLA interference claim because the employer's notice did not comply with the regulatory requirements of 29 C.F.R. 825.300(c)(iv). As stated by the Court:

> The FMLA requires that employers provide an individual, written notice to affected employees that an absence qualifies under the FMLA. See 29 CFR 825.300. There are two types of individualized notice that an employer must give an employee who may be entitled to FMLA leave: a "rights and responsibilities notice", id. 825.300(c); and a "designation notice", id 825.300(d).

However, in this case, none of the employees were provided with any notice under the FMLA. If any of the employees were provided the FMLA medical certification form, the basis of the medical leave and reasons for it, would have been spelled out by the employee and healthcare provider to substantiate the leave. Instead, CSX relied solely upon the COII forms which they drafted and required the employees to complete.

      D.    <u>The Plaintiffs Suffered Prejudice Without The Ability To Structure 6-8 Weeks Of Leave Within The Protection Of The FMLA's 12 Weeks</u>.

The employees suffered prejudice by CSX not providing the required notice. Both the employees and their respective healthcare providers would have completed the medical certification form and establish a dialogue with the CSX medical department who in turn could establish the authenticity of the leave, request clarification or require a second opinion based upon any "reason to doubt the validity" of the either the certification form or the medical leave itself. Without the protections of the notice of rights and responsibilities, the employees were left in the process of the collective bargaining agreement which is ill-suited to enforce the medical leave and employment rights under the FMLA.

The employees suffered prejudice both in the inability to submit a medical certification form under the FMLA which they did not have and as Jolanda Johnson's admits were not provided training under the FMLA. Second, if the employees received the required notice, they could have restructured the leave in different segments for office visits and be aware their rights to reinstatement within twelve weeks. That is, the notice would have informed the employees that their restrictions of 6-8 weeks as estimated on the COII forms were within the twelve weeks of job protection and reinstatement under the FMLA. Last, any suspicions that Dr. Heligman entertained would have been explained or substantiated by the FMLA certification process including the employer's ability to seek authentication, clarification or even a second opinion.

Instead, CSX bypassed the FMLA certification process for each of the individual employees in favor of an across-the-board suspicion which if upheld would gut the protections of the FMLA. In other words, if an employer does not have to follow the mandatory notice requirements under the FMLA, then any employer could seek protection of ill-motives under the guise of any honest suspicion.

CSX cities to *Crouch v Whirlpool Corp.*, 447 F.3d 984 (7th Cir. 2006) as comparable facts to the present case because the plaintiff in that case submitted an Accident and Sickness form in a suspicious manner related to requests for his fiancée's vacation who also worked for the same company. However, in that case like many of the FMLA cases, the employer obtained evidence of misuse by hiring a private detective service. The surveillance from the detective service showed forty-eight minutes of doing yard work on a date for the claimed FMLA leave. This type of evidence may support suspicions of misuse and subsequent discipline.

CSX in this case did not retain any detective serve or use its own police force to conduct surveillance of any of the suspected employees. In fact, Dr. Heligman testified that he did not have any reason to challenge of the veracity of the information on the COII forms submitted by the employees and their chiropractors:

Q.     Is it correct to say for all of the plaintiffs in this case that you do not have any reason to believe that their illnesses were not legitimate as reported in the Certificate of Ongoing Illnesses?

A.      That would be a correct statement.

JA 2231.

As such, CSX did not have any evidence to support any suspicions on the COII form itself. CSX does not have any evidence that the employees misused medical leave after submission of the COII forms- that otherwise would have been FMLA protected. To the extent that CSX relies upon Dr. Heligman's testimony that the employees and chiropractors engaged in "subconscious" fraud, a jury should be permitted to weigh in on the credibility of this testimony.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Appellants request that the Court find that the district court erred in entering judgment against them as to each of the causes of action addressed. Accordingly, Appellants request that the Court vacate the judgment of the district court, and that the case be remanded for further proceedings.

Submitted this 16th day of December 2022.

s/*Jeff R. Dingwall*
Jeff R. Dingwall
EIGHT & SAND
750 West Fir Street, Suite 602
San Diego, CA 92101
Tel: (619) 796-3464
Fax: (619) 717-8762

jeff@eightandsandlaw.com

s/*Gregory G. Paul*
Gregory G. Paul
PAUL LAW OFFICES
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
Tel: (412) 417-5862
Fax: (888) 822-9421
gregpaul@morgan-paul.com

Counsel for Appellants

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. PROC. 32(a)(7)(B)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4393 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Dated: December 16, 2022.

*s/Jeff R. Dingwall*
Counsel for Appellants

**CERTIFICATE OF SERVICE**

I certify that on December 16, 2022, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fourth Circuit Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Jeff R. Dingwall*
Counsel for Appellants