# McGuireWoods

**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

**Brian D. Schmalzbach**
Direct: 804.775.4746
bschmalzbach@mcguirewoods.com

January 25, 2023

Patricia S. Connor, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

      Re:    No. 21-2051, *Adkins v. CSX Transportation, Inc.*,
              Federal Rule of Appellate Procedure 28(j) Letter

Dear Ms. Connor:

      Defendants notify the Court of *Juday v. FCA US LLC*, No. 21-1414 (7th Cir. Jan. 12, 2023), which affirmed summary judgment on FMLA interference and retaliation claims for the same reasons the Court should here. As here, the employer confronted the plaintiff with a suspicious confluence of FMLA leave requests; over half of the employee's requests coincided with his wife's (who worked at the same plant). Op. 4; *see also* Response Br. 4-8 (describing the wave of FMLA requests amid furlough activity). After interviewing husband and wife, the employer concluded that they had made false statements about their FMLA requests and suspended them. Op. 4-5.

      Summary judgment was proper on the interference claim because the employees had no "explanation for the frequency of the common dates and times" of their FMLA request. Op. 8. The FMLA "does not insulate an employee from discipline for abusing his leave rights." Op. 7. And "an employer need not conclusively prove that the employee abused his FMLA leave; rather, an 'an honest suspicion will do.'" *Id.* (quoting *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997)); Response Br. 37-42. So the Seventh Circuit rejected that plaintiff's argument that there must be "more concrete evidence of FMLA abuse." Op. 8; *contra* Reply Br. 9-12. And it upheld summary judgment because there was "no evidence suggesting that FCA's suspicion of FMLA abuse was anything other than genuine." Op. 8; Response Br. 42-45. The Seventh Circuit affirmed judgment on the retaliation claim "for the same reason as [the] interference claim." Op. 9.

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

January 25, 2023
Page 2

      Summary judgment should be affirmed here for the same reasons. Plaintiffs offer no innocent explanation for the unprecedented spike in cookie-cutter FMLA requests, nor any evidence that CSXT's suspicion was not genuine. Indeed, Plaintiffs had ample opportunity to dispel that suspicion in an extensive collectively bargained process that allowed them union representation, an opportunity to introduce their own evidence, and review by union and neutral Public Law Board members. Response Br. 9-14. Although that process is not necessary for summary judgment on these FMLA claims, it is amply sufficient here.

      Respectfully submitted,

      */s/ Brian D. Schmalzbach*
      Brian D. Schmalzbach
      MCGUIREWOODS LLP
      Gateway Plaza
      800 East Canal Street
      Richmond, VA 23219
      (804) 775-4746
      bschmalzbach@mcguirewoods.com

Enclosure

CC:   Counsel of record

In the

# United States Court of Appeals
## for the Seventh Circuit

No. 21-1414

MICHAEL JUDAY,

*Plaintiff-Appellant*,

*v.*

FCA US LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cv-00831-TWP-MPB — **Tanya Walton Pratt**, *Chief Judge*.

ARGUED OCTOBER 29, 2021 — DECIDED JANUARY 12, 2023

Before SYKES, *Chief Judge*, and KANNE* and HAMILTON, *Circuit Judges*.

SYKES, *Chief Judge*. Michael Juday has worked for FCA US LLC (formerly Chrysler) for more than two decades. In 2014 he married his wife Becky, also a veteran FCA employee.

---

* Circuit Judge Kanne died on June 16, 2022, and did not participate in the decision of this case, which is being resolved under 28 U.S.C. § 46(d) by a quorum of the panel.

The Judays work at the company's transmission plant in Kokomo, Indiana. In 2017 they submitted medical certifications from their healthcare providers to take intermittent leave from work under the Family and Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. §§ 2601 *et seq.*, for periodic flare-ups of their serious health conditions.

At the end of that year, FCA's outside FMLA administrator notified the company that Michael and Becky had frequently taken overlapping periods of FMLA leave. FCA opened an investigation, and neither Michael nor Becky could explain why they had requested FMLA leave on so many of the same dates and times. At the conclusion of the investigation, FCA suspended the couple for providing false or misleading information in connection with their FMLA leave requests. Michael Juday then filed suit accusing FCA of interfering with his rights under the Act and retaliating against him for using FMLA leave. The district judge entered summary judgment for FCA on both claims.

We affirm. To prevail on his claims for FMLA interference and retaliation, Juday needed to present evidence that would permit a reasonable jury to find that his suspension was not based on an honest suspicion of FMLA abuse. He did not do so.

**I. Background**

Michael Juday began working for FCA as a machine repairman in 1998. He married Becky, another long-time FCA employee, in 2014. Throughout 2017 both Judays requested and were granted intermittent FMLA leave for their serious health conditions. As required by the Act, FCA permits its employees to take up to 12 weeks of leave per year for

qualifying health conditions with no reduction in position or pay. Michael requested FMLA leave for anxiety, depression, and back pain; Becky requested FMLA leave for flare-ups of irritable bowel syndrome.

The Judays' healthcare providers completed the necessary medical certifications, which included descriptions of the reasons for intermittent FMLA leave and how frequently leave would be required. The providers submitted the certifications directly to Sedgwick Claims Management Services, Inc., FCA's third-party FMLA administrator. In 2017 Michael occasionally exceeded the leave he was allotted by his healthcare provider. However, he was able to continue taking leave without discipline by submitting updated recertifications throughout the year. Sedgwick granted every leave request Michael and Becky submitted that year. They returned from each period of leave without reduction in position or pay.

Throughout the year, Sedgwick periodically reviewed the Judays' leave requests. Under FCA's FMLA policy, "[p]roviding any false or misleading information relative to a requested or approved FMLA leave will be cause for disciplinary action, up to and including discharge." As a more general matter, "[p]roviding false or misleading information to the [c]ompany" violates FCA's standards for employee conduct. Michael knew that these policies applied when communicating leave requests to Sedgwick.

In December 2017 a Sedgwick supervisor e-mailed Anne Stebbins, the FMLA administrator at FCA, flagging a significant pattern of overlap in the Judays' FMLA leave dates. Stebbins independently reviewed the couple's leave requests for that year and found 21 common days of absence and an

additional 27 days on which their partial-day leave requests overlapped.

An investigation ensued, and FCA labor-relations managers interviewed Michael and Becky separately, with their union representatives present. Michael indicated that Becky's irritable bowel syndrome flare-ups would trigger his anxiety 20%–30% of the time and that his medical conditions would also randomly intensify. Becky similarly stated that her irritable bowel syndrome episodes were random and sometimes triggered by stressful situations, including flare-ups of Michael's condition. Responding to questions about the overlapping partial-leave days, Michael said that he and Becky carpooled to work about half of the time. Neither Michael nor Becky had any explanation for why their leave requests overlapped as frequently as they did.

When the investigation concluded, Stebbins reviewed the interview transcripts and the couple's overall attendance records for the year. She found that more than half of Michael's FMLA absences and half of his late days were on the same date and at the same time as Becky's. This conflicted with Michael's estimate that his need for FMLA leave was triggered by Becky's condition about 20%–30% of the time. Stebbins also noted that the Judays' shifts started within 12 minutes of each other, with Michael starting at 5:48 a.m. and Becky starting at 6 a.m. After consulting with labor-relations representatives and FCA counsel, Stebbins concluded that the couple had provided false or misleading information to FCA regarding their 2017 FMLA leave.

On February 6, 2018, Michael was placed on a 30-day disciplinary layoff for violating FCA's standards of conduct—namely, the rules against providing false or mislead-

No. 21-1414                                                                   5

ing information regarding leave requests. Becky also received a disciplinary suspension. Michael returned to work in March to the same position, supervisor, and rate of pay as before his suspension and has continued to take periodic FMLA leave.

About a year later, Michael sued FCA alleging that his suspension amounted to interference with his FMLA rights and retaliation for exercising his right to FMLA leave. On cross-motions for summary judgment, the judge held that the interference claim failed because the undisputed evidence showed that the disciplinary suspension was based on an honest suspicion of FMLA abuse. The judge rejected the retaliation claim for the same reason.

## II. Discussion

We review the judge's ruling on cross-motions for summary judgment de novo, construing the evidence and drawing reasonable inferences in the light most favorable to the party against whom the motion under consideration was made. *See Chi. Tchrs. Union v. Bd. of Educ.*, 14 F.4th 650, 654 (7th Cir. 2021). Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

As relevant here, the FMLA entitles eligible employees to take up to 12 weeks of unpaid leave each year for "a serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). Upon return to work, employees are entitled to the same position or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of

employment." *Id.* § 2614(a)(1)(B). But returning employees are entitled only to those rights that "the employee would have been entitled had the employee not taken the leave." *Id.* § 2614(a)(3)(B); *see also* 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). That is, FMLA entitlements apply only if an employee uses his statutory leave "for the intended purpose." 29 U.S.C. § 2614(a)(1); s*ee also Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012).

FMLA claims generally come in two forms: interference and retaliation. It is unlawful for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an FMLA right. 29 U.S.C. § 2615(a)(1). And an employer may not retaliate against an employee for exercising his FMLA rights. *See id.* § 2615(a)(2); *see also Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012). To prevail on an FMLA interference claim, an employee must prove that he was denied a right to which he was entitled; proof of discriminatory intent is not required. *Scruggs*, 688 F.3d at 825. A retaliation claim, in contrast, "requires proof of discriminatory or retaliatory intent." *Nicholson*, 690 F.3d at 825.

### A.  FMLA Interference

An employee claiming FMLA interference must show that: (1) he was eligible for FMLA protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer "interfered with, restrained, or denied FMLA benefits to which he was

entitled." *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022). At issue here is the last element.

It's undisputed that all of Juday's leave requests were granted and that he returned to his position as a machine repairman without any reduction in pay or benefits. But a Labor Department regulation provides that FMLA interference can include "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); *see also Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015). Juday argues that FCA used his FMLA leave requests as a negative factor in imposing the 30-day disciplinary suspension.

This argument presumes that Juday used his FMLA leave for its intended purpose. But the Act does not insulate an employee from discipline for abusing his leave rights. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681–82 (7th Cir. 1997). In a claim of this type, an employer need not conclusively prove that the employee abused his FMLA leave; rather, an "an honest suspicion will do." *Id.* at 681. We have applied this "honest suspicion" standard when an employer declined to reinstate an employee suspected of using leave for an impermissible purpose. *See Scruggs*, 688 F.3d at 825–26; *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909 (7th Cir. 2008); *Kariotis*, 131 F.3d at 680–81. The same standard applies to the disciplinary suspension at issue here.

The district judge entered summary judgment for FCA because nothing in the record calls into question FCA's honest suspicion that Juday abused his FMLA leave. It is undisputed that 50% of the Judays' leave requests overlapped. But Michael estimated that his anxiety flare-ups

were triggered by his wife's medical condition only about 20%–30% of the time, and neither Juday had any explanation for the frequency of the common dates and times of their FMLA absences. After reviewing the Judays' interview transcripts and attendance records, Stebbins concluded that Michael had given false or misleading information to FCA regarding his 2017 FMLA leave, violating FCA's employee standards of conduct.

Juday argues that our caselaw requires more concrete evidence of FMLA abuse. For support he points to *Vail v. Raybestos Products Co.*, 533 F.3d at 906. There the employer was suspicious that an employee was using FMLA leave to work at her husband's lawn-mowing business because her leave requests had increased during the summer and fall mowing season. An off-duty police officer hired by the employer had observed the employee mowing lawns on a morning that coincided with the employee's back-to-back leave requests for migraines. *Id.* at 906–07. That evidence was sufficient to support the employer's honest suspicion of FMLA abuse. *Id.* at 909–10.

Juday contends that FCA's investigation falls short of the evidence we found sufficient in *Vail*. But our decision in *Vail* did not raise the bar for FMLA-abuse investigations; nothing we said there requires employers to conduct surveillance before disciplining an employee for abusing FMLA leave. That the evidence in *Vail* was *sufficient* to defeat the claim does not mean that surveillance evidence is *necessary* to defeat an FMLA claim of this type. Because Juday presented no evidence suggesting that FCA's suspicion of FMLA abuse was anything other than genuine, the judge properly entered judgment for FCA on the FMLA interference claim.

No. 21-1414                                                                 9

**B. FMLA Retaliation**

To prevail on a claim for retaliation in violation of the FMLA, a plaintiff must show that (1) he engaged in FMLA-protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the two. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015) (quoting *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009)). As we've noted, the claim requires proof of discriminatory intent—evidence that the employer "was acting under a prohibited animus." *Cracco*, 559 F.3d at 634. An employee alleging FMLA retaliation may establish discriminatory intent by either the direct or indirect method of proof. *See Burnett v. LFW Inc.*, 472 F.3d 471, 480 (7th Cir. 2006). Juday proceeds under the former.[1] The direct method of proof permits inferences drawn from circumstantial evidence—the plaintiff can rely on "a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Scruggs*, 688 F.3d at 827 (quotation marks omitted).

Juday's retaliation claim fails for the same reason as his interference claim: the record evidence shows that FCA disciplined him based on an honest suspicion that he was abusing his FMLA leave—more specifically, he had violated the company's rules against providing false or misleading information in connection with his FMLA leave. Juday

---

[1] The indirect method of proof, on the other hand, requires a plaintiff to show that he was treated differently than a similarly situated employee who did not take FMLA leave, despite a satisfactory job performance. *See Burnett v. LFW Inc.*, 472 F.3d 471, 481–82 (7th Cir. 2006).

needed to produce evidence from which a reasonable jury could infer that FMLA abuse was not FCA's real reason for imposing discipline and that the company was instead retaliating against him for exercising his statutory leave rights. He did not do so. The judge properly entered summary judgment for FCA on the retaliation claim too.

AFFIRMED